I, Christopher Chapman, do hereby declare that on September 24, 2013, I did deposit the attached document (Richard Edward Boggs' Joinder of similarly situated parties to the above captioned 18 USC § 4 Complaint) in U.S. Post 1st Class and in adequate packaging addressed to the following Congressional committees and members at the addresses below and as instructed by postal protocol personnel: *U.S. **House of Representatives:** House Postal Operations, 9140 East Hampton Drive, Capital Heights, MD 20743, and to **U.S. Senate** Post Office, MAIL ROOM SH - B21, Washington, D.C. 20510-7220, for distribution to the designated locations below.

Delivery Confirmation Numbers to U.S. House: 9114 9011 5981 5615 2430 21
Delivery Confirmation Numbers to U.S. Senate: 9114 9011 5981 5615 2430 45

| | |
|---|---|
| * **Committee on Judiciary** | * **Comm. Gov't Reform/Hon. Darrell Issa** |
| **Hon Bob Goodlatte** | U.S. House of Representatives |
| 2138 Rayburn House Office Bldg. | 2347 Rayburn House Office Building |
| Washington, DC 20515 | Washington, D.C. 20515 |
| | |
| * **Hon. Randal Paul** | **\*\*Joint Committee on Taxation** |
| 124 Russell Senate Office Bldg. | Hon. Max Baucus, Senate |
| Washington, DC 20510 | 1625 Longworth House Office Building |
| | Washington, DC 20515 |

Date: September 24, 2013          Signed: _____

# TO THE UNITED STATES CONGRESS

## WASHINGTON, D.C.

No. ¦ FILE NUMBER - Please advise ¦

David R. Myrland, Tim Garrison, Lee J. Herold, Jim L. Walden,
Greg Weiss, Paul Broward, and We the People,
Complainants,

vs.

UNITED STATES DEPARTMENT OF JUSTICE, ALBERT GONZALES, UNITED STATES TREASURY DEPARTMENT, JOHN W. SNOW, INTERNAL REVENUE SERVICE, MARK W. EVERSON, U.S. DISTRICT COURT, GARR M. KING, LEE YEAKEL, ROBERT WESTINGHOUSE, LISA PERKINS, STEVEN B. BASS, TERRY L. MARTIN, U.S. TAX COURT, JOEL BERGER, NORTHWEST AIRLINES, and all those similarly situated or so involved,
DEFENDANTS.

---

VERIFIED JOINDER OF PARTIES TO COMPLAINT
- Richard Edward Boggs hereby joins -

---

*Joinder of similarly situated parties as Co-Complainant.

Dated: September 24, 2013 Please provide file or complaint number for future reference. **Deemed filed with Joint Committee on Taxation, Committee on Government Reform, and House Judiciary Committee.**

CERTIFICATE OF SERVICE of
VERIFIED JOINDER of Richard Edward Boggs as Co-Complainant

# Exhibit A:

**Ex.A:** My 18 USC § 4 complaint to Congress which on the presumption that my analysis of the Tax Code is correct makes allegations of violations, mostly under 18 USC, against all those involved in the administration of purported tax laws.

Exhibit: ___*A*___

# TO THE UNITED STATES CONGRESS
## WASHINGTON, D.C.

No.   [ PLEASE SUPPLY FILE NUMBER]

David R. Myrland, Tim Garrison, Lee J. Herold, Jim L. Walden,

Greg Weiss, Paul Broward, and We the People,

Complainants,

vs.

UNITED STATES DEPARTMENT OF JUSTICE, ALBERT GONZALES, UNITED STATES TREASURY DEPARTMENT, JOHN W. SNOW, INTERNAL REVENUE SERVICE, MARK W. EVERSON, U.S. DISTRICT COURT, GARR M. KING, LEE YEAKEL, ROBERT WESTINGHOUSE, LISA PERKINS, STEVEN B. BASS, TERRY L. MARTIN, U.S. TAX COURT, JOEL BERGER, NORTHWEST AIRLINES, and all those similarly situated or so involved,

DEFENDANTS.

COMPLAINT PURSUANT TO 18 U.S.C. § 4 Misprision of felony; Violations include 18 U.S.C. §§ 3, 4, 241, 242, 876(d), 880, 1341, 1343, 1623, 1951(a), 1962(c), 1962(d); 26 U.S.C. § 7214.

## VERIFIED CRIMINAL COMPLAINT

David R. Myrland
6619 132nd Ave. NE #100
Kirkland, WA   98033

*Table of Contents at page 2.

Supplied to <u>all</u> members: House Judiciary Committee, Committee on Government Reform, and Joint Committee on Taxation.

# - TABLE OF CONTENTS -

**At TAB #:**

1 -     Cover letter (verified) from David R. Myrland, policy analyst and taxpayer advocate, eye witness to DOJ's description of its prosecution process. 16 pgs.

2 -     Complaint pursuant to 18 U.S.C. § 4 Misprision of felony.  33 pages.

3 -     Abstract of Primary claims.  12 pages.

4 -     Table of Authorities relied upon. 8 pages.

5 -     Memorandum in Support. 58 pages.

6 -     Certificate of Service - 1) House Judiciary Committee, 2) Joint Committee on Taxation, and 3) Committee on Government Reform. Also - Hon. Ron Paul.

7 -     Declaration of Truth, authenticity of exhibits by David R. Myrland. 1 page.

8 -     **Exhibit 1**. Protective Order issued by U.S. Dist. Court (Austin, TX) against discussion of the law.

9 -     **Exhibit 2**. 26 CFR 1.83-6 amendment described. 8 pages.

10 -     **Exhibit 3**. Affidavit of Tim Garrison, accountant of thirty years. _7_ pages.

11 -     **Exhibit 4**. IRS Publication 17 "Tax Guide for Individuals" excerpts. - 8 pages.

12 -     **Exhibit 5**. Three annually consecutive copies of 26 CFR 602.101. 13 pages.

13 -     CD-ROM containing - Tutorial to aid in researching and understanding these briefed issues. NOT MAC compatible.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Tab #1**

*From the desk of:*
*DAVID R. MYRLAND*
*6619 132ND AVE. NE  #100*
*KIRKLAND, WASHINGTON  98033*

December 15, 2005

Honorable Senator/Representative,
Joint Committee on Taxation, Committee on
Gov't Reform, House Judiciary Committee,
        **Subject meeting: September 21, 2005**, at 700 Stewart Street, Seattle, WA, U.S. Dist. Courthouse, **U.S. Attorney's Office, a meeting occurred** with a taxpayer and his attorney, U.S. Attorney Bob Westinghouse and IRS investigator (female), and I, David R. Myrland, policy analyst, in attendance, approx. 1:30 pm until 4:20 pm. The term "subject notice" refers to the Notice attached to a civil complaint in U.S. Dist. Court, Seattle, WA #C05-1513-MAT, *Ray Gebauer v. U.S., et al.,* (fn.[1] ), which contained the same briefed issues in the attached Memo at **Tab #5**. From the stand point of claims made and briefed the subject notice and the Memo at **Tab #5** are identical.
        What I witnessed at the subject meeting has convinced me to abandon my faith in the law and to get back into the system just to avoid *tax protester* prison. It's not because the system would protect me, but rather because being *in the system* protects me from higher crimes I otherwise would suffer if I object to the lower crimes (extortion) committed *in the system* by not paying, because of the fact that I'd be letting a lawless system feed off of me a little bit so I can avoid being imprisoned because I believed in the law.
        I don't seek to prejudice this taxpayer by focusing directly on his situation, perhaps thereby diminishing *good faith* the prosecution may dispense. I also understand that Congress is reluctant to impede another branch in an ongoing process. However, everything discussed herein shows how DOJ policy is not just the threat to my future I've described, but is at present operating with the full knowledge of the prosecution (Westinghouse) to falsely imprison an innocent American; Mr. Gebauer is not a criminal, he is a victim.
        My personal interests in this taxpayer's case arise from my having recently been harassed by the IRS in a very peculiar way I had never before seen. Because the law doesn't matter in America I promote H&R Block to everyone who wants to know what I have to teach. Despite this well known fact, the IRS penalized me twice for promoting abusive tax shelters after 10/21/04. Each time I was penalized one penny. THEN, the IRS credited back to my account that one penny so I owed ZERO and was told to not send payment, and that I could appeal these penalties to U.S. District Court. This is so Mr. Gonzales can go to a

---

[1]  A civil action to perpetuate testimony under FRCvP 27 to review basis for DOJ investigation, not served via summons and complaint, not prosecuted.

Grand Jury and say, "You know, Mr. Myrland was penalized twice for promoting abusive tax shelters and he didn't even complain." (**See attached** copies of these penalty notices from the IRS).

My lengthy message to Treasury Secretary (Mr. Snow) at 202-622-6516 ("Jenny's hotline" according to the very nice main receptionist at Treas. Dept.) received no response and stirred no concern. (Summer, 2005). What is a monetary penalty with no money sanction attached to it? It's slander, it's libel and a campaign to build a false administrative record for future use of some sort. Am I now supposed to pay a $250 filing fee in U.S. District Court to complain about a ZERO penalty to prevent the DOJ from using it to get an indictment?

As a witness at the subject meeting, of specific interest to me was how this taxpayer's constructive notice and the issues briefed therein had been received by Westinghouse, and what his opinion was of not only the conclusions articulated therein but also of the gravity statutory provisions actually have in a criminal tax investigation and in the DOJ's process of obtaining a Grand Jury indictment under 26 USC. My IRS Centralized Authorization File number is #8005-84830R. My overall conclusions and assessment of DOJ policy governing tax prosecutions of Congressional members and their families (and We the People) are these:

[ As it pertains to whether or not any American will face prosecution for tax offenses, my years of research into tax statutes and regulations were wasted. Just being in America imposes income taxes without reference to law, one's beliefs determine legal duties without reference to law, and juries determine what one believes after the DOJ's best pitch; Congress (the Tax Code) has nothing to do with this process prior to alleging a violation of 26 USC §§ 7201 to 7206. Without reference to the statutory imposition of income taxes the DOJ formulates the scheme necessary to get a jury to say "guilty" and this alone guides its prosecution of individuals under 26 USC.

This taxpayer (Ray Gebauer) is being falsely prosecuted in that the DOJ has no evidence whatsoever that the briefed interpretation of law is mistaken but will proceed to prosecute without such probable cause that 26 USC imposes the tax liability allegedly evaded, while the DOJ now has abundant evidence, in the law, that he has no liability to evade. -

Silence about **this** will rule the DOJ's prosecution of this taxpayer. Because the law plays no role in a prosecution for tax crimes, whether or not an American goes to prison depends solely upon guessing correctly to this query, "I wonder if Mr. Gonzales (DOJ) can convince a jury that I believe what I don't believe to get a conviction, thus destroying my life." ]

Consider the attached memorandum (**Tab #5**) to be my statement of legal claims, incorporated by this reference as if fully restated herein. The contents of this correspondence proves that open expressions of an affirmative belief in the law are a threat to my freedom.

This is my request, as someone similarly situated, (fn.[2]) for aid in avoiding imprisonment due to my having relied upon statutory provisions instead of the IRS, in ways that although perfectly legal and wholly without contradiction, they are so objectionable to the DOJ that I'll be indicted for uttering my belief that the law protects Americans as briefed by me. (See pgs.18 - 52).

I can't rightfully apologize for what you may view as complexities in my message, such is simply the nature of all communication when dealing in the Tax Code with which I'm forced to live. You need to talk to a real expert about the content of the Tax Code instead of the anti-tax movement crowd. They are well intentioned for the most part, but their insight is highly impaired for their lack of substantial research and fundamental knowledge of American jurisprudence. I've read thousands of cases and I write law as a hobby. My specialty is the content and operation of the chapters that impose taxes on individual incomes (compensation for services, capital gains). After the subject meeting I would now describe Mr. Gonzales' approach to tax prosecution as one which says, "Whether or not the law imposes a liability is irrelevant because I can convince a jury that money was received; that's good enough!"

It's not my fault that the courts say 26 USC § 83 applies to all compensation, but my five trips to the Supreme Court on the issue evoked only penalties for frivolity under decisions which clearly contradict four cases where the DOJ argued and the Supreme Court agreed on how to interpret "any property." My clients were penalized thousands of dollars for properly applying the language of the law to their compensation and asking for indulgence. (Tax Court #339-95 final order 3/21/96, *Talmage*, father of four penalized $6500.00 for, "I'll concede all facts of the case today if they'd just tell me how to comply with § 83."). Tax Court is the court that isn't certain whether it sits to hear issues at law or sits to penalize taxpayers who bring issues at law, like so, only one year apart:

> "...The logical force requiring rejection of their arguments - apart from their *assertions of personal political philosophy which do not provide a basis for us, a Court sitting to interpret the law,* to decide the questions dispositive of this case..." See *Rowlee v. C.I.R.*, 80 USTC 1111, 1120 (**1983**), quoting *Reading v. C.I.R.*, 70 TC 730 (1978), aff'd. 614 F.2d 159 (CA8 1980, at 773).

*Compare*:

> "...*the pleadings do not raise a genuine issue of material fact* respecting Respondent's determinations . . . *but rather involve only issues of law.* (Cite omitted) Therefore .... Respondent's motion for judgment on the pleadings will be granted. . . . *The final matter we consider is [penalties].*" See *Abrams v. C.I.R.*, 82 USTC 403, 408 (**1984**).

---

[2] Self employed, compensation for services, American born or naturalized in the fifty states, Citizen of the United States.

At the subject meeting, Mr. Westinghouse stated that he's convinced that all issues in the subject notice are wrong, all legal conclusions are mistaken, and likened statutory claims argued therein to the strained and tortured *voluntary income tax* argument, an analogy which is utterly moronic. All of those legal conclusions are based on statute, and not on extrinsic statements of past IRS Commissioners and archaic Supreme Court cases (*Flora*, etc.). Mr. Westinghouse offered no commentary whatsoever as to *how* the conclusions were mistaken. Mr. Westinghouse theorizes that "*the tax is voluntary*" argument is the same as saying "if you'd tell me how I'm wrong about the law none of this would have happened in the first place."

Westinghouse said the brief was wrong, but to say that he has to have made legal conclusions about the authorities relied upon, naturally; ASK HIM what his conclusions about the notice's claims were and about how those claims are misguided. The conclusions have to be wrong for the DOJ to be within its official right when bringing charges. Ask Westinghouse and Mr. Gonzales how the brief "is wrong"; it's just the law. **Core**; where is probable cause? What exactly is it when a liability is presumed without relation to law?

> 26 CFR 601.106(f)(1) "Rule 1. *An exaction* by the U.S. Government, which is not based upon law, statutory or otherwise, *is a taking of property without due process of law*, in violation of the [5ᵗʰ Amendment]. . . ."

I know that the allegation of a tax liability (which was allegedly evaded) at the foundation of the DOJ's case against this taxpayer is a violation of due process, as are all tax prosecutions of individuals. Does Congress really intend this for the average American, for every American? This policy of the DOJ's flies in the face of everything I hear coming from the House and Senate floors when rights and due process are discussed, when separation of powers is discussed, when Congress puts it foot down on an agency; the IRS and DOJ are exempt when dealing [in] tax law. Ask him! What is Mr. Gonzales' lawful foundation for alleging evasion of a liability "imposed by this title"? Congress has nothing to do with the basis for this prosecution.

At the meeting Mr. Westinghouse stated quite clearly that merely residing in America imposed a tax liability on me, and that a belief in having to file a tax return imposed the duty to do so, while the subject notice cites Supreme Court decisions saying that taxes must be imposed by clear and unequivocal language, in statute, and while the Constitution says that Congress imposes income taxes and not some matter of residency or belief, *ala*, "You have that nice house, you drive a nice car, don't you think you have to pay your fair share? Part of living here is to pay taxes."

> 26 USC § 7201 Attempt to evade or defeat tax. - Any person who willfully attempts in any manner to evade or defeat *any tax imposed by this title* or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon

conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

Imposed <u>by this title,</u> not by residency. Substitute "your presence" for "this title." The DOJ's evidence in this taxpayer's prosecution (each case) will remain utterly void of evidence (statute) that a liability exists upon which no taxes were <u>duly</u> paid.

"There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have *found the essential elements of the crime beyond a reasonable doubt.*" *United States v. Nelson,* 137 F.3d 1094, 1103 (9th Cir. 1998) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). Because Orduno-Aguilera properly preserved this issue by making a motion for an acquittal after the close of all evidence, this court's standard of review is the same as that of the district court's denial of that motion. *United States v. Bahena-Cardenas,* 70 F.3d 1071, 1072-73 (9th Cir. 1995)."

"[4] . . . Because this fact is *a necessary element of the statutory definition* of anabolic steroids, which is *in turn a necessary element of the offense,* failure to offer this evidence resulted in <u>insufficient evidence to sustain the</u> jury's <u>verdict.</u>"

See *U.S. v. Orduno Aguilera,* No.98-50346 (CA9 filed 7/19/99). **Further -**

"No rational trier of fact (a judge) could have found that this standard was met for Estrada. *<u>The record was barren of evidence</u> that he participated in the conspiracy.*"

"[2] Even though Estrada initially denied living in the trailer, his denial was as consistent with non-participating knowledge of the crime as it was with complicity in the crime. *<u>When there is an innocent explanation</u> for a defendant's conduct as well as one that suggests that the defendant was engaged in wrongdoing, <u>the government must produce evidence</u> that would allow a rational jury to conclude beyond a reasonable doubt that the latter explanation is the correct one. In Estrada's case, <u>the government produced no such evidence</u>.*"

See *U.S. v. Estrada-Macias,* No.97-10115 (CA9 filed 7/12/2000).
The courts <u>do not</u> conduct <u>tax</u> prosecutions this way, they never have, choosing rather to hide in silence in one section (§ 7201 tax evasion or other statute) of a stack of rice paper sixteen inches thick, seven million words.
I believe precisely as is briefed in the memorandum. It's a portion of my final thesis on <u>your</u> Tax Code's scope and intent, derived via statutory interpretation under restrictions of well established maxims of law which are also briefed. It's only <u>your</u> law, not rocket science, monumental protections are in 26 USC and elsewhere. By bringing charges

Westinghouse and Mr. Gonzales are alleging non-payment of a § 1 liability (See Issues <u>A</u> **through** <u>D</u>, pg.18 - 35 of Memorandum), but it was not until Westinghouse spoke of prosecution that he mentioned "going by the law" to get a finding of guilt, that he intends to treat defendants "fairly." *We will treat you fairly when we falsely prosecute and imprison you based on an exaction; you're just an American.*

How did 26 USC § 83(a) operate in his conclusions that I have a liability on his compensation for services?

26 CFR 602.101, same question? Can I just ignore this regulation? If this one regulation can be ignored, why not <u>all</u>?

Westinghouse knows that without <u>regulation</u> 26 CFR 1.1-1, Citizens of the United States are not implicated as subject to any 26 USC tax, making it <u>not</u> imposed by Congress, but he prosecutes people for not paying it; can Americans be taxed by the executive branch's regulation, really? (See 26 USC 7801, 7805 [3] ). Statute section 1 makes no mention of a political subject of the tax imposed thereby as do §§ 1402(b) and 3121(e), so <u>regulation</u> 1.1-1 is derogatory of statute and is void in its assertion that I (U.S. Citizen, born or naturalized in the United States) am implicated by the statute sought to be implemented thereby, 26 USC § 1.

How can Westinghouse allege a liability when he hasn't allowed applicable provisions to operate in his 'determinations'?

How can I stay out of jail when the law has no bearing on my being? How do I know what Mr. Gonzales can convince a jury of against me, so that I might choose a course to stay out of the DOJ's way?

Does residency or does Congress impose taxes? Can a legal duty be imposed by one's beliefs? What if one believes that killing is proper, wouldn't murder then have become a legal duty? Can that person then be imprisoned for having fulfilled a legal duty? If beliefs impose legal duties, why prosecute those acting out against certain types of doctors? Can anyone say "invitation to anarchy"? We are <u>inside</u> Mr. Gonzales' Department of Justice at this exact moment as you read this; I witnessed it.

I'm named in 26 CFR 1.1-1 but not in statute, to tax compensation you start in § 83, the Secretary has to have permission to operate outside of D.C. (4 USC 72), 26 CFR 602.101 must be complied with. (See Issues A, B, C, pgs. 18 - 25 of the Memo). This is law, not some convoluted and nebulous claim that compliance is "voluntary." The duped Grand Juries, the judiciary, and his duped trial court jury member victims serving as merely his

---

[3]  Secretary of the Treasury promulgates tax regulations and enforces the Tax Code (26 USC 7801, 7805).

tool of willful dereliction, these alone control taxation and enforcement; the provisions imposing income taxes must remain strictly OFF LIMITS!

Westinghouse gave a warm rendition of a speech about how he and others are not sinister, they do not conspire, they don't commit perjury and other acts against taxpayers, then promised to use a jury to tell a defendant that he believed he had liabilities; he can't do that:

> "We agree with the holdings of the District Court and the Court of Appeals on the due process doctrine of vagueness. The settled principles of that doctrine require no extensive restatement here. (fn.7) *The doctrine incorporates notions of fair notice or warning*. (fn.8) *Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement"*. (fn.9) Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts. (fn.10) The statutory language at issue here, "publicly... treats contemptuously the flag of the United States...," has such scope, *e.g.*, *Street v. New York*, 394 U.S. 576 (1969) (verbal flag contempt), and at the relevant time was without the benefit of judicial clarification. (fn.11)"[4]

> "Appellant's second argument, that 26-2101(c) is void for vagueness, also raises a substantial federal question-one of first impression in this Court-even though appellant fundamentally misapprehends the reach of the First Amendment in his argument that the protections of that Amendment extend to the sexual devices involved in this case. As we said in *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972):

> > "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, *we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning*. Second, if arbitrary and discriminatory enforcement is to be prevented, *laws must provide explicit standards* for those who apply them. *A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application*." (Footnotes omitted.)

---

[4] See *Smith v. Gougen*, 415 U.S. 566, 572 (1974).

"See also *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972); *Cline v. Frink Dairy Co.*, 274 U.S. 445, 47 S. Ct. 681 (1927); *Connally v. General Construction Co.*, 269 U.S. 385 (1926)." [5]

"This ordinance is void for vagueness, both in the sense that it "*fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute*," *United States v. Harriss*, 347 U.S. 612, 617, *and because it encourages arbitrary and erratic arrests and convictions. Thornhill v. Alabama*, 310 U.S. 88; *Herndon v. Lowry*, 301 U.S. 242."

"*Living under a rule of law entails various suppositions, one of which is that "[all persons] <u>are entitled to be informed as to what the State commands or forbids</u>.*" *Lanzetta v. New Jersey*, 306 U.S. 451, 453."

"*Lanzetta* is one of a well-recognized group of cases *insisting that the law give fair notice of the offending conduct*. See *Connally v. General Construction Co.*, 269 U.S. 385, 391; *Cline v. Frink Dairy Co.*, 274 U.S. 445; *United States v. Cohen Grocery Co.*, 255 U.S. 81. In the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed. *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337; *United States v. National Dairy Products Corp.*, 372 U.S. 29; *United States v. Petrillo*, 332 U.S. 1." [6]

Mr. Gonzales is clearly engaged in a pattern of defiance of this principle, a fundamental tenet of due process. This is such a profoundly reckless display of power and such a negligent approach to everyone's lives and livelihood that it literally shocks the conscience. Since the DOJ has chosen this as its staple I have to get back into the system to remain safe and free, I can't rely on the law.

<u>At the meeting</u> this taxpayer was told that if he'd be lying by admitting believing he had a duty, he could not plead guilty in an agreement, but that failure to plead guilty would cause his wife to be indicted along with him. Put another way it sounds like, "If you truly do not believe you have a duty, your wife pays too, if you lie about it to the court, she doesn't get indicted."

<u>Near the end of the meeting</u> this taxpayer asked Westinghouse if he hadn't heard, in all his experience, of persons making far more revenue and paying little or no taxes on it, to which Westinghouse reasoned, *ala*, "They hired the right experts, they made full disclosure to the IRS, and it was found that they could proceed as they did." This requirement of full disclosure to get permission clearly precludes one from arranging <u>their own affairs according to law and imposes a waiver of all rights to privacy in personal affairs</u>; staying out of prison requires waivers of rights, involvement of experts, and the IRS' seal of approval. Congress is out of this loop. Mr. Westinghouse's behavior at this meeting and obvious disdain for the law convinces me of three things:

---

[5] See *Sewell v. Georgia*, 435 U.S. 982, 985 (1978).
[6] Excerpts from *Papachristou v. City of Jacksonville*, 405 U.S. 156, 172 (1972).

1. <u>Everything</u> briefed in the subject notice is a true representation of how the law operates to impose no tax on me for several reasons, and of how it protects every American in at least several glaring ways when it is honored.

2. No matter how well the law's been written and no matter how many protections it contains, if the IRS wants your money it will get it, and if you inquire or refuse you'll be jailed for crimes nobody can detect or prove.

3. **These are falsehoods**:
    (a) The presumption of correctness enjoyed by the IRS disappears upon introduction of evidence to the contrary, a "determination" must be the result of a consideration of <u>all relevant facts and statutes</u>.[7]
    (b) "[T]axpayers [are] <u>entitled to know the basis of law</u> and fact on which the Commissioner sought to sustain the deficiencies."[8]
    (c) "With the IRS' broad power must come a concomitant responsibility to exercise it within <u>the confines of the law</u>."[9]
    (d) "More importantly, the statute does not require that the taxpayer put a legal classification on his protest. The Service, however, with its expertise, is <u>obliged to know</u> its own governing statutes and to <u>apply them</u> realistically."[10]
    (e) "***The mission of the Service*** is to encourage and achieve the highest possible degree of voluntary compliance with the tax laws and regulations and ***to maintain the highest degree of public confidence in the integrity and efficiency of the Service. This includes communicating the requirements of the law to the public***, determining the extent of compliance and causes of non-compliance, ***and doing all things needful to a proper enforcement of the law.***" *Federal Register*, Vol.39, #62, Fri.March 29, 1974, 1110 Organization and functions of the Internal Revenue Service, Sec.1111.1 Mission.
    (f) "It has long been established that a taxpayer has the right to arrange his affairs so as to minimize the taxes he pays. See *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935). The firm's arrangements were not illegal and so were not prohibited[.]"[11]

---

[7] See *Hughes v. U.S.*, 953 F.2d 531 (CA9 1992); *Portillo v. Comm'r of IRS*, 932 F.2d 1128 (CA5 1991); *Elise v. Connett*, 908 F.2d 521 (CA9 1990); *Jensen v. Comm'r of IRS*, 835 F.2d 196 (CA9 1987); *Scar v. Comm'r of IRS*, 814 F.2d 1363 (CA9 1987); *Benzvi v. Comm'r of IRS*, 787 F.2d 1541 (CA11 1986); *Maxfield v. U.S. Postal Service*, 752 F.2d 433 (1984); *Weimerskirch v. Comm'r of IRS*, 596 F.2d 358, 360 (CA9 1979); *Carson v. U.S.*, 560 F.2d 693 (1977); *U.S. v. Janis*, 428 U.S. 433, 442 (1975); *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 758-770 (1973); *Pizzarello v. U.S.*, 408 F.2d 579 (1969); *Terminal Wine*, 1 B.T.A. 697, 701-02 (1925); *Couzens*, 11 B.T.A. 1140, 1159, 1179.
[8] See *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 498 (1937).
[9] See *Bothke v. Fluor Engineers and Constructors, Inc.*, 713 F.2d 1405, 1413, at [11] (CA9 1983).
[10] *Id.*
[11] See *Boccardo v. C.I.R.*, 56 F.3d 1016, 1018, 1020 (CA9 1995).

(g) Congress imposes taxes, its advice in the Tax Code can be believed. The executive and judicial branches honor the legislative branch and its mandate.

Because of this I must now convey my vote of NO CONFIDENCE in the DOJ and the IRS. My belief in the law was my own big mistake and I accept responsibility. Now that Mr. Gonzales has straightened me out on who really controls me, I'm going to follow the IRS and ignore Congress; I am going to the IRS for all of my legal advice because Congress won't even defend itself, and it certainly won't defend me. My findings are seamless, I'm right. If you can show me that I'm wrong you can claim to be brighter than the DOJ and IRS attorneys who faced these issues (most of them) for years on end, five times to the Supreme Court, U.S. Dist. Court and Bankruptcy Court, Tax Court, 4th and 9th Circuits, and couldn't even speak of them in civil and criminal cases; the law does not exist, Congress does not exist, ask any federal judge or U.S. Attorney, ask Mr. Gonzales.

I've seen the law honored and violated, I've seen justice *occasionally* dispensed and usually denied, and now I've witnessed the inner workings of a process which leads to prison without reference to the law but rather considers only belief and physical residency, thusly washing away my many years of research and self study with the expression of a single sentiment, an education derived from thousands of federal decisions, years of analysis of the Tax Code and regs., point by point briefing against IRS and DOJ tax attorneys on every federal level where they can't talk about the law; a waste of time because the law has nothing to do with taxation and imprisonment in America. If this were not true, Mr. Gonzales could explain verbally and in writing how my statutory (that's law, in a nation of laws, supposedly) claims are "wrong." Any inquiry into this should begin with its focus right on this spot and demand working papers in tax criminal cases which show the application of the law to the individual convicted, laws like 4 USC 72, 26 USC §§ 83, 212, 1001, 1011, 1012, 1402(b), 3121(e), 6201(a), 7343, 26 CFR 602.101, because we know that surely those papers exist, in a nation of laws. (It's called prosecutorial due diligence and probable cause). Willful failure to so construct a prosecution constitutes nothing less than a conspiracy to deprive, in violation of 18 USC 241. Does Congress sit to tolerate this?

"Past decisions of this Court demonstrate that *the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial*, not the culpability of the prosecutor. In *Brady v. Maryland*, 373 U.S. 83 (1963), for example, the prosecutor failed to disclose an admission by a participant in the murder which corroborated the defendant's version of the crime. *The Court held that a prosecutor's suppression of requested evidence violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Id.* at 87. Applying this standard, the Court found the undisclosed admission to be relevant to punishment, and thus ordered that the defendant be resentenced. Since the admission was not material to guilt, however, the Court concluded that the trial itself complied with the requirements of due process despite the prosecutor's wrongful suppression. *The Court thus recognized that the*

*aim of <u>due process "is not punishment of society for the misdeeds of the prosecutor, but avoidance of an unfair trial to the accused</u>." Ibid.*

This principle was reaffirmed in *United States v. Agurs*, 427 U.S. 97 (1976). *There we held that a prosecutor must disclose unrequested evidence which would create a reasonable doubt of guilt that did not otherwise exist.* Consistent with *Brady*, we focused not upon the prosecutor's failure to disclose, but upon the effect of nondisclosure on the trial:

> Nor do we believe the constitutional obligation [to disclose unrequested information] is measured by the moral culpability, or willfulness, of the prosecutor. *If evidence highly probative of innocence is in his file, he should be presumed to recognize its significance even if he has actually overlooked it.* Conversely, if evidence actually has no probative significance at all, no purpose would be served by requiring a new trial simply because an inept prosecutor incorrectly believed he was suppressing a fact that would be vital to the defense. *If the suppression of the evidence results in constitutional error*, it is because of the character of the evidence, not the character of the prosecutor." [12]

<u>Ask for the working papers that have to exist as a matter of law</u>. The DOJ has those issues briefed in the subject notice, so it has to have drawn conclusions <u>at law</u> which contradict the notice and therefore allow a prosecution to proceed. <u>Ask Mr. Gonzales for these papers</u>!

If Congress can't explain how I am "wrong" about YOUR statutes then I demand Congress' intervention. If the briefed issues cannot be disproved then the attached complaint under 18 USC § 4 provides ample basis for Congress to act to halt an unforgivable pattern of extortion and abuse spanning decades.

Until I have Congress' written assurance that I will not be charged or molested in relation to any tax statute having willfulness as one of its elements or under any statute requiring criminal intent (18 USC conspiracy to defraud U.S.), I have to believe that Congress is content with the DOJ and the IRS setting the law aside to collect revenue, seize property, and imprison innocent Americans.

I view the DOJ's use of the courts as an abhorrent abuse of power. I have to get back in the system to avoid Mr. Gonzales falsely imprisoning me; my rights under the law are void, my patriotism <u>was</u> proof of my ignorance. Does Congress stand for this? If Gebauer's matter results in criminal charges it will only underscore as truth my assessment of DOJ policy, and as a reality the threat I've described.

///

///

///

---

[12] See *Smith v. Phillips*, 455 US 209, 219 (1982).

I, David R. Myrland, do hereby swear under penalties of perjury (28 USC 1746) that the forgoing statements are true and correct, and that they reflect my assessment of the policies of the DOJ as revealed at the subject meeting, as they relate to prosecution of alleged tax crimes. Executed this 19th day of December, 2005.

_David R. Myrland, Affiant_

The above affirmation was duly subscribed and sworn to before me, this 19th day of December, 2005, by David R. Myrland.

I, ALFRED T-TORIO _____, am a Notary under license from the State of Washington whose Commission expires on June 15, 2008 , and be it known by my Hand and my Seal as follows:

_Notary signature_

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

Notary Public
State of Washington
ALFRED T. TORIO
My Appointment Expires Jun 15, 2008

Page 12 of 12

Department of the Treasury
**Internal Revenue Service**
FRESNO, CA  93888-0010

Date of this notice:    MAR. 21, 2005
Taxpayer Identifying Number:
Form: CVL PEN          Tax Period:    DEC. 31, 2003

For assistance you may
call us at:

**1-800-829-0922**

CALLER ID:  895479

DAVID R  MYRLAND
6619 132ND AVE NE
KIRKLAND  WA  98033-8627194

### NOTICE OF PENALTY CHARGE                                      62B

WE MADE A CHANGE TO YOUR ACCOUNT THAT RESULTED IN A VERY SMALL BALANCE DUE. WE WANT YOU TO KNOW ABOUT THE CHANGE, BUT NO PAYMENT IS DUE. OUR POLICY IS TO KEEP YOU INFORMED, BUT WE DON'T WANT TO BURDEN YOU BY ASKING YOU TO PAY THIS AMOUNT. AGAIN, PLEASE DON'T SEND A PAYMENT.

YOU HAVE BEEN CHARGED A PENALTY UNDER SECTION 6700 OF THE INTERNAL REVENUE CODE FOR PROMOTING AN ABUSIVE TAX SHELTER.

### TAX STATEMENT

| | |
|---|---|
| PRIOR BALANCE | $.00 |
| PENALTY ASSESSMENT | .01 |
| INTEREST CHARGED | .00 |
| BAD CHECK PENALTY | .00 |
| *UNDERPAYMENT CREDIT | $.01- |
| BALANCE DUE | NONE |

*THE SMALL BALANCE THAT YOU OWED HAS BEEN CREDITED TO YOUR ACCOUNT. YOUR ACCOUNT BALANCE IS NOW ZERO.

WE CHARGED YOU A PENALTY FOR PROMOTING AN ABUSIVE TAX SHELTER. THE PENALTY IS $1,000 OR 20 PERCENT OF THE GROSS INCOME YOU DERIVED (OR MAY DERIVE) FROM THE ACTIVITY, WHICHEVER IS GREATER. FOR ACTIVITIES AFTER DECEMBER 31, 1989, THE PENALTY IS $1,000 OR 100 PERCENT OF THE GROSS INCOME DERIVED (OR TO BE DERIVED) FROM THE ACTIVITY, WHICHEVER IS LESS.

FOR ACTIVITIES AFTER OCTOBER 22, 2004, THE PENALTY FOR MAKING OR FURNISHING (OR CAUSING ANOTHER PERSON TO MAKE OR FURNISH) A STATEMENT DESCRIBED IN IRC SECTION 6700(A)(2)(A) IS 50 PERCENT OF THE GROSS INCOME DERIVED (OR TO BE DERIVED) FROM THE ACTIVITY.

IF YOU WANT US TO REMOVE OR REDUCE ANY OF THE PENALTIES WE CHARGED, YOU HAVE UNTIL APR. 20, 2005 TO PAY 15% ON THE PENALTY AND FILE A CLAIM FOR A REFUND ON A FORM 6118. FORMS 6118 ARE AVAILABLE AT MOST IRS OFFICES, OR YOU CAN ORDER ONE BY CALLING TOLL-FREE 1-800-829-3676.

IF WE DENY YOUR CLAIM, YOU MAY FILE A SUIT IN THE UNITED STATES DISTRICT COURT WITHIN 30 DAYS AFTER THE DATE WE DENIED YOUR CLAIM OR WITHIN SIX MONTHS AND 30 DAYS AFTER THE DATE YOU FILED YOUR CLAIM, WHICHEVER IS EARLIER. IF YOU DON'T FILE A CLAIM OR A SUIT WITHIN THE TIME LIMITS, YOU'LL HAVE TO PAY THE FULL AMOUNT SHOWN BELOW.

HELPFUL HINT:  FOR FASTER SERVICE, TRY CALLING US ANY DAY EXCEPT MONDAY WHEN OUR CALL VOLUMES ARE HIGHEST.

RETURN THIS PART TO US WITH YOUR CHECK OR INQUIRY
YOUR TELEPHONE NUMBER        BEST TIME TO CALL
(    )    -

AMOUNT YOU OWE............. NONE

628

WI

200510                      85254-456-52001-5

INTERNAL REVENUE SERVICE              DAVID R  MYRLAND
FRESNO, CA   93888-0010               6619 132ND AVE NE
5                                     KIRKLAND  WA   98033-8627194

539725110 KK MYRL 55 0 200312 670 00000000001



Department of the Treasury
**Internal Revenue Service**
FRESNO, CA 93888-0010

Date of this notice: **MAY 2, 2005**
Taxpayer Identifying Number: ▬▬▬▬
Form: CVL PEN    Tax Period: **DEC. 31, 2003**

For assistance you may
call us at:
**1-800-829-0922**

CALLER ID: 895479

010496.191325.0025.001 1 AT 0.292 750

DAVID R MYRLAND
6619 132ND AVE NE
KIRKLAND WA 98033-8627194

010496

### NOTICE OF PENALTY CHARGE                                          628

WE MADE A CHANGE TO YOUR ACCOUNT THAT RESULTED IN A VERY SMALL BALANCE DUE.
WE WANT YOU TO KNOW ABOUT THE CHANGE, BUT NO PAYMENT IS DUE. OUR POLICY IS TO KEEP
YOU INFORMED, BUT WE DON'T WANT TO BURDEN YOU BY ASKING YOU TO PAY THIS AMOUNT.
AGAIN, PLEASE DON'T SEND A PAYMENT.

YOU HAVE BEEN CHARGED A PENALTY UNDER SECTION 6700 OF THE INTERNAL REVENUE CODE FOR
PROMOTING AN ABUSIVE TAX SHELTER.

### TAX STATEMENT

PRIOR BALANCE                          $.00

PENALTY ASSESSMENT                      .01
INTEREST CHARGED                        .00
BAD CHECK PENALTY                       .00

*UNDERPAYMENT CREDIT                    $.01-
BALANCE DUE                            NONE

*THE SMALL BALANCE THAT YOU OWED HAS BEEN CREDITED TO YOUR ACCOUNT.
YOUR ACCOUNT BALANCE IS NOW ZERO.

WE CHARGED YOU A PENALTY FOR PROMOTING AN ABUSIVE TAX SHELTER. THE PENALTY IS
$1,000 OR 20 PERCENT OF THE GROSS INCOME YOU DERIVED (OR MAY DERIVE) FROM THE
ACTIVITY, WHICHEVER IS GREATER. FOR ACTIVITIES AFTER DECEMBER 31, 1989, THE
PENALTY IS $1,000 OR 100 PERCENT OF THE GROSS INCOME DERIVED (OR TO BE DERIVED)
FROM THE ACTIVITY, WHICHEVER IS LESS.

FOR ACTIVITIES AFTER OCTOBER 22, 2004, THE PENALTY FOR MAKING OR FURNISHING (OR
CAUSING ANOTHER PERSON TO MAKE OR FURNISH) A STATEMENT DESCRIBED IN IRC SECTION
6700(A)(2)(A) IS 50 PERCENT OF THE GROSS INCOME DERIVED (OR TO BE DERIVED) FROM
THE ACTIVITY.

IF YOU WANT US TO REMOVE OR REDUCE ANY OF THE PENALTIES WE CHARGED, YOU HAVE
UNTIL JUNE 1, 2005 TO PAY 15% ON THE PENALTY AND FILE A CLAIM FOR A REFUND ON
A FORM 6118. FORMS 6118 ARE AVAILABLE AT MOST IRS OFFICES, OR YOU CAN
ORDER ONE BY CALLING TOLL-FREE 1-800-829-3676.

IF WE DENY YOUR CLAIM, YOU MAY FILE A SUIT IN THE UNITED STATES DISTRICT COURT
WITHIN 30 DAYS AFTER THE DATE WE DENIED YOUR CLAIM OR WITHIN SIX MONTHS AND
30 DAYS AFTER THE DATE YOU FILED YOUR CLAIM, WHICHEVER IS EARLIER. IF YOU DON'T
FILE A CLAIM OR A SUIT WITHIN THE TIME LIMITS, YOU'LL HAVE TO PAY THE FULL AMOUNT
SHOWN BELOW.

HELPFUL HINT: FOR FASTER SERVICE, TRY CALLING US ANY DAY EXCEPT MONDAY WHEN OUR
CALL VOLUMES ARE HIGHEST.

010496

RETURN THIS PART TO US WITH YOUR CHECK OR INQUIRY
YOUR TELEPHONE NUMBER        BEST TIME TO CALL
(    )    -

AMOUNT YOU OWE............ NONE

628

II

200516                85254-456-52001-5

INTERNAL REVENUE SERVICE            DAVID R  MYRLAND
FRESNO,  CA   93888-0010            6619 132ND AVE NE
                                   KIRKLAND  WA   98033-8627194

539725110 KK MYRL 55 0 200312 670 00000000001

**Tab #2**

TO THE UNITED STATES CONGRESS

WASHINGTON, D.C.

| | |
|---|---|
| David R. Myrland, Tim Garrison, Lee J. Herold, Paul Broward, Greg Weiss, Jim L. Walden, and We the People, Complainants, | ) No. _____ )<br>)<br>)<br>) |
| vs. | ) INFORMATION: 18 U.S.C. §§ 3, 4, ) 241, 242, 876(d), 880, 1341, 1343, ) 1623, 1951(a), 1962(c), 1962(d), 2235; ) 26 U.S.C. § 7214. |
| UNITED STATES DEPARTMENT OF JUSTICE, ALBERT GONZALES, UNITED STATES TREASURY DEPARTMENT, JOHN W. SNOW, INTERNAL REVENUE SERVICE, MARK W. EVERSON, U.S. DISTRICT COURT, GARR M. KING, LEE YEAKEL, ROBERT WESTINGHOUSE, LISA PERKINS, STEVEN B. BASS, TERRY L. MARTIN, U.S. TAX COURT, JOEL BERGER, NORTHWEST AIRLINES (a corporation), and all those similarly situated or so involved, marital communities spared, DEFENDANTS. | )<br>) VERIFIED CRIMINAL COMPLAINT ) of felonies, filed pursuant to 18 U.S.C. ) § 4 Misprision of felony.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I. INTRODUCTION & PARTIES.

1.1 COMES NOW, Complainants above named, seeking herewith to comply with 18 U.S.C. § 4 by reporting felonious conduct and to cause the commencement of

proceedings to establish either the lawful basis for the conduct complained of or to establish that said conduct is prohibited by law, *a fortiori*, is felonious in its nature. Complainants respectfully request a hearing for the purposes of presenting and explaining the evidentiary basis for their claims of criminal misconduct on the part of the Defendants. Among the Complainants the facts alleged are first hand knowledge.

1.2 When Defendant UNITED STATES needs a protective order (**Tab #8**) against inquiries regarding three different laws (4 U.S.C. § 72; 26 CFR 1.1-1, and 602.101), and when Defendants LEE YEAKEL and U.S. DISTRICT COURT (Austin, TX) issue such protective orders to save said Defendant from Congress, Complainants presume and conclude that the conduct so protected constitutes the crimes alleged herein. Until the attached Memorandum of law is discredited with cogent opposition comprised of law, 18 U.S.C. § 4 requires Complainants to complain of felonies alleged herein.

1.3 Defendants have engaged in a course of conduct over the past several years (1954 Tax Code) which has caused and is causing, **1)** the imprisonment of innocent Americans, **2)** the undue loss of homes and other property, **3)** the undue loss of jobs, wages and salaries, and accounts receivables, **4)** the undue loss of whole businesses, **5)** the destruction of family relationships and associations, and **6)** loss of reputation.

1.4 By conducting false arrests and mock trials throughout America Defendants have conspired to extort monies from Americans in ways known by them to be unlawful. U.S. District Courts have and will issue protective orders against discussion of the law in civil proceedings instituted to discern the least proof of statutory authority of Defendant INTERNAL REVENUE SERVICE (hereinafter "IRS") to contact any American living in the fifty freely associated compact states.

1.5 Anyone receiving this Complaint shall consider it to be their constructive notice of the acts complained of herein. "Ignorance of the law is no excuse, in any country. If it were, the laws would lose their effect, because it can be always pretended. . . With us, there is no power which can suspend the law for a moment." (See *Thomas*

*Jefferson to Andrew Limozin*, 1787. ME 6:401). Only Congress shall command and forbid, in America. This Complaint challenges Congress to either give Americans access to the law by disproving the issues briefed, or halt clear usurpation of its taxing authority by the executive and judicial branches.

1.6 The conduct complained of includes but is not limited to, **1)** malicious prosecution and false imprisonment, **2)** extortion of property under color of official right in an ongoing racketeering enterprise, **3)** imposition of monetary penalties for anyone's reliance upon statute which clearly protects them, **4)** illegally obtaining articles in and of commerce in the interference therewith, **5)** intentionally mailing threatening communications to Americans who owe nothing, and **6)** misprision of felony and accessory after the fact.

1.7 The attached Memorandum and exhibits (1 through 6) are incorporated by this reference as if fully restated herein. The statutory authorities relied upon in the attached Memorandum show modes of enforcement freely visited upon U.S. Citizens by the Defendants to be borne of regulation and not of statute. As used herein the term "as briefed" or "Memo" refers to the attached Memorandum.

1.8 Complainant David R. Myrland conducted the statutory and regulatory analysis briefed in support hereof. With the exception of Issue A, the analysis and thesis was completed in 1995, and was litigated in federal courts and therefore disclosed beginning in 1994 (See Memo at ¶¶ 1.2 - 1.4, **Tab #5**).

1.9 Complainant Tim Garrison is an accountant in WA with over thirty years experience which includes dealing with individuals' IRS controversies and audits. In MARTIN's investigation of Mr. Myrland (spring/summer '05), he falsely stated that he possessed a flyer whereon Mr. Myrland was promoting a "corporation sole" (some type of trust?) which he of course had not promoted at all. After receiving Mr. Myrland's many assurances that he's been recommending ONLY H&R Block for nearly ten years (after seeing the courts' failures), and after receiving a copy of Mr. Myrland's curriculum in June or July '05(?), MARTIN did not rebut and caused the Fresno, CA

office of the IRS to penalize Mr. Myrland twice for promoting abusive tax shelters. (See **Tab #1**, Myrland's verified letter to Congress, penalty notices attached thereto).

1.10 Each of these penalties was in the amount of $.01 (**1 penny**), each were paid *for* Mr. Myrland by the IRS, each "notice of change" to his account saying that he owed "NONE" and requesting that he not send payment, while everybody else (anti-IRS movement, others) is being indicted. Mr. Myrland does not file or pay under 26 USC because he has no requirements as briefed, and he refuses to do so until his findings about statutes which do not so compel him are rebutted in a manner deserving of Congress, or until Congress proclaims by ignoring this complaint that it refuses to protect itself from the executive and judicial branches.

1.11 Complainants **Lee J. Herold**: Rendered coerced plea when U.S. Dist. Court refused to hear his motion to dismiss. **Jim L. Walden**: Victim of U.S. Dist. Court's (Austin, TX) protective order against his gaining access to the law, IRS seeking his records. **Greg Weiss**: IRS seeking his records, Oregon. **Paul Broward**: Employed by Defendant NORTHWEST AIRLINES with ongoing dispute over proper application of tax law to his compensation. Personal contact information supplied off record.

1.12 Defendant U.S. DEPARTMENT OF JUSTICE (hereinafter "DOJ") where Defendant ALBERT GONZALES is currently U.S. Attorney General, aided in the past or present by ROBERT WESTINGHOUSE, LISA PERKINS, STEVEN B. BASS, and all U.S. Attorneys similarly situated, have the main address of U.S. Department of Justice 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

1.13 Defendant UNITED STATES TREASURY DEPARTMENT where Defendant JOHN W. SNOW is currently serving as U.S. Treasury Secretary has as its main address Department of the Treasury, 1500 Pennsylvania Avenue NW, Washington, D.C. 20220.

1.14 Defendant INTERNAL REVENUE SERVICE where Defendant MARK W. EVERSON is currently serving as IRS Commissioner has as its main address 500 N. Capitol St., NW, Washington, DC 20221.

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.              Page 4 of 33

1.15 Defendant U.S. DISTRICT COURT (Portland, OR) where Defendant GARR M. KING presides or presided as U.S. District Court Judge has as its main address 740 Mark O. Hatfield, United States Courthouse, 1000 Southwest Third Avenue, Portland, OR 97204-2802. Defendant LEE YEAKEL likewise serves as U.S. District Judge in Austin, TX and has as [his] main address United States Courthouse, 200 West Eighth Street, Austin, TX 78701. Those similarly situated include those who serve or operate in kind, hereinafter "COURT."

1.16 Defendant U.S. TAX COURT where Defendant JOEL BERGER is a U.S. Tax Court Judge who tries cases against Americans without personam jurisdiction has as its main address U.S. Tax Court, 400 Second Street N.W., Washington, DC 20217. Those similarly situated include all who preside or have presided in U.S. Tax Court.

1.17 Defendant TERRY L. MARTIN is a low level IRS employee whose office is at 1201 Pacific Ave., Tacoma, WA 98402. Those similarly situated include those who investigate, determine, authorize, administer, or otherwise serve in kind.

1.18 Defendant NORTHWEST AIRLINES (hereinafter "NWA") is a corporation which has chosen to participate in the conduct complained of and is located at Northwest Airlines Corporation, 2700 Lone Oak Parkway, Eagan, Minnesota 55121.

## PRIOR KNOWLEDGE:

1.19 With the exception of Defendant NWA, Defendants and each of them were made fully aware of all of this when Defendants U.S. Atty. Kevin V. Ryan and Jay R. Weill (Ass't. U.S. Atty., Chief Tax Division) received a "Constructive Notice" in kind (same issues) to the one(s) in support of this 18 U.S.C. § 4 Complaint, who then [crafted] an "Opposition to Complaint for the Perpetuation of Testimony" (filed 9/11/03) seeking to dismiss a purposely defective civil complaint in U.S. District Court, San Francisco, CA. The FRCvP 27 Complaint was filed only for the purposes of getting a docket number for the Constructive Notice and to ensure that any Grand Jury would be entitled to view it. **The Notice (not the complaint or summons) was served as such**

upon U.S. Atty. Thomas Moore on September 8, 2003. (See U.S. Dist. Court, San Francisco, CA, *Lewis v. United States, et al.*, #C-03-4101-JSW, filed 9/9/03). Although this stopped the prosecution of Roy Lewis and his father (state's evidence), apparently, the Defendants and each of them felt wholly unmoved by Congress and simply forged onward.

1.20 The United States (in *Jim L. Walden v. United States, et al.*, #A-05-CA-444-LY, U.S. Dist. Court, Austin, TX) has admitted tacitly that Title 26 USC's provisions do not provide for any contact between the Internal Revenue Service and Americans living within the fifty freely associated compact states. In *Walden* only Issues A, B, and C were briefed and filed in memorandum. (See same Issues in Memo at pg.18 - 25, **Tab #5**).

1.21 In *Walden, id.,* **the United States asked for a protective order** against having to answer the questions for review found under Issues A, B, and C briefed herein, and that protective order was issued by **Defendant judge LEE YEAKEL on 8/2/05**. (See **Ex.1, Tab #8**). Said protective Order was issued expressly and only to bar Mr. Walden's asking questions under Issues A, B, and C of the attached memorandum.

*Begin quote* of individual claim summaries and questions presented for review in *Walden* against which Defendant YEAKEL issued the protective Order:

```
"Claims under Issue (A) of Plaintiff's brief:
    3.10 Defendant has no statutory authority to tax the
Plaintiff  due  to  his  Citizenship.  The  mention  of
Plaintiff's  Citizenship  in  regulation  is  a  grossly
insufficient basis upon which to tax the Plaintiff. The
Secretary  of  the  Treasury  has  imposed  a  tax  on  the
Plaintiff through 26 CFR 1.1-1(c), but has done so without
authority to do so, the authority to lay income tax having
been reserved to Congress and Congress alone, a fortiori,
said  regulation  is  null  and  void  as  a  deviation  or
derogation of statutory authority, be it under 26 USC § 1
or elsewhere, perhaps in overall statutory scheme; this
regulation comes out of nowhere.
Questions under Issue (A) of Plaintiff's brief:
    (QA)1. By what statutory authority does the Defendant
seek  to  tax  the  Plaintiff,  as  it  relates  to  having  been
named as a subject of the tax sought?
```

(QA)2. Is the citizen in §§ 1402(b) and 3121(e) the same Citizen defined in 26 CFR 1.1-1(c)?

(QA)3. Is the Plaintiff rightfully deemed to be the employee in § 3401(c)?

(QA)4. Can the Secretary of the Treasury lay an income tax by naming a subject to the tax where Congress has not?

(QA)5. Until Congress names as subject the Plaintiff, the Defendant is powerless to do so much as approach the Plaintiff regarding any matter governed by 26 USC for lack of personam jurisdiction, right?

**Claims under Issue (B) of Plaintiff's brief:**

3.19 The Secretary and his delegates, *i.e.*, Commissioner of Internal Revenue, have no authority to operate outside Washington, D.C., as required under 4 USC § 72. No such authority is found in the language of 26 USC § 7621 which only applies to the Office of the President of the United States and "revenue districts." This is Plaintiff's belief, and until it is dispelled with open discussion and logical application of law to the contrary he will continue to act upon it.

**Questions under Issue (B) of Plaintiff's brief:**

(QB)1. Is the Office of the President the same Office as that held by the Secretary? If not, can § 7621 be said to be grant of leave to the Secretary to operate outside of Washington, D.C.?

(QB)2. Where is the Secretary of the Treasury's authority to operate outside of Washington D.C.?

(QB)3. Is 26 USC § 7621 a grant of leave for the Secretary of the Treasury to operate outside of Washington D.C. when Congress only mentions the Office of the President of the United States there?

(QB)4. If the IRS cannot supply proof of requisite leave under 4 USC § 72, can Plaintiff lawfully be approached by the Defendant in any way?

**Under Issue (C):**

3.24 Defendant has no requirement to file any form or tax return other than the Form 2555 Foreign Earned Income return. To file any form other than the Form 2555, Plaintiff must violate 26 CFR 602.101, <u>a regulation that must be complied with</u>. Because only the Form 2555 is prescribed to the Plaintiff, the Plaintiff has no filing requirements due to the fact that all compensation received during the years in controversy is rightfully deemed to **not**

be "foreign earned." Compliance protects Plaintiff's property.

3.25 Plaintiff has no gross income to report on the only form that the law permits one with Plaintiff's status to file. The Defendant has acted in total disregard for the provisions of 26 CFR 602.101. This is Plaintiff's belief, and until it is dispelled with open discussion and logical application of law to the contrary Plaintiff will continue to act upon it.

**Questions under Issue (C):**

(QC)1. What is the OMB number of the form prescribed under 26 CFR 602.101 as that form required of the Plaintiff?

(QC)2. Can the Plaintiff ignore the provisions of 26 CFR 602.101 and rather file the form that the Defendant will accept?

(QC)3. If the Plaintiff can ignore 26 CFR 602.101, what are all of the other regulations, statutes, or other provisions that the Plaintiff can simply ignore?"

***END** quote of Walden.*

1.22 The United States was likewise unable to speak at all of the law on the 4 U.S.C. § 72 and 26 CFR 602.101 claims in *U.S. v. Herold*, which were his Issues A and E respectively in his motion to dismiss which was ignored by the Court (Defendant judge KING) for four months to allow the IRS to destroy his life while the law remained a secret. Mr. Herold was finally forced to plead to one count of failure to file (26 U.S.C. § 7203) and forget about his belief in Congress, just so he could set about supporting his family. (See *U.S. v. Herold*, U.S. Dist. Court, Portland, OR #99-161-KI).

1.23 Defendants and each of them were again made fully aware of all of this when Ray Gebauer served his Constructive Notice (in kind to *Lewis v. U.S.*, *supra*) upon Defendant ROBERT WESTINGHOUSE shortly after it was filed behind an FRCvP 27 Complaint to perpetuate testimony. (See U.S. Dist. Court, Seattle, WA, *Gebauer v. United States, et al.*, C-05-1513-MAT, filed 9/2/05.) At a 9/21/05 meeting in the U.S. Attorney's office in Seattle, WA (700 Stewart Street, U.S. Dist. Court), Defendant WESTINGHOUSE pointed directly at this Notice which sat on the table and

Said regulation was challenged in 1994 in U.S. Tax Court petitions on three grounds and was thereafter rewritten to remove said deprivation, but it kept the other two challenged requirements in place under a clouded and convoluted reference to § 6041. Request all working papers regarding this amendment. (See Ex.2, description by Complainant D. Myrland regarding 26 CFR 1.83-6 and its 1995 amendment, **Tab #9**).

**2**. Despite the constraints placed upon the Office of the Secretary of the Treasury under 4 U.S.C. § 72, said office attached to the Seat of government operates in the fifty freely associated compact states without said leave to obtain monies from Americans which they do not owe under the law. All activities complained of violate 4 U.S.C. § 72. (See Issue B of Memo pg.21 - 23, **Tab #5**).

**3**. OMB regulation 26 CFR 602.101 was promulgated to implement the Paperwork Reduction Act 1980, and it clearly imposes the requirement for Americans such as the Complainants to file one specific form, and it is not the Form 1040. The form required thereunder is the Form 2555 "Foreign Earned Income" form. Compliance with this regulation by the Defendants limits reporting requirements to gross income which <u>was not</u> earned within the fifty freely associated compact states. All activities of the Defendants in relation to domestically (onshore) earned income is in violation of 26 CFR 602.101. (See **Issue C** of Memo pg.24 - 25, **Tab #5**).

**4**. If 26 U.S.C. actually applied to Americans in the fifty freely associated compact states, its §§ 83(a) and 1012 recognize <u>all property</u> as a cost, but Defendants arbitrarily and without lawful authority exclude *some* property from this all inclusive mandate, even going so far as to contradict their own contentions affirmed by the U.S. Supreme Court four times, holding that the scope of "any property" means <u>everything</u> unless an exclusion <u>in the law</u> can be pointed to. This is the difference between the value of personal services being taxed as gross income, and said property being recognized as a cost. The IRS must contradict four Supreme Court decisions concurring with the position of the DOJ to tax said property, and the DOJ must do the same to bring charges against one who received only compensation for services. The DOJ argues successfully in the Supreme Court that "any" means <u>all property</u>, then argues that it can arbitrarily exclude personal services or labor from "any" so as to imprison Americans for tax crimes and related offenses.

Ignorance of fundamental accounting and maxims of income taxation have one saying that *income* is not defined in the Tax Code. Income is profit and includable in gross income, while cost is deductible from gross income and will not be taxed as profit. Cost defines *income*, and costs related to the individual's rendering services and receiving only their fair market value in return are

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.        Page 11 of 33

determined and provided for in the Tax Code as briefed. Cost is defined as "the value of any money or property paid" to acquire compensation. All activities of the Defendants in relation to compensation for personal services actually rendered violate 26 U.S.C. §§ 83, 212, 1001, 1011, and 1012. (See **Issue D** of Memo pg.25 - 35, **Tab #5**).

**5.** The definition of the term "citizen" in chapter 21 FICA does not use the term "includes" in its language, and it expressly excludes U.S. Citizens from its purview. (See § 3121(e)). "Includes" is used to justify the broadening of the scope of statutory definitions to apply to anyone not listed in said definition, *e.g.*, § 3401(c) Employee. To broaden the FICA definition of "citizen" a regulation using *includes* was promulgated to broaden the application of the statutory definition in § 3121(e). (See 26 CFR 31.0-2(a)(1); 31.3121(e)-1(b)).

Social Security income taxes imposed by 26 U.S.C. chapters 2 and 21 originate from 1939 Tax Code § 3811 which was split into said chapters upon the Tax Code's rewrite in 1954. (See 26 U.S.C. § 7651(5)(A)). The political subject named in statute in those chapters is not the U.S. Citizen but rather is only citizens of the U.S. Possessions, expressly excluding Americans from the purview of said chapters. All activities of the Defendants relative to Social Security taxes and administration which affect U.S. Citizens are *ultra vires* and are thus a violation of 26 U.S.C. § 7214. (See Memo at **Issue A**, pg.18 - 21, 54 at ¶¶ 5.5 to 5.9, **Tab #5**).

**6.** Defendant IRS' Assessment authority is limited by statute to unpaid taxes duly paid by stamp. (See 1939 Tax Code § 3640; 26 U.S.C. 6201(a)). So as to assess other taxes, Defendant SNOW promulgated or exploits a regulation which derogates this restriction so as to [authorize] the assessment of "all taxes imposed by the Internal Revenue Code of 1954." All activities of the Defendants relative to the assessment, *a fortiori*, the collection by distraint, of taxes not duly paid by stamp are acts *ultra vires*. (See 26 CFR 301.6201-1; **Issue E** of Memo pg.38 - 40, **Tab #5**).

**7.** Wage withholding under the Form W-4 appears voluntary under 26 U.S.C. § 3402(n). Defendant SNOW promulgated or exploits regulations which allow any such form, to which the IRS takes exception, to be dishonored so as to allow full amounts to be deducted from wages until its filer fully discloses their affairs to justify the meager deductions the IRS allows. (See 26 CFR 31.3402(f)(2)-1(g)(5)(ii), (iii)). Under these regulations the language of § 3402(n) is wholly unavailable.

**8.** No statutory authority is found to impose and combine chapter 1 income taxes with chapter 2 Social Security - self employed. Defendant SNOW promulgated

respective public offices and are thus in violation of 18 U.S.C. § 872 Extortion by officers or employees of the United States.

## COUNT TWO; Prohibited activities.

4.4 Individual Defendants and each of them, with the exception of Defendant NWA, operate and contribute to a scheme whereby every American pays taxes not owed but rather imposed through regulation and through outright defiance of statutory definitions which greatly limit their authority and personam jurisdiction. Through regulatory deviation from and derogation of statute, through judicial malfeasance of office and dereliction of duty, and through criminal trespass, false arrest and imprisonment, these Defendants all knowingly conspire to intimidate and oppress Americans into violating the law in many ways to report as taxable those amounts which clearly are not for the purposes of deriving compensation and pensions. The taxing scheme of the these Defendants is contrary to law, as briefed, and is therefore a violation of 18 U.S.C. 1962(a) Prohibited activities.

## COUNT THREE; Offenses by officers and employees of the United States.

4.5 Individual Defendants and each of them, with the exception of Defendant NWA, have engaged in a proven pattern of extortion and willful oppression, threat and intimidation, with intent to defeat the proper application of 26 U.S.C., by conspiring and colluding with intent to defraud the United States, all through omitted acts and by making false entries on administrative record, and by failing to report it to the Secretary of the Treasury, by false prosecution, mock trials and unlawful imprisonment, routinely demand, receive, and collect by distraint more or other sums than are provided for by law under IRS' standard operating procedure as briefed, and is therefore in violation of 26 U.S.C. 7214 Offenses by officers and employees of the United States.

///

///

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 17 of 33

12. Every contradiction of the IRS' unlawfulness precipitates monetary penalties for frivolity (the law is *frivolous*) under 26 U.S.C. subchapter 68B §§ 6702 and 6673 (frivolous returns, frivolous Tax Court petition respectively), all failures to pay what the IRS demands are subjected to the interest imposed by § 6654 and others, and federal courts penalize all who seek to impose the edict of Congress in a way which changes the IRS in any way.

Abuse of § 6702 (frivolous returns) is dispensed upon anyone contradicting the IRS via entries on a tax return or statement in lieu. This section is used to penalize even the smallest of contradictions to the IRS' mandate, made by mistake or otherwise, in $500 increments. Even merely filing the wrong tax return (according to the IRS) can get one fined and levied to death while the IRS keeps the operation of the law a secret. (Inquire, Kristine A. York, SSN #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, levied into poverty by "H.D.Watkins" (Tacoma, WA) for filing 1040NRs, died in early 1994 of stress induced digestive tract paralysis lasting 30 days, over $2500).

13. With the exception of penal statutes in 26 U.S.C. ch.75, the prosecutions of Americans under 26 U.S.C. are conducted without reference to the law. Defendants DOJ and WESTINGHOUSE imprison Americans by proving residency which they say imposes the [tax], and by convincing juries that the defendant *believes* he has a duty despite law and evidence to the contrary. Seek proof that §§ 83(a) and 1012 were applied in prosecutions of employees or self employed individuals, then go slowly through that statutory language and compare the DOJ's interpretation of 26 CFR 1.83-3(g)'s "any property" to how said term was interpreted in the four Supreme Court decisions the DOJ won but which it must contradict to prosecute or to even tax said individual's compensation. All such prosecutions have therefore been conducted in a context void of probable cause, and therefore without lawful authority as briefed at **Issue F** of Memo pg.38 - 40, **Tab #5**.

14. Employers are penalized and perhaps imprisoned (*Simkanin*) for failure to deduct sums from compensation paid to employees while the law is kept a secret from them, and when the law does not operate to require it as briefed.

15. All amounts collected from Americans in the fifty freely associated compact states are imposed through the IRS' and DOJ's indifference to the citizen in 26 U.S.C. §§ 1402(b), and 3121(e) to obtain Social Security from individuals and employers, and through having implicated Americans in relation to the § 1 income taxes (including **capital gains**, § 1(h)) through regulation alone. (26 CFR 1.1-1). All three of these revenue streams are therefore the wrongful taking of property under threat, duress, coercion, and color of official right. All three of

these revenue streams which relate to **compensation for services** of the individual are maintained through a willful misreading of "any property" and "cash or other property" to arbitrarily exclude the value of the services performed from the category of cost, moving said sums unlawfully into the category of gross income or *profit*.

**16.** When one proves that the law is perfect, and if after an investigation of an American it can find nothing wrong with said person, the IRS will slander that individual, penalizing them for promoting an abusive tax shelter (Congress) to the tune of ONE PENNY, then it will pay it *for them* ("credit to your account"), leaving a derogatory comment on their administrative record which requires that they then pay $250 to federal court to challenge a penalty of ZERO, as the IRS did twice to Complainant David R. Myrland over the summer of 2005. Congress is an abusive tax shelter. (See **Tab #1** Cover letter (verified) from Myrland).

**17.** The $500 penalty threatened on the back of U.S. Passport applications for failure to supply a Social Security number on said application only pertains to those on corporate business or those seeking to transfer stock or dividends according to implementing regulations. (Form #1405-0004; 26 U.S.C. 6039E; 26 CFR 1.6039). Apply for a passport, <u>do not</u> supply an SS#, and you'll be penalized $500 under 26 U.S.C. § 6039E.

**18.** U.S. Tax Court will penalize those who fail to bring issues at law for it to decide, and it will penalize those who bring issues at law for it to decide:

"...The logical force requiring rejection of their arguments-apart from their *assertions of personal political philosophy which do not provide a basis for us, a Court sitting to interpret the law,* to decide the questions dispositive of this case..." See *Rowlee v. C.I.R.*, 80 USTC 1111, 1120 **(1983)**, quoting *Reading v. C.I.R.*, 70 TC 730 (1978), aff'd. 614 F.2d 159, 173 (CA8 1980).

*Compare*:

"...*the pleadings do not raise a genuine issue of material fact* respecting Respondent's determinations . . . *but rather involve only issues of law*. (Cite omitted) Therefore .... Respondent's motion for judgment on the pleadings will be granted. . . . *The final matter we consider is [penalties]*." See *Abrams v. C.I.R.*, 82 USTC 403, 408 **(1984)**.

To U.S. Tax Court, Congress is the harbinger of frivolity. "I will concede all facts of the case today if they'd just tell me how to comply with § 83." This

earned Steven Talmage a $6500 penalty in U.S. Tax Court. (See Tax Court docket #339-95, final Order (**T.C. Memo 1996-114**) at its pgs.8, 19, 20). A father of four penalized two or three months' pay for asking how to comply so he'd be left alone. This [decision] is reviewed in the attached Memo at its pg.52 - 56, ¶¶ 5.1 to 5.9 (**Tab #5**), and is diametrically opposed to DOJ and Supreme Court in two cases preceding it and in two cases which occur thereafter, as it relates to § 83(a)'s implementing regulations' use of "any property" and § 1012's "cash or other property." Defendants obtain their compensation and pensions by holding that Congress is as frivolous as all those Americans who believe it is not; **taxation without representation**.

**19**. The U.S. Department of Justice and U.S. District Court issue and enforce protective orders prohibiting Americans from accessing the law. Like U.S. Tax Court, federal courts impose penalties for arguing statute effectively against the IRS.

3.3 This is the short list of acts committed under standard operating procedure, but it contains the most substantive elements relating to unlawful revenue streams and intimidation.

## IV. VIOLATIONS OF FEDERAL CRIMINAL STATUTES.

4.1 All exhibits, facts, and writings filed herewith shall be deemed to be incorporated by this reference into each count alleged below as if fully restated therein. All acts complained of herein were willfully and intentionally committed by the Defendants with full knowledge of law to the contrary.

4.2 All persons similarly situated to above named Defendants shall be deemed to have been personally named under applicable allegations made herein. "As briefed" shall be deemed instruction to refer to the Memorandum filed in support of this Complaint. **Counts One through Twenty Seven are as follows**:

### COUNT ONE: Extortion by officers or employees of the United States.

4.3 Individual Defendants and each of them, with the exception of Defendant NWA, operate the racketeering scheme complained of herein from within their

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 16 of 33

respective public offices and are thus in violation of 18 U.S.C. § 872 Extortion by officers or employees of the United States.

### COUNT TWO; Prohibited activities.

4.4 Individual Defendants and each of them, with the exception of Defendant NWA, operate and contribute to a scheme whereby every American pays taxes not owed but rather imposed through regulation and through outright defiance of statutory definitions which greatly limit their authority and personam jurisdiction. Through regulatory deviation from and derogation of statute, through judicial malfeasance of office and dereliction of duty, and through criminal trespass, false arrest and imprisonment, these Defendants all knowingly conspire to intimidate and oppress Americans into violating the law in many ways to report as taxable those amounts which clearly are not for the purposes of deriving compensation and pensions. The taxing scheme of the these Defendants is contrary to law, as briefed, and is therefore a violation of 18 U.S.C. 1962(a) Prohibited activities.

### COUNT THREE; Offenses by officers and employees of the United States.

4.5 Individual Defendants and each of them, with the exception of Defendant NWA, have engaged in a proven pattern of extortion and willful oppression, threat and intimidation, with intent to defeat the proper application of 26 U.S.C., by conspiring and colluding with intent to defraud the United States, all through omitted acts and by making false entries on administrative record, and by failing to report it to the Secretary of the Treasury, by false prosecution, mock trials and unlawful imprisonment, routinely demand, receive, and collect by distraint more or other sums than are provided for by law under IRS' standard operating procedure as briefed, and is therefore in violation of 26 U.S.C. 7214 Offenses by officers and employees of the United States.

/// 

///

1

## COUNT FOUR; Receiving proceeds of extortion.

2

4.6 With the exception of Defendant NWA, Individual Defendants and each of

3

them benefit in the form of compensation and pensions paid or to be paid to the

4

employees of the United States complained of herein. This revenue stream is derived

5

through the extortion activities complained of herein. These Defendants and each of

6

them, and all those similarly situated, receive or otherwise handle and dispose of the

7

proceeds of the extortion activities as defined in 18 U.S.C. § 872 and as briefed, and are

8

therefore in violation of 18 U.S.C. § 880 Receiving proceeds of extortion.

9

## COUNT FIVE; Interference with commerce by threats or violence.

10

4.7 Defendants and each of them have acted to extort by force and intimidation

11

Federal Reserve Notes (fn. [1] ) from Americans by misapplying 26 U.S.C. to them as

12

described herein and as briefed, and have acted to deprive them of FRNs which

13

otherwise would have gone into the American economy through spending in domestic

14

and international commerce. By unlawfully obtaining and channeling FRNs into

15

government, and by placing FRNs into their own pockets in the form of compensation

16

and pensions, enriching private industry in the process, Defendants and each of them are

17

in violation of 18 U.S.C. § 1951(a) Interference with commerce by threats or violence.

18

## COUNTS SIX and SEVEN; Conspiracy to deprive and Deprivation of rights.

19

4.8 Defendants and each of them, with the exception of Defendant NWA, caused

20

and upheld assessments of unpaid taxes which are not duly paid by stamp. While

21

statutory authority to assess 26 U.S.C. taxes is limited to those duly paid by stamp,

22

Defendants operate to assess other taxes imposed by the Internal Revenue Code of 1954

23

under a regulation written to derogate 26 U.S.C. § 6201 as briefed, using such

24

derogation to foreclose by distraint upon assessed amounts to obtain property of every

25

nature. (See Memo at Issue E, pg.36 - 38, **Tab #5**). Each and all of such assessments are

26

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 18 of 33

made in an ongoing conspiracy to violate rights to due process, and with a history of violations of rights to due process, in violation of 18 U.S.C. § 241, and 242.

### COUNT EIGHT: Deprivation of rights.

4.9 In outright defiance of their Oaths to uphold the Constitution, Defendants COURT, YEAKEL, and BASS conspired to cause the issuance of an Order barring Mr. Walden from asking these questions under 5 U.S.C. §§ 701-706 Administrative Procedures Act, thus barring access to the operation of the law and thus the mandate of his duly elected representatives.

4.10 Defendants BASS and YEAKEL violated Jim L. Walden's constitutional rights to due process when seeking and issuing an order of restraint against inquiries into the law through a protective order (**Tab #8**) and against Walden's asking questions about governing provisions disclosed in his original filing under FRCvP 27 to perpetuate testimony, thus placing the Courts and the IRS in control of his property and his duties instead of Congress. This constitutes a clear violation of 18 U.S.C. § 242 Deprivation of rights.

### COUNT NINE: Deprivation of rights.

4.11 Defendant KING violated Lee Herold's constitutional rights to due process and to face his accuser when he refused to conduct a hearing upon Mr. Herold's motion to dismiss for lack of personam jurisdiction, and by proceeding when the record remained void of any proof of such jurisdiction. This constitutes an ongoing violation of 18 U.S.C. § 242 Deprivation of rights.

### COUNT TEN: Deprivation of rights.

4.12 Defendants KING and PERKINS violated and are violating Lee Herold's constitutional rights to due process and to property by ordering that he commence a

---

[1] Securities in commerce, see 15 U.S.C. § 77b.(a)(1), (7).

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 19 of 33

1 pattern of satisfying the IRS' demand for sums he does not owe, despite full knowledge
2 from Mr. Herold's briefing that the Court was wholly lacking personam jurisdiction
3 under the laws used to prosecute this 26 U.S.C. § 7203 failure to file case. By obtaining
4 property from Mr. Herold while refusing to prove personam jurisdiction upon
5 challenges to such, and by obtaining and accepting a guilty plea and property not owed
6 by Mr. Herold as briefed there, these Defendants violated Mr. Herold's rights to due
7 process, liberty, and property, in an ongoing violation of 18 U.S.C. § 242 Deprivation of
8 rights.

9 <u>COUNT ELEVEN; Prohibited activities.</u>

10     4.13 With the exception of Defendant NWA, Defendants and each of them
11 operate to collect, receive, and transfer sums collected from employers in America
12 under the guise of FICA intended to match payments made by employees and
13 purportedly imposed by § 3111 in ch. 21, with stark indifference to the definition of
14 "citizen" there in § 3121(e). These are sums clearly not owed but which *appear*
15 legitimate only through the term "includes" in regulations under § 3121(e), thus
16 *allowing* these Defendants to acquire what statute does not impose. NORTHWEST
17 AIRLINES (hereinafter "NWA") and all those similarly situated as domestic employers
18 have been victimized in kind when their employees pay FICA. A protective Order in
19 *Walden, supra,* was required to keep this issue from indulgence. (See **Tab #5** Memo at
20 Issue A, pg.18 - 21). These Defendants have willfully and intentionally acted in relation
21 to the imposition, acquisition, and disposal of § 3111 taxes so as to benefit in the form
22 of compensation, pensions, and other. This shows Defendants to be willing actors in the
23 racketeering scheme complained of herein and as briefed, in violation of 18 U.S.C. §
24 1962(a), (c), and (d) Prohibited activities.
25 /// 
26 ///
/// 

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.      Page 20 of 33

1

### COUNT TWELVE; Mailing threatening communications.

2
3
4
5

4.14 Defendants and each of them willfully and with full knowledge as to the criminal nature of their activities used and are using the U.S. mails to convey the obligations required under their racketeering scheme, in violation of 18 U.S.C. § 876(d) Mailing threatening communications.

6

### COUNT THIRTEEN; False declarations before grand jury or court.

7
8
9
10
11
12
13
14
15
16

4.15 Defendants GONZALES or his predecessor, IRS, WESTINGHOUSE, and all similarly situated U.S. Attorneys, utter false declarations to Grand Juries and to courts, as witnesses or as prosecutors, whenever seeking remedy over a tax known by them to be **imposed by regulation alone** as briefed, and by pursuing remedy for sums not owed but which they say are imposed on the value of personal services as briefed, and by doing same with regards to domestically earned income as briefed, and by doing same in relation to capital gains tax in relation to domestically derived profits by Americans as briefed, and by doing same in relation to Social Security taxes as briefed, showing each and all of these Defendant to be in violation of 18 U.S.C. § 1623 False declarations before grand jury or court.

17

### COUNTS FOURTEEN through EIGHTEEN; (enumerated).

18
19
20
21
22
23
24
25
26

4.16 Defendants COURT, and GONZALES and those similarly situated (John Ashcroft, Edward Groves) falsely prosecuted both LaMarr Hardy and his wife for 26 U.S.C. § 7203 Failure to file violations (three counts). This trial was to collect taxes unlawfully imposed on the value of personal services compensation (commissions), and imposed solely through regulation and without personam jurisdiction as Defendants GONZALES and DOJ understood from the time of their receipt of the *Lewis v. IRS* memorandum in San Francisco in 2003. (As briefed, see *Lewis'* Issues A, B, C, and D at pg.24 through 39, U.S. Dist. Court at San Francisco, at #C-03-4101-JSW; See same Issues (A through D pg.18 - 34, **Tab #5**). Two counts under 18 U.S.C. § 371 Conspiracy

to defraud the United States fall to this as well. (See U.S. Dist. Court, Hawaii, #O2-00133-SOM-BMK).

4.17 Apparently, Mr. Hardy and his wife were each charged with three counts of failure to file Forms 2555 to report foreign earned income when in fact statements in lieu were filed and accepted. Respondent points to only domestically earned compensation as creating the requirement to file a return but needs a protective Order in *Walden* to keep from having to speak of 26 CFR 602.101, which of course must be complied with. Two counts of 18 U.S.C. § 371 Conspiracy to defraud the United States also fail under this defect.

4.18 With full knowledge that Mr. Hardy does not <u>meet</u> the statutory definition of the term "person" in the chapter under which he's charged (See Memo at pg.38 - 40, **Tab #5**), GONZALES and similarly situated individuals decided to apply said provision as if it were an *inclusion* instead of a definition as Congress has called it. This derogation of statute allowed otherwise inapplicable charges to be brought, resulting in false arrest, prosecution, and imprisonment. From -

http://www.irs.gov/compliance/enforcement/article/0,,id=129118,00.html

**"Husband and Wife Sentenced for Tax Evasion Schemes** - On August 31, 2005, in Honolulu, HI, Royal Lamarr Hardy was sentenced to **156-months in prison**, followed by **36 months supervised release**, ordered to pay a fine in the amount of $59,267.88, costs of prosecution in the amount of $59,267.88, and $197,555 in restitution to Internal Revenue Service for selling tax evasion schemes and failing to file his own income tax returns. **Hardy's wife and co-defendant, Ursula Supnet, was also sentenced to 60 months in prison**, followed by **36 months of supervised release**, and restitution of $197,555.

Two other co-defendants, Michael L. Kailing, a self-styled tax accountant, and Fred M. Ortiz, a tax-return preparer, were each sentenced yesterday to **36 months confinement and three years of supervised release**. On May 13, 2005, a federal jury convicted Hardy and his co-defendants of conspiring to defraud the United States by selling various tax-evasion schemes over several years for the purpose of impeding the functions of the Internal Revenue Service. Hardy and Supnet were each convicted of a second conspiracy to defraud the United States with respect to their own income taxes. Hardy was also convicted of three counts of willfully *failing to file his own income tax returns* for 1995, 1996, and 2001. Hardy and his co-defendants were convicted of promoting what they called the Reliance Defense from 1985 to 2002, which consisted of books and binders filled with materials purporting to show a studied conclusion that the federal income tax laws were voluntary.

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.                Page 22 of 33

By "voluntary," the defendants meant that the laws imposed no legal obligation to file a return or pay a tax. The defendants marketed these materials throughout the United States under the business names The Research Foundation and—earlier—The Cornerstones of Freedom. In addition, Hardy's organization promoted the use of trusts and bankruptcy proceedings to evade the collection of income taxes. Senior U.S. District Court Judge Edward Rafeedie found that these schemes cost the United States treasury more than $8,600,000." (Emphasis added, fn.[2])

4.19 This entire affair and all those similarly brought are over amounts imposed solely through regulation (26 CFR 1.1-1, **Tab #5**, Issue A pg.18 - 21), without requisite leave as under 4 U.S.C. § 72 to enforce 26 USC (**Tab #5**, Issue B pg.21 - 23), in violation of and with indifference to 26 CFR 602.101 (**Tab #5**, Issue C pg.24 - 25), and in large part in violation of and with indifference to §§ 83(a) and 1012 which explain how to tax compensation for services. (See **Tab #5**, Issue D pg.25 - 35). All proceedings in said case were conducted with substantial use and employment of the U.S. mails to send and to serve legal process of every nature, sent by and demanded by the Defendants COURT, DOJ, GONZALES and those similarly situated. All of this constitutes a violation of the following statutes:

**Count 14**: 18 U.S.C. § 241 Conspiracy to deprive - Liberty and property in the form of fines and other penal sanctions as well as revenue streams to be generated in the future by the falsely convicted paying to keep their liberty. Untold expense has already been visited upon those convicted in the form of legal fees and other costs associated with the defense against such charges.

**Count 15**: 18 U.S.C. § 242 Deprivation of liberty - False imprisonment.

**Count 16**: 18 U.S.C. § 1962(a) Racketeering and prohibited activities.

**Count 17**: 18 U.S.C. § 872 Extortion by officers or employees of the United States.

**Count 18**: 18 U.S.C. § 876(d) Mailing threatening communications.

///

---

[2] Second Superceding indictment (pg.24-26) actually said, "[F]ailed to make an income tax return," while 26 U.S.C. § 6011 clearly provides for a statement in lieu of return as an option, which Hardy has done for twenty years.

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.        Page 23 of 33

COUNT NINETEEN; Offenses by officers and employees of the United States.

4.20 Defendants SNOW, EVERSON and MARTIN conspired with others to demand sums other than those provided for by law when they penalized Mr. Myrland twice for promoting abusive tax shelters when in fact he recommends H&R Block as a shield against IRS abuse, fining him $.01 (one penny) each time and paying it for him through a "credit to your account," then saying that he owed "NONE." (See **Tab #1**, attached to letter there). These conspirators and each of them have contrived a falsehood to write and mail demands for sums other than provided for by law in this, an ongoing violation (they are still demanding "NONE" and clouding administrative record with falsities) of 26 U.S.C. § 7214 Offenses by officers and employees of the United States.

COUNT TWENTY; Conspiracy to deprive.

4.21 Defendants SNOW, EVERSON and MARTIN acted in concert as conspirators with others to violate David Myrland's constitutional rights to due process when he and others yet unnamed fabricated the allegation that Myrland was promoting 'corporation sole' or other trust type instrument, and when they failed to find anything wrong with Myrland's curriculum which they received via U.S. Post shortly after harassing Mr. Myrland. Said failure resulted in others in the IRS falsely penalizing Mr. Myrland twice for promoting abusive tax shelters, fining him $.01 (one penny) each time and paying it for him through a "credit to your account," then saying that he owed "NONE." The conspirators and each of them have deprived David Myrland of rights to due process through this contrivance and are therefore in an ongoing violation of 18 U.S.C. § 241 Conspiracy to deprive.

COUNT TWENTY ONE; Prohibited activities.

4.22 Defendants SNOW, EVERSON and MARTIN acted as they did in COUNT TWENTY, *supra*, in an attempt to cost Mr. Myrland a U.S. District Court filing fee of $250.00 (U.S., Federal Reserve Notes) to commence a civil action to challenge penalties

of "NONE," thus unlawfully causing him the loss of property which Defendant COURT could then enjoy as its own. This mandatory Complaint is likely a better way to receive better treatment than Defendant COURT is willing to dispense. This conduct on the part of EVERSON and MARTIN therefore constitutes an act in furtherance of a violation of 18 U.S.C. § 1962(c) on the part of Defendant COURT, and as such, the conduct constitutes a violation of 18 U.S.C. § 1962(d) Prohibited activities.

### COUNT TWENTY TWO; Conspiracy to deprive.

4.23 Defendants SNOW, EVERSON, MARTIN and other co-conspirators deprived Mr. Myrland of his rights to due process in a scheme to defame him and to libel him (See COUNT NINETEEN through TWENTY ONE) in hopes of someday discrediting him without cause to a Grand Jury, in an ongoing conspiracy to deprive him of his constitutional rights to liberty and to property, in violation of 18 U.S.C. § 241 Conspiracy to deprive.

### COUNT TWENTY THREE; Frauds and swindles.

4.24 With the exception of Defendant NWA, Defendants and each of them, as a matter of routine, employed the U.S. mails to raise and enhance revenue streams in their artifice of fraud of applying 26 U.S.C. in ways known by them to be unlawful, doing so for the purposes of obtaining property not owed to them by Americans. Billing for court fees and fines, summons and arrest warrants, notices of tax deficiencies and assessments, liens and levies and demands for tax returns, all of which are elements of 26 U.S.C. enforcement but mailed or otherwise sent as fraudulent representations to Americans upon which 26 U.S.C. does not operate as enforced. This conduct on the part of these Defendants therefore constitutes a violation of 18 U.S.C. § 1341 Frauds and swindles.

///

///

1

## COUNT TWENTY FOUR; Fraud by wire, radio, or television.

2
3
4
5
6
7
8

4.25 Defendants and each them, with the exception of Defendant NWA, have used and relied upon television broadcasts, *i.e.*, news casts, advertisements about IRS services, and advertisements by those in private industry benefiting from the racketeering activities complained of herein, which convey warnings sounding of ominous and *Hurculean* like reach and authority which could instantly and forever cloud a title, mortgage, or deed, confiscating all in its path under a mere regulation which derogates statutory scheme into the fifty freely associated compact states.

9
10
11
12

4.26 By keeping this televised threat in front of those scheduled not for taxation but for extortion and false imprisonment, by maintaining this pattern of groundless coercion of the innocent to whom Defendants had sworn their protection in exchange for employment and their daily bread, these Defendants are in defiance and violation of 18 U.S.C. § 1343 Fraud by wire, radio, or television.

13
14

## COUNT TWENTY FIVE; Search warrant procured maliciously.

15
16
17
18
19
20
21
22
23
24

4.27 With the exception of Defendant NWA, Defendants and each of them have issued or caused to be issued search warrants so as to gain access to property in the possession of those who were known to owe nothing in the way of 26 U.S.C. income taxes. When at all times in violation of law, as briefed, these Defendants operated in concert to unlawfully and without probable cause to seek, issue and obtain search warrants by which they could confiscate all property associated with small businesses, tax return preparers, and individuals who seek to contradict or question modes of IRS enforcement, or who seek to gain access to tax provisions which protect them. By issuing and obtaining search warrants relating to those over whom 26 U.S.C. provided no personam jurisdiction, these Defendants are in violation of 18 U.S.C. § 2235 Search warrant procured maliciously.

/ / /

25
26

/ / /

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 26 of 33

### COUNT TWENTY SIX: Misprision of felony.

4.28 All those Defendants with prior knowledge of the violations as briefed, some learning of some of the violations as early as 1994, chose not to protect taxpayers but rather chose to slander and penalize those who believed in the law so as to obtain compensation and pensions, even if it meant the extortion of money and other property from their own families to get it. This willful failure to act in relation to such offenses shows them to be in defiance and violation of 18 U.S.C. § 4 Misprision of felony.

### COUNT TWENTY SEVEN: Accessory after the fact.

4.29 All those Defendants found to have prior knowledge as to the offenses against the United States have clearly chosen to participate and to lend assistance and comfort to others involved in the conduct complained of. Absent clear proof that the law does not operate as briefed, Defendant DOJ and many U.S. District and Tax Court Judges have clearly worked in concert to step around the law so as to perpetuate a racketeering scheme and to hinder or prevent the apprehension and trial of those parties rightfully culpable, going so far as to issue protective orders against the operation of the law. All such Defendants are thus in an ongoing violation of 18 U.S.C. § 3 Accessory after the fact.

### V. CONCLUSION.

5.1 The public record is replete with cases of Americans seeking in futility to unveil the operation of the Tax Code at 26 U.S.C., and the reputation of the Defendants exposes further efforts to be a waste of time; America has no courts for tax law, or for the proper adjudication of matters concerning crimes relative thereto. Until the conclusions in the attached brief are responsibly dispelled, the Complainants feel compelled to believe them as valid conclusions at law, but also sees Congress entirely unwilling to protect itself from the judicial and executive branches and the usurpation of Congress' taxation authority for themselves through [organized] crime.

1    5.2 We the People view this willingness on the part of Congress to place every

2    American at risk of false arrest, imprisonment, and the wrongful taking of all property

3    they have and will have, in any instance where they've relied upon the written law. If

4    Congress were to delegate its legislative authority to Defendants DOJ and COURT, and

5    make GONZALES the *Czar of Law*, it would merely serve to add form to what already

6    has vast and abhorrent substance.

7    5.3 Congress has been out of the taxation loop since the 1954 Tax Code was

8    [enacted]. If Congress is to make it back into its rightful position of America's

9    representative taxing authority, it must prove the conclusions as briefed are mistaken, or

10   it must halt all prosecutions, open jail doors, order that records pertaining to all

11   Americans be expunged, forgive all current debts alleged under 26 U.S.C., and it must

12   act to cleanse government of all who can reasonably be said to have had the duty to act

13   in ways they have not.

14   5.4 It is We the People who deserve the consideration in this matter, and it is not

15   government or foreign countries and their citizens which should enter deliberations

16   convened to correct this wrong. We the People have finished last to the IRS, right

17   behind Congress, for as long as we can recall. "[T]axpayers [are] entitled to know the

18   basis of law and fact on which the Commissioner sought to sustain the deficiencies." [3]

19   Congress' failure to act upon this Complaint vitiates and abolishes the right to arrange

20   one's affairs according to law and hands it straight into the possession and control of

21   Defendant GONZALES.

22   5.5 When public servants set about requesting and issuing protective orders

23   against the operation of the law, they have to believe the appearance of impropriety

24   created thereby would precipitate a belief that all of these charges are valid, and that

25   Americans would then find compulsion under 18 U.S.C. § 4 to complain as they have

26   herein. Is Congress so far removed from the Defendants' daily concerns that they forgot

---

[3] See *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 498 (1937).

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.            Page 28 of 33

1  about said requirement? Are Americans presumed to be so ignorant that the law can be

2  ignored in the performance of one's public service?

3      5.6 As it relates to 26 USC and domestically situated Americans and their

4  businesses, the Defendants and each of them are a regulatory contrivance and

   racketeering scheme without a statutory basis upon which to rest the least of the conduct

5  complained of. To make or break this *nation of laws* Congress must now choose to act

6  or pass on its own authority.

7

8                          VI. <u>VERIFICATION</u>.

9      6.1 Complainants (undersigned) bring this criminal complaint in good faith, and **they**

10 **believe** in full that the allegations of lawlessness on the part of the Defendants above named are

   true and correct, and that they constitute the crimes alleged herein.

11     6.2 We, David R. Myrland, and Tim Garrison, do hereby declare under penalties of

12 perjury that the foregoing statements are true and correct to the best of our individual personal

13 knowledge and belief. We view the issuance of a protective Order constitutes a valid basis to

14 presume that the law operates as briefed. Executed this 19th day of December, 2005.

15 _____        _____

   David R. Myrland, Affiant/Complainant        Tim Garrison, Affiant/Complainant

16     6.3 The above affirmation was duly subscribed and sworn to before me, this 19th day

17 of December, 2005, by David R. Myrland, and by Tim Garrison.

18     6.4 I, Chandra E. Laferriere am a Notary under license from the State of

19 Washington whose Commission expires on 5-1-2009, and be it known by my Hand and

   my Seal as follows:

20

21     Notary signature

22

23                              NOTARY

                              PUBLIC
24 ///                         5-1-2009

25 ///

   ///
26

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 29 of 33

6.5 I, Lee Jerome Herold, do hereby declare under penalties of perjury (28 U.S.C. § 1746) that the statements and allegations made herein are true and correct to the very best of our individual personal knowledge. I view the issuance of a protective Order constitutes a valid basis to presume that the law operates as briefed. Executed this 26 day of the month of December 2005.

Lee Jerome Herold, Affiant/Complaintant

6.6 The above affirmation was subscribed and duly sworn to before me this 26 day of the month of December, 2005, by Lee Jerome Herold.

6.7 I, Alec Herold, am a Notary under license from the State of Oregon whose Commission expires 3-7-08, and be it known by my hand and my Seal as follows:

Notary signature

```
OFFICIAL SEAL
ALEC N HEROLD
NOTARY PUBLIC-OREGON
COMMISSION NO. 378155
MY COMMISSION EXPIRES MAR 7, 2008
```

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.            Page 30 of 33

6.8 I, Greg Weiss, do hereby declare under penalties of perjury (28 U.S.C. § 1746) that the statements and allegations made herein are true and correct to the very best of our individual personal knowledge. I view the issuance of a protective Order constitutes a valid basis to presume that the law operates as briefed. Executed this _28_ day of the month of November, 2005.

Greg Weiss, Affiant/Complainant

6.9 The above affirmation was subscribed and duly sworn to before me this _28_ day of the month of November, 2005, by Greg Weiss.

6.10 I, _Matt Krieger_, am a Notary under license from the State of Oregon whose Commission expires _9/13/06_, and be it known by my hand and my Seal as follows:

Notary signature

OFFICIAL SEAL
MATT KRIEGER
NOTARY PUBLIC - OREGON
COMMISSION NO. 359948
MY COMMISSION EXPIRES SEPT 13, 2006

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.          Page 31 of 33

6.11 I, Jim L. Walden, do hereby declare under penalties of perjury (28 U.S.C. § 1746) that the statements and allegations made herein are true and correct to the very best of our individual personal knowledge. I view the issuance of a protective Order constitutes a valid basis to presume that the law operates as briefed. Executed this 29th day of the month of November, 2005.

Jim L. Walden, Affiant/Complainant

6.12 The above affirmation was subscribed and duly sworn to before me this 29 day of the month of November, 2005, by Jim L. Walden.

6.13 I, Julie M. Hardin, am a Notary under license from the State of Texas whose Commission expires 5/24/09, and be it known by my hand and my Seal as follows:

Notary signature

Julie M. Hardin
Notary Public
State of Texas
My Commission Expires
MAY 24, 2009

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.                Page 32 of 33

6.14 I, Paul Broward, do hereby declare under penalties of perjury (28 U.S.C. § 1746) that the statements and allegations made herein are true and correct to the very best of <u>our individual personal knowledge</u>. I view the issuance of a protective Order constitutes a valid basis to presume that the law operates as briefed. Executed this 23rd day of the month of November, 2005.

Paul Broward, Affiant/Complainant

6.15 The above affirmation was subscribed and duly sworn to before me this 23rd day of the month of November, 2005, by Paul Broward.

6.16 I, MURSHAD Bobby Khan am a Notary under license from the State of California whose Commission expires 04-20-08, and be it known by my hand and my Seal as follows:

_____
Notary signature

> MURSHAD BOBBY KHAN
> COMM. # 1484931
> NOTARY PUBLIC  CALIFORNIA
> ALAMEDA COUNTY
> My Comm  Expires April 20, 2008

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.                    Page 33 of 33

**Tab #3**

## ABSTRACT OF PRIMARY CLAIMS:

In light of the issuance of protective orders to stifle discussion of the law, all claims will be stated in the affirmative as if affirmed by such issuance. Incident to Petitioner's being a resident Citizen of one of the fifty freely associated compact States ("countries," see 28 USC 297(b)), a Citizen of the United States, these things are certain regarding his status in relation to the Internal Revenue Service, 26 USC. In these ways, the IRS lacks personam jurisdiction over the Petitioner.

**Issue A.** Congress has not imposed the "tax" sought to be collected from the Petitioner, including Social Security, but rather such taxes have been imposed solely through regulation(s) promulgated under 26 USC 1, as briefed. IRS has no statutory authority over the Petitioner. See **Issue A, ¶¶** 4.5 - 4.11.

**Questions under Issue (A):**
(QA)1. By what statutory authority does the Respondent seek to tax the Petitioner? Can Respondent point to authorities naming as subject one with the political status and *situs* of the Petitioner?
(QA)2. Is the citizen in §§ 1402(b) and 3121(e) really the same Citizen defined in 26 CFR 1.1-1(c)?
(QA)3. Is the Petitioner rightfully deemed to be the employee in § 3401(c)?
(QA)4. Can the Secretary of the Treasury lay an income tax by naming a subject to the chapter one income tax where Congress has not?
(QA)5. Until Congress names the Petitioner as subject, the Respondent is powerless to even approach the Petitioner regarding any matter governed by 26 USC for lack of personam jurisdiction and statutory authority, right?

**Issue B.** The IRS is prohibited from speaking to the Petitioner by 4 USC 72, as briefed. IRS has no requisite statutory authority over the Petitioner. See **Issue B, ¶¶** 4.12 - 4.19.

**Questions under Issue (B):**
(QB)1. Is the Office of the President the same Office as that held by the Secretary? If not, can § 7621 be said to be grant of leave to the Secretary to operate outside of Washington, D.C.?
(QB)2. Where is the Secretary of the Treasury's authority to operate outside of Washington D.C.?
(QB)3. Is 26 USC § 7621 a grant of leave for the Secretary of the Treasury to operate outside of Washington D.C.?
(QB)4. If the IRS cannot supply proof of requisite leave under 4 USC § 72, can Petitioner lawfully be approached by the Respondent in any way?

**Issue C.** Until Petitioner makes "income" reportable on the Form 2555 Foreign Earned Income tax return, the IRS is not entitled to a tax return from Petitioner who must violate

regulation to file any other form, as briefed. IRS has no statutory authority over the Petitioner concerning domestically (in one of 50 States) earned income. See **Issue C, ¶¶** 4.20 - 4.25.

**Questions under Issue (C):**
(QC)1. What is the OMB number of the form prescribed under 26 CFR 602.101 as that form required of the Petitioner?
(QC)2. Can the Petitioner ignore the provisions of 26 CFR 602.101 and rather file the form that the Respondent will accept?
(QC)3. If the Petitioner can ignore 26 CFR 602.101, what are all of the other regulations, statutes, or other provisions that the Petitioner can simply ignore?

**Issue D.** Petitioner must violate statute to include in gross income those amounts equal to the value of any money or property paid for personal compensation for services actually rendered. Petitioner has earned no amount of compensation duly classified as "gross income" and therefore is beyond the scope of the IRS' statutory authority when receiving only such amounts, as briefed. IRS has no statutory authority over the Petitioner when he receives only the FMV of his services as compensation. See **Issue D, ¶¶** 4.26 - 4.48.

**Questions under Issue (D):**
(QD)1. Since § 83 is applicable to amounts now sought to be included in gross income, it is clear that either the Respondent or the Petitioner is in violation of it, but silence abounds. Does it apply, and, if so, how does it operate and how is the Petitioner to comply with it in the future?
(QD)2. Where, under §§ 83 and 1012, and 26 CFR 1.83-3(g), does it provide that only property within which one has a basis is to be recognized as a cost or, that intangible personal property is excluded from that which is cost?
(QD)3. If such exclusions alluded to in #(2) above do not exist, can "income tax" approach such property's FMV, as contemplated under §83?
(QD)4. In consideration of these provisions, is the FMV of labor (contract value) appropriately termed "gain derived from labor"?
(QD)5. Is the FMV of labor excluded from gross income by law? (See § 83, 212, 1001, 1012; 26 CFR 1.83-3(g)). If so, by what authority?
(QD)6. Can a Court order the exclusion from cost of property within which the Petitioner has no basis when such exception to cost cannot be found in statute or in regulation, especially when it constitutes the difference between paying a tax and not even being subject to it? Can the Respondent claim in one case that "any property" means all property, and in another case argue that "any property" lawfully excludes certain things not recorded, mentioned, or manifest in law? Would such accounting offend the holdings in *Monsanto, Gonzales, Alvarez,* and *Rucker*? If not, why not?

**Issue E.** Concerning underpayments of ch.1 capital gains or income taxes, and taxes under ch.24 (Form W-4), ch.21 FICA, and ch.2 Self Employment tax, the respondent lacks assessment authority due to statutory confines. Collection by distraint cannot precede an assessment of liability. IRS therefore lacks statutory authority over the Petitioner. See **Issue E, ¶¶ 4.49 - 4.54.**

**Questions under Issue (E):**

(QE)1. Does the language of 1939 IRC § 3640 or 26 USC 6201(a) permit the Respondent to assess taxes other than those which have not been duly paid by stamp, taxes like those imposed by chapters 1, 2, 21, and 24?

(QE)2. Does 26 CFR 301.6201(a)-1 deviate from 26 USC 6201(a), unreasonably broadening limitations placed upon Respondent's assessment authority as intended by Congress?

**Issue F.** Since Petitioner's duties (if any) to comply with 26 USC arise from allegedly having received gross income, Petitioner is not the person in 26 USC 7343 whose duties from having been an officer, employee, or member of a corporation or partnership; the chapter of the Tax Code on crimes (ch.75) does not apply to the Petitioner, as briefed. See **Issue F, ¶¶ 4.55 - 4.59.** See also *Meese v. Keene, infra,* Supreme Court interpreting a statutory definition saying "includes" as all inclusive.

**Questions under Issue (F):**

(QF)1. Do the alleged duties of the Petitioner to file a statement or tax return arise from having been an officer, employee, or member of a corporation or partnership?

(QF)2. How can 26 USC § 7343 be rightfully deemed to be a "definition" when it is applied to persons, individuals, or other items or elements not expressly implicated by its language? Why did Congress call it a "definition" if it supposed to be an *inclusion*?

(QF)3. Under the law, is a "definition" the same thing as an "inclusion"? Can a provision said by a legislative body to be a "definition" be enforced as an "inclusion"?

**Unrelated to statutory authority and personam jurisdiction:**

**Issue G.** Petitioner has relied on expert analysis of parties rightfully claiming heightened expertise and acquaintance with federal and state tax law and fundamentals of income taxation. Petitioner sees the clear protections in the law, written by experts (Congress). Since experts share Petitioner's view of his rights and duties, it violates due process to hold him liable for taxes or culpable for having failed to file a return or pay any property to the IRS, in conflict with the Respondent's claim that the law has been violated. See **Issue G, ¶¶ 4.60 - 4.73.**

**Questions under Issue (G):**

(QG)1. Can IRS Publication 17 be said to say anything other than that the value of Petitioner's personal services shall be deemed to be a cost?

(QG)2. What did the Respondent mean when it said that Petitioner's cost is the value of "services you provide in the transaction"?

(QG)5. When the courts and the IRS refuse to analyze tax law or to disclose what its parameters are in their opinion, how is it that the Petitioner can be duly punished for having to rely on his own interpretation and that of purported professionals?

**Issue H**. Petitioner's due process rights reside in fairness, and a tangible and substantive contradiction to those claims articulated herein must be dispensed by the Respondent. In *Brown & Williamson*, *infra*, a tobacco company was not a "protester" or deemed "frivolous" when challenging a federal agency based on a certain void in statutory authority, which is all Petitioner has sought to do herewith. See **Issue H**, ¶¶ 4.74 - 4.89.

**Questions under Issue (H):**

(QH)1. Can the Respondent point to express legislative permission for the Secretary of the Treasury to operate outside of Washington, D.C., as required under 4 USC § 72? If not, by what authority does the Respondent speak to the Petitioner?

(QH)2. Can the Respondent point to a statute which identifies a U.S. Citizen, like the Petitioner, as the subject of any of the Tax Code's income taxes? If not, how does 26 USC pass the test under authorities cited herein, *supra*?

(QH)3. Does due process embrace or exclude Petitioner's access to the letter of the law?

(QH)4. How can legislation <u>not</u> be void for vagueness when it requires the input of the Respondent just to stay out of trouble and jail?

(QH)5. Can the Respondent enforce a law it can't openly explain without violating due process rights under the void for vagueness doctrine?

**These issues comprise the cross referencing exercise below. Why Petitioner does not owe Social Security tax on self-employment earnings:**

It's a chapter 2 tax, it's an income tax (§ 1401(a), (b)), and <u>Petitioner is not</u> the citizen who owes it. If Petitioner pays SS on the value of personal services it would violate § 83(a) which only allows the excess over what Petitioner paid for the compensation to be included in gross income. Unless the pay is foreign earned, Petitioner has no form to claim it on without violating 26 CFR 602.101 which only allows Petitioner to file the Form 2555 Foreign Earned Income tax return. Petitioner can't be the citizen in this chapter (§ 1402(b)) and still be the citizen in chapter 1 (26 CFR 1.1-1(c)). If Petitioner fails to pay it, Petitioner can't be assessed because SS is not a stamp tax (§ 6201(a)).

**Why Petitioner does not have to file a tax return:**

Petitioner earned nothing reportable on the Form 2555 Foreign Earned Income tax return, Petitioner earned no "excess" to include in gross income under § 83(a), and if Petitioner fails to file tax returns or fail to pay any of these taxes Petitioner can't be charged because Petitioner is not the "person" defined in § 7343, in addition to the fact that Petitioner can't be assessed because Petitioner is not a stamp tax payer (§ 6201(a)). The Form 1040 is strictly for reporting amounts of gross income as proven by the fact that there is no place on the form for § 83(a) to operate. Indeed, the form starts in § 61(a) gross income on line #2, when § 83(a) allows only the excess (profit/income) to be so reported.

*Or-*

**To assess the Petitioner** for unpaid taxes, the IRS has to violate § 6201(a) which limits assessment authority to taxes paid by stamp, and it must violate 602.101 which allows Petitioner to file only the Form 2555 Foreign Earned Income tax return.

**To tax the Petitioner through the Form W-4,** the IRS and an employer have to violate § 3401(c) which defines "employee" as a public servant of sorts, and they have to violate §§ 83, 212, 1001, 1011, 1012 (the § 83 equation) which provide that the value of Petitioner's services is to be excluded from gross income and **not** taxed as profit. It must also violate 602.101 which requires the Petitioner only to report foreign earned income on the Form 2555 Foreign Earned Income tax return. This ends up to be a chapter 1 liability under § 1 (See § 31(a), credit for W-4 amounts). This chapter 1 tax was imposed by the Secretary of the Treasury under 26 CFR 1.1-1(a), (b), and (c), and **not** by Congress in 26 USC § 1. IRS must give Petitioner credit for this amount (all American employees) under § 31(a) but only federal public servants are eligible (26 CFR 1.31-2(b)), thus rendering said credit a false entry on forms in violation of 18 USC 1001 (a federal crime).

**To make the Petitioner pay FICA,** the IRS and an employer have to violate § 3121(e) which defines "citizen" as a citizen of the U.S. Possessions, and they have to violate §§ 83, 212, 1001, 1011, 1012 (the § 83 equation) which provide that the value of Petitioner's services is to be excluded from gross income and **not** taxed as profit. It must also violate 602.101 which requires Petitioner only to report foreign earned income on the Form 2555 Foreign Earned Income tax return.

**To make the Petitioner pay Social Security on self employment earnings,** the IRS must violate § 1402(b) which defines "citizen" as a citizen of the U.S. Possessions, and must violate §§ 83, 212, 1001, 1011, 1012 (the § 83 equation) which provide that the value of the Petitioner's services is to be excluded from gross income and **not** taxed as profit. It must also violate 602.101 which requires

Petitioner only to report foreign earned income on the Form 2555 Foreign Earned Income tax return.

**To tax the Petitioner's compensation under chapter one of the Tax Code**, the IRS has to violate §§ 83, 212, 1001, 1011, 1012 (the § 83 equation) which provide that the value of the Petitioner's services is to be excluded from gross income and not taxed as profit. It must also violate 602.101 which requires Petitioner to only report foreign earned income on the Form 2555 Foreign Earned Income tax return. This tax was imposed by the Secretary of the Treasury under 26 CFR 1.1-1(a), (b), and (c), and not by Congress in 26 USC § 1.

**To make the Petitioner pay chapter one capital gains tax** under § 1(h), it must violate 602.101 which requires Petitioner to only report foreign earned income on the Form 2555 Foreign Earned Income tax return. This tax was imposed by the Secretary of the Treasury under 26 CFR 1.1-1(a), (b), and (c), and not by Congress in 26 USC § 1.

**Petitioner, as an employee or sole proprietor/self employed, cannot be charged with failure to file returns unless the IRS first:**

**1**. Violates §§ 83, 212, 1001, 1011, 1012 (the § 83 equation) which provide that the value of Petitioner's services is to be excluded from gross income and not taxed as profit. By doing this, the IRS/U.S. can now say it has proven amount of "gross income" which triggers a requirement to file under § 6012(a). It also violates 602.101 which requires Petitioner only to report foreign earned income on the Form 2555 Foreign Earned Income tax return.

**2**. Violates § 7343 which defined the term "person" for the chapter on crimes (§§ 7201-7344) as one whose duties arise from having been an officer or employee of a corporation, or member or employee. This contrasts vividly with the **employee or self employed** whose duties arise, according to the IRS, from having been the recipient of gross income, gifts, gains, and/or profit.

**3**. For failure to file charges against the individual who received **capital gains only**, the IRS/U.S. violates § 7343 which defined the term "person" for the chapter on crimes (§§ 7201-7344) as one whose duties arise from having been an officer or employee of a corporation, or member or employee. The IRS also violates 602.101 which requires Petitioner only to report foreign earned income on the Form 2555 Foreign Earned Income tax return.

***End cross reference***. As briefed, this is precisely how these conclusions operate to form the parameters of the Respondent's statutory authority under 26 USC.

If the law did not operate as briefed the IRS and DOJ wouldn't need protective orders against inquiries into statutory limitations of authority. With a presumption of correctness gained by introduction of evidence contrary to standard operating, Complainants are free to believe the conduct so protected constitutes a violation of one or more of the statutes below.

## 18 U.S.C. Provisions:

**18 U.S.C. § 3 Accessory after the fact.** *Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.*

Except as otherwise expressly provided by any Act of Congress, an accessory after the fact shall be imprisoned not more than one-half the maximum term of imprisonment or (notwithstanding section 3571) fined not more than one-half the maximum fine prescribed for the punishment of the principal, or both; or if the principal is punishable by life imprisonment or death, the accessory shall be imprisoned not more than 15 years.

**18 U.S.C. § 4 Misprision of felony.** *Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same* to some judge or other person in civil or military authority under the United States, *shall be fined under this title or imprisoned not more than three years, or both.*

**18 U.S.C. § 241 Conspiracy against rights.** *If two or more persons conspire to injure, oppress, threaten, or intimidate* any person in any State, Territory, Commonwealth, Possession, or District *in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States,* or because of his having so exercised the same; or

*If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured -*

*They shall be fined under this title or imprisoned not more than ten years, or both*; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

**18 U.S.C. § 242 Deprivation of rights under color of law.** *Whoever, under color of any law, statute, ordinance,* regulation, or custom, *willfully subjects any person in any State,* Territory, Commonwealth, Possession, or District *to the*

*deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States*, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, *shall be fined under this title or imprisoned not more than one year, or both*; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or *if such acts include kidnapping or an attempt to kidnap*, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, *shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death*.

**18 U.S.C. § 872 Extortion by officers or employees of the United States.** Whoever, being an officer, or employee of the United States or any department or agency thereof, or representing himself to be or assuming to act as such, under color or pretense of office or employment commits or attempts an act of extortion, shall be fined under this title or imprisoned not more than three years, or both; but if the amount so extorted or demanded does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

**18 U.S.C. § 876 Mailing threatening communications.-**
(d) Whoever, with intent to extort from any person any money or other thing of value, knowingly so deposits or causes to be delivered, as aforesaid, any communication, with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to injure the property or reputation of the addressee or of another, or the reputation of a deceased person, or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both. If such a communication is addressed to a United States judge, a Federal law enforcement officer, or an official who is covered by section 1114, the individual shall be fined under this title, imprisoned not more than 10 years, or both.

**18 U.S.C. § 880 Receiving the proceeds of extortion.** A person who receives, possesses, conceals, or disposes of any money or other property which was obtained from the commission of any offense under this chapter that is punishable by imprisonment for more than 1 year, knowing the same to have been unlawfully obtained, shall be imprisoned not more than 3 years, fined under this title, or both.

**18 U.S.C. § 1341 Frauds and swindles.** Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell,

dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

**18 U.S.C. § 1343 Fraud by wire, radio, or television.** Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

**18 U.S.C. § 1951 Interference with commerce by threats or violence.-**

(a) *Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce,* by *robbery or extortion or attempts or conspires so to do,* or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section *shall be fined under this title or imprisoned not more than twenty years, or both.*

(b) As used in this section -

(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

(2) The term "*extortion*" *means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.*

**18 U.S.C. § 1623 False declarations before grand jury or court.-**

(a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both.

(b) This section is applicable whether the conduct occurred within or without the United States.

(c) An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if -

(1) each declaration was material to the point in question, and

(2) each declaration was made within the period of the statute of limitations for the offense charged under this section. In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to the first sentence of this subsection that the defendant at the time he made each declaration believed the declaration was true.

(d) Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

(e) Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence.

**18 U.S.C. § 1962 Prohibited activities.**

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .

ABSTRACT OF PRIMARY CLAIMS.     Page 10 of 12

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

**18 U.S.C. § 2235 Search warrant procured maliciously.-** Whoever maliciously and without probable cause procures a search warrant to be issued and executed, shall be fined under this title or imprisoned not more than one year, or both.

**18 U.S.C. § 3282 Offenses not capital.-** Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information *is instituted within five years next after such offense shall have been committed*.

## 26 U.S.C. Provisions:

**Tax Code 26 U.S.C. § 7214 Offenses by officers and employees of the United States. -**

(a) Unlawful acts of revenue officers or agents. *Any officer or employee of the United States* acting in connection with any revenue law of the United States -

(1) *who is guilty of any extortion or willful oppression* under color of law; or

(2) *who knowingly demands other or greater sums than are authorized by law*, or receives any fee, compensation, or reward, except as by law prescribed, for the performance of any duty; or

(3) *who with intent to defeat the application of any provision of this title fails to perform any of the duties of his office or employment*; or

(4) who conspires or colludes with any other person to defraud the United States; or

(5) who knowingly makes opportunity for any person to defraud the United States; or

(6) who does or omits to do any act with intent to enable any other person to defraud the United States; or

(7) *who makes or signs any fraudulent entry in any book, or makes or signs any fraudulent certificate, return, or statement*; or

(8) *who, having knowledge or information* of the violation of any revenue law by any person, or of fraud committed by any person against the United States under any revenue law, *fails to report, in writing, such knowledge or information to the Secretary*; or

(9) who demands, or accepts, or attempts to collect, directly or indirectly as payment or gift, or otherwise, any sum of money or other thing of value for the compromise, adjustment, or settlement of any charge or complaint for any violation or alleged violation of law, except as expressly authorized by law so to do;

*shall be dismissed from office or discharged from employment and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both.* The court may in its discretion award out of the fine so imposed an amount, not in excess of one-half thereof, for the use of the informer, if any, who shall be ascertained by the judgment of the court. The court also shall render judgment against the said officer or employee for the amount of damages sustained in favor of the party injured, to be collected by execution.

**26 U.S.C. § 7403 Action to enforce lien or to subject property to payment of tax.**

(a) Filing.- In **any** case *where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof,* whether or not levy has been made, *the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title* with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability. For purposes of the preceding sentence, any acceleration of payment under section 6166(g) shall be treated as a neglect to pay tax.

(b) Parties.- *All persons having liens upon or claiming any interest in the property* involved in such action *shall be made parties* thereto.

(c) Adjudication and decree.- *The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property,* and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States. If the property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of such lien with expenses of sale, as the Secretary directs.

(d) Receivership.- In any such proceeding, at the instance of the United States, the court may appoint a receiver to enforce the lien, or, upon certification by the Secretary during the pendency of such proceedings that it is in the public interest, may appoint a receiver with all the powers of a receiver in equity.

/ / /

/ / /

ABSTRACT OF PRIMARY CLAIMS.    Page 12 of 12

**Tab #4**

## – TABLE OF AUTHORITIES –

**Footnote Directory:**                    See page –

Footnote 1 to 5: . . . . . . . . . . . . . . . . . . . . .    See pg.7

Footnote 6 to 9: . . . . . . . . . . . . . . . . . . . .    See pg.9

Footnote 10: . . . . . . . . . . . . . . . . . . . . .    See pg.10

Footnote 11 to 15: . . . . . . . . . . . . . . . . . . . .    See pg.11

Footnote 16 to 20: . . . . . . . . . . . . . . . . . . . .    See pg.12

Footnote 21 to 25: . . . . . . . . . . . . . . . . . . . .    See pg.13

Footnote 26: . . . . . . . . . . . . . . . . . . . . .    See pg.14

Footnote 27: . . . . . . . . . . . . . . . . . . . . .    See pg.15

Footnote 28: . . . . . . . . . . . . . . . . . . . . .    See pg.16

Footnote 29 to 31: . . . . . . . . . . . . . . . . . . . .    See pg.17

Footnote 32: . . . . . . . . . . . . . . . . . . . . .    See pg.18

Footnote 33, 34: . . . . . . . . . . . . . . . . . . . . .    See pg.20

Footnote 35: . . . . . . . . . . . . . . . . . . . . .    See pg.23

Footnote 36: . . . . . . . . . . . . . . . . . . . . .    See pg.24

Footnote 37 to 40: . . . . . . . . . . . . . . . . . . . .    See pg.25

Footnote 41: . . . . . . . . . . . . . . . . . . . . .    See pg.27

Footnote 42: . . . . . . . . . . . . . . . . . . . . .    See pg.28

Footnote 43, 44: . . . . . . . . . . . . . . . . . . . .    See pg.29

Footnote 45: . . . . . . . . . . . . . . . . . . . . .    See pg.30

Footnote 46, 47: . . . . . . . . . . . . . . . . . . . .    See pg.32

Footnote 48: . . . . . . . . . . . . . . . . . . . . .    See pg.33

Footnote 49 to 52: . . . . . . . . . . . . . . . . . . . .    See pg.34

Footnote 53-55: . . . . . . . . . . . . . . . . . . . . .    See pg.37

Footnote 56-57: . . . . . . . . . . . . . . . . . . . . .    See pg.39

Footnote 58: . . . . . . . . . . . . . . . . . . . . .    See pg.43

Footnote 59-61: . . . . . . . . . . . . . . . . . . . .    See pg.44

Footnote 62-63: . . . . . . . . . . . . . . . . . . . .    See pg.45

Footnote 64-65: . . . . . . . . . . . . . . . . . . . .    See pg.47

Footnote 66, 67: . . . . . . . . . . . . . . . . . . . .    See pg.48

Footnote 68, 69: . . . . . . . . . . . . . . . . . . . .    See pg.49

TABLE OF AUTHORITIES.                Page 1 of 8

Footnote 70-74: . . . . . . . . . . . . . . . . . . .   See pg.50

Footnote 75-79: . . . . . . . . . . . . . . . . . .   See pg.56

**Constitution(s)**:

U.S. Constitution, Amdt. 16 . . . . . . . . . . . . . . . . . . . . . .   pg.20

Washington Constitution, Article VII, § 5. . . . . . . . . .   pg.16

South Carolina State Constitution, Art. X, § 3 . . . . . . .   pg.16


**Public Law ("P.L.")**:

#86-624, § 18(j) . . . , . . . . . . . . . . . . . . . . . . . . . . . . .   pg.22

#86-70, § 22(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.22


**4 USC 72** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.5, 21, 23, 48, 57

**5 USC 701 - 706** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.58

**42 USC**:

§ 411(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.18, 41

§ 1983    Fn57 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.39


**18 USC**:

§ 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.1

§ 241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.42

§ 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.3

§ 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.46, 47, 58

§ 1623 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.42


**26 USC**:

§ 83(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.4, 5, 25-35, 52-55

§ 212 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.26, 34-35

§ 879(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.56, 75

§ 1012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.25-35

§ 1402(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.55

§ 1402(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.18, 21, 41

§ 3121(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   pg.55

§ 3121(e) ............................... pg.18, 21, 41
§ 3401(c) ............................... pg.18, 21
§ 6201 ................................. pg.36–38
§ 6702 ................................. pg.39
§ 6671(b) .............................. pg.39
§ 6673 ................................. pg.39
§ 7203 ................................. pg.39
§ 7214 ................................. pg.47
§ 7343 ................................. pg.38, 40
§ 7421 ................................. pg.3
§ 7602 ................................. pg.2
§ 7621 ................................. pg.22, 23
§ 7651(5)(A) ........................... pg.56
§ 7701(a)(9), (10) ..................... pg.22
§ 7701(a)(14) .......................... pg.39
§ 7801 ................................. pg.22
§ 7805 ................................. pg.22
§ 8022 ................................. pg.55

**1939 Tax Code:**

§§ 111, 112, 113 ...................... Fn.41
§ 3640 ................................ pg.36–38
§ 3811 ................................ pg.56

27 CFR 70.150(b) ..................... Fn.40

**26 CFR:**

1.1-1(a), (b), (c) ....................... pg.17, 20, 21
1.83-3(e), (f) .......................... Fn.38
1.83-3(g) ............................. pg.4, 25-35, 42, 52-55
1.83-4(b)(2) .......................... pg.26
1.1001-1(a) ........................... pg.4, 26
1.1011-1 .............................. pg.26

1.1012-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.26, 42

1.1402(b)-1(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.18

31.0-2(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.18

31.3121(e)-1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.18

301.6201-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.36-38

601.106(f)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.32-33, 47

602.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.2, 4, 24, 25

**State cases:**

*Cook v. State*, 83 Wash.2d 725, 735, 521 P.2d 725 (1974). . . . . .    Fn.1

**U.S. Tax Court:**

#11315-94 *Bernsdorff* . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.3

#15685-94 *Eckles* . . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.3

#3176-95 *Justice* . . . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.3

#1610-95 *Bryan* . . . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.3

#8766-95 *Santangelo* . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.3

#339-95 *Talmage* . . . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.3, 52-55

*Rowlee v. C.I.R.*, 80 USTC 1111 (1983) . . . . . . . . . . . . . .    pg.55

*Abrams v. C.I.R.*, 82 USTC 403 (1984) . . . . . . . . . . . . . .    pg.55

*Robinson v. C.I.R.*, 82 USTC 444 (1984) . . . . . . . . . . .    Fn38

*Cohn v. C.I.R.*, 73 USTC 443 (1979) . . . . . . . . . . . . .    Fn38

*Terminal Wine*, 1 B.T.A. 697 (1925) . . . . . . . . . . . . . .    Fn65

*Couzens*, 11 B.T.A. 1140 . . . . . . . . . . . . . . . . . . . . .    Fn65

**9th Circuit:**

*Santangelo*, #95-70866 . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.3

*Bryan*, #95-70800 . . . . . . . . . . . . . . . . . . . . . . . . . . . .    pg.3

**U.S. S.Ct. cert denied:**

*McCall v. C.I.R.*, S.Ct. #96-5871 . . . . . . . . . . . . . .    pg.2

*Bryan v. C.I.R.*, S.Ct. #96-6997 . . . . . . . . . . . . . .    pg.2

*Santangelo v. C.I.R.*, S.Ct. #96-6935 . . . . . . . . . . .    pg.2

*Talmage v. C.I.R.*, S.Ct. #97-5299 . . . . . . . . . . . . .    pg.2

TABLE OF AUTHORITIES.        Page 4 of 8

**U.S. District Court:**

*U.S. v. Hardy, et al.*, #02-0133 SOM-BMK, U.S. Dist. Court, Honolulu, HI .    Fn.64, pg.47

*U.S. v. Herold*, U.S. Dist. Court, Portland, Oregon, # CR 99-161-KI . . . . . .    pg.2

*Walden v. United States, et al.*, #A-05-CA-444-LY, U.S. Dist.Ct., Austin, TX . .    pg.2

U.S. Dist.Ct., Seattle, Civil #s C95-1001R, 6/30/95; C95-1246(C)R, 8/11/95. . .    pg.3

**Federal cases:**

*Adair v. U.S.*, 208 U.S. 161 (1908) . . . . . . . . . . . . . . . . . . . . . . . . . . .    Fn.39

*Alexander v. "Americans United" Inc.*, 416 U.S. 752 (1973). . . . . . . . . . . . . .    Fn.65

*Alves v. C.I.R.*, 734 F.2d 478 (CA9 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . .    Fn.38

*Benzvi v. Comm'r of IRS*, 787 F.2d 1541 (CA11 1986). . . . . . . . . . . . . . . .    Fn.65;

*Bank of New York v. U.S.*, 471 F.2d 247 (CA8 1973). . . . . . . . . . . . . . .    Fn.5

*Bate Refrigerating Co. v. Sulzberger*, 157 U.S. 1 . . . . . . . . . . . . . . .    Fn. 5, 54

*Bingler v. Johnson*, 394 U.S. 741 (1969) . . . . . . . . . . . . . . . .    pg.10

*Boccardo v. C.I.R.*, 56 F.3d 1016 (CA9 1995). . . . . . . . . . . . . . .    pg.50, Fn.73

*Bothke v. Fluor Engineers, Inc.*, 713 F.2d 1405 (CA9 1983). . . . . . . . . .    pg.50, Fn.71, 72

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) . . . . . . . . . . . . . . . .    pg.18

*Brown & Williamson v. F.D.A.*, 153 F.3d 155, aff'd 529 U.S. 120 (2000) . . . .    pg.5, 50, Fn.74

*Browning-Ferris Industries v. Kelco Disposal, Inc.*, 492 U.S. 257 (1989) . . .    Fn.31

*Burnet v. Niagra Falls Brewing Co.*, 282 U.S. 648 (1931) . . . . . . . . . . . . . . . .    pg.16

*Butcher's Union Co. v. Crescent City Co.*, 111 U.S. 746 (1883) . . . . . . . . . . .    Fn.39

*Carminetti v. U.S.*, 242 U.S. 470, 485 (1916). . . . . . . . . . . .    Fn.3, 5, 54

*Carson v. U.S.*, 560 F.2d 693 (1977)    . . . . . . . . . . .    Fn.65

*Central Bank of Denver v. 1st Interstate Bank of Denver*, 511 U.S. 164 (1994) .    pg.18

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) . . . . . . . . . . . . . .    pg.17

*C.I.R. v. Acker*, 361 U.S. 87 (1959). . . . . . . . . . . .    Fn.33

*City of Rome v. US*, 446 U.S. 156 (1980). . . . . . . . . . . .    Fn.24

*Community for Creative Non-violence v. Kerrigan*, 865 F.2d 382 (1988) . . . . .    Fn.5

*Coppage v. Kansas*, 236 U.S. 1 (1915) . . . . . . . . . . .    Fn.39, 52

*Crooks v. Harrelson*, 282 U.S. 55 (1930) . . . . . . . . . . . . . .    pg.16

*Department of Housing and Urban Renewal v. Rucker*, 535 U.S. 125 (2002). . .    Fn.45, pg.52

TABLE OF AUTHORITIES.          Page 5 of 8

*Elise v. Connett*, 908 F.2d 521 (CA9 1990) . . . . . . . . . . .          Fn.65

*Evans v. Gore*, 253 U.S. 245 (1920). . . . . . . . . . .          Fn.2, 50

*Evans v. Newton*, 382 U.S. 296 (1966) . . . . . . . . . . . . .          pg.10

*Fidelity Philadelphia Trust Co. v. U.S.*, 122 F.Supp. 551 . . . . . . . . . .          Fn.5

*Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714 (1967), . . . . .          Fn.22

*Flora v. U.S.*, 362 U.S. 176 (1959).   Fn55 . . . . . . . . . . . . .          Pg. 37

*Forging Industry Ass'n v. Secretary of Labor*, 748 F.2d 211 (1984) . . . . . . . .          Fn.5

*F & S Contr. Co. v. Jensen*, 337 F.2d 160 (10th Cir.1963) . . . . . . . . . . .          Fn.35

*FRS v. Dimensional Financial Corp.*, 474 U.S. 361 (1986) . . . . . . . . . . .          Fn.19

*Goldberg v. US*, 425 U.S. 94 (1976). . . . . . . . . . . . . . . . . . .          Fn.21

*Gould v. Gould*, 245 U.S. 151 (1917) . . . . . . . . . . . . . . . . . . . . . .          pg.16

*Gregory v. Helvering*, 293 U.S. 465 (1935) . . . . . . . . . . . . . . . . . .          pg.16

*Gurley v. Rhoden*, 421 U.S. 200 (1975). . . . . . . . . . . . . . . . . . . .          Fn.14

*Hassett v. Welch*, 303 U.S. 303 (1938) . . . . . . . . . . . . . . . . . . . . .          pg.16

*Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481 (1937). . . . . . . . . . . . . . . .          pg.50  Fn70

*Hicks v. U.S.*, 335 F.Supp. 474 (Colo.1971) . . . . . . . . . . . . . . . . . . .          Fn.40

*Honig v. Doe*, 484 U.S. 305 (1988). . . . . . . . . . . . . . . . . . . . . .          Fn.16

*Hughes v. U.S.*, 953 F.2d 531 (CA9 1992) . . . . . . . . . . . . . . . . . . . . .          Fn.65

*Iglesias v. U.S.*, 848 F.2d 362 (CA2 1988) . . . . . . . . . . . . . . . . . . . .          Fn.5

*INS v. Chadha*, 462 U.S. 919 (1983) . . . . . . . . . . . . . . . . . .          pg.18

*INS v. Hector*, 479 U.S. 85 (1986). . . . . . . . . . . . . . . . . . . . . .          Fn.18

*INS v. Stevic*, 467 U.S. 407 (1984). . . . . . . . . . . . . . . . . . . . .          Fn.23

*Jay v. Boyd*, 352 U.S. 345 (1956). . . . . . . . . . . . . . . . . . . . .          Fn.13, 56

*Jensen v. Comm'r of IRS*, 835 F.2d 196 (CA9 1987) . . . . . . . . . . . . . . . . .          Fn.65

*Klingler Electric Co. v. C.I.R.*, 776 F.Supp. 1158 (1991) . . . . . . . . . . . . . .          Fn.38

*K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988) . . . . . . . . . . . . . . . . .          Fn.4, 53

*Koshland v. Helvering*, 298 U.S. 441 (1936) . . . . . . . . . . . . . . . . . . .          Fn.4, 53

*KVOS v. Associated Press*, 299 U.S. 269 (1936). . . . . . . . . . . . . . . . . . .          Fn.35

*Kyles v. Whitley*, 514 U.S. 419 (1995). . . . . . . . . . . . . . . . . . . . . .          pg.44. Fn59

*Landreth Timber Co. v. Landreth*, 471 U.S. 681 (1985) . . . . . . . . . . . . . . . .          pg.18

*Lucas v. Alexander*, 279 U.S. 573 (1929) . . . . . . . . . . . . . . . . . . . . .          pg.16

*MacNaughton v. C.I.R.*, 888 F.2d 418 (CA6 1989) . . . . . . . . . . . . . . . . . . .          Fn.38

TABLE OF AUTHORITIES.          Page 6 of 8

1   *Manhattan General Equip. Co. v. C.I.R.*, 297 U.S. 129 (1936) . . . . . . . . ,   Fn.4, 53

2   *Maxfield v. U.S. Postal Service*, 752 F.2d 433 (1984) . . . . . . . . . . . . . . . . . .   Fn.65

3   *Meese v. Keene*, 481 U.S. 465 (1987). . . . . . . . . . . . . . . . . . . . .   Fn.17, 78

    *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498 (1932) . . . . . . . . . . . . . . .   pg.16

4   *Miller v. Youakim*, 440 U.S. 125 (1979). . . . . . . . . . . . . . . . . . .   Fn.25

5   *Montelepre Systemed, Inc. v. C.I.R.*, 956 F.2d 496 (CA5 1992). . . . . . . . . . . . .   pg.5, Fn37

6   *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373 (1958) . . . . . . . . . . . . . .   pg.10

7   *Oregon v. Elstad*, 470 U.S. 298 . . . . . . . . . . . . . . . . . . . . . . . .   pg.44, Fn.61, 66

    *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972). . . . . . . . . . .   Fn.28

8   *Passenger Corp. v. Passengers Assoc.*, 414 U.S. 453 (1974) . . . . . . . . . . .   pg.10

9   *Peck v. Lowe*, 247 U.S. 165  . . . . . . . . . . . . . . . . . . . .   Fn.51

10  *Pizzarello v. U.S.*, 408 F.2d 579 (1969) . . . . . . . . . . . . . . . . . . . .   Fn.65

11  *Pledger v. C.I.R.*, 641 F.2d 287 (CA5 1981) . . . . . . . . . . . . . . . . . . .   Fn.38, 40

    *Portillo v. Comm'r of IRS*, 932 F.2d 1128 (CA5 1991) . . . . . . . . . . . . . . . .   Fn.65

12  *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418 (1972). . . . . . . . . .   pg.12, 56, Fn77

13  *Scar v. Comm'r of IRS*, 814 F.2d 1363 (CA9 1987) . . . . . . . . . . . . . . . . . .   Fn.65

14  *Schering Corp. v. Shalala*, 995 F.2d 1103 (D.C.Cir.1993). . . . . . .   Fn.49

15  *Security Bank of Minnesota v. C.I.R.*, 994 F.2d 432 (CA8 1993)  . . . . . .   Fn.5 to 9, 54, pg.16

16  *Sewell v. Georgia*, 435 U.S. 982 (1978). . . . . . . . . . . . . . . . . . . . ,   Fn.27

    *Slaughterhouse Case*, 83 U.S. 395 (1873)  . . . . . . . . . . . . . . . . . .   Fn.30

17  *Smietanka v. First Trust & Savings Bank*, 257 U.S. 602 (1922) . . . . . . . .   pg.16

18  *Smith v. Gougen*, 415 U.S. 566 (1974). . . . . . . . . . . . . . . . . . . .   Fn.26, 67

19  *Smith v. Phillips*, 455 U.S. 209 (1982) . . . . . . . . . . . . . . . . . . . . . . .   pg.45, Fn.62

20  *Spreckles Sugar Refining v. McClain*, 192 U.S. 397 (1904) . . . . . . . .   pg.16

    *Stanton v. Baltic Mining Co.*, 240 U.S. 103. . . . . . . . . . . . . . . . . . .   Fn.51

21  *Tennesee Valley Auth. v. Hill*, 437 U.S. 153 (1978) . . . . . . . .   pg.10

22  *Tracy v. Swartout*, 10 Pet. 354 (1836) . . . . . . . . . . . . . . . . . . . .   Fn.4, 53

23  *U.S. v. Agurs*, 427 U.S. 97 (1976) . . . . . . . . . . . . . . . . . . . . . . . . .   pg.45    Fn.63

24  *United States v. Alvarez-Sanchez*, 511 U.S. 350 (1994). . . . . . .   Fn.47, pg.52

    *U.S. v. Bagley*, 473 U.S. 667 (1985). . . . . . . . . . . . . . . . . . . . . . . . . .   pg.44    Fn.60

25  *U.S. v. Bank*, 234 U.S. 245  . . . . . . . . . . . . . . . . . . .   Fn.5, 54

26  *U.S. v. Batchelder*, 442 U.S. 114 (1978) . . . . . . . . . . . . . . . . . . . . . . . .   pg.16, Fn.29

TABLE OF AUTHORITIES.          Page 7 of 8

*United States v. Boyle*, 469 U.S. 241 (1985). . . . . . . . . . . . . . . . . . . . . . . .     pg.43  Fn58

*U.S. v. Calamaro*, 354 U.S. 351 (1956)  . . . . . . . . . . . . . . . . . .     Fn.4, 53

*U.S. v. Cartwright*, 411 U.S. 546 (1973) . . . . . . . . . . . . . . . . . .     Fn.40

*U.S. v. Classic*, 313 U.S. 299 (1941). . . . . . . . . . . . . . . . . . . .     Fn.31

*U.S. v. Estrada-Macias*, No.97-10115 (CA9 filed 7/12/00) . . . . . . . . . . . . . . .     pg.58

*U.S. v. Gonzales*, 520 U.S. 1 (1997). . . . . . . . . . . . . . . . . . .     Fn.46, pg.52

*U.S. v. Janis*, 428 U.S. 433 (1975) . . . . . . . . . . . . . . . .     Fn.65

*U.S. v. Larinoff*, 431 U.S. 864 (1976)  . . . . . . . . . . . . . . . . . .     Fn.4, 53

*U.S. v. Lexington Mill and Elevator Co.*, 232 U.S. 399  . . . . . . . .     Fn.5, 54

*U.S. v. Lopez*, 514 U.S. 549 (1995). . . . . . . . . . . . . . . . . . .     Fn.32

*U.S. v. Minker*, 350 U.S. 179 (1956). . . . . . . . . . . . . . . . . . .     Fn.15

*U.S. v. Monsanto*, 491 U.S. 600 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . .     Fn.42-44, pg.52

*United States v. National Dairy Corp.*, 372 U.S. 29 (1963). . . . . . . . . .     Fn.31

*U.S. v. Orduno Aguilera*, No.98-50346 (CA9 filed 7/19/99) . . . . . . . . .     pg.57

*U.S. v. Payner*, 447 U.S. 727 (1980). . . . . . . . . . . . . . . . . .     pg.49, Fn.69

*U.S. v. Turkette*, 452 U.S. 576 (1981). . . . . . . . . . . . . .     Fn.20

*Walters v. Metropolitan Enterprises, Inc. et al.*, 519 U.S. 202 (1997). . . . . . .     Fn.11

*Washington Red Raspberry Comm'n v. U.S.*, 657 F.Supp. 537 (1987) . . . . .     Fn.5

*Weimerskirch v. Comm'r of IRS*, 596 F.2d 358 (CA9 1979) . . . . . . . . . .     Fn.65

*Williams v. United States*, 341 U.S. 97 (1951). . . . . . . . . . . . . . . .     Fn.30

**Other authorities:**

*Black's Law Dictionary*, 6th Edition -  . . . . . .     Fn.10, 39, 40,
                                                                                             68, pg.38

*"Tax Guide for Individuals"* IRS Publication 17 (excerpts) . . . . . . . . . .     pg.42, 46

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Tab #5**

TO THE UNITED STATES CONGRESS

WASHINGTON, D.C.

| | |
|---|---|
| David R. Myrland,<br>       Affiant/Complainant, | ) No. _____<br>)<br>) VERIFIED MEMORANDUM IN<br>) SUPPORT of 18 U.S.C. § 4 Misprision<br>) of felony complaint; 18 U.S.C. §§ 4, 241,<br>) 242, 876(d), 880, 1341, 1343, 1623,<br>) 1951(a), 1962(c), 1962(d), 2235; 26<br>) U.S.C. § 7214. |
|     vs. | |
| UNITED STATES DEPARTMENT OF<br>JUSTICE, ALBERT GONZALES, UNITED<br>STATES TREASURY DEPARTMENT, JOHN<br>W. SNOW, INTERNAL REVENUE SERVICE,<br>MARK W. EVERSON, U.S. DISTRICT<br>COURT, GARR M. KING, LEE YEAKEL,<br>ROBERT WESTINGHOUSE, LISA PERKINS,<br>STEVEN B. BASS, TERRY L. MARTIN,<br>U.S. TAX COURT, JOEL BERGER,<br>NORTHWEST AIRLINES (a corporation),<br>and all those similarly situated or so involved,<br>marital communities spared,<br>            DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1.1 COMES NOW, David R. Myrland, Complainant hereto, seeking to support claims of felonious misconduct complained of as required by 18 U.S.C. § 4 Misprision of felony. Parties hereto will hereinafter be referred to as Petitioner/Respondent (singular masculine). Knowing now that the Courts are issuing protective orders to keep the law out of every American's reach

1    Petitioner felt compelled to believe his interpretation of the law and to report the obvious felonies

2    arising from the misenforcement proven thereby. This judicial shelter or safe harbor from

3    Congressional assurances is nothing new.

        1.2 The United States has admitted tacitly (See *Jim L. Walden v. United States, et al.*, #A-

4    05-CA-444-LY, U.S. Dist. Court, Austin, TX, Tab #8 Protective Order) that Title 26 USC's

5    provisions do not provide for any contact between the Internal Revenue Service and the Petitioner.

6    **First** - The 16th Amendment allows the Congress alone shall have the power to lay the taxes

7    ultimately sought by the IRS, but the Respondent can produce only executive branch regulations

8    to allege a liability. (See *Walden's* memorandum at ¶¶ 3.4 through (QA)5; Issue B herein ¶¶ 4.12.-

     4.19). **Second** - Congress has placed a burden upon the Respondent to prove that the office behind

9    the summons of records (26 USC 7602) has permission to leave D.C. prior to acting outside of it.

10   (See 4 USC 72; *Walden's* memorandum at ¶¶ 3.11 through (QB)4; Issue A herein ¶¶ 4.5 - 4.11).

11   **Third** - Petitioner must violate the law (26 CFR 602.101) to file a form to report domestically

12   earned profits (taxable income) on any Form 1040, because the law only permits him to file a tax

     return to report "foreign earned income." (See *Walden's* memorandum at ¶¶ 3.20 through (QC)3;

13   Issue C herein ¶¶ 4.20 - 4.25).

14       1.3 In *Walden, id.*, the United States asked for a protective order against having to answer

15   the questions for review found under Petitioner's Issues A, B, and C briefed herein, and that

16   **protective order was issued by judge Lee Yeakel on 8/2/05.** The United States was likewise

17   unable to speak of these laws, 4 USC § 72 and 26 CFR 602.101, in claims in *U.S. v. Herold, infra,*

     under his Issues A and E respectively in his (mailed on 6/23/99) motion to dismiss. On September

18   18, 1996 in *McCall, infra,* and in the instance of three other Supreme Court petitioners thereafter,

19   the Supreme Court's denial of certiorari spared Respondent the discomfort of having to discuss the

20   law. (See *McCall v. C.I.R.*, S.Ct. #96-5871; *Bryan v. C.I.R.*, S.Ct. #96-6997; *Santangelo v. C.I.R.*,

     S.Ct. #96-6935; *Talmage v. C.I.R.*, S.Ct. #97-5299).

21       1.4 In *U.S. v. Herold*, U.S. Dist. Court, Portland, Oregon, # CR 99-161-KI (prosecution for

22   26 USC 7203 failure to file return(s), 3 counts), the Court allowed Respondent to remain silent as

23   to certain claims also briefed herein. For four months that Court allowed the Respondent to

24   destroy Mr. Herold's affairs and contracting business to where he had to plead to one count of

25   failure to file so he could get back to work to support his family. Judge Garr M. King was fully

26

1   aware of all of this, he was reminded of the Court's duties, and he was pleaded with to hold a

2   hearing and to hold the IRS to the letter of the law, but he refused.

3       1.5 Indeed, to raise issues concerning applicable provisions in American courts is to violate

4   the law against frivolity. The list below is an accounting of efforts made to obtain indulgence of
    briefed statutory challenges in common with those raised herein.

5

6   **Tax Court docket number**:

7   #11315-94 Chris Bernsdorff was penalized $1000.00 for asking Tax Court to indulge issues
    concerning applicable provisions, *e.g.*, 26 USC § 83 and others.

8   #15685-94 Susan Eckles was penalized $3000.00 for asking Tax Court to indulge issues
    concerning applicable provisions, *e.g.*, 26 USC § 83 and others.

9

10  #3176-95 Robert and Mauris Justice were penalized $3750.00 for asking Tax Court to
    indulge issues concerning applicable provisions, *e.g.*, 26 USC § 83 and others.

11  #1610-95 Richard and Pamela Bryan were threatened with penalties for asking Tax Court to

12  indulge issues concerning applicable provisions, *e.g.*, 26 USC § 83 and others.

13  #8766-95 William Santangelo was penalized for asking Tax Court to indulge issues
    concerning applicable provisions, *e.g.*, 26 USC § 83 and others. (See Memorandum Opinion,

14  filed Oct.2, 1995, pg.13, $2,500.00).

15  #339-95 Stephen Talmage was penalized $6500.00 for offering to concede all facts in
    exchange for "how to comply with § 83". (See Order and Decision, 3/11/96, pg.8, 19, 20).

16

17  *Santangelo*, **9th Cir**.App.#95-70866, and *Bryan*, **9th Cir**.App. #95-70800, $2000.00 each.

18      1.6 In actions under 5 USC § 702 (District Court, Seattle, Civil #s C95-1001R filed

19  6/30/95; C95-1246(C)R filed 8/11/95), the Court (Chief Judge Rothstein, two violations of 18
    USC § 242) decided that Sovereign Immunity and 26 USC § 7421 supersede the Citizen's Right to

20  know about the law, regardless of its applicability. U.S. Tax Court cannot say with any certainty

21  whether it sits to decide issues at law, or if it sits to penalize those who dare raise said issues (See

22  ¶ 5.6, *infra*), and yet it feels free to destroy those Citizens with a genuine desire to comply with the

23  law. The Respondent's silence and oppression are judicially proven and exposed by these
    [decisions]. The Respondent's disregard for the right of the Petitioner to arrange his affairs

24  according to law is represented by many cases through which one can see a wall between the

25  laborer and the statutory provisions to which he [is subject], the provisions relied upon herein.

26

MEMORANDUM IN SUPPORT of Complaint
pursuant to 18 U.S.C. § 4 Misprision of felony.    Page 3 of 58

Being self taught and in court for his first time(s), Petitioner hardly claims to have done this work flawlessly, but for one who wanted only to prepare tax returns to go to this length just to find the truth surely exhausted the remedy purportedly available in the executive and judicial branches.

1.7 In case law (Supreme Court) found at ¶ 4.34, *infra*, it becomes clear that these litigants were precisely on point, that they were anything but frivolous in their claims under 26 USC § 83, and that those "courts" even contradicted the DOJ and S.Ct. to call taxpayers "frivolous" so as to fine them for being correct and for believing in Congress, for attempting to change the IRS with the law.

1.8 Petitioner is in real danger of being falsely arrested and imprisoned, falsely charged, libeled, slandered, and stands to lose everything, tangible and intangible, to his servants. This Complaint should quash allegations of *willfulness* for those who join it, and it's having been filed as required by law should ensure that any and all Grand Juries shall have access to this Complaint in any deliberations involving a controversy under 26 USC. Complainants hereto are not and will never be *willfully* in violation of anything.

**Petitioner has relied upon nothing more than the following maxims/axioms:**

1. *Congress* may lay and collect income taxes, as authorized by the 16th Amendment. Congress must name the subject of any income tax.

2. The law is perfect. All Americans have the right to access the law and to know of its proper application and operation, even tax law.

3. The law must be complied with – all of it, even by the IRS, even 26 CFR 1.83-3(g), 1.1001-1(a), and 602.101.

4. The law must be applied openly and with indifference.

5. Statutes and regulations are intrinsic evidence. To contradict a statutory claim one must either prove, 1) the statute is unconstitutional, 2) the interpretation of the statute is flawed, or 3) the existence of applicable exceptions to the statute under which the claim is made.

6. *Expressio unius est exclusio alterius*/Clear language/Void for vagueness. By denying access to tax law the individual is deprived of access to an entire branch of gov't (legislature) as it relates to an entire title of the United States Code (taxation without representation). In the silence evaporates one's rights to arrange personal affairs according to <u>law</u> (IRS publications are not law).

7. Statutory definitions are not "inclusions." A definition ceases to be a definition if the term "includes" is interpreted as a term which expands the definition to elements not mentioned. A definition excludes all non-essential elements by not listing them.

8. Tax Code (26 USC) § 83 applies to any and all compensation for services. "Section 83(a) explains how property received in exchange for services is taxed." (See 956 F.2d at 498 (CA5 1992)).

9. Fair market value (FMV) of property is determined by an arm's length transaction. FMV equals contract value.

10. Cost is excludible or deductible from gross income. Labor is property, all property is cost under the law; labor's value is cost, not profit.

11. Only Congress writes the law. Administrative regulations can't deviate from statute because regulations aren't written by Congress.

## II. INTRODUCTION TO MEMORANDUM.

2.1 With this Memorandum Petitioner seeks to illustrate his claim that statute, in this instance, is written in very clear language and is protective of his property. Congress will find that law operates in ways contrary to routine. While the Respondent *claims* otherwise, it possesses <u>no</u> lawful authority or statutory basis for its claim that 26 USC applies to the Petitioner, and it lacks the requisite leave under 4 USC § 72 which might allow the Respondent to speak to the Petitioner. This challenge is identical to that made in *Brown & Williamson v. F.D.A.*, the challenge that a federal agency such as the IRS has no statutory authority to act as complained of.

2.3 In addition, the Respondent has expressly instructed the Petitioner, in writing, that the amounts now deemed gross income are rightfully deemed to be a cost, an amount <u>deductible from gross</u> income under the law.

2.4 Because these claims are founded upon statute's place in American jurisprudence, anybody protesting Petitioner's reliance upon statute can readily be termed "anti-Congress" and "anti-government"; *due process protestors*. **Exhibits to this verified Memorandum are as follows:**

**Exhibit 1.** Protective Order issued by U.S. Dist. Court (Austin, TX) in *Walden, supra*. **(Tab #8).**

**Exhibit 2**. 26 CFR 1.83-6 amendment described. See also - "**Proposed Regulations, ¶ 49,538, Proposed Amendments of Regulations (EE-81-88)**, Federal Register 12/5/94." **(Tab #9)**.

**Exhibit 3**. Affidavit of Tim Garrison, accountant of thirty years, describing the arbitrary elements of dealing directly with the IRS on behalf of clients with tax controversies. **(Tab #10)**.

**Exhibit 4**. IRS Publication 17 "Tax Guide for Individuals" excerpts showing reflection of statutes claimed by Petitioner to have been violated. Here, the IRS clearly states that <u>all</u> property is a cost, and that Petitioner's cost is the value of personal services. **(Tab #11)**.

**Exhibit 5**. Three annually consecutive copies of 26 CFR 602.101 as amended showing its evolvement over such period regarding return filing requirements found there. Included is Treasury Decision ("T.D.") 8335 which caused the *amendment* to this regulation. **(Tab #12)**.

## III. STATUTORY INTERPRETATION & AUTHORITIES.

3.1 Prior to statutory interpretation and analysis the Petitioner would like to review the maxims, axioms, and thresholds of due process by which this research was guided and which duly confine the conclusions set forth herein. This memorandum is an explanation of precisely how the Tax Code operates in many aspects. Cogent refutation places the speaker of such ahead of all DOJ and IRS attorneys, and worlds beyond every federal judge, who all have been unable for years to so speak, as it relates to the competent application of tax law to fact.

### A. Statutory language is of primary import.

3.2 <u>In state courts</u>, "Whether the legislature acted wisely by creating the challenged restriction is not a proper subject for judicial determination. *McKinney v. Estate of McDonald*, 71 Wash.2d 262, 264, 427 P.2d 974 (1967); *Port of Tacoma v. Parosa*, 52 Wash.2d 181, 192, 324 P.2d 438 (1958). The fact that the legislature made no exception for minors does not give rise to some latent judicial power to do so by means of a volunteered additional proviso. This is true even if it could be said the legislative omission was inadvertent. *State v. Roth*, 78 Wash.2d 711, 715, 479 P.2d 55 (1971); *Boeing v. King County*, 75 Wash.2d 160, 166, 449 P.2d 404 (1969); *State ex rel. Hagan v. Chinook Hotel*, 65 Wash.2d 573, 578, 399 P.2d 8 (1965); *Vannoy v. Pacific Power and Light Company*, 59 Wash.2d 623, 629, 369 P.2d 848 (1962). If there is a need for such an

exception, it must be initiated by the legislature, not by the courts. *Boeing v. King County, supra;*
*State ex rel. Hagan v. Chinook Hotel, supra.*" [1] And in federal courts -

"The particular need for making the judiciary independent was elaborately pointed out by
Alexander Hamilton in the Federalist, No.78, from which we excerpt the following:

"The executive not only dispenses the honors, but holds the sword of the community.
The Legislature not only commands the purse, but prescribes the rules by which the
duties and rights of every citizen are to be regulated. The judiciary, on the contrary,
***has no influence*** over either the sword or the purse; ***no direction*** either of the
strength or of the wealth of the society; and ***can take no active resolution whatever.***
***It may truly be said to have neither force nor will, but merely judgment.***" [2]

3.3 "It is elementary that the meaning of a statute must, in the first instance, be sought in
the language in which the act is framed, and if that is plain, and if the law is within the
constitutional authority of the law-making body which passed it, the sole function of the court is to
enforce it according to its terms. *Lake County v. Rollins*, 130 U.S. 662, 670, 671; *Bate*
*Refrigerating Co. v. Sulzberger*, 157 U.S. 1, 33; *United States v. Lexington Mill and Elevator Co.,*
232 U.S. 399, 409; *United States v. Bank*, 234 U.S. 245, 258." [3] On state and federal levels, strict
construction and hewing to the law with indifference is a mandate and axiom.

3.4 While executive branch officials may enjoy various delegations of regulatory authority,
it is Congress' enactments within which those officials must stay when promulgating regulations.
(See *Brown & Williamson v. F.D.A.*, 153 F.3d 155, 160-167 (CA4 1998), aff'd 529 U.S. 120
(2000) (FDA stripped of tobacco enforcement authority for lack of statutory basis)). Regulation
cannot deviate from statute or it is void. The Secretary of the Treasury is bound by statute.
Congressional intent is the deciding factor in considering the validity of a regulation. [4] What does
not exist in regulation or statute does not exist at all. [5]

---

[1] See *Cook v. State*, 83 Wash.2d 725, 735, 521 P.2d 725 (1974).
[2] See *Evans v. Gore*, 253 U.S. 245, 249, 40 S.Ct. 550, 551 (1920).
[3] See *Carminetti v. U.S.*, 242 U.S. 470, 485, 489-493 (1916).
[4] See *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *U.S. v. Larinoff*, 431 U.S. 864, 872-873
(1976); *U.S. v. Calamaro*, 354 U.S. 351, 359 (1956); *Koshland v. Helvering*, 298 U.S. 441, 446-447
(1936); *Manhattan General Equip. Co. v. C.I.R.*, 297 U.S. 129, 134, 54 S.Ct. 397, 399 (1936); *Tracy v.
Swartout*, 10 Pet. 354, 359 (1836).
[5] See *Carminetti v. U.S.*, 242 U.S. 470, 485, 489-493 (1916), citing (on 485) *Lake County v. Rollins*, 130
U.S. 662, 670, 671; *Bate Refrigerating Co. v. Sulzberger*, 157 U.S. 1, 33; *U.S. v. Lexington Mill and
Elevator Co.*, 232 U.S. 399, 409; *U.S. v. Bank*, 234 U.S. 245, 258; *Security Bank of Minnesota v. C.I.R.,*

3.5 All can see from this supported dialog that legislation and its intent, on state and federal levels, is the governing factor in determining unlawfulness or legality, and that no agency or court has the authority to deviate from it or expand its application to subjects not expressly implicated or addressed. It is *Brown*, and *Chevron*, *infra*, which provide the prescription for deciding Petitioner's challenges, all of which are founded squarely upon strict interpretation of statutory language. These show a lack of statutory authority at the foundation of certain modes of enforcement by the Respondent. The analysis of statute in *Brown*, appellate decision (CA4 1998), serves as an exquisite example of how Petitioner hopes any Court will approach these issues, as due process requires.

### B. Statutory interpretation must be strict.

3.6 What this case will evoke from the Respondent is either silence regarding the challenge and libel in the form of name-calling on the record, *i.e.*, "tax protester," "lowly taxpayer," or the Respondent will challenge Petitioner's interpretation of statute with a logical contradiction. In such an instance as the latter, a particular approach to the controversy must be taken.

> "*The parties provide vastly differing interpretations of the statutory language, and both contend that the language clearly supports their position.*"

> "The Commissioner's argument has considerable force, if one focuses solely on the language of sections 1281 and 1283 and divorces them from the broader statutory context. But we cannot do that. The Supreme Court has noted that, "*the true meaning of a single section of a statute in a setting as complex as that of the revenue acts, however precise its language, cannot be ascertained if it be considered apart from related sections, or if the mind be isolated from the history of the income tax legislation of which it is an integral part.*" (Cite omitted) According to the Court, the construing court's duty is "*to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested.*'" (Cite omitted) The circumstances of the enactment of particular legislation may be particular relevant to this inquiry. (Cite omitted) *Finally, when there is reasonable doubt about the meaning of a revenue statute, the doubt is resolved in favor of those taxed.* (Cite omitted)

994 F.2d 432, 436 (CA8 1993); *Washington Red Raspberry Comm'n v. U.S.*, 657 F.Supp. 537, 545 (1987); *Forging Industry Ass'n v. Secretary of Labor*, 748 F.2d 211, 213 (1984); *Community for Creative Non-violence v. Kerrigan*, 865 F.2d 382, 387-91 (1988); *Iglesias v. U.S.*, 848 F.2d 362, 367 (CA2 1988); *Bank of New York v. U.S.*, 471 F.2d 247, 250 (CA8 1973); *Fidelity Philadelphia Trust Co. v. U.S.*, 122 F.Supp. 551, 553 at [3,4].

As in all cases of statutory interpretation, *we must start with the text of the statute.* But we cannot simply focus on sections 1281 through 1283 because they do not exist in a vacuum. *Rather, we must consider the context provided by the more general statutory scheme of which [they] are a part."* [6]

"Thus, the statutory scheme into which [the provisions] fit shows a concern with the treatment of discounted obligations. *We find no mention* in this scheme of the treatment of bank loans made in the ordinary course of business. Given this context, we would expect that if Congress initially covered loans without discount, as the commissioner contends, *it would provide language* clearly stating such an intention. We next examine the statutory text to see if it contains such a clear statement.

We conclude that the statutory text does not clearly cover obligations containing only stated interest. First, nothing in either the sections at issue or in the broader statutory scheme specifically refers to loans [of that type].

Second, we conclude that the actual text of the provisions is ambiguous with regard to whether such obligations are covered." [7]

"We are not convinced that the language is as clear as the Commissioner contends." [8]

"An examination of the statutory context, *the text of the relevant provisions,* and the legislative history convinces us that the construction that is "most harmonious with its scheme and with the general purposes that Congress manifested." (Cite omitted) Moreover, because the application of [the provision] to these loans is ambiguous, we follow the venerable rule that "[i]n the interpretation of statutes levying taxes . . .*[courts must not] enlarge their operation so as to embrace matters not specifically pointed out.* In case of doubt they are construed most strongly against the government."

"'I respectfully dissent. If the [statutory] intent of Congress is clear, that is the end of the matter.' *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)." [9]

3.7 This explanation of how to interpret statute only confirms the assertion that statute must clearly impose the duties and requirements over which the Respondent may seek to adversely act against the Petitioner.

///
///
///
///

---

[6] See *Security Bank of Minnesota v. Commissioner of IRS,* 994 F.2d 432, 435-36 (CA8 1993).
[7] *Id.,* at 437.
[8] *Id.,* at 438.
[9] *Id.,* at 441.

### C. Statutory definitions and the maxim of *expressio unius est exclusio alterius*.

3.8 Petitioner is basing his claims on statute alone, confining his conclusions to those supported by the application of well settled and accepted canons of statutory construction. Congress' failure to identify the Petitioner in statutory definitions is therefore interpreted as legislative intent that he not be a subject of the statutory scheme upon which the definition is said to operate. Because tax statutes are to be strictly construed, the maxim of *expressio unius est exclusio alterius* is an appropriate interpretive guide. (See maxim applied in *Tennesee Valley Auth. v. Hill*, 437 U.S. 153, 188 (1978); *Passenger Corp. v. Passengers Assoc.*, 414 U.S. 453, 458 (1974); *Bingler v. Johnson*, 394 U.S. 741, 749 (1969); *Evans v. Newton*, 382 U.S. 296, 311 (1966); *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 375 (1958)).

3.9 Petitioner is challenging the statutory authority of the Respondent, and does so with statutory definitions. A "definition" by its terms excludes non-essential elements by mentioning only those things to which it shall apply.

> "**Define.** To explain or *state the exact meaning* of words and phrases; to state explicitly; *to limit*; to determine essential qualities of; to determine *the precise signification* of; to settle; to establish or prescribe authoritatively; to make clear. (Cite omitted)"
> "To "define" with respect to space, means to set or establish its boundaries authoritatively; to *mark the limits* of; to determine with precision or exhibit clearly the boundaries of; to *determine the end or limit*; to fix or *establish the limits*. It is the equivalent to declare, fix or establish.

> "**Definition.** A description of a thing by its properties; an explanation of the meaning of a word or term. The process of stating the exact meaning of a word by means of other words. Such a description of the thing defined, *including all essential elements and excluding all nonessential*, as *to distinguish it from all other things* and classes." [10]

3.10 Therefore, a statutory definition's failure to mention the person of the Petitioner as the subject of a tax when it defines "citizen," or as the "person" in penal statutes, excludes the Petitioner from the entire statutory scheme to which such definition is said to apply.

3.11 When a court is confronted with a challenge based on statutory definitions the Supreme Court is clear in its prescription that the specific terms of such a definition must be "met" to trigger applicability of its related statutes to any particular act, person (natural or otherwise), or thing.

---

[10] See *Black's*, 6th Edition, "define" and "definition."

1

"*Metropolitan was subject* to Title VII, however, *only if, at the time of the alleged retaliation, it met the statutory definition of* "*employer,*" *to wit:* "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. Section(s) 2000e(b). . . . *Statutes must be interpreted, if possible, to give each word some operative effect.*" [11]

". . . Thus, *Congress did not reach every transaction* in which an investor actually relies on inside information. *A person avoids liability if he does not meet the statutory definition* of an "insider[.]" [12]

"On its face, this is an attractive argument. *Petitioner urges that, in view of the severity of the result flowing from a denial of suspension of deportation, we should interpret the statute by resolving all doubts in the applicant's favor.* Cf. *United States v. Minker*, 350 U.S. 179, 187-188. *But we must adopt the plain meaning of a statute, however severe the consequences.* Cf. *Galvan v. Press*, 347 U.S. 522, 528." [13]

"*The wording of the federal statute plainly places the incidence of the tax upon the* "*producer,*" *that is, by definition, upon federally licensed distributors of gasoline such as petitioner. . . . The congressional purpose to lay the tax on the* "*producer*" *and only upon the* "*producer*" *could not be more plainly revealed.* Persuasive also that such was Congress' purpose is the fact that, if the producer does not pay the tax, the Government cannot collect it from his vendees; *the statute has no provision making the vendee liable for its payment. First Agricultural Nat. Bank v. Tax Comm'n, supra,* at 347." [14]

"*A purpose* to subject aliens, much less citizens, to *a police practice so dangerous to individual liberty as this* should not be read into an Act of Congress *in the absence of a clear and unequivocal congressional mandate.* I think the Act relied on here by the Department of Justice should not be so read. *I would hold that immigration officers are wholly without statutory authority to summon persons,* whether suspects or not, *to testify in private as* "*witnesses*" *in denaturalization matters.* For this reason I concur in the Court's judgment in this case." [15]

"*Conspicuously absent from* § 1415(e)(3), *however, is any emergency exception for dangerous students. This absence is all the more telling in light of the injunctive decree* issued in *PARC*, which permitted school officials unilaterally to remove students in "'extraordinary circumstances.'" 343 F.Supp. at 301. Given the lack of any similar exception in Mills and the close attention Congress devoted to these "landmark" decisions,

---

[11] See *Walters v. Metropolitan Enterprises, Inc. et al.*, 519 U.S. 202 (1997).
[12] See *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972).
[13] See *Jay v. Boyd*, 352 U.S. 345, 357 (1956).
[14] See *Gurley v. Rhoden*, 421 U.S. 200, 205 (1975).
[15] See *U.S. v. Minker*, 350 U.S. 179, 192 (1956).

see S.Rep. at 6, *we can only conclude that the omission was intentional; we are therefore not at liberty to engraft onto the statute an exception Congress chose not to create.*" [16]

"*It is axiomatic that the statutory definition of the term excludes unstated meanings of that term. Colautti v. Franklin,* 439 U.S. 379, 392, and n.10 (1979). Congress' use of the term "propaganda" in this statute, as indeed in other legislation, has no pejorative connotation. *As judges, it is our duty to construe legislation as it is written, not as it might be read by a layman, or as it might be understood by someone who has not even read it. If the term "political propaganda" is construed consistently with the neutral definition contained in the text of the statute itself, the constitutional concerns voiced by the District Court completely disappear.*" [17]

"As we have explained *with reference to the technical definition* of "child" contained within this statute:

> With respect to each of these legislative policy distinctions, it could be argued that the line should have been drawn at a different point and that the statutory definitions deny preferential status to [some] who share strong family ties. . . . But it is clear from our cases . . . that these are policy questions entrusted exclusively to the political branches of our Government, and *we have no judicial authority to substitute our political judgment for that of the Congress.*

*Fiallo v. Bell,* 430 U.S. 787, 798 (1977). Thus, even if Hector's relationship with her nieces closely resembles a parent-child relationship, we are constrained to hold that *Congress, through the plain language of the statute, precluded this functional approach* to defining the term[.]" [18]

"*Although agencies must be "able to change to meet new conditions arising within their sphere of authority," any expansion of agency jurisdiction must come from Congress, and not the agency itself.* 744 F.2d at 1409. Accordingly, the Court of Appeals invalidated the amended regulations." [19]

"*If Congress had intended the more circumscribed approach espoused by the Court of Appeals, there would have been some positive sign that the law was not to reach organized criminal activities that give rise to the concerns about infiltration. The language of the statute, however -- the most reliable evidence of its intent -- reveals that Congress opted for a far broader definition of the word "enterprise," and we are unconvinced by anything in the legislative history that this definition should be given less than its full effect.*" [20]

---

[16] See *Honig v. Doe,* 484 U.S. 305, 324 (1988).
[17] See *Meese v. Keene,* 481 U.S. 465, 484 (1987).
[18] See *INS v. Hector,* 479 U.S. 85, 88 (per curiam opinion) (1986).
[19] See *FRS v. Dimensional Financial Corp.,* 474 U.S. 361, 365 (1986).
[20] See *U.S. v. Turkette,* 452 U.S. 576, 593 (1981).

*"The statutory definition of the term "statement" was intended by Congress* to describe material that could be fairly used to impeach the testimony of a witness. *A major purpose of the statute was to exclude from that definition various kinds of material*[.]" [21]

"Moreover, since, with the exception of the docket fee provided by 28 U.S.C. § 1923(a), *the statutory definition of the term "costs" does not include attorney's fees, acceptance of petitioners' argument would require us to ascribe to Congress a purpose to vary the meaning of that term without either statutory language or legislative history to support the unusual construction*. . . . A judicially created compensatory remedy in addition to the express statutory remedies is inappropriate in this context." [22]

"A new § 208(a) directed the Attorney General to establish procedures permitting aliens either in the United States or at our borders to apply for "asylum." 8 U.S.C. § 1158(a). *Under § 208(a), in order to be eligible for asylum, an alien must meet the definition of "refugee" contained in § 101(a)(42)(A), a standard that also would qualify an alien seeking to immigrate under § 207.* Meeting the definition of "refugee," however, does not entitle the alien to asylum -- the decision to grant a particular application rests in the discretion of the Attorney General under § 208(a)." [23]

"On the face of the statute, *the city fails to meet the definition for either term*, since the coverage formula of § 4(b) has never been applied to it. Rather, the city comes within the Act because it is part of a covered State. *Under the plain language of the statute, then, it appears that any bailout action to exempt the city must be filed by, and seek to exempt all of, the State of Georgia.*" [24]

"*Homes that do not meet the definition may not be licensed*, and, under state law, only licensed facilities are entitled to Foster Care payments." [25]

3.12 FURTHER, while the maxim of *expressio unius est exclusio alterius* is broader in its scope than to address only statutory definitions, this clear and consistent pattern shows them to be wholly deserving of its governance. This repeated and recent restatement of this principle, the strict interpretation and application of statutory definitions, shows the challenges made herein to be made in good faith and to be correct.

3.13 From the authorities cited above it is readily gleaned that strict interpretation must govern any assessment of Petitioner's pains and penalties, status, duties, and liabilities, as it relates to 26 USC.

---

[21] See *Goldberg v. US*, 425 U.S. 94, 112 (1976).
[22] See *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714 719 (1967).
[23] See *INS v. Stevic*, 467 U.S. 407, lead opinion at fn.18 (1984).
[24] See *City of Rome v. US*, 446 U.S. 156, 167 (1980).
[25] See *Miller v. Youakim*, 440 U.S. 125, 131 (1979).

### D. Void for vagueness and taxation by clear language.

3.14 There are certain constraints on the parameters of enforcement authority, certain things that cannot be accomplished if a statute is written in a way so as to prevent the individual of average intelligence from understanding its terms. If a statute is unreasonably vague, if its language is not plain enough to convey its intent or application, it may be held to be *void for vagueness*. Below are several expressions of this standard of due process, all of which are from the U.S. Supreme Court.

> "We agree with the holdings of the District Court and the Court of Appeals on the due process doctrine of vagueness. The settled principles of that doctrine require no extensive restatement here. (fn.7) *The doctrine incorporates notions of fair notice or warning.* (fn.8) *Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement."* (fn.9) Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts. (fn.10) The statutory language at issue here, "publicly... treats contemptuously the flag of the United States...," has such scope, *e.g.*, *Street v. New York*, 394 U.S. 576 (1969) (verbal flag contempt), and at the relevant time was without the benefit of judicial clarification. (fn.11)" [26]

---

[26] See *Smith v. Gougen*, 415 U.S. 566, 572 (1974). The Court's footnotes for this paragraph are as follows:

6. Appellant correctly conceded at oral argument that Goguen's case is the first recorded Massachusetts court reading of this language. Tr. of Oral Arg. 17-18. Indeed, with the exception of one case at the turn of the century involving one of the statute's commercial misuse provisions, *Commonwealth v. R. I. Sherman Mfg. Co.*, 189 Mass. 76, 75 N.E. 71 (1905), the entire statute has been essentially devoid of state court interpretation.

7. The elements of the "void for vagueness" doctrine have been developed in a large body of precedent from this Court. The cases are categorized in, e.g., *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972). See Note, *The Void for Vagueness Doctrine in the Supreme Court*, 109 U.Pa.L.Rev. 67 (1960).

8. E.g., *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972); *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939) ("*No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids*") (citations omitted); *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926) ("*[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law*") (citations omitted).

9. E.g., *Grayned, supra* at 108; *United States v. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921) ("[T]o attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury"); *United States v. Reese*, 92 U.S. 214, 221 (1876) ("It

"Appellant's second argument, that 26-2101(c) is void for vagueness, also raises a substantial federal question-one of first impression in this Court-even though appellant fundamentally misapprehends the reach of the First Amendment in his argument that the protections of that Amendment extend to the sexual devices involved in this case. As we said in *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972):

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, *we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning.* Second, if arbitrary and discriminatory enforcement is to be prevented, *laws must provide explicit standards* for those who apply them. *A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.*" (Footnotes omitted.)

"See also *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972); *Cline v. Frink Dairy Co.*, 274 U.S. 445, 47 S. Ct. 681 (1927); *Connally v. General Construction Co.*, 269 U.S. 385 (1926)."[27]

"This ordinance is void for vagueness, both in the sense that it *"fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,"* United States v. Harriss*, 347 U.S. 612, 617, *and because it encourages arbitrary and erratic arrests and convictions. Thornhill v. Alabama*, 310 U.S. 88; *Herndon v. Lowry*, 301 U.S. 242."

"*Living under a rule of law entails various suppositions, one of which is that "[all persons] are entitled to be informed as to what the State commands or forbids."* Lanzetta v. New Jersey*, 306 U.S. 451, 453."

"*Lanzetta* is one of a well-recognized group of cases *insisting that the law give fair notice of the offending conduct*. See *Connally v. General Construction Co.*, 269 U.S. 385, 391; *Cline v. Frink Dairy Co.*, 274 U.S. 445; *United States v. Cohen Grocery Co.*, 255 U.S. 81. In the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed. *Boyce Motor Lines, Inc. v.*

---

*would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large"*).

10. E.g., *Grayned, supra*, at 109; *Smith v. California*, 361 U.S. 147, 151 (1959). Compare the less stringent requirements of the modern vagueness cases dealing with purely economic regulation. E.g., *United States v. National Dairy Products Corp.*, 372 U.S. 29 (1963) (Robinson-Patman Act).

11. See fn. 6, *supra*.

[27] See *Sewell v. Georgia*, 435 U.S. 982, 985 (1978).

*United States*, 342 U.S. 337; *United States v. National Dairy Products Corp.*, 372 U.S. 29; *United States v. Petrillo*, 332 U.S. 1." [28]

3.15 This standard extends to tax statutes. A tax must be imposed by clear and unequivocal language. Where the construction of a tax law is doubtful, the doubt is to be resolved in favor of whom upon which the tax is sought to be laid. (See *Spreckles Sugar Refining v. McClain*, 192 U.S. 397, 416 (1904); *Gould v. Gould*, 245 U.S. 151, 153 (1917); *Smietanka v. First Trust & Savings Bank*, 257 U.S. 602, 606 (1922); *Lucas v. Alexander*, 279 U.S. 573, 577 (1929); *Crooks v. Harrelson*, 282 U.S. 55 (1930); *Burnet v. Niagra Falls Brewing Co.*, 282 U.S. 648, 654 (1931); *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 508 (1932); *Gregory v. Helvering*, 293 U.S. 465, 469 (1935); *Hassett v. Welch*, 303 U.S. 303, 314 (1938); *U.S. v. Batchelder*, 442 U.S. 114, 123 (1978); *Security Bank of Minnesota v. C.I.R.*, 994 F.2d 432, 436 (CA8 1993)).

3.16 This standard adheres only to fairness, it ensures that the average taxpayer isn't unreasonably burdened or unduly assessed, and is even embodied prominently in the Constitutions of some states.

Washington Constitution, Article VII, § 5. No tax shall be levied except in pursuance of law; and *every law imposing a tax shall state distinctly the object of the same* to which only it shall be applied.

South Carolina State Constitution, Art. X, § 3. Taxes shall be levied in pursuance of law. No tax shall be levied except in pursuance of *a law which shall distinctly state the object of the same, to which object the tax shall be applied.*

3.17 This can be said to preserve part of a greater whole, a doctrine serving due process and the individual's right to understand and access the law.

*"It is a fundamental tenet of due process that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes."* Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939). A criminal statute is therefore invalid *if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden."* United States v. Harriss, 347 U.S. 612, 617 (1954). See *Connally v. General Construction Co.*, 269 U.S. 385, 391-393 (1926); *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972); *Dunn v. United States*, ante, at 112-113. So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of

---

[28] Excerpts from *Papachristou v. City of Jacksonville*, 405 U.S. 156, 172 (1972).

violating a given criminal statute. See *United States v. Evans*, 333 U.S. 483 (1948); *United States v. Brown*, 333 U.S. 18 (1948); cf. *Giaccio v. Pennsylvania*, 382 U.S. 399 (1966)." [29]

*"Criminal statutes must have an ascertainable standard of guilt or they fall for vagueness.* See *United States v. Cohen Grocery Co.*, 255 U.S. 81; *Winters v. New York*, 333 U.S. 507."* [30]

*"Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.* United States v. Harriss*, 347 U.S. 612, 617 (1954). In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged. Robinson v. United States*, 324 U.S. 282 (1945)." [31]

3.18 Statute must clearly implicate the Petitioner as an offender or taxable subject or Petitioner must be deemed to be without the scope of the subject legislation, in this instance 26 USC. The questions for review, *infra*, are clear enough, the basis for them simple enough, and the Respondent therefore cannot justify silence upon the Petitioner's queries. In such an instance, Petitioner has due process and privacy rights permitting him to be left alone by the Respondent.

## IV. PETITIONER'S STATUTORY CHALLENGES.

4.1 As directed by *Brown v. FDA, supra*, and by *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we employ the traditional tools of statutory construction to ascertain congressional intent regarding whether it intended to embrace as subject to 26 USC, chapters one, two, twenty one, and/or twenty four, the Petitioner who is a Citizen of the United States, an American, a resident of one of the fifty freely associated compact states. This is a very specific and certain political status (26 CFR 1.1-1(c)) hereby claimed by the Petitioner for the purposes of 26 USC.

4.2 We begin with the basic proposition that agency power is "not the power to make law. Rather, it is 'the power to adopt regulations to carry into effect *the will of Congress as expressed by the statute*.' "*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213-14 (1976) (quoting *Manhattan Gen. Equip. Co. v. Commission*, 297 U.S. 129, 134 (1936)). "[I]t [is] the judiciary's duty "to say

---

[29] See *United States v. Batchelder*, 442 U.S. 114, 123 (1979).
[30] See *Williams v. United States*, 341 U.S. 97, 100 (1951).
[31] See *United States v. National Dairy Corp.*, 372 U.S. 29, 32 (1963). See also *Browning-Ferris Industries of Vermont v. Kelco Disposal, Inc.*, 492 U.S. 257, 297, 300-301 (1989); *U.S. v. Classic*, 313 U.S. 299, 331 (1941).

what the law is." *Marbury v. Madison*, 1 Cranch. 137, 177 (1803) (Marshal, C.J.)." [32] Thus, our initial inquiry is whether Congress intended to subject the Petitioner to the 26 USC income taxes. (See *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (stating that "[i]t is axiomatic that an administrative agency's power to promulgate legislative regulations *is limited to the authority delegated by Congress*"); *INS v. Chadha*, 462 U.S. 919, 953 n.16, 955 n.19 (1983) (providing that agency action "is always subject to check by the terms of the legislation that authorized it; and if that authority is exceeded it is open to judicial review" and "Congress ultimately controls administrative agencies in the legislation that creates them")).

4.3 Under *Chevron*, and *Brown*, we first consider the intent of Congress because "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." See *Chevron*, 467 U.S. at 842-43. It is only if the intent of Congress is ambiguous that we defer to a permissible interpretation by the agency. *Chevron*, 467 U.S. at 843.

4.4 The starting point in every case involving construction of a statute is the language of the statute itself. (See *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (Powell, J., concurring)); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, N.A., 511 U.S. 164, 173-175 (1994)).

**A. Respondent wants for requisite statutory authority to act against Petitioner.**

4.5 In the Tax Code, Congress has indeed named a subject of the tax or procedure in other commonly applied portions of the Tax Code's statutory scheme, such as in its chapter two:

§ 1402(b) . . . *An individual who is not a citizen of the United States* but who is a resident of the Commonwealth of Puerto Rico, the Virgin Islands, Guam, or American Samoa *shall not, for the purposes of this chapter be considered to be a nonresident alien individual.*

26 CFR 1.1402(b)-1(d) Nonresident aliens. A nonresident alien individual never has self-employment income. While *a nonresident alien individual* who derives income from a trade or business carried on within the United States, Puerto Rico, the Virgin Islands, Guam, or American Samoa... *may be subject to the applicable income tax provisions* on such income, such nonresident alien individual *will not be subject to the tax on self-employment income*, since any net earnings which he may have...do not constitute self-employment income. *For the purposes of the tax on self-employment income, an*

---

[32] See *U.S. v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 1633 (1995).

*individual who is not a citizen of the United States but who is a resident of the Commonwealth of Puerto Rico, the Virgin Islands, or . . . of Guam or American Samoa is not considered to be a nonresident alien individual.*

And in Tax Code chapter 21, Congress named a subject:

§ 3121(e) An individual who is *a citizen of the Commonwealth of Puerto Rico* (but not otherwise a citizen of the United States) *shall be considered . . . as a citizen* of the United States.

26 CFR 31.0-2(a)(1) The terms defined in the provisions of law contained in the regulations in this part shall have the meaning so assigned to them.

26 CFR 31.3121(e)-1(b) ...The term "citizen of the United States" includes a citizen of the Commonwealth of Puerto Rico or the Virgin Islands, and, effective January 1, 1961, a citizen of Guam or American Samoa.

And in Social Security administration legislation Congress named a beneficiary:

42 USC § 411(b)(2) The net earnings from self-employment, if such net earnings for the taxable year are less than $400. *An individual who is not a citizen of the United States* but who is a resident of the Commonwealth of Puerto Rico, the Virgin Islands, Guam, or American Samoa *shall not*, for the purpose of this subsection, *be considered to be a nonresident alien individual.* In the case of church employee income, the special rules of subsection (i)(2) of this section shall apply for purposes of paragraph (2).

And in Tax Code chapter 24, Congress has named a subject of Form W-4 requirements:

§ 3401(c) Employee.- For the purposes of this chapter, the term "employee" includes an officer, employee, or elected official of the United States, a State, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any one or more of the foregoing. The term "employee" also includes an officer of a corporation.

4.6 And these are the only other chapters of the Tax Code, other than chapter one, which the Respondent employs against or upon the individual, employee or self employed, as it relates to the imposition of taxes under 26 USC and compensation for personal services performed by the Petitioner. None of these subjects, expressly named by Congress, happen to be the Petitioner.

4.7 In those chapters referenced above, all subjects of these taxes were found in statutes called "definitions," but in chapter 1 of 26 USC we find no section called "definitions" which even remotely mentions a subject or "citizen" as we found so clearly identified in these other chapters.

1 These definitions are merely a simple expression or exercise of the power conferred upon

2 Congress by U.S. Constitution, Amdt. 16, to wit:

3      U.S. Constitution, Amdt. 16, February 25, 1913. "The *Congress shall have power to lay*

4      *and collect taxes on incomes*, from whatever source derived, without apportionment
       among the several States and without regard to any census or enumeration."

5      "*But the section contains nothing to that effect*, and, therefore, *to uphold* [IRS Commr's]

6      addition to the tax *would be to hold that it may be imposed by regulation, which, of
       course, the law does not permit. U.S. v. Calamaro*, 354 US 351, 359; *Koshland v.*

7      *Helvering*, 298 US 441, 446-67; *Manhattan Equipment Co. v. Commissioner*, 297 US 129,
       134." [33]

8

9      4.8  Again, while Congress has clearly identified a subject in chapters of the Tax Code

10 which impose taxes which clearly <u>do not</u> pertain to the Petitioner but rather apply to people with

11 other citizenships and occupations and their "income," Congress has at the same time <u>never</u>

12 identified a subject citizen in chapter one, the Petitioner's citizenship finding its sole mention in

13 regulation alone, in 26 CFR 1.1-1(a), (b), (c) (fn.[34] ); this **regulation** is not the work or intent of

14 Congress. Congress has never named the Petitioner, a Citizen of the United States, as subject to

any tax imposed under the provisions of 26 USC.

**Under Issue (A):**

15      4.9  Because executive branch officials have no legislative authority, their regulations

16 cannot add to or detract from those enactments of Congress, our lawmakers. While Congress has

17 taken the time to name a subject of taxes imposed by chapters other than chapter 1, it has failed to

18 identify the Petitioner, in any chapter, as a subject of any tax imposed by 26 USC.

19      4.10  Petitioner has a right to know how the law operates to impose the Respondent's tax,

20 the Respondent has the burden of proof under the weight of Petitioner's evidence, and Petitioner

21 prevails when plain discussion about the provisions relied upon cannot be obtained. Nothing in 26

22 ---

[33] See *C.I.R. v. Acker*, 361 U.S. 87, 92 (1959).

23 [34] See 26 CFR 1.1-1 *Income tax on individuals*. (a) General rule. (1) *Section 1 of the Code imposes an income tax on the income of every individual who is a citizen or resident of the United States* . . .

24      (b) Citizens or residents of the United States liable to tax. *In general, all citizens of the United States, wherever resident*, and all resident alien individuals *are liable to the income taxes imposed by the Code* whether the income is received from sources within or without the United States. . .

25      (c) Who is a citizen. *Every person born or naturalized in the United States and subject to its jurisdiction* is a citizen. . .

26

MEMORANDUM IN SUPPORT of Complaint
pursuant to 18 U.S.C. § 4 Misprision of felony.    Page 20 of 58

USC even remotely implicates the Petitioner (private sector employee, self employed, capital gains) as the subject of any tax imposed thereunder.

4.11 The mention of Petitioner's Citizenship in mere regulation is a grossly insufficient basis upon which to tax the Petitioner. The Secretary of the Treasury has imposed a tax on the Petitioner through 26 CFR 1.1-1(c), but has done so without authority to do so, the authority to lay income tax having been reserved to Congress and Congress alone. Said regulation is null and void for derogation of statute. This is Petitioner's belief, and until it is dispelled with open discussion and logical application to the contrary Petitioner will continue to act upon it.

**Questions under Issue (A):**

(QA)1. By what statutory authority does the Respondent seek to tax the Petitioner? Can Respondent point to authorities naming as subject one with the political status and *situs* of the Petitioner?

(QA)2. Is the citizen in §§ 1402(b) and 3121(e) really the same Citizen defined in 26 CFR 1.1-1(c)?

(QA)3. Is the Petitioner rightfully deemed to be the employee in § 3401(c)?

(QA)4. Can the Secretary of the Treasury lay an income tax by naming a subject to the chapter one income tax where Congress has not?

(QA)5. Until Congress names the Petitioner as subject, the Respondent is powerless to even approach the Petitioner regarding any matter governed by 26 USC for lack of personam jurisdiction and statutory authority, right?

**B. Respondent wants for requisite statutory leave to operate.**

4.12 Looking again only to the intent, *a fortiori*, the mandate, of Congress to first establish the limitations of agency authority, as one must, we find a very broad and general provision doubtlessly rooted in the Founding Fathers' creation of a federal government with limited powers. Congress has chosen to restrict the activities of certain offices (all of them) attached to the seat of government.

4 USC § 72. Public Offices; at seat of Government. All offices attached to the seat of government shall be exercised in the District of Columbia, and not elsewhere, except as otherwise expressly provided by law. (July 30, 1947, ch. 389, 61 Stat. 643.)

4.13 It is the Secretary of the Treasury who controls the IRS and who writes all needful rules and regulations for the enforcement of 26 USC (See 26 USC §§ 7801, 7805), so it is that Office, or perhaps the Office of the Commissioner of Internal Revenue, which must acquire the leave required by 4 USC § 72. Respondent will claim in error that 26 USC § 7621 is the grant of leave required under 4 USC § 72, claiming that the office of the President of the United States is somehow the same office occupied by the Commissioner of Internal Revenue and/or the Secretary of the Treasury.

26 USC § 7621 Internal Revenue Districts.
    (a) Establishment and alteration.-*The President* shall establish convenient internal revenue districts for the purpose of administering the internal revenue laws. The President may from time to time alter such districts.
    (b) Boundaries.-For the purpose mentioned in subsection (a), *the President* may subdivide any State or the District of Columbia, or may unite into one district two or more States.

4.14 The fault of such a claim is further exposed by the *definitions* of the terms "State" and "United States" that apply to the entire Tax Code.

26 USC § 7701 Definitions.
    (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof-
    (9) United States.-The term "United States" when used in a geographical sense includes only the States and the District of Columbia.
    (10) State.-The term "State" shall be construed to include the District of Columbia, where such construction is necessary to carry out provisions of this title.

Note: Under this definition, Alaska and Hawaii were removed from applicability upon receiving freely associated compact state status (See P.L. 86-624, § 18(j); P.L. 86-70, § 22(a)). The fifty freely associated compact states are "countries" (See 28 USC § 297(b)).

4.15 A "definition" is a limitation upon the term defined (See any dictionary). Petitioner charges that Congress has limited the Office of the Secretary of the Treasury to operation in Washington D.C. and U.S. possessions, having never granted <u>express</u> statutory leave to operate elsewhere.

4.16 Petitioner has challenged Respondent's (Sec. of Treas.) **statutory authority to** operate outside of Washington, D.C.. Proof of jurisdiction is the Respondent's burden.. [35]

**Under Issue (B):**

4.17 Congress requires that the Office of the Secretary of the Treasury receive statutory leave to operate outside Washington, D.C., the seat of government of the United States. If the Secretary of the Treasury (hereinafter "Secretary") has such permission, Petitioner demands that it be disclosed, in plain language, and that the statute granting such leave be cogently ruled upon.

4.18 The Internal Revenue Code is not enforceable against the Petitioner for the Secretary's lack of the requisite leave to operate under 4 USC § 72.

4.19 The Secretary and his delegates, *i.e.*, Commissioner of Internal Revenue, have no authority to operate outside Washington, D.C., as required under 4 USC § 72. No such authority is found in the language of 26 USC § 7621 which only applies to the Office of the President of the United States and "revenue districts." This is Petitioner's belief, and until it is dispelled with open discussion and logical application to the contrary Petitioner will continue to act upon it.

**Questions under Issue (B):**

(QB)1. Is the Office of the President the same Office as that held by the Secretary? If not, can § 7621 be said to be grant of leave to the Secretary to operate outside of Washington, D.C.?

(QB)2. Where is the Secretary of the Treasury's authority to operate outside of Washington D.C.?

(QB)3. Is 26 USC § 7621 a grant of leave for the Secretary of the Treasury to operate outside of Washington D.C.?

(QB)4. If the IRS cannot supply proof of requisite leave under 4 USC § 72, can Petitioner lawfully be approached by the Respondent in any way?

///

---

[35] See *KVOS v. Associated Press*, 299 U.S. 269, 57 S.Ct. 197, 200, 31 L.Ed. 183 (1936): "…[w]here the allegations…are challenged by the defendant in an appropriate manner, *the plaintiff must support them by competent proof.*" Also, from *F & S Contr. Co. v. Jensen*, 337 F.2d 160, 161-162, (10th Cir.1963): "[I]t is now settled that when there is an issue as to the sufficiency of jurisdictional amount, the burden of providing jurisdiction is on the party asserting it.* City of Lauden, Okla. v. Chapman*, 257 F.2d 601 (10th Cir.); *McNutt v. General Motors Acceptance Corp.*, 289 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135. Further more, statutes conferring jurisdiction on federal courts are to be strictly construed *and doubts resolved against federal court's jurisdiction*. *Aetna Ins. Co. v. Chicago R.I. & P.R.R.*, 229 F.2d 584 (10th Cir.); *Hely v. Ratta*, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248."

## C. Petitioner must violate regulation to satisfy the IRS in its demands for a Form 1040, other.

4.20 Regulations promulgated by the Office of Management and Budget (OMB), which prescribe the control number to be displayed on particular tax forms, require the filing of forms other than those which will be accepted by the Respondent. The Respondent will accept only forms that violate pertinent regulations.

4.21 Regulation 26 CFR 602.101 prescribes the form bearing the OMB control #1545-0067. This form is the Foreign Earned Income Form, Form 2555. (fn. [36]) Petitioner understands that no Form 1040, be it the 1040EZ, the 1040A, or the Form 1040, bears the OMB control number #1545-0067. It is clear that, for the Petitioner to file any form other than the form #1545-0067, Petitioner must violate 26 CFR 602.101. Since regulations govern, surely they must be complied with.

4.22 Unless Petitioner has earned *foreign earned income* he can see no reason to file the required form; Form 2555 Foreign Earned Income.

4.23 FURTHER, Respondent agrees that the Form 1040 is not the proper form for the Petitioner to file.

**Under Issue (C):**

4.24 Petitioner has no requirement to file any form or tax return other than the Form 2555 Foreign Earned Income return. To file any form other than the Form 2555, Petitioner must violate 26 CFR 602.101, a regulation that must be complied with. Because only the Form 2555 is prescribed to the Petitioner, the Petitioner has no filing requirements due to the fact that all compensation received during any years in controversy is rightfully deemed to not be "foreign earned."

4.25 Petitioner has no gross income to report on the only form that the law permits one with Petitioner's status to file. The Respondent has acted in total disregard for the provisions of 26 CFR 602.101. This is Petitioner's belief, and until it is dispelled with open discussion and logical application of law to the contrary Petitioner will continue to act upon it.

///

---

[36] See **Exhibit 5, Tab #12**, the Form 2555 and Forms 1040, 1040A, and 1040EZ, as well as 26 CFR 602.101 and Treasury Decision 8335, see 26 CFR 602.101 at 1.1-1.

**Questions under Issue (C):**

(QC)1. What is the OMB number of the form prescribed under 26 CFR 602.101 as that form required of the Petitioner?

(QC)2. Can the Petitioner ignore the provisions of 26 CFR 602.101 and rather file the form that the Respondent will accept?

(QC)3. If the Petitioner can ignore 26 CFR 602.101, what are all of the other regulations, statutes, or other provisions that the Petitioner can simply ignore?

### D. Petitioner violates 26 USC §§ 83, 212, 1001, 1011, and 1012 when reporting compensation for services as gross income.

4.26 For the past several taxable years the Petitioner received compensation for services actually rendered. "Section 83(a) explains how property received in exchange for services is taxed." [37] Section 83 applies to all compensation paid for services of corporations, and for the services of individuals. [38] Labor is property. [39] The fair market value ("FMV") of property is established through the terms of an "arm's length transaction." [40]

4.27 With plain language § 83(a) requires that, when compensation is received in [exchange] for services, from the FMV of the compensation, the excess over the "amount paid" (cost) is to be included in gross income.

§ 83 "Property Transferred in Connection with the Performance of Services.
(a) If, in connection with the performance of services, property is transferred..., *the excess of-*
(1) the fair market value of such property...*over,*
(2) *the amount (if any) paid* for such property . . . shall be included in the gross income of the person who performed such services . . ."

---

[37] See *Montelepre Systemed, Inc. v. C.I.R.*, 956 F.2d 496, 498 at [1] (CA5 1992).
[38] See 26 CFR 1.83-3(e), (f); *MacNaughton v. C.I.R.*, 888 F.2d 418 (CA6 1989); *Pledger v. C.I.R.*, 641 F.2d 287 (CA5 1981); *Alves v. C.I.R.*, 734 F.2d 478, 481 (CA9 1984); *Klingler Electric Co. v. C.I.R.*, 776 F.Supp. 1158, 1164 at [1] (S.D.Miss. 1991); *Robinson v. C.I.R.*, 82 USTC 444 (1984); *Cohn v. C.I.R.*, 73 USTC 443, 446 (1979).
[39] See *Butcher's Union Co. v. Crescent City Co.*, 111 U.S. 746, 757 (1883); *Slaughterhouse Case*, 83 U.S. 395, 419; 16 Wall. 36-130 (1873); *Adair v. U.S.*, 208 U.S. 161, 172 (1908); *Coppage v. Kansas*, 236 U.S. 1 (1915); *Black's*, 6th, "property."
[40] See 27 CFR 70.150(b); *U.S. v. Cartwright*, 411 U.S. 546, 552 (1973); *Hicks v. U.S.*, 335 F.Supp. 474, 481 (Colo.1971); *Pledger v. C.I.R., supra; Black's*, 6th, "Arm's length transaction."

4.28 This requires that the "amount paid" for the compensation be established, the "excess" identified, and that such excess be included in gross income. To figure that "amount paid" or cost of the compensation, regulation requires that § 1012 and the regulations thereunder be applied.

26 CFR 1.83-4(b)(2) If property to which 1.83-1 applies is transferred at an arm's length, *the basis of the property* in the hands of the transferee *shall be determined under section 1012 and the regulations thereunder*.

4.29 Labor being property, and the cost of the compensation, § 1012 will either include it or exclude it as a cost. Under § 1012 and its implementing regulations, intangible personal property (labor) is not excluded, anywhere.

26 CFR 1.1012-1(a) ". . . The cost is the amount paid for such property in *cash or other property*."

4.30 If Congress intended that labor be excluded from that which is cost, or that property to be treated as a cost must be property within which one has a basis, § 1012 would have to reflect it; it does not, and so labor's value is cost. As such a cost, its fair market value (FMV) is deductible from gross income under § 212 (individual may deduct costs).

4.31 The FMV of the Labor (contract value) is the value of the cost and it is also known as "adjusted basis." Regulation requires that this amount be "withdrawn" from the amount realized in the transaction and that it be "restored to the taxpayer."

26 CFR 1.1011-1 Adjusted basis.-The adjusted basis... is the cost or other basis prescribed in *section 1012*...

26 CFR 1.1001-1(a) ...from the amount realized upon the sale or exchange there shall be withdrawn a sum sufficient to restore the adjusted basis  prescribed by *section 1011* and the regulations thereunder... The amount that remains after the adjusted basis has been restored to the taxpayer constitutes the realized gain.

4.32 After determining the FMV of the property that is a cost under the law (See 26 CFR 1.1012-1(a), labor not excluded), and to comply with § 83(a) and 26 CFR 1.1001-1(a), the FMV of cost(s), the "amount paid," the "adjusted basis," must be subtracted from the amount realized (the compensation), including only the excess (if any) in gross income.

1    4.33 Regulations under § 83 require that § 1012 be applied to figure the cost of Petitioner's

2  compensation. To figure one's cost ("amount paid"), one can also proceed to 26 CFR 1.83-3(g)

3  which says that the term "amount paid" in § 83 refers to the value (the FMV/contract value) of any

4  property paid (labor) for the compensation.

5    26 CFR 1.83-3(g) Amount paid. For the purposes of section 83 and the regulations
   thereunder, the term *"amount paid" refers to the value of any money or property paid* for
6    the transfer of property to which § 83 applies.

7    4.34 The statute which embraces intangible personal property as a cost (§ 1012) is

8  prescribed as the measure of one's cost when having only sold one's labor, and 1.83-3(g) does

9  same. To impose the amounts now sought from the Petitioner the Respondent must violate, and

10  deprive the Petitioner of, the provisions of § 83(a), 212, 1001, 1011, and 1012. The law does not

11  provide that property within which one has no basis be excluded from cost; cost equals the FMV

12  of any and all property disposed to obtain other property, unless expressly excluded under § 1012.
   [41] As used in statute and regulation, the terms "any" or "any property" are to be construed as all

13  inclusive until express statutory exceptions can be cited to support a contention that such terms are

14  not all inclusive. (See *U.S. v. Monsanto*, 491 U.S. 600, 607-611 and (syllabus) (1989); *United

15  States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (1994); *U.S. v. Gonzales*, 520 U.S. 1, 4-6 (1997);

16  *Department of Housing and Urban Renewal v. Rucker*, 535 U.S. 125, 130-31 (2002) citing
   *Gonzalez* and *Monsanto*).

17
18   **1989 -** *Monsanto* - Heroin manufacturer Monsanto argues that he should be allowed to
   keep enough money for attorney's fees, but the DOJ argues successfully that "**any
19   property**" is all inclusive and therefore means the U.S. can seize any and all property
   unless Monsanto can point to a specific exclusion of attorney's fees under the law. DOJ
20   can seize everything owned by defendant.

21   **1994 -** *Alvarez* - U.S. argues successfully that, **because statute expressly provides for an
   exception to "any,"** that it is not all inclusive, that a "delay" should not preclude a
22   criminal defendant's confession or statement to state police from being used as evidence in
   federal case commenced thereafter. DOJ can use confession sought to be suppressed by
23   criminal defendant.

24

25  _____

26  [41] See also Internal Revenue Code of 1939 §§ 111, 112, 113.

**1997 -** *Gonzales* **-** U.S. argues successfully that "**any**" in sentencing laws is all inclusive and therefore prevents the defendants from serving federal time concurrently with other sentences, argues for more jail time and gets it. More jail time for convict.

**2002 -** *Rucker* (citing *Monsanto* and *Gonzales*) **-** U.S. argues successfully that "innocent owner" defense unavailable to co-tenant of low income housing who, although innocent, was subject to the statute's eviction of an all inclusive "any tenant" of a leased unit where prohibited activity had taken place. U.S. can evict the innocent tenant of low income housing unit which is scene of prohibited behavior.

And from *Monsanto, Id.*:

"Section 853's *language is plain and unambiguous. Congress could not have chosen stronger words to express its intent* that forfeiture be mandatory under § 853(a)'s language that upon conviction a person "shall forfeit . . . *any property*" and that the sentencing court "shall order" a forfeiture. *Likewise, the statute provides a broad definition of property which does not even hint at the idea that assets used for attorney's fees are not included.* Every Court of Appeals that has finally passed on this argument has agreed with this view. *Neither the Act's legislative history nor legislators' post-enactment statements support respondent's argument that an exception should be created because the statute does not expressly include property to be used for attorney's fees, or because Congress simply did not consider the prospect that forfeiture* [491 U.S. 601] *would reach such property. . . .* Moreover, *respondent's admonition that courts should construe statutes to avoid decision as to their constitutionality is not license for the judiciary to rewrite statutory language.* Pp. 606-611." [42]

"In determining the scope of a statute, we look first to its language." *United States v. Turkette,* 452 U.S. 576, 580 (1981). *In the case before us, the language of § 853 is plain and unambiguous: all assets falling within its scope are to be forfeited upon conviction, with no exception existing for the assets used to pay attorney's fees -- or anything else, for that matter.*

    As observed above, § 853(a) provides that a person convicted of the offenses charged in respondent's indictment "*shall forfeit . . . any property*" that was derived from the commission of these offenses. After setting out this rule, § 853(a) repeats later in its text that upon conviction a sentencing court "shall order" forfeiture of *all property* described in § 853(a). *Congress could not have chosen stronger words to express its intent* that forfeiture be mandatory in cases where the statute applied, or broader words to define the scope of what was to be forfeited. *Likewise, the statute provides a broad definition of "property" when describing what types of assets are within the section's scope: "real property . . . tangible and intangible personal property, including rights, privileges, interests, claims, and securities."* 21 U.S.C. § 853(b) (1982 ed., Supp. V). *Nothing in this all-inclusive listing even hints at the idea that assets to be used to pay an attorney are not "property" within the statute's meaning.*

---

[42] See *U.S. v. Monsanto,* 491 U.S. 600 (syllabus) (1989).

*Nor are we alone in concluding that the statute is unambiguous in failing to exclude assets that could be used to pay an attorney from its definition of forfeitable property. This argument, advanced by respondent here,* see Brief for Respondent 12-19, *has been unanimously rejected by every Court of Appeals that has finally passed on it,* as it was by the Second Circuit panel below, see 836 F.2d at 78-80; id. at 85-86 (Oakes, J., dissenting); *even the judges who concurred* on statutory grounds in the en banc decision *did not accept this position,* see 852 F.2d at 1405-1410 (Winter, J., concurring). We note also that the Brief for American Bar Association as *Amicus Curiae 6, frankly admits that the statute "on [its] face, broadly cover[s] all property derived from alleged criminal activity and contain[s] no specific exemption for property used to pay bona fide attorneys' fees."*

*Respondent urges us,* nonetheless, *to interpret the statute to exclude such property for several reasons. Principally, respondent contends that we should create such an exemption because the statute does not expressly include property to be used for attorneys' fees* . . . In support, respondent observes that the legislative history is "silent" on this question, and that the House and Senate debates fail to discuss this prospect. But this proves nothing[.] *The fact that the forfeiture provision reaches assets that could be used to pay attorney's fees, even though it contains no express provisions to this effect, "'does not demonstrate ambiguity'" in the statute: "'It demonstrates breadth.'"* Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 499 (1985) (quoting Haroco, Inc. v. American Nat. Bank & Trust Co. of Chicago, 747 F.2d 384, 398 (CA7 1984)). *The statutory provision at issue here is broad and unambiguous,* and Congress' failure to supplement § 853(a)'s *comprehensive phrase − "any property" − with an exclamatory "and we even mean assets to be used to pay an attorney" does not lessen the force of the statute's plain language."* [43]

"As we have noted before, such post-enactment views "form a hazardous basis for inferring the intent" behind a statute, *United States v. Price,* 361 U.S. 304, 313 (1960); instead, Congress' intent is *"best determined by [looking to] the statutory language that it chooses,"* Sedima, S.P.R.L., supra, at 495, n.13. . . . *Finally, respondent urges us, see Brief for Respondent 2029, to invoke a variety of general canons of statutory construction,* as well as several prudential doctrines of this Court, to create the statutory exemption he advances; among these doctrines is our admonition that courts should construe statutes to avoid decision as to their constitutionality. See, e.g., *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council,* 485 U.S. 568, 575 (1988); *NLRB. v. Catholic Bishop of Chicago,* 440 U.S. 490, 500 (1979). *We respect these canons, and they are quite often useful in close cases, or when statutory language is ambiguous. But we have observed before that such "interpretative canon[s are] not a license for the judiciary to rewrite language enacted by the legislature."* United States v. Albertini, 472 U.S. 675, 680 (1985). *Here, the language is clear and the statute comprehensive: § 853 does not exempt assets to be used for attorney's fees from its forfeiture provisions."* [44]

---

[43] See Monsanto, Id., at 607-09.
[44] See Monsanto, Id., at 610-11.

4.35 Since the 1989 *Monsanto* decision regarding "any property," <u>three very recent decisions</u> ('94, '97 and '02, *supra*) deal directly with the same question as to how to interpret the term "any," the question as to whether it is all inclusive or subject to arbitrary derogation. The inclusion here of lengthy excerpts is intended to offer appreciable input upon the topic and is not intended to delay or hinder process.

4.36 Here, in this <u>unanimous</u> 2002 decision (REHNQUIST, C.J. delivered opinion, BEYER, J. took no part), the Supreme Court draws upon *Monsanto* for guidance in another instance hinged upon interpretation of the term "any," affirming the claim made herein.

"That this is so seems ***evident from the plain language of the statute***. It provides that -

each public housing authority shall utilize leases which . . . provide that . . . ***any*** drug-related criminal activity on or off such premises, engaged in by a public housing tenant, ***any*** member of the tenant's household, or ***any*** guest or other person under the tenant's control, shall be cause for termination of tenancy.

42 U.S.C. § 1437d(l)(6) (1994 Ed., Supp.V). The en banc Court of Appeals thought the statute did not address "the level of personal knowledge or fault that is required for eviction." 237 F.3d at 1120. ***Yet Congress' decision not to impose any qualification in the statute, combined with its use of the term "any" to modify "drug-related criminal activity," precludes any knowledge requirement.*** See *United States v. Monsanto*, 491 U.S. 600, 609 (1989). ***As we have explained, "the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"*** *United States v. Gonzales*, 520 U.S. 1, 5 (1997). Thus, <u>*any*</u> drug-related activity engaged in by the specified persons is grounds for termination, not just drug-related activity that the tenant knew or should have known about."[45]

4.37 Below is an excerpt from *U.S. v. Gonzales*, 520 U.S. 1, 4-6 (1997) just cited in *Dept. of Housing & Urban Renewal v. Rucker, Id.*.

"Our analysis begins, as always, with the statutory text. Section 924(c)(1) provides:

Whoever, during and in relation to any . . . drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime . . . , be sentenced to imprisonment for five years. . . . Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this

---

[45] See *Department of Housing and Urban Renewal v. Rucker*, 535 U.S. 125, 130-31 (2002).

subsection run concurrently with *any other term of imprisonment* including that imposed for the . . . drug trafficking crime in which the firearm was used or carried.

18 U.S.C. § 924(c)(1) (emphasis added). The question we face is whether the phrase "any other term of imprisonment" "means what it says, or whether it should be limited to some subset" of prison sentences, *Maine* v. *Thiboutot*, 448 U.S. 1, 4 (1980) – namely, only federal sentences. *Read naturally, the word "any" has an expansive meaning, that is, "one or some indiscriminately of whatever kind." Webster's Third New International Dictionary 97 (1976). Congress did not add any language limiting the breadth of that word, and so we must read § 924(c) as referring to all "term[s] of imprisonment," including those imposed by state courts. Cf. United States v. Alvarez-Sanchez*, 511 U.S. 350, 358 (1994) (noting that statute referring to "any law enforcement officer" includes "federal, state, or local" officers); *Collector v. Hubbard*, 12 Wall. 1, 15 (1871) (*stating "it is quite clear" that a statute prohibiting the filing of suit "in any court" "includes the State courts as well as the Federal courts," because "there is not a word in the [statute] tending to show that the words 'in any court' are not used in their ordinary sense"*). There is no basis in the text for limiting § 924(c) to federal sentences.

In his dissenting opinion, JUSTICE STEVENS suggests that the word "any" as used in the first sentence of § 924(c) "unquestionably has the meaning 'any federal.'" *Post* at 14. In that first sentence, however, Congress *explicitly* limited the scope of the phrase "any crime of violence or drug trafficking crime" to those "for which [a defendant] may be prosecuted in a court of the United States." Given that Congress expressly limited the phrase "any crime" to only federal crimes, we find it significant that no similar restriction modifies the phrase "any other term of imprisonment," which appears only two sentences later and is at issue in this case. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("'*Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion*'").

The Court of Appeals also found ambiguity in Congress' decision, in drafting § 924(c), to prohibit concurrent sentences instead of simply mandating consecutive sentences. 65 F.3d at 820. Unlike the lower court, however, we see nothing remarkable (much less ambiguous) about Congress' choice of words. Because consecutive and concurrent sentences are exact opposites, Congress implicitly required one when it prohibited the other. This "ambiguity" is, in any event, beside the point, because this phraseology has no bearing on whether Congress meant § 924(c) sentences to run consecutively only to other federal terms of imprisonment.

*Given the straightforward statutory command, there is no reason to resort to legislative history. Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992). Indeed, far from clarifying the statute, the legislative history only muddies the waters. The excerpt from the Senate Report accompanying the 1984 amendment to § 924(c), relied upon by the Court of Appeals, reads:

[T]he Committee intends that the mandatory sentence under the revised subsection 924(c) be served prior to the start of the sentence for the underlying or any other offense.

S.Rep. at 313-314. This snippet of legislative history injects into § 924(c) an entirely new idea -- that a defendant must serve the five-year prison term for his firearms conviction before any other sentences. ***This added requirement, however, is "in no way anchored in the text of the statute."*** Shannon v. United States, 512 U.S. 573, 583 (1994). [46]

From *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (1994):

> "Respondent contends that he was under "arrest or other detention" for purposes of § 3501(c) during the interview at the Sheriff's Department, and that his statement to the Secret Service agents constituted a confession governed by this subsection. ***In respondent's view, it is irrelevant that he was in the custody of the local authorities, rather than that of the federal agents, when he made the statement. Because the statute applies to persons in the custody of "any" law enforcement officer or law enforcement agency, respondent suggests that the § 3501(c) 6-hour time period begins to run whenever a person is arrested by local, state, or federal officers.***
> ***We believe respondent errs in placing dispositive weight on the broad statutory reference to "any" law enforcement officer or agency without considering the rest of the statute."*** [47]

***\*End excerpts.***

4.38 In reviewing U.S. Tax Court's disposition of the 26 USC § 83 claim we recall that <u>its restrictive application</u> of the term "any" allowing *some* property (labor, property with no tangible basis or cost) to be excluded under 26 CFR's 1.83-3(g)'s reference to "any money or property" <u>was its only exculpatory reasoning</u> or thread of logic to overcome the claim. In the cases above, decided in 1989, 1994, 1997, and 2002, Tax Court's reasoning regarding "any property" is clearly dismembered as arbitrary and therefore impermissible.

4.39 A very noteworthy point is that we see in each of those cases the U.S. as party movant to the argument that "any" is all inclusive, the party seeking to benefit under that interpretation. When the United States is on the offense the term "any" means everything, but when the lowly citizen demands the same reading it must be refused so the U.S. can take his paycheck. This alone distinguishes those controversies from this one. Naturally, lawfully, fairly, as taxpayers, every American has the right to expect from any court treatment in kind, lest they be the victim of an exaction. (See 26 CFR 601.106(f)(1), exaction violates due process). Regulation 26 CFR 1.83-3(g)

---

[46] See *U.S. v. Gonzales*, 520 U.S. 1, 4-6 (1997).
[47] See *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (1994).

1  must be read to include the value of personal services in its prescription that "the value of any

2  money or property paid" be deemed to be an "amount paid" for the purposes of 26 USC 83(a).

3  4.40 The Respondent wants it both ways, but the Supreme Court has already ruled in favor

4  of only one; "any property" means EVERYTHING. Respondent must offend *Monsanto* and its

5  victory there to argue for the exclusion of the FMV of personal services from the language of 26

6  USC §§ 83 ("the value of any money or property paid" in 1.83-3(g)) and § 1012 ("cash or other

7  property"), and this alone, as proven through years of litigation of this very claim, is the sole

8  source of the Respondent's ability to tax as gross income the value of personal services actually

9  rendered; Respondent is demanding that it not only *have* the cake, but that it also be allowed to

   gorge itself upon it at any time of its choosing.

10  4.41 The Respondent says in publication precisely what has been argued here, and then

11  destroys the lives of anyone who acts upon such advice. [48] (See Ex.4, Tab #11). IRS Publication

12  17 is sent to [every] household in America, around Dec.-Jan., and is called "Tax Guide for

13  Individuals," and covers nearly every aspect of personal income taxes; it's the most heavily

14  distributed of all IRS publications. Since § 83 applies to all compensation, FICA wages/tips in §

15  3121(a) and (q), and § 3401(a) wages, and § 1402(a) self employed Social Security, are likewise

16  classified under the law as § 83 compensation; everything the respondent collects under 26 USC

17  ch.1, 2, 21, and 24 is theft through the violation/deprivation of the protections of §§ 83, 212, 1001,

18  1011, and 1012, to say nothing of 26 USC 7214 (crime to demand more money than is allowed by

   law) and 26 CFR 601.106(f)(1) (exaction is a taking of property, violates due process). Read this

   paragraph several more times after viewing IRS Pub.17 excerpts in Ex.4, Tab #11; *Monsanto*

   (others) is even honored in IRS publication.

19  4.42 The posture of the Respondent and the contrast to *Monsanto* to which it amounts is

20  quite easily portrayed. Petitioner is siding, and will act in accordance with, *Monsanto*:

|  - THIS - <br> U.S. Tax Court/Secretary of Treasury and Commissioner of IRS say that "Any property" excludes *some* property *i.e.*, labor, resulting in an income tax on the FMV of labor. | vs. | - THIS - <br> U.S. Supreme Court and U.S. Department of Justice in *Gonzales, Rucker, Monsanto, Alvarez*, regarding "any" and "any property." **(IRS Pub.17, 26 CFR 1.83-3(g), 1.1012-1(a))** "Any property" includes all property, like labor; no income tax on FMV of labor. |

---

[48] See **Exhibit 4, Tab #11** - IRS Publication 17 "Tax Guide for Individuals" (excerpts), *ala*, all property is cost, cost is the value of personal services actually rendered.

4.43 In case law under § 83, the term "amount paid" is universally equated with the term and concept of "cost." The cost of Petitioner's compensation is figured by applying the provisions of § 1012 and the regulations thereunder. (See 26 CFR 1.83-4(b)(2)).

4.44 The term "amount paid" is defined as the value of **any property** paid by the Petitioner for his compensation for services. (See 26 CFR 1.83-3(g)). Regulation 26 CFR 1.1012-1(a) defines Petitioner's cost as "cash or other property" and fails to exclude from cost that *property within which Petitioner has no basis*. When regulation is read in light of *Monsanto*, as Petitioner demands and subscribes, the value of Petitioner's personal services is a cost, expressly excluded from gross income as an "amount paid" by the terms of § 83(a).

> "The regulations...now govern, and will continue to govern, the abbreviated application process. See *Fort Stewart Schools v. FLRA*, 495 U.S. 641, 654, 110 S.Ct. 2043, 2051, 109 L.Ed.2d 659 (1990). *No matter what an agency said in the past, or what it did not say, after an agency issues regulations it must abide by them.*" [49]

4.45 The Supreme Court has ruled that a tax on the FMV of labor constitutes a diminution of compensation, that is constitutes the taking of part of a contract for the sale of labor. [50] It is said that the 16th Amendment did not extend Congress' taxing power to objects or subjects previously immune, [51] and the right of contract is held in high regard:

> "Included in the right or personal liberty and the right of private property, partaking of the nature of each is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property." [52]

4.46 In instructional publications, the IRS reminds the individual who sells personal services that the cost of their paycheck is the "value of services provided in the transaction," that ALL property is a cost.

**Under Issue (D):**

4.47 Under law, to tax the FMV of services actually rendered, the Petitioner must be deprived of the provisions of 26 USC §§ 83, 212, 1001, 1011, and 1012. The law (26 CFR 1.83-

---

[49] See *Schering Corp. v. Shalala*, 995 F.2d 1103 (D.C.Cir.1993).
[50] See *Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550 (1920).
[51] See *Peck v. Lowe*, 247 U.S. 165; *Stanton v. Baltic Mining Co.*, 240 U.S. 103.
[52] See *Coppage v. Kansas*, 236 U.S. 1, 14 (1915).

3(g)) embraces the FMV of labor as a cost (*"value of any money or property paid"*), despite the fact that it is property within which the Petitioner has no basis. Property within which one has no basis is not excluded from cost under the law.

4.48 Respondent excludes from cost Petitioner's services merely upon the fact that it is property within which Petitioner has no basis, but such an exclusion is unauthorized under provisions which embrace ALL property as a cost. Petitioner must violate §§ 83, 212, 1001, 1011, and 1012 by not restoring the "adjusted basis" and allowing only the amount that remains thereafter to be taxed as "realized gain," as required under 26 CFR 1.1001-1(a). To report as gross income the value of personal services the Petitioner must enter a false statement on a gov't form in violation of 18 USC § 1001.

**Questions under Issue (D):**

(QD)1. Since § 83 is applicable to amounts now sought to be included in gross income, it is clear that either the Respondent or the Petitioner is in violation of it, but silence abounds. Does it apply, and, if so, how does it operate and how is the Petitioner to comply with it in the future?

(QD)2. Where, under §§ 83 and 1012, and 26 CFR 1.83-3(g), does it provide that only property within which one has a basis is to be recognized as a cost or, that intangible personal property is excluded from that which is cost?

(QD)3. If such exclusions alluded to in #(2) above do not exist, can "income tax" approach such property's FMV, as contemplated under §83?

(QD)4. In consideration of these provisions, is the FMV of labor (contract value) appropriately termed "gain derived from labor"?

(QD)5. Is the FMV of labor excluded from gross income by law? (See § 83, 212, 1001, 1012; 26 CFR 1.83-3(g)). If so, by what authority?

(QD)6. Can a Court order the exclusion from cost of property within which the Petitioner has no basis when such exception to cost cannot be found in statute or in regulation, especially when it constitutes the difference between paying a tax and not even being subject to it? Can the Respondent claim in one case that "any property" means all property, and in another case argue that "any property" lawfully excludes certain things not recorded, mentioned, or manifest in law? Would such accounting offend the holdings in *Monsanto, Gonzales, Alvarez,* and *Rucker*? If not, why not?

### E. By plain language Congress has limited IRS' assessment authority.

4.49 Statutory grant of assessment authority limits said authority of the IRS to taxes "which have not been duly paid by stamp."

§ 6201 Assessment Authority.
    (a) Authority of Secretary.-*The Secretary is authorized and required to make the inquiries, determinations, and assessments of* all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law, *which have not been duly paid by stamp* at the time and in the manner prescribed by law. *Such authority* shall extend to and include the following:
        (1) Taxes shown on returns.-The Secretary shall assess all taxes determined by the taxpayer or by the Secretary as to which returns or lists are made under this title. (Emphasis added)

1939 IRC § 3640 Assessment authority. *The Commissioner is authorized and required to make the inquiries, determinations, and assessments of* all taxes and penalties imposed by this title, *or accruing under any former internal revenue law, where* such taxes *have not been duly paid by stamp* at the time and in the manner provided by law."

4.50 In § 6201(a) above, underlining, italics, and bold emphasis is employed. *In italics is the person who can assess taxes.* Underlined is the title containing the taxes that can be assessed, **and in bold is the qualifier which designates what sort of taxes in "this title" can be assessed under** such **authority**. Only that authority, "such authority," that limited authority, is extended to subparagraph (1). Predecessor section 3640 of the 1939 Code does not have such a subparagraph (1) to lend the IRS the semantic leeway for the expansion of § 6201's application to "returns or lists."

26 CFR 301.6201-1 Assessment authority.-(a) In general. The District Director is authorized and required to make all inquiries necessary to the determination and assessment of *all taxes imposed by the Internal Revenue Code of 1954* or any prior internal revenue law.

4.51 The obvious limitation present in statute is destroyed by this regulation under § 6201. The phrase "which have not been" is simply read in error by the courts as "which are not." Petitioner is not engaged in a taxable activity that requires payment of liabilities by stamp. The authority to make an assessment of liability against the Petitioner is derived solely through

1  regulatory deviation from the statute. This is a flagrant abuse of authority by the IRS or Secretary

2  and serves to destroy the restrictions built into § 6201.

3      4.52 This regulatory omission of the term "stamp" is key, the source of IRS' assessment

4  authority is a mere regulation, just as in *Brown* where such a contrivance was held to be an invalid

5  basis for tobacco regulation due to a lack of statutory authority upon which to rest it. Regulation

6  cannot deviate from statute or it is void. The Secretary of the Treasury is bound by statute.

   Congressional intent is the deciding factor in considering the validity of a regulation. [53] What does

7  not exist in statute does not exist at all. [54] For this reason, 26 CFR 301.6201-1(a) and any

8  assessment not of taxes "duly paid by stamp" must be declared null and void as beyond the

   statutory authority of the IRS to so promulgate or initiate. "Our tax system is based upon voluntary

9  assessment and payment, not upon distraint." [55] Under statute, this is indeed true.

10 **Under issue (E):**

11     4.53 Statute restricts Respondent's assessment authority to taxes duly paid by stamp, but

12 which remain unpaid. Even § 6201(a)'s predecessor 1939 IRC 3640 restricts Respondent's

   assessment authority in the same way.

13     4.54 Regulation 26 CFR 301.6201-1(a) deviates from statutory restrictions when it extends

14 assessment authority to *all* taxes imposed by the Internal Revenue Code of 1954/1986. Had the

15 Respondent, or the Secretary of the Treasury, not written regulations deviating from statutory

16 restrictions found in § 6201(a), it could not assess any taxes other than those duly paid by stamp.

   This is Petitioner's belief, and until it is dispelled with open discussion and logical application of

17 law to the contrary Petitioner will continue to act upon it.

18 ///

19 ///

20 ///

21

22 [53] See *Brown & Williamson v. FDA, supra*; *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *U.S. v. Larinoff*, 431 U.S. 864, 872-873 (1976); *U.S. v. Calamaro*, 354 U.S. 351, 359 (1956); *Koshland v. Helvering*, 298 U.S. 441, 446-447 (1936); *Manhattan General Equip. Co. v. C.I.R.*, 297 U.S. 129, 134, 54 S.Ct. 397, 399 (1936); *Tracy v. Swartout*, 10 Pet. 354, 359 (1836).

23

24 [54] See *Brown & Williamson, supra*; *Carminetti v. U.S.*, 242 U.S. 470, 485, 489-493 (1916), citing (on 485) *Lake County v. Rollins*, 130 U.S. 662, 670, 671; *Bate Refrigerating Co. v. Sulzberger*, 157 U.S. 1, 33; *U.S. v. Lexington Mill and Elevator Co.*, 232 U.S. 399, 409; *U.S. v. Bank*, 234 U.S. 245, 258. See also *Security Bank of Minnesota v. C.I.R., supra*, (CA8 1993).

25 [55] See *Flora v. U.S.*, 362 U.S. 176 (1959).

26

**Questions under Issue (E):**

(QE)1. Does the language of 1939 IRC § 3640 or 26 USC 6201(a) permit the Respondent to assess taxes other than those which have not been duly paid by stamp, taxes like those imposed by chapters 1, 2, 21, and 24? (See 26 USC 4371 and 4411, stamp taxes).

(QE)2. Does 26 CFR 301.6201(a)-1 deviate from 26 USC 6201(a), unreasonably broadening limitations placed upon Respondent's assessment authority as intended by Congress?

### F. Criminal statutes in 26 USC have limited scope.

4.55 Petitioner's alleged duties arise from the receipt of gross income, and not from having at any time been an officer or employee of a corporation, or a member or employee of a partnership. This fact excludes Petitioner from the definition of the term "person" as defined in 26 USC chapter 75 Crimes, the chapter in which the charging statute is located.

> 26 USC § 7343 Definition of Term "Person". The term "person," as used in this chapter, includes an officer or employee of a corporation, or a member or employee of a partnership who *as such officer, employee, or member is under a duty to perform the act* in respect of which the violation occurred.

> "**Define.** To explain or state the exact meaning of words and phrases; to state explicitly; to limit; to determine essential qualities of; to determine the precise signification of; to settle; to establish or prescribe authoritatively; to make clear. (Cite omitted)" "To "define" with respect to space, means to set or establish its boundaries authoritatively; to *mark the limits* of; to determine with precision or exhibit clearly the boundaries of; to determine the end or limit; to *fix or establish the limits*. It is the equivalent to declare, fix or establish."

> "**Definition.** A description of a thing by its properties; an explanation of the meaning of a word or term. The process of stating the exact meaning of a word by means of other words. Such a description of the thing defined, *including all essential elements* and *excluding all nonessential,* as to distinguish it from all other things and classes." From *Black's,* 6th edition.

4.56 Knowing that a "definition" is a term of limitation, it is a foregone conclusion that the term "includes" does not change the "definition" into an "inclusion." The provision above provides that the person who may be indicted is one whose duties arise from employment or association, not from receipt of gross income, as would Petitioner's alleged duties. (See authorities cited, *supra,* regarding interpretation of statutory definitions, "It is axiomatic that the *statutory*

1  *definition of the term excludes unstated meanings* of that term." [56]). If Congress intended that

2  any person be subject to ch. 75, it would have used express language to that effect.

3  26 U.S.C. § 7701(a)(14) Taxpayer.- The term "taxpayer" means *any person* subject to any

4  internal revenue tax:

5  4.57 Petitioner is not a "person" who can indeed commit the crimes described under 26

6  USC § 7201 through 7344. Since no charges may be brought against the Petitioner under 26 USC

   § 7203, filing, payment, and reporting is indeed voluntary, as it relates to criminal charges under

7  26 USC, ch.75. This claims extends to monetary penalties for frivolity under §§ 6702 and 6673 as

8  well, for subchapter 68B contains an identical definition of the term "person" at 26 U.S.C. §

9  6671(b). With all of the case law saying that statutory definitions are all inclusive, there's no way

10 by which the average individual would learn that "includes" is deemed to turn what Congress calls

   a *definition* into an "inclusion" which lists only part or some of its scope and elements.

11 **Under Issue (F):**

12 4.58 As the term is used in 26 USC § 7343, "includes" does not change to an *inclusion* that

13 which Congress clearly intended as a *definition*. If Congress intended this definition be applicable

14 to any person it surely would have said so, *e.g.*, "any person" or "every person." [57] If § 7343 is

15 said to apply to elements not mentioned, it can no longer be a "definition" as Congress called it,

   for a "definition" would have to exclude all non-essential elements. If Petitioner is mistaken, then

16 so are law dictionaries which say that "definitions" exclude all non-essential elements.

17 4.59 Petitioner is not within the intent and scope of 26 USC § 7343, *a fortiori*, 26 USC §

18 7203. Statutory definitions which use the term "includes" are void for vagueness and overbreadth

19 if the term changes a definition into an *inclusion*, which it does not. This is Petitioner's belief, and

20 until it is dispelled with open discussion and logical application of law to the contrary the

   Petitioner will continue to act upon it. (See authorities cited herein addressing interpretation of

21 statutory definitions at ¶¶ 3.8 - 3.12, *supra*).

22

23 [56] See *Meese v. Keene, supra*, at 484. Supreme Court says statutory definition using "includes" is exclusive
   of that not mentioned therein.

24 [57] See 42 USC § 1983 Civil action for deprivation of rights. Every person who, under color of any statute,
   ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or

25 causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the
   deprivation of any rights . . .

26

**Questions under Issue (F):**

(QF)1. Do the alleged duties of the Petitioner to file a statement or tax return arise from having been an officer, employee, or member of a corporation or partnership?

(QF)2. How can 26 USC § 7343 be rightfully deemed to be a "definition" when it is applied to persons, individuals, or other items or elements not expressly implicated by its language? Why did Congress call it a "definition" if it supposed to be an *inclusion*?

(QF)3. Under the law, is a "definition" the same thing as an "inclusion"? Can a provision said by a legislative body to be a "definition" be enforced as an "inclusion"?

### G. Criminal liability does not attach where expert opinion has been used to determine one's liabilities and requirements.

4.60 Petitioner is an expert on the subject of tax law. Knowing as he does, that 26 USC imposes no duty or tax upon him or his property, he views as his obligation under the law to ignore the Respondent outright until he must defend his property.

4.61 He argues here with full knowledge that the Respondent needed and obtained a U.S. District Court restraining order against having to even speak about Issues A - B - C herein. (See *Walden v. IRS, supra*).

4.62 Everything Petitioner sees only serves to confirm his beliefs that the secrecy exists for the sole reason of concealing the fact that 26 USC does <u>not</u> impose the amounts sought from her, and that the IRS is utterly void of statutory authority to speak to her, be it concerning capital gains, Social Security taxes, or a tax compensation for services of any nature.

4.63 It is plain to the Petitioner how truly unfair it is to not only have to pay amounts that the government cannot even prove he owes, but also to be threatened imprisonment if he fails to comply with what cannot be proven to be more than the whim of his executive servants.

4.64 Another very obvious and serious conflict arises in the form of constitutional infringements. Not only can the Petitioner expect to be unduly scrutinized and perhaps harassed by the IRS merely because of his belief in the law, he understands that it all will take place in blunt defiance of his requests for proof of the law which permits such conduct.

4.65 This scenario is perpetuated in open court on every federal level. IRS Publication 17 says that the value of personal services is a cost, but Tax Court will penalize anyone who agrees. Petitioner clearly is <u>not</u> the citizen Congress has named as subject to Social Security (26 USC

1402(b), 3121(e), 42 USC 411(b)(2)) but he's expected to pay that tax under threat of the destruction of his entire lifestyle and probable imprisonment.

4.66 Anyone reading this can certainly understand Petitioner's reluctance or refusal to simply do what his servants tell him to do, and certainly without proof that the "tax" imposed is the intent of his representatives, his lawmakers. Petitioner sees this confrontation as his civic duty, to expose taxation without representation, which is the end result when the law (Congress) is set aside in favor of taxing agency self governance; statute is the source of all IRS authority. The law is perfect.

4.67 As an American, Petitioner cannot reconcile the existence of the IRS, if it means that IRS' threats are veiled in the patina of official right but are proven in any number of instances to be utterly hollow or altogether contrary to law. Petitioner is comfortable in his belief that 26 USC imposes no duty to file a tax return or pay an income tax.

4.68 In addition, the Respondent has expressly instructed the Petitioner, in writing, that the amounts now deemed gross income are rightfully deemed to be a cost, an amount <u>deductible from gross</u> income under the law.

1. Petitioner still cannot perceive of exactly how such a belief in the law is violative of any laws regarding taxation of any payment of compensation for services.

2. Petitioner does not believe that any laws have been violated when he pays no income tax and files no Form 1040. Since the IRS/Secretary of the United States is restricted by 4 USC 72 to operate only in D.C. as proven herein, Petitioner was under no compulsion to pay any sum to the Respondent under 26 USC (Tax Code). How can the Respondent be defrauded when the Petitioner owes the Respondent absolutely nothing? If Respondent (Sec. of Treas.) had authority to operate outside D.C., surely the Respondent would have proven it in any one of many instances.

3. All sums which may come into question by the IRS were paid to the Petitioner as compensation for personal services actually rendered, and only amounts over this sum are to be included in gross income, lest one violate 26 USC 83 ("amount paid" is "value of any money or property paid"). This is not only prescribed under 26 CFR 1.83-3(g) but also is prescribed in the IRS' "Tax Guide for Individuals" in language closely tailored to match, or to outright quote, provisions which support Petitioner's claim that personal services are a cost. Petitioner relies upon IRS' advice that the value of personal services paid for services actually rendered are a cost, and Petitioner understands costs to be excluded from, or deductible from, gross income under §§ 83 and 212. No gross income, no filing requirements (See 26 USC 6012). No liability, no fraud, no matter what was done with the sums in question, even if the Petitioner wants to spend money on expert advice and various

methods, and no matter who was being paid. (See **Ex.4**, IRS Publication 17 excerpts, **Tab #11**).

26 CFR 1.83-3(g) Amount paid. For the purposes of section 83 and the regulations thereunder, the term "amount paid" refers to **the value of _any_ money or property** _paid for the transfer of property to which § 83 applies._

IRS Publication 17 Tax Guide for Individual, 1993-94, other: Cost basis. The basis of property you buy is usually its cost. The cost is the amount of cash and debt obligations you pay for it and **the fair market value of services** _you provide in the transaction."_

\*Cost **is the value of services** _rendered to receive compensation._

26 CFR 1.1012-1(a) " . . . The cost is the amount paid for such property in **cash or other property."**

IRS Publication 17 Tax Guide for Individual, 1995 and later editions: The basis of property you buy is usually its cost. The cost is the amount you pay in **cash, debt obligations or in other property.**

\***All property is cost.**

4.69 Respondent is silent except for its contradiction of four S.Ct. decisions regarding "any property." The Secretary of the Treasury is prohibited from operating outside of D.C.; wrong? And what about the Form 2555, and 26 USC §§ 83, 212, 1001, 1011, 1012, 1402(b), 3121(e), 3401(c), 6201(a), 7214, 7343, 7651(5)(A), 4 USC § 72, 42 USC 411(b)(2), 18 USC §§ 241 and 1623? **Respondent agrees or there'd be no need for a protective Order in _Walden_.**

4.70 It is clear that, were it not for undue secrecy and a blind propensity for intimidation on the part of the IRS, Petitioner would be living life instead of dealing with one cent penalties, and facing down a DOJ investigation for promoting H&R Block. With all of this under consideration, the U.S. Attorney seeking to bring charges or an indictment against the Petitioner exudes a total disregard for the circumstances and rights of the Petitioner, especially in light of the fact that said esquire will be entirely unable to rebut, disclaim or discredit the claims made herein as ill founded, without merit, or as frivolous, unless Congress itself, to say nothing of the Supreme Court, are also rightfully labeled as such. Only their work product comprises the basis for each and all of the Petitioner's claims. The U.S. Attorney who fails to present this Complaint to any Grand Jury asked to indict the Petitioner is one with contempt for such rights, rather than mere _disregard._

> *"This case is not one in which a taxpayer has relied on the erroneous advice of counsel concerning a question of law. Courts have frequently held that "reasonable cause" is established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken.* See, e.g., United States v. Kroll, 547 F.2d 393, 395-396 (CA7 1977); Commissioner v. American Assn. of Engineers Employment, Inc., 204 F.2d 19, 21 (CA7 1953); Burton Swartz Land Corp. v. Commissioner, 198 F.2d 558, 560 (CA5 1952); Haywood Lumber & Mining Co. v. Commissioner, 178 F.2d at 771; Orient Investment & Finance Co. v. Commissioner, 83 U.S.App.D.C. at 75, 166 F.2d at 603; Hatfried, Inc. v. Commissioner, 162 F.2d at 633-635; Girard Investment Co. v. Commissioner, 122 F.2d at 848; Dayton Bronze Bearing Co. v. Gilligan, 281 F. 709, 712 (CA6 1922). *This Court also has implied that, in such a situation, reliance on the opinion of a tax adviser may constitute reasonable cause for failure to file a return.* See Commissioner v. Lane-Wells Co., 321 U.S. 219 (1944) (remanding for determination whether failure to file return was due to reasonable cause, when taxpayer was advised that filing was not required).
>
> *When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place.* See Haywood Lumber, supra, at 771. "Ordinary business care and prudence" do not demand such actions." [58]

4.71 Between the Respondent's advice that Petitioner's cost is the value of his personal services, and the plethora of evidence, intrinsic and extrinsic, to the contrary of all the IRS conveys as purported matters of official right, Petitioner doesn't stand a chance of avoiding undue intrusion and loss of liberty and property.

> "This means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. See Agurs, 427 U.S. at 108 ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure"). This is as it should be. *Such disclosure will serve to justify trust in the prosecutor as the representative . . . of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done.* Berger v. US, 295 U.S. 78, 88 (1935). *And it will tend to preserve the criminal trial,* as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations. See Rose v. Clark, 478 U.S. 570, 577-78 (1986); Estes v. Texas, 381 U.S. 532, 540 (1965); United States v. Leon, 468 U.S. 897, 900-901 (1984) (recognizing general goal of establishing "procedures under which criminal defendants are 'acquitted or convicted *on the basis of all the evidence*

---

[58] See *United States v. Boyle*, 469 U.S. 241, 250-01 (1985).

*which exposes the truth*'" (quoting *Alderman v. United States*, 394 U.S. 165, 175 (1969))). The prudence of the careful prosecutor should not therefore be discouraged." [59]

"Moreover, the Court's analysis reduces the significance of deliberate prosecutorial suppression of potentially exculpatory evidence to that merely of one of numerous factors that "may" be considered by a reviewing court. *Ante* at 683 (opinion of BLACKMUN, J.). This is not faithful to our statement in *Agurs* that *"[w]hen the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable."* 427 U.S. at 106. *Such suppression is far more serious than mere nondisclosure of evidence* in which the defense has expressed no particular interest. *A reviewing court should attach great significance to silence in the face of a specific request*, when responsive evidence is <u>later</u> shown to have been in the Government's possession. *Such silence actively misleads in the same way as would an affirmative representation that exculpatory evidence does not exist when, in fact, it does (i.e.,* perjury) -- indeed, the two situations are aptly described as *"sides of a single coin."* Babcock, Fair Play: Evidence Favorable to an Accused and Effective Assistance of Counsel, 34 Stan.L.Rev. 1133, 1151 (1982)." [60]

*"Failure of government to obey the law cannot ever constitute "legitimate law enforcement activity."* . . . And even if a tainted subsequent confession is "highly probative," we have never until today permitted probity to override the fact that the confession was "the product of constitutionally impermissible methods in [its] inducement." *Rogers v. Richmond*, 365 U.S. 534, 541 (1961). *In such circumstances, the Fifth Amendment makes clear that the prosecutor has no entitlement* to use the confession in attempting to obtain the accused's conviction." [61]

"Past decisions of this Court demonstrate that *the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial*, not the culpability of the prosecutor. In *Brady v. Maryland*, 373 U.S. 83 (1963), for example, the prosecutor failed to disclose an admission by a participant in the murder which corroborated the defendant's version of the crime. *The Court held that a prosecutor's suppression of requested evidence violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Id.* at 87.

---

[59] See *Kyles v. Whitley*, 514 U.S. 419, 439 (1995).
[60] See *U.S. v. Bagley*, 473 U.S. 667, 714 (1985). See *Id.*, at footnote 8, "at fn.8, lead opinion: "In fact, the *Brady* rule has its roots in a series of cases dealing with convictions based on the prosecution's knowing use of perjured testimony. In *Mooney v. Holohan*, 294 U.S. 103 (1935), the Court established the rule that the knowing use by a state prosecutor of perjured testimony to obtain a conviction, and the deliberate suppression of evidence that would have impeached and refuted the testimony, constitutes a denial of due process. The Court reasoned that "a deliberate deception of court and jury by the presentation of testimony known to be perjured" is inconsistent with "the rudimentary demands of justice." *Id.* at 112. The Court reaffirmed this principle in broader terms in *Pyle v. Kansas*, 317 U.S. 213 (1942), where it held that allegations that the prosecutor had deliberately suppressed evidence favorable to the accused and had knowingly used perjured testimony were sufficient to charge a due process violation."
[61] See *Oregon v. Elstad*, 470 U.S. 298, 362 (1985)(dissent).

MEMORANDUM IN SUPPORT of Complaint
pursuant to 18 U.S.C. § 4 Misprision of felony.    Page 44 of 58

Applying this standard, the Court found the undisclosed admission to be relevant to punishment, and thus ordered that the defendant be resentenced. Since the admission was not material to guilt, however, the Court concluded that the trial itself complied with the requirements of due process despite the prosecutor's wrongful suppression. *The Court thus recognized that the aim of <u>due process "is not punishment of society for the misdeeds of the prosecutor, but avoidance of an unfair trial to the accused</u>." Ibid.*

This principle was reaffirmed in *United States v. Agurs*, 427 U.S. 97 (1976). *There we held that a prosecutor must disclose unrequested evidence which would create a reasonable doubt of guilt that did not otherwise exist.* Consistent with *Brady*, we focused not upon the prosecutor's failure to disclose, but upon the effect of nondisclosure on the trial:

Nor do we believe the constitutional obligation [to disclose unrequested information] is measured by the moral culpability, or willfulness, of the prosecutor. *If evidence highly probative of innocence is in his file, he should be presumed to recognize its significance even if he has actually overlooked it.* Conversely, if evidence actually has no probative significance at all, no purpose would be served by requiring a new trial simply because an inept prosecutor incorrectly believed he was suppressing a fact that would be vital to the defense. If the suppression of the evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor." [62]

"Our overriding concern in cases such as the one before us is *the defendant's right to a fair trial. One of the most basic elements of fairness in a criminal trial is that available evidence tending to show innocence, as well as that tending to show guilt, be fully aired before the jury; more particularly, it is that the State in its zeal to convict a defendant not suppress evidence that might exonerate him.* See *Moore v. Illinois*, 408 U.S. 786, 810 (1972) (opinion of MARSHALL, J.). This fundamental notion of fairness does not pose any irreconcilable conflict for the prosecutor, for as the Court reminds us, the prosecutor *"must always be faithful to his client's overriding interest that 'justice shall be done.'" Ante* at 111. *No interest of the State is served, and no duty of the prosecutor advanced, by the suppression of evidence favorable to the defendant. On the contrary, the prosecutor fulfills his most basic responsibility when he fully airs <u>all the relevant evidence</u> at his command." [63]*

See also *Id.*, at fn.17.

4.72 The Complaint is a part of "all the relevant evidence at [Respondent's] command." Petitioner is rightfully deserving of the Respondent's grace concerning all matters involving 26 USC and personal compensation for services and capital gains, if indeed any controversies exist or arise from Petitioner's treatment of such. Indeed, Petitioner's having relied upon experts (Congress) and 26 USC rather than simply waiving the flag of refusal to pay ("tax protester") clearly shows a desire to <u>not</u> offend the laws of any state or of the United States.

---

[62] See *Smith v. Phillips*, 455 U.S. 209, 219 (1982).
[63] See *U.S. v. Agurs*, 427 U.S. 97, 116 (1976)(dissent).

**Under Issue (G):**

4.73 Petitioner has relied upon Congress, purported professionals, and upon the Respondent's depiction of what is cost under the law. Petitioner feels reliance upon such as responsible and excusable conduct if indeed such a basis is faulty (which it is not). This is Petitioner's belief, and until it is dispelled with open discussion and logical application of law to the contrary the Petitioner will continue to act upon it.

**Questions under Issue (G):**

(QG)1. Can IRS Publication 17 be said to say anything other than that the value of Petitioner's personal services shall be deemed to be a cost?

(QG)2. What did the Respondent mean when it said that Petitioner's cost is the value of "services you provide in the transaction"?

(QG)5. When the courts and the IRS refuse to indulge or analyze tax law or to disclose what its parameters are in their opinion, how is it that the Petitioner can be duly punished for having to rely on his own interpretation and that of purported professionals?

## H. Due process and these claims.

4.74 In January of 2005, U.S. Attorney Edward E. Groves of the U.S. Department of Justice, Tax Division, briefed conspiracy under 18 USC § 371 and the element of willfulness under 26 USC § 7203 exactly like this –

***Begin quote of DOJ/Groves' memorandum.***

"At trial on the charge of conspiracy under 18 USC § 371, the United States will be required to introduce evidence supporting the conspiracy charge. In order to establish a violation of § 371 as a *Klein* conspiracy, the government must prove beyond a reasonable doubt the following:

1. An agreement between two or more people;

2. to defraud the United States; and,

3. the commission of an overt act in furtherance of the conspiracy by a member of the conspiracy; and,

4. dishonest or deceitful means were employed to accomplish the purpose of the agreement.

See *U.S. v. Caldwell*, 989 F.2d 1056 (CA9 1993); *U.S. v. Penagos*, 823 F.2d 346, 348 (CA9 1987); *U.S. v. Klein*, 247 F.2d 908 (CA2 1957), cert. denied, 355 US 924 (1958).

The fourth element outlined above is unique to the Ninth Circuit in *Klein*-type tax conspiracy prosecutions. In *Caldwell*, the Ninth Circuit found the district court's jury instructions deficient because the court did not tell the jurors they had to find that the defendant agreed to defraud the United States by "deceitful and dishonest means." *Caldwell*, 989 F.2d at 1060. The *Caldwell* panel held that the Supreme Court's use of the term "defraud" in § 371 must be limited to wrongs done by "deceit, craft or trickery, or at least by means that are dishonest." *Id.* at 1059 (citing *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)).

The United States will also bear the burden of proof of the defendant's willfulness. Willfulness is a voluntary, intentional violation of a known legal duty. *Cheek v. U.S.*, 498 US 192, 201 (1991). Proof of willfulness may be based totally on circumstantial evidence. *United States v. Poschwatta*, 829 F.2d 1477, 1483 (CA9 1987), cert. denied, 484 US 1064 (1988); Evidence that defendants were aware of their legal duty or were warned of the impropriety of their actions is appropriate circumstantial evidence. *United States v. Collocraft*, 876 F.2d 303, 305 (CA2 1989); *United States v. Dack*, 987 F.2d 1282, 1285 (CA7 1983)." [64]

*\*End quote of DOJ brief.*

4.75 The presumption of correctness enjoyed by the IRS disappears upon introduction of evidence to the contrary, a "determination" must be the result of a consideration of all relevant facts and statutes.[65] Cited herein is an abundance of <u>evidence to the contrary</u> and the Respondent will forever be silent as to the defects in the reasoning and conclusions employed and enumerated.

26 CFR 601.106(f)(1) "Rule 1. *An exaction* by the U.S. Government, which is not based upon law, statutory or otherwise, *is a taking of property without due process of law*, in violation of the [5[th] Amendment]. . . ."

§ 7214 Offenses by Officers and Employees of the United States.
    "(a) Unlawful Acts of Revenue Officers or Agents.- Any officer or employee of the United States acting in connection with any revenue law of the United States-
        (1) *who is guilty of any extortion or willful oppression under color of law; or*

---

[64] See U.S.' "Motion for an inquiry into potential conflict of interest" filed 1/5/05 in #02-0133 SOM-BMK, U.S. Dist. Court, Hawaii Division, by DOJ's Edward E. Groves.
[65] See *Hughes v. U.S.*, 953 F.2d 531 (CA9 1992); *Portillo v. Comm'r of IRS*, 932 F.2d 1128 (CA5 1991); *Elise v. Connett*, 908 F.2d 521 (CA9 1990); *Jensen v. Comm'r of IRS*, 835 F.2d 196 (CA9 1987); *Scar v. Comm'r of IRS*, 814 F.2d 1363 (CA9 1987); *Benzvi v. Comm'r of IRS*, 787 F.2d 1541 (CA11 1986); *Maxfield v. U.S. Postal Service*, 752 F.2d 433 (1984); *Weimerskirch v. Comm'r of IRS*, 596 F.2d 358, 360 (CA9 1979); *Carson v. U.S.*, 560 F.2d 693 (1977); *U.S. v. Janis*, 428 U.S. 433, 442 (1975); *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 758-770 (1973); *Pizzarello v. U.S.*, 408 U.S. 579 (1969); *Terminal Wine*, 1 B.T.A. 697, 701-02 (1925); *Couzens*, 11 B.T.A. 1140, 1159, 1179.

MEMORANDUM IN SUPPORT of Complaint
pursuant to 18 U.S.C. § 4 Misprision of felony.     Page 47 of 58

(2) *who knowingly demands other or greater sums than are authorized by law*, or receives any fee, compensation, or reward, except as by law prescribed, for the performance of any duty; or...

*shall be dismissed from office or discharged from employment* and, upon conviction thereof, *shall be fined* not more than $10,000, *or imprisoned* not more than five years, *or both*."

"*Failure of government to obey the law cannot ever constitute "legitimate law enforcement activity*." . . . In such circumstances, the Fifth Amendment makes clear that the prosecutor has no entitlement to use the confession in attempting to obtain the accused's conviction." [66]

4.76 With concise and substantive address, Congress has named the subject of taxes in chapters 2 and 21, and has named the subject of the Form W-4 in chapter 24 (that chapter imposes withholding, not a tax). In those chapters, the subjects named by Congress are not at all the Petitioner.

4.77 Surely, had Congress intended Petitioner to be subject it would have enacted legislation saying so. The fact that it has chosen to not do so is naturally nobody's fault, for it is not a fault at all. Do the whims of the IRS govern judicial proceedings or does Congress govern judicial proceedings? What is the IRS' lawful basis for taxation of the Petitioner, and by what authority does it operate without answering to 4 USC § 72?

4.78 These queries show the Petitioner to be possessive of good faith in this claim that the IRS lacks of statutory authority and personam jurisdiction over him.

"We agree with the holdings of the District Court and the Court of Appeals on the due process doctrine of vagueness. The settled principles of that doctrine require no extensive restatement here. (fn.7) *The doctrine incorporates notions of fair notice or warning*. (fn.8) *Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement*."(fn.9) Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts. (fn.10) The statutory language at issue here, "publicly... treats contemptuously the flag of the United States...," has such scope, *e.g.*, *Street v. New York*, 394 U.S. 576 (1969) (verbal flag contempt), and at the relevant time was without the benefit of judicial clarification. (fn.11)" *Id.*, at 572. [67]

---

[66] See *Oregon v. Elstad*, 470 U.S. 298, 362 (1985)(dissent).
[67] See *Smith v. Gougen, supra*, at 572.

4.79 Misconduct on the part of the IRS amounts to an estoppel of the Respondent under the clean hands doctrine. [68] Courts do not exist to reward the groundless arguments of the Respondent, but are rather bound by law. In this instance the two are diametrically opposed.

"The need to use the Court's supervisory powers to suppress evidence obtained through governmental misconduct was perhaps best expressed by Mr. Justice Brandeis in his famous dissenting opinion in *Olmstead v. United States*, 277 U.S. 438, 471-485 (1928):

Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. *Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy*. To declare that, in the administration of the criminal law, the end justifies the means -- *to declare that the Government may commit crimes in order to secure the conviction of a private criminal — would bring terrible retribution*. Against that pernicious doctrine this Court should resolutely set its face.

*Id.* at 485. Mr. Justice Brandeis noted that "a court will not redress a wrong when he who invokes its aid has unclean hands," *id.* at 483, and that, in keeping with that principle, the court should not lend its aid·in the enforcement of the criminal law when the government itself was guilty of misconduct.

Then aid is denied despite the defendant's wrong. It is denied in order to maintain respect for law; in order to promote confidence in the administration of justice; in order to preserve the judicial process from contamination.

*Id.* at 484. See also *id.* at 469-471 (Holmes, J., dissenting); *id.* at 488 (Stone, J., dissenting); *Lopez v. United States*, 373 U.S. 427, 453, n.3 (1963)(BRENNAN, J., dissenting)." [69]

---

[68] See *Black's*, 6th Edition: "Clean hands doctrine. Under this doctrine, equity will not grant relief to a party, who, as actor, seeks to set judicial machinery in motion and obtain some remedy, if such party in prior conduct has violated conscience or good faith or other equitable principal. *Franklin v. Franklin*, 365 Mo. 442, 283 S.W.2d 483, 486. One seeking relief cannot take equitable advantage of one's own wrong. *Fair Automotive Repair, Inc. v. Car-X Service Systems, Inc.*, 2 Dist., 128 Ill.App.3d 763, 84 Ill.Dec. 25, 471 N.E.2d 554, 558."

[69] See *U.S. v. Payner*, 447 U.S. 727, 745 (1980).

4.80 "[T]axpayers [are] entitled to know the basis of law and fact on which the Commissioner sought to sustain the deficiencies." [70] Regarding the assessment and collection of taxes, the threshold of due process is well defined.

"With the IRS' broad power must come a concomitant responsibility to exercise it within the confines of the law." [71]

"[18] More importantly, the statute does not require that the taxpayer put a legal classification on his protest. The Service, however, with its expertise, is obliged to know its own governing statutes and to apply them realistically." [72]

*The mission of the Service* is to encourage and achieve the highest possible degree of voluntary compliance with the tax laws and regulations and *to maintain the highest degree of public confidence in the integrity and efficiency of the Service. This includes communicating the requirements of the law to the public*, determining the extent of compliance and causes of non-compliance, *and doing all things needful to a proper enforcement of the law.*" *Federal Register*, Vol.39, #62, Fri.March 29, 1974, 1110 Organization and functions of the Internal Revenue Service, Sec.1111.1 Mission, since revised to sound less congenial.

4.81 "It has long been established that a taxpayer has the right to arrange his affairs so as to minimize the taxes he pays. See *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935) . . The firm's arrangements were not illegal and so were not prohibited[.]" [73] Statutes are Petitioner's intrinsic evidence, [74] and it contains obvious protections and benefits as briefed and claimed herein. The statutory nature of Petitioner's claims requires that contradiction be comprised of and based upon law to the contrary.

**Under Issue (H):**

4.82 The Respondent is silent as to alternative interpretations of provisions relied upon. Respondent refuses the Petitioner access to the law, and without such access, the Petitioner is of course without the information necessary to calculate liabilities, much less determine whether the Respondent has any legal authority whatsoever.

---

[70] See *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 498 (1937).
[71] See *Bothke v. Fluor Engineers and Constructors, Inc.*, 713 F.2d 1405, 1413, at [11] (CA9 1983).
[72] *Id.*
[73] See *Boccardo v. C.I.R.*, 56 F.3d 1016, 1018, 1020 (CA9 1995).
[74] See *Brown & Williamson v. F.D.A.*, *supra*, statutory analysis for limitations of authority is in appellate decision.

4.83 While Congress has indeed failed to name the Petitioner, a Citizen of the United States, as a subject of any of the four chapters the Respondent applies to any seller of personal services (chapters 1, 2, 21, 24), the Respondent persists without any type of legal challenge to the claims of the Petitioner whatsoever. Statute clearly requires the Secretary of the Treasury to have express leave to operate outside of D.C., and the Respondent has been, and remains, silent in Court as to the Secretary's requisite leave under 4 USC § 72.

4.84 Due process rights of the Petitioner are violated when the law is not fully open for discussion. The Petitioner has the right to look to the law and not to the Respondent when determining any 26 USC tax liability, and if such law cannot be understood or explained by the Respondent, due process rights are violated upon the assessment of a tax liability against the Petitioner. Since Respondent must know and apply its governing statutes realistically, there is no excuse for silence as to the operation of applicable statutes and regulations.

4.85 Under the *Brown* and *Chevron* tests for statutory basis for agency authority, under the void for vagueness doctrine, the maxim of *expressio unius est exclusio alterius*, and the clear language doctrine, if clear Congressional intent to name the Petitioner as a subject to an income tax cannot be readily produced by the Respondent, and if no express legislative permission to operate as described in 4 USC § 72 is readily disclosed, due process requires all assessments and alleged liabilities contested herewith be nullified as unlawful.

4.86 The maxim *expressio unius est exclusio alterius* is particularly appropriate to interpreting definitions, as they're found in statutory scheme. A "definition" excludes from the scope of the scheme to which it applies all those things not expressly mentioned therein. The Petitioner has the right to presume any law inapplicable when definitions in statute do not expressly apply themselves to her. This is Petitioner's belief, and until it is dispelled with open discussion and logical application of law to the contrary the Petitioner will continue to act upon it.

**Questions under Issue (H):**

(QH)1. Can the Respondent point to express legislative permission for the Secretary of the Treasury to operate outside of Washington, D.C., as required under 4 USC § 72? If not, by what authority does the Respondent speak to the Petitioner?

(QH)2. Can the Respondent point to a statute which identifies a U.S. Citizen, like the Petitioner, as the subject of any of the Tax Code's income taxes? If not, how does 26 USC pass the test under authorities cited herein, *supra*?

(QH)3. Does due process embrace or exclude Petitioner's access to the letter of the law?

(QH)4. How can legislation <u>not</u> be void for vagueness when it requires the input of the Respondent just to stay out of trouble and jail?

(QH)5. Can the Respondent enforce a law it can't openly explain without violating due process rights under the void for vagueness doctrine?

(QH)6. Inquire as to: "Mr. Gonzales, please compare Mr. Hardy to §§ 83(a), 1012 and 7203 and tell me what you think. Did you consider the exclusionary sentence of 26 USC § 7203 when charging him and/or others with failure to file? Please explain how that exclusion works. Section 7343, same questions."

(QH)7. How many sole proprietors would Congress find in jail against whom no § 6654 penalties had been assessed when it investigated the DOJ's last ten years of tax prosecutions under 26 USC § 7203 failure to file?

4.87 Petitioner has disposed of IRS' presumption of correctness with intrinsic and extrinsic evidence to the contrary, and to hold that its silence somehow now passes for rebuttal and for the practice of law is an obvious sprint from the Petitioner and his rights to due process. Lest these doctrines (void for vagueness/*expressio unius*) be abandoned, for as long as these issues remain unaddressed Petitioner must be recognized as being duly outside the scope of authority of the Respondent under 26 USC, and therefore as one over whom no federal court enjoys personam jurisdiction in relation to income taxation.

## V. <u>TAX COURT'S HOLDINGS</u>.

5.1 Here is partial text from the final order of U.S. Tax Court in 1996 in *Talmage v. C.I.R.*, USTC docket #339-95 regarding two claims which are briefed herein. It is clear that the court contradicted *Monsanto*, *Alvarez-Sanchez*, *Gonzales*, and *Dept. of Housing & Urban Renewal v. Rucker*, all *supra* at Issue D pg.25 - 35, and the appellate decisions cited therein, as they pertain to the interpretation of the terms "any" and "any property." The court also committed through haste invalid applications not found in statutory construction. *Monsanto* and the others were not

1    presented in support in the *Talmage* case. Likewise is true of those cases cited herein which

2    address specifically the gravity of "statutory definitions." (See ¶¶ 3.8 - 3.12, *supra*). **Begin here**

3    with Tax Court's assessment of the § 83 claim briefed herein:

4         "Because the issues are purely legal, this case is ripe for summary judgment. Tax
protester arguments like the claim that wages are not taxable income also suffice (as an

5    alternative to dismissal, and in the absence of better argument) to justify summary judgment
for the respondent. (protester cite omitted). Even if wages are, in effect, an exchange of value

6    for equal value, they are nevertheless taxable income. (protester cite omitted) And even if we

7    apply section 1001, his basis is determined under sections 1011 and 1012 as his cost, not fair
market value. *Since he paid nothing for his labor, his cost and thus his basis are zero*.

8    (protester cite omitted) Consequently, even under section 1001, his taxable income from his
labor is his total gain reduced by nothing, *i.e.*, his wages.

9         "Petitioner's primary argument is that section 83, Property Transferred in Connection
with the Performance of Services, has the effect of exempting his wages from income tax

10   because it requires us to apply section 1012, which specifies that cost should be used to
determine the basis of property (unless the Code provides otherwise) to determine the extent

11   to which wages constitute taxable income. Petitioner asserts that he "paid" for his wages
with his labor and that section 83 allows the value of his labor as a cost to be offset against

12   his wages, thereby exempting them from tax. Section 83 provides that property received for

13   services is taxable to the recipient of the property to the extent of its fair market value minus
the amount (if any) paid for the property. In attempting to equate his wages with property for

14   which he has a tax cost, petitioner's argument is nothing more than a variation of the wages-
are-not-income claim frequently advanced by tax protesters, and it is completely without

15   merit. (protester cites omitted) Petitioner's argument fails for the same reason that other
protester's arguments fail; *the worker's cost for his services-and thus his basis-is zero, not*

16   *their fair market value*."

17   **\*End quote** from *Talmage*.

18       5.2 While it becomes clear early on that § 83 utterly confounded the presiding officer, we see

19   that, when faced with the brief of the § 83 claim, Tax Court's ruling **1)** conceded the statute's

20   applicability to compensation in chapters 1, 2, 21 <u>and</u> 24, **2)** agreed with the interpretation of the
language of the provisions relied upon and that § 83(a) "explains how property received in

21   exchange for services is taxed," **3)** that personal services are property, and **4)** that the fair market

22   value of property it feels <u>is indeed within the language of</u> 1.83-3(g) as an "amount paid" would

23   indeed be deducted from gross income as a cost or *amount paid*. To the DOJ and Supreme Court

24   "any property" is everything.

25       5.3 We see that the court hung the entire rebuttal or refutation upon the mere fact that

26   personal services are without a basis to the worker, that the labor was not purchased by the worker

before he or she sells it to a client or employer, that because the labor is property that is not paid for by the worker it cannot be deducted as a cost by the worker. The court does so without citing any lawful basis for the exclusion of the value of personal services from "any money or property" in 1.83-3(g), nor to a lawful exception to "cash or other property" in 1.1012-1(a), and *U.S. v. Monsanto*, *Dept. of Housing & Urban Renewal v. Rucker*, and *United States v. Gonzales, United States v. Sanchez-Alvarez*, *supra*, unequivocally require that Tax Court do so, that <u>any</u> court do so, before such amounts (the FMV of services rendered) can rightfully or *lawfully* be excluded from consideration as an "amount paid." <u>Tax Court was not faced with these four U.S. Supreme Court decisions relating to the terms "any" and "any property."</u>

5.4 FURTHER, Tax Court went on to address, in footnote only, other claims made under *Talmage's* issues (A) through (E) in that case. It is starkly apparent that Tax Court has committed to a misinterpretation of the last phrase of § 6201(a), deciding that the language says, "which *are not* duly paid by stamp," when indeed the statute says, "which *have not been* duly paid by stamp." When Petitioner fails to pay amounts said to be a 26 USC liability on compensation for personal services, a failure to pay taxes which are duly paid by stamp <u>has not occurred</u>. This decision holds subparagraph (1) of subsection (a) as a subsection itself, and holds it equal to subsection (a) by ruling that its extension of "such authority" to amounts shown on returns in is addition to the authority in subsection (a), when indeed it is under or within subsection (a), and expressly refers to "such authority," and *that* authority is the one which is limited to unpaid stamp taxes. The statute's 1939 predecessor is plain and is plain evidence against this decision by its language, *i.e.*, "where such taxes have not been duly paid by stamp."

> "Petitioner also claims that sec. 6201, Assessment Authority, limits respondent's authority to assess taxes to taxes paid by stamp. Section 6201 does grant respondent assessment authority, and other authority, with respect to taxes payable by stamp, but it also grants such authority with respect to all taxes as to which returns or lists are made under the Code, and this clearly includes the income tax."

5.5 To <u>merely say</u> the statute operates in such a way <u>is far from explaining how</u> it is so. In addition, that court received an analysis of the entire Social Security statutory scheme and can only devote a footnote to it, while the Fourth Circuit in *Brown* devoted a solid fifteen plus pages to a much simpler statutory scheme for a tobacco company; this is willful dereliction.

"Petitioner advances some other frivolous arguments. He claims that sec. 3121(e) ("An individual who is a citizen of the commonwealth of Puerto Rico (*but not otherwise a citizen of the United States*)") implies that he is not a citizen of the United States for the purposes of the income tax."

5.6 That's not what **that petitioner** claimed! Is it really "frivolous" to claim that the 26 CFR 1.1-1(c) Citizen is <u>not</u> the same as the § 3121(e) citizen? **That** particular petitioner claimed that the definition of citizen quoted by Tax Court above excludes him from FICA, <u>not</u> the income tax (chapter 1 tax). **That** particular petitioner claimed that, as a citizen of the United States, he is not the Puerto Rican (or other possession) citizen subject to Social Security. Is § 3121(e) really how Congress would set about defining U.S. Citizenship? Hardly.

"...The logical force requiring rejection of their arguments-apart from their *assertions of personal political philosophy which do not provide a basis for us, a Court sitting to interpret the law*, to decide the questions dispositive of this case..." See *Rowlee v. C.I.R.*, 80 USTC 1111, 1120 **(1983)**, quoting *Reading v. C.I.R.*, 70 TC 730 (1978), aff'd. 614 F.2d 159 (CA8 1980, at 173).

*Compare*:

"...*the pleadings do not raise a genuine issue of material fact* respecting Respondent's determinations . . . *but rather involve only issues of law.* (Cite omitted) Therefore .... Respondent's motion for judgment on the pleadings will be granted. . . . *The final matter we consider is [penalties].*" See *Abrams v. C.I.R.*, 82 USTC 403, 408 **(1984)**.

5.7 Tax Court <u>sits to decide</u> issues at law one year, but <u>sits to penalize</u> all those who dare bring issues at law in the next year; this is [judicial] *holiday* spanning over twenty years. (See 26 USC § 8022 Joint Committee on Taxation). **This** particular Petitioner **implies** here and now that, when Congress intends to identify him as the subject of a tax, it will say, "Any individual born or naturalized in the United States and subject to its jurisdiction" owes this tax. **This** particular Petitioner has never had the statutory legal standing to apply for or to receive a Social Security card or benefits, and the Respondent has never had authority to offer them to Americans such as the Petitioner.

5.8 Social Security is an "income tax" on portions of compensation which are *income*. Since § 83 applies to any and all compensation, it applies to compensation in Social Security chapters 2 and 21 of the Tax Code. (§ 1402(a) self employment earnings, and § 3121(a) wages and subsection (q) tips). To impose SS tax on Americans, statutory definitions must be set aside

(violated), and § 83 must be violated, by the Secretary of the Treasury and his IRS. Congress says that nonresident aliens to the Petitioner are to go to chapter 2 for self employment earnings (See 26 U.S.C. 879(a)(2) [75]); it's a tax for non-U.S. Citizens, while Petitioner is a U.S. Citizen in 26 CFR 1.1-1(c), a mere regulation. Congress says that Social Security under chapters 2 and 21 are the same tax imposed by 1939 Tax Code § 3811.

> 26 USC § 7651(5) Virgin Islands.-
> (A) For purposes of this section, the reference in section 28(a) of the Revised Organic Act of the Virgin Islands to "any *tax specified in section 3811* of the Internal Revenue Code" shall be *deemed to refer to any tax imposed by chapter 2 or by chapter 21*.

> 1939 Code § 3811 Collection of Taxes in Puerto Rico and Virgin Islands.
> (a) Puerto Rico.
> (b) Virgin Islands. [76]

5.9 There's an abundance of evidence that Petitioner **cannot be both citizens**, the U.S. Citizen in chapter one and the citizen liable for and eligible for Social Security. Petitioner must meet the statutory definition of "citizen" in 26 USC chapters 2 and 21 to be liable for Social Security. The, Supreme, Court, ". . . Thus, Congress did not reach every transaction in which an investor actually relies on inside information.  A person avoids liability if he does not meet the statutory definition of an "insider[.]" [77] "It is axiomatic that the statutory definition of the term excludes unstated meanings of that term," [78] "[h]owever severe the consequences." [79] The proof and [aroma] of the IRS' lawlessness is overwhelming, the theft now exposed is rampant; who's in charge of the law? Clearly, not the judiciary or Congress.

5.10 Litigation of these conclusions showed them to be unassailable, each court having to commit derelictions, fundamental errors and miscarriages of justice to accessorize the misconduct exposed.

---

[75] See *26 USC § 879* Tax Treatment of Certain Community Income in the Case of Nonresident Alien Individuals. (a) General rule.-In the case of a married couple 1 or both of whom are nonresident alien individuals..., such community income shall be treated as follows: (2) Trade or business income..., shall be treated as provided in section 1402(a)(5).

[76] Clearly, 1939 Tax Code § 3811 was merely split into chapters 2 and 21 of the 1954 Tax Code.

[77] See *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972).

[78] See *Meese v. Keene, supra*, at 484.

[79] See *Jay v. Boyd, supra*, at 357 (1956).

## VI. CONCLUSION.

6.1  The rights and duties of the Petitioner are plainly stated in statutes relied upon, and absent Congressional leave to deviate from said statutes the Petitioner must act upon the conclusions stated. The absence of logical, cogent, and authoritatively supported refutation rooted in accepted principles and standards is Petitioner's validation of precisely what is claimed and complained of herein.

6.2 Until proof of leave required under 4 USC § 72 is disclosed, and until the Respondent informs America of the statute wherein Congress clearly subjects the Petitioner to the chapters it applies to him, Petitioner must be understood to be a Citizen of the United States over which the Respondent, *a fortiori*, any federal Court hearing controversies under 26 USC, enjoys no personam jurisdiction whatsoever. For these reasons Petitioner believes that no violation of any law occurs when he files no 1040, <u>and</u> when no "income tax" is paid on the value of his personal services or capital gains. The law is on the side of the Petitioner as one who is not in violation of anything, "willfully" or otherwise.

"There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have *found the essential elements of the crime beyond a reasonable doubt.*" *United States v. Nelson*, 137 F.3d 1094, 1103 (9th Cir. 1998) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))."

"[4] . . . Because this fact is *a necessary element of the statutory definition* of anabolic steroids, which is *in turn a necessary element of the offense*, failure to offer this evidence resulted in <u>insufficient evidence to sustain the</u> jury's <u>verdict</u>."

See *U.S. v. Orduno Aguilera*, No.98-50346 (CA9 filed 7/19/99). And -

"No rational trier of fact (a judge) could have found that this standard was met for Estrada. *The record was barren of evidence that he participated in the conspiracy.*"

"[2] Even though Estrada initially denied living in the trailer, his denial was as consistent with non-participating knowledge of the crime as it was with complicity in the crime. *When there is an innocent explanation for a defendant's conduct as well as one that suggests that the defendant was engaged in wrongdoing, the government must produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that the latter explanation is the correct one. In Estrada's case, the government produced no such evidence.*"

See *U.S. v. Estrada-Macias*, No.97-10115 (CA9 filed 7/12/00). Why is it that Americans can't get this from the IRS and the Courts in relation to tax matters and related allegations under 18 U.S.C. § 371 Conspiracy to defraud?

6.3 Seeking review of the IRS for statutory limitations of authority is a failure to state a claim under 5 USC §§ 701 - 706 which is for that express purpose, and protective orders block discovery to that end. (*Walden, supra*). The individual's right to arrange personal affairs according to law is abolished under these policies of the Respondent. When such silence is necessary to the collection of amounts allegedly imposed by law as income taxes, due process rights of every nature become meaningless.

6.4 The fact that the Respondent demands money from Americans so it can afford and facilitate their false arrest and imprisonment, after swearing to protect them at all times, convinces the Petitioner that "democracy" is imposed by force, not simply *enjoyed*. The Respondent needs a restraining order against these issues despite years of preparedness to rebut them. Anyone having knowledge that the provisions relied upon herein do not operate as briefed is urged to explain exactly how Petitioner is mistaken as to such operation by answering the questions presented for review beneath each issue briefed.

## VII. VERIFICATION.

7.1 I, David R. Myrland, do hereby declare under penalties of perjury that the foregoing statements are true and correct to the best of my knowledge and belief. Executed this *19th* day of December, 2005.

_David R. Myrland, Affiant/Complainant_

7.2 The above affirmation was duly subscribed and sworn to before me, this *19th* day of December, 2005, by David R. Myrland.

7.3 I, Chandra E. Laferriere , am a Notary under license from the State of Washington whose Commission expires on 5-1-2009 , and be it known by my Hand and my Seal as follows:

_Notary signature_

///

MEMORANDUM IN SUPPORT of Complaint
pursuant to 18 U.S.C. § 4 Misprision of felony.      Page 58 of 58

**1.1012-1(a)** Cost is property, all kinds of property.

**§ 1011** Cost is also known as "adjusted basis".
**1.1011-1** Cost is also known as "adjusted basis".

**§ 1001** Subtract adjusted basis to identify taxable gain.
**1.1001-1** Subtract adjusted basis to identify taxable gain.

Only if an excess exists can one be said to have received "gross income" to include in **§ 61(a)**. The other half of the equation would then operate. Depending upon an individual's situation, dependents, deductions, other costs, all these things may dictate a different form or application of a different set of provisions but, they only apply once an excess has been identified.

Because there is no indication of the existence of these provisions, the axioms codified, when one starts in § 61(a), the § 61(a) start mandated by the IRS is hard to challenge. The only indication being in the language of § 61(a) and its regulations, "Except as otherwise provided" and "unless excluded by law". This puts the individual in the position of having to identify the protections of Rights, the axioms codified, in order to keep the FMV of <u>intangible personal property</u> from being included in gross income.

In the event a § 83(a) start is denied, either start in Pub.17 ("services are cost") and then proceed directly to § 1012 which says that ALL property is cost, and start the equation in motion.

Another approach, when forced to include the FMV of labor in § 61(a) Gross Income, could be to use a long form and take a deduction for contract labor under § 212, justifying it with § 1012 which says that all property is cost and Pub.17 which says that services are a cost. To figure cost, see § 1012.

## THE CODE RECOGNIZES INTANGIBLE PROPERTY AS A COST

When faced with this Statutory claim for Free Labor, the reviewing Court, and the government's attorney's best defense is to charge that <u>intangible property,</u> such as Labor, is not considered **property** for the purposes of calculating cost.

A great deal of assistance is offered by the passage in IRS Publication 17, when it says that "[Cost is the] services you provide in the transaction" but, if it can be shown, through regulation, that <u>intangible property</u> has been included in cost, claims to the contrary will be baseless.

**Page 45 of 94**

Code § 61(a)(3) "Gains derived from dealings in property" expressly includes <u>intangible property</u> in the category of cost through its implementing regulation written (promulgated) by the Secretary.

> 26 USC § 61 GROSS INCOME DEFINED.
> (a) General Definition.- **Except as otherwise provided in this subtitle,** gross income means all income from whatever source derived, including (but not limited to) the following items:
> (3) **Gains derived from dealings in property;**

> 26 CFR 1.61-6. Gains derived from dealings in property.-
> (a) In general. Gain realized on the sale or exchange of property is included in gross income, unless excluded by law. **<u>For this purpose property includes</u>** tangible items, such as a building, and **<u>intangible items,</u>** such as goodwill. Generally, the gain is the excess amount realized over the unrecovered cost or other basis for the property sold or exchanged. **The specific rules for computing the amount of gain or loss are contained in section 1001 and the regulations thereunder**.

We have already examined at length the operation of § 1001 and its implementing regulation 26 CFR 1.1001-1(a) (One must restore the adjusted basis (**cost**)), and here we have a regulation that applies to <u>intangible property</u> requiring the application of § 1001; the Law requires its recognition as a **cost**.

## <u>PROPERTY, COST, AND THE LAW</u>

This segment is a view of the provisions that govern the identification, recognition, and deduction of the FMV of property that is to be considered to be, and treated as, cost. Code § 83 applies to all compensation for services. It instructs that the excess be separated from the "amount paid" and then included in gross income. Are services (Labor, intangible personal property) an "amount paid" for the purposes of § 83?

> 1.83-3(g) Amount paid. For purposes of section 83 and the regulations thereunder, **the term "amount paid" refers to the value of <u>any money or property</u> paid** for the transfer of property to which § 83 applies.

It is clear that § 83 embraces all kinds of property when it contemplates and seeks to act upon an "amount paid." Compensation paid for services is not the only type of transfer to which this concept applies.

The statute below applies to any transfer of property, tangible or intangible, before calling it a cost when it is disposed of to obtain other property.

§ 1012 Basis of Property-Cost. **The basis of property shall be the cost of the property...**

26 CFR 1.1012-1 Basis of property.-(a) General rule. In general, the basis of property is the cost thereof. **The cost is the amount paid** for such property **in cash or other property.**

Knowing as we do, that the Code contains much language that seems vague or ambiguous, it may serve to ask if the term "cost" is always used, or if another term may, at times, serve to express the same intent.

26 CFR 1.1011-1. Adjusted basis.-The **adjusted basis** for determining the gain or loss from the sale or other disposition of property **is the cost** or other basis prescribed in section 1012...

Now, one is aware that the term "adjusted basis" is to be construed to mean "cost" when such term encountered in other applicable statutes.

§ 1001(a) Computation of gain or loss.-The **gain** from the sale or other disposition of property **shall be the amount realized** therefrom **over the** <u>adjusted basis</u> . . .

26 CFR 1.1001-1(a) General Rule. ...The fair market value of property is a question of fact, but <u>only in rare and extraordinary cases will property have no fair market value.</u> The general **method of computing such gain or loss** is...that from the amount realized upon the sale or exchange **there shall be withdrawn a sum sufficient to restore the adjusted basis. ...The amount that remains after the adjusted basis has been restored to the taxpayer constitutes realized gain.** If the amount realized upon the sale or exchange is insufficient to restore to the taxpayer the adjusted basis of the property, a loss is sustained to the extent of the difference between such adjusted basis and the amount realized.

Statute recognizes that the FMV of costs, paid in any type of property, must be "restored", withdrawn from the total received in the transaction, before taxable gain, or an "excess", is realized.

If one is forced to include the FMV of Labor in gross income, all is not lost. Knowing that all property is cost, including Labor, one can include its FMV (contract price) in gross income, and then make the argument that such amount is deductible as a cost under § 212 which reads:

> § 212 Expenses for Production of Income.- In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses  paid or incurred during the taxable year-
> (1) for the production or collection of income;

Sovereignty, the individual's Right to intangible property and its place as a cost under axioms of income taxation and in legislation, has, for decades, just sat waiting for somebody to claim it.

## THE SECTION 83 EQUATION AT A GLANCE

This is the structure of the Law as it pertains to compensation for services. The bottom half will vary depending upon self employment, employment, dependents, etc... but, the top half remains constant in its application and purpose.

**§ 83(a)** Separate the "amount paid" from the excess (gain).

**1.83-1** Implements § 83 and applies to all compensation.

**1.83-4(b)(2)** If 1.83-1 applies, go to § 1012 to figure cost.

**§ 1012** Cost is property, all kinds of property.

**1.1012-1(a)** Cost is property, all kinds of property.

**§ 1011** Cost is also known as "adjusted basis."

**1.1011-1(a)** Cost is also known as "adjusted basis."

**§ 1001** Adjusted basis must be subtracted to identify excess.

**1.1001-1(a)** Adjusted basis must be "restored", what is left is the gain.

Let's now interject onto the record a $6150.00 Christmas bonus (excess). This amount was received without having to have performed services (incur a cost). This amount is "over the amount paid" for the purposes of § 83 and it is therefore includible in gross income.

| | | | |
|---|---|---|---|
| § 61(a) Gross Income | | $ 6,150.00 | |
| - § 151(d) | Deductions | | |
| - § 63(c) | | $ 6,050.00 | |
| = § 63 Taxable Income | | | |
| § 1 Tax Imposed | | $ (17.00) owed | |
| § 31(a) Credit for Withholding | | $ (100.00) paid | |
| = (?) refund/pay more | | = $ 83.00 refund | |

The top half embodies axioms of income taxation, the bottom half executes administration. Separate them, conceal the top half, and aggregates of Rights to intangible property are defenseless. The service provider should never start in § 61(a).

1. § 83(a) Separate "amount paid" from excess, excess goes to § 61(a).
   1.83-1 Applies to all compensation also.
   1.83-4(b)(2) If 1.83-1 applies, go to § 1012 to figure cost.

2. § 1012 Cost is property, all kinds of property.
   1.1012-1(a) Cost is property, all kinds of property.
   § 1011 Cost is also known as "adjusted basis".
   1.1011-1 Cost is also known as "adjusted basis".
   § 1001 Subtract "adjusted basis" to identify excess.
   1.1001-1 Subtract "adjusted basis" to identify excess.

3. Zero excess? You are a non-taxpayer (See § 7701(a)(14))

4. Excess of $6150.00? You are a taxpayer (See § 7701(a)(14))
   §61(a) Gross Income $ 6,150.00
    - § 151(d) Deductions
    - § 63(c)
         subtract $ 6,050.00 / standard deduction / personal exemption
   = § 63 Taxable Income of $100
   § 1 Tax Imposed ($17.00) owed
   § 31(a) Credit for W-4 Withholding $ (102.00 maybe) paid
   = (?) refund/pay more = $ 85.00 refund

Above, we see the equation segmented into four parts. Each part serves a different purpose in the determination of a liability under the Law. One portion is an accessory, one is the codification of axioms, one is pivotal, one is administrative.

1. This portion is an accessory. It serves to place one in § 1012 which excludes no property as cost (labor). It serves as a bridge to statutory provisions that contain certain requirements that reduce liabilities.

2. This portion is axiomatic. Within these provisions, such axioms as cost is deductible, FMV equals cost, contract equals FMV, only gain is "income", all property is cost, are all recognized and secure to us all when the Law is strictly adhered to.

3. This portion is pivotal. An excess makes the difference between the status of "taxpayer" and that of "non-taxpayer". If one is a "taxpayer", one who has received an excess or gain, it is proper to move on to the next portion.

4. This portion is administrative. Now that it has been established that the Law is to operate upon an individual, the Law must be administered. All provisions applicable to a "taxpayer" must be applied. He may receive deductions for various things, some may get more deductions than others, some may have received more excess than others; the Law must operate.

Every part of the equation above serves an obvious role. Every purpose is obviously essential to properly determine a liability for, and impose, an "income tax" as contemplated by the Code, one that recognizes all property as a cost (Sovereignty). To "tax" the FMV of Labor, all the Service need do is to conceal, and deprive the average employee or contractor of the top half of the equation, portions #1 all compensation "gross income" or GAIN.

As discussed, portion #1 is an accessory and 2, labeling or a bridge to § 1012 which excludes no property as a cost. There are other bridges such as this one.

1. Start in § 61(a), use a long form of sorts and deduct contract labor as a cost under § 212. Pub.17 says that services are a cost, § 1012 says that all property is a cost, § 212 says that it is deductible.

2. Labor is property. Section § 1012 says that all property is cost. Start the equation in § 1012 instead of § 83(a).

3. Any case law introduced as presumably having ruled that the FMV of Labor is gross income is not an authority unless it can be shown that § 83(a), 1012, and 1001 were applied and complied with in such decisions.

Agility is the key in any argument about the Law. Section 83(a) provides a direct route into § 1012. If a § 83(a) approach is denied, axioms should serve to accomplish the same task through other provisions; ALL property is a cost, even Labor, in § 1012.

The axioms expressed in the clear language in the provisions in portion #1 and 2 are essential to understanding certain fundamentals, those of income taxation, and those of Right to Property. It would appear that personal Sovereignty was codified long ago. (See 1939 Code §§ 111, 112, 113).

## THE § 83 EQUATION: SHORT FORM

Code § 83 applies to all compensation received in exchange for services. It requires that the excess be separated from the "amount paid" for the compensation (the Labor) and then included in gross income of the recipient of the excess.

**§ 83(a)** Separate excess from cost, excess goes to § 61(a).

Are the services (Labor, intangible personal property) rendered to 'pay' for the paycheck an "amount paid" for such purposes?

**26 CFR 1.83-3(g)** Amount paid. For purposes of section 83 and the regulations thereunder, **the term "amount paid" refers to the value of any money or property paid** for the transfer of property to which § 83 applies.

This regulation under § 83 makes it clear that the value (FMV) of **any property** is the "amount paid" for the compensation. After this amount (contract) is subtracted from the amount realized in the exchange, the amount remaining would be the "taxable gain" or excess; include it in gross income. What is the value of the intangible personal property (Labor) paid in the transfer?

1. Was the transaction one at an "arm's length" (unrelated parties, separate interests, no compulsion to buy or sell, all relevant facts disclosed)?

2. Does such a type of transaction establish the FMV (cost) of property?

3. Does 1.83-3(g) categorize the FMV of the Labor as the "amount paid" or the **cost?**

The answer to all three is yes; now subtract the FMV of the Labor (the "amount paid"; contract). If the service provider (Laborer) received no more than the arm's length transaction yielded (excess), do not proceed to § 61(a) Gross Income.

## 26 CFR 1.83-3(g) explained

Below is an examination of the phraseology of a particular regulation that, when broken down into simple terms, classifies the amount received for Labor under contract as a **cost** under the Law, therefore requiring its exclusion from gross income.

This regulation greatly simplifies any argument which seeks to address Labor as a **cost** (intangible personal property) by addressing instead the **value** OF the Labor, permitting the claim that Labor is **cost** to be passed over for the more substantive claim that amounts received FOR the Labor equals **cost**.

> 26 CFR 1.83-3(g) Amount paid. For purposes of section 83 and the regulations thereunder, <u>the term "amount paid" refers to/ the value of any money or property paid/ for the transfer of property to which section 83 applies.</u>

By isolating certain phrases in this regulation one is able to see the ramifications and protections that this regulation brings to the enforcement of Tax Laws.

> \>26 CFR 1.83-3(g) Amount paid. For purposes of section 83 and the regulations thereunder, <u>the term "amount paid" refers to</u>

  **\*Means "COST IS"**

\><u>the value of any money or property paid</u>

  **\*Means "THE FMV OF THE SERVICES RENDERED"**

\><u>for the transfer of property to which section 83 applies.</u>

  **\*Means "TO RECEIVE COMPENSATION"**

Knowing that regulation classifies the FMV of Labor as a **cost,** it is plain that this amount is to be "restored" to the taxpayer (See 26 CFR 1.1001-1(a)) and, that this amount is not permitted to be included in gross income (See 26 USC 83(a)) and, that its deduction from gross income in the event that it is included in gross income through error is allowed or permitted by Statute (See 26 USC 212); wasn't that simple?

This regulation, 26 CFR 1.83-3(g), embodies the axioms that § 1001, 1011, and 1012 represent, and applies them to intangible personal property; Labor. All property is cost, the value of cost is excluded from, or deductible from, gross income.



It is certainly refreshing to see such an acquiescence offered by the Internal Revenue Service in a guide proposed for use by every individual in the Country. It is clear that the IRS agrees with the terms of 26 CFR 1.83-3(g) and its categorization of contract value of Labor as a cost.

In light of the above, a reviewing court would be hard pressed to explain their authority to contradict Congress (§ 83), the Secretary of the Treasury (26 CFR 1.83-3(g)), and the Internal Revenue Service (Pub.17). If these are not bold faced lies, they are the plain and unmistakable truth; the Tax Code has always been Constitutional and, the seller of Labor has never owed the IRS a penny. Only through arbitrary and intentional exclusion of Labor from that property which is cost has this (Servitude; see *Clyatt v. U.S.*, 197 U.S. 207, 215-218 (1905); *U.S. v. Kozminski*, 487 U.S. 931 (1988)) been accomplished.

One very intriguing element of the § 83 equation is that, if § 83 is ever held to be inapplicable to compensation for services, the Form W-4, from chapter 24 Withholding, is no longer usable for compensation in § 61(a) because, regulation 1.83-6, under § 83, is the only tie to said form in chapter one of the Code.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## FOR THE PURPOSES OF § 83, "PROPERTY" INCLUDES COMPENSATION FOR SERVICES

One argument against the applicability of § 83 to the average paycheck or payment of fees, while seemingly having more substance than other arguments, is easily disposed of.

In correspondence from the Service that supposedly seeks to explain the function of § 83, in total contradiction of many decisions holding § 83 to be applicable to all compensation, the Service has said that § 83 applies only to compensation that, when received, has certain restrictions upon it. Even Tax Court disagrees with this. This is not the argument mentioned in paragraph one.

The argument mentioned in paragraph one, above, has been made in IRS correspondence which seeks to "educate" the inquisitor, and in court filings. It has been claimed that 26 CFR 1.83-3(e) excludes the average salary, wage, paycheck, fees, etc... when it says:

> 26 CFR 1.83-3(e) Property. For the purposes of § 83 and the regulations thereunder, the term "property" includes real and personal property other than either money or an unfunded and unsecured promise to pay money or property in the future.

There are severe and fundamental flaws in this attempt to dispose of § 83 claims.

1. They say that it excludes money. Money and negotiable instruments are two different things. Under the Law, they are both securities of sorts (See 15 USC 77b.; 26 USC 6323(h)(4)) but, the two are separated by a semi-colon (;) in statute; they are not the same thing. Since a paycheck or a personal draft is a negotiable instrument, it is not excluded from § 83 under this argument.

2. The term "includes" shall not be construed to exclude other things normally within the term defined (See 26 USC 7701(c)). To exclude "money" under this regulation, one would have to construe the term "includes" to exclude things normally identified as "property", thus violating § 7701(c).

3. If this regulation was indeed intended to exclude "money" from § 83's applicability, surely the many cases holding § 83 to be applicable to ALL compensation have rendered this regulation null and void for inconsistency with Statute. While this regulation was not particularly challenged in these decisions, it would have fallen as void in the event of such challenge.

4. If this regulation excludes "money", it cannot be said that it excludes stereos, T.V.s, gold, automobiles, etc..., can it? Are we to understand that those individuals who receive their compensation in any of these forms CAN deduct the FMV of their Labor, and those who get paid in "money" cannot? Is that equal protection? Hardly not.

**Page 54 of 94**

In addition to the points listed above, regulations under § 83 contribute much to firm up and establish the applicability of § 83.

> 26 CFR 1.83-3(f) Property transferred in connection with the performance of services. **Property transferred to an employee or an independent contractor** ... in recognition of the performance of, ...services **is considered transferred** in connection with the performance of services **within the meaning of § 83**.

> 26 CFR 1.83-3(g) Amount paid. For the purposes of § 83 and the regulations thereunder, **the term "amount paid" refers to the value of any money or property paid** for the transfer of property to which § 83 applies.

It is obvious that, any claim that paycheck is not "property" for the purposes of § 83 is, at best, grabbing at straws. In the language of the regulations quoted above, there is no exclusion of any property, negotiable instrument or otherwise.

FURTHER, Labor is expressly INCLUDED as an "amount paid" for the purposes of § 83 by the statement "value of any money or property paid." Again, it is clear that, the Service must identify the provisions which exclude intangible personal property from the property which is to be treated as a cost under the Law.

FURTHER, such exclusion must contradict and supersede the obvious INCLUSIONS above, inclusions of ALL compensation.

**\*End 1994 version of this manual**.

§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§

**\*Epilogue**:

**2014 updates**:

### THE DEFINITION OF "INCOME" HAS ALWAYS BEEN IN THE TAX CODE, IN PLAIN SIGHT!

This particular [chapter] is included as a sprint through the contention made by too many people that the term "income" is not defined in the Tax Code. Income is profit, cost defines income, and cost is defined in the Tax Code; income is defined in the Tax Code. You'll notice that many of the authorities already cited are included in this exercise, but to tackle this specific question it serves to use repetition to drive home how short sighted the contention really is.

This is proof that any CPA, attorney, taxpayer advocate, organization, group, or anti-tax guru or other figure, claiming to have knowledge and understanding of the Tax Code, or of income taxation, which does not <u>also</u> have full knowledge of this applicable provision, is running on empty. If this statute is unknown, if someone cannot convey their impression of this statute upon your first inquiry, they can be said to be utterly ignorant of the statute that "explains how property received in exchange for services is taxed." If someone has no clue about the Tax Code's explanation of how to tax a paycheck, what can they possibly know about the Tax Code, about income taxation, or about your duties? California CRTC § 17081 makes this federal statute (26 USC § 83) California state law, as do many states.

Here's your proof that the statute applies to and explains how a paycheck is to be taxed. Even if it did not apply to *your* paycheck, watch what it would otherwise do for the person who receives compensation to which the statute would apply. Another faction that will have to claim ignorance is comprised of those who say that "income is not defined in the Code." Accounting 101 teaches us that cost defines income, and cost is abundantly defined in the Code, and it has always been defined in the Code. Every definition of "cost" is the definition of *income*. (See 26 USC §§ 83, 1012; 26 CFR 1.83-3(g), 1.1001-1(a), 1.1012-1(a)). How this has escaped the hundreds of groups and thousands of protestors for decades . . . I just don't know.

Certain jurisdictional and statutory challenges can be made to attack personam jurisdiction when facing tax assessments or criminal charges under 26 USC, the Internal Revenue Code. The statutory claim below is *inside* the Tax Code, and would apply only after territorial jurisdiction in the fifty states is proven by the Secretary of the Treasury, a requisite of 4 USC § 72. One might also argue that chapter one of the Tax Code names U.S. citizens as

subject only in regulation, in violation of the 16th Amendment which authorizes only Congress to name a subject of an income tax. But once inside the Tax Code and forced to argue, this is the property rights claim based solely on statute and regulations already held to be valid.

This is a condensed overview of the language and operation of 26 USC 83 which, among tax "professionals," is taught to apply only to certain payments of stock to employees and other compensation with restrictions upon it.

We first will see that the courts say the statute applies to <u>any and all compensation</u>. Even the IRS continues to lie in audits and appeals conferences about the statute's applicability. Upon § 83's first reading, it should be clear that it separates the cost from gross income, that it allows only the excess over the "amount paid" to be included in gross income. What will not be examined here is the nexus between § 83 and other statutes it allows one to use to figure cost, because this is a totally separate and distinct *equation* in and of itself, and it has no impact whatsoever on the method employed here.

**1. "Section 83(a) explains how property received in exchange for services is taxed." Section 83 applies to <u>all property paid for services</u> of corporations, and for the services of individuals, the self employed and the employee alike.**

> See *Montelepre Systemed, Inc. v. C.I.R.*, 956 F.2d 496, 498 at [1] (**CA5** 1992): "*Section 83(a) explains how property received in exchange for services is taxed.*"

> *MacNaughton v. C.I.R.*, 888 F.2d 418, 421 (**CA6** 1989): "The *Alves* court stated that the plain language of section 83 belied this argument because the "*statute applied to all property transferred in connection with the performance of services*" and because no reference is made to the term "compensation." *Id.* The court further concluded in *Alves* that "*if Congress had intended section 83(a) to apply solely to restricted stock used to compensate employees, it could have used much narrower language.*" *Id.* at 481-82. Upon consideration, *we agree with the interpretation* advanced by the *Alves* court and, therefore, join the Ninth Circuit in holding that *section 83 is not limited to stock transfers* which are compensatory in nature."

> *Pledger v. C.I.R.*, 641 F.2d 287, 293 (**CA5** 1981): "The taxing scheme imposed by Congress *more accurately reflects what taxpayer received as compensation* than a scheme that taxes the taxpayer on merely a portion of the compensation."

> *Alves v. C.I.R.*, 734 F.2d 478, 481 (**CA9** 1984): "The plain language of section 83(a) belies *Alve's* argument. *Section 83(a) applies to all property transferred in connection with the performance of services*. No reference is made to the term "compensation." Nor is there any statutory requirement that property have a fair market value in excess of the amount paid at the time of transfer. Indeed, *if Congress had intended section 83(a) to*

*apply solely to restricted stock used to compensate its employees, it could have used much narrower language*. Indeed, Congress made section 83(a) applicable to all restricted "property," not just stock; to property transferred to "any person," not just to employees; and *to property transferred "in connection with . . . services," not just compensation for employment*. See *Cohn v. Commissioner*, 73 USTC 443, 446-47 (1979)." [1]

*Klingler Electric Co. v. C.I.R.*, 776 F.Supp. 1158, 1164 at [1] (S.D.Miss. 1991): "*Section 83(a) applies to all property transferred in connection with the performance of services*."

*Gudmundsson v. US*, 634 F.3d 212 (CA2 2011): "At the heart of this case is I.R.C. § 83, which *governs the taxation of property transferred* in connection with the performance of services."

*Robinson v. C.I.R.*, 82 USTC 444, 459 (1984); The legislative history of section 83 does not require the conclusion that the statute should be applied to tax-avoidance techniques only. *To the contrary, the House and Senate reports specifically delineate transactions and transfers to which section 83 was not to apply and do not exclude from its purview contractual provisions that were not tax motivated*."

*Cohn v. C.I.R.*, 73 USTC 443, 446 (1979): "Petitioners rest their entire case on the proposition that Elovich and Cohn and/or Mega were "independent contractors" and not employees of the Integrated and that, therefore, section 83 does not apply to the acquisition of the shares from Integrated. They rely on the legislative history surrounding the statute to support their proposition that section 83 was intended to apply only to restricted stock transferred to employees. *Respondent contends that the words "any person" in section 83(a) encompass independent contractors as well as employees. We agree with Respondent*. . . . We reject petitioner's argument. While restricted stock plans involving employers and employees may have been the primary impetus behind the enactment of section 83, *the language of the section covers the transfer of any property transferred in connection with the performance of services* "to *any person* other than the person for whom the services are performed." (Emphasis added.) The legislative history makes clear that *Congress was aware that the statute's coverage extended beyond restricted stock plans for employees*. H.Rept. 91-413 (Part 1) (1969), 1969-3 C.B. 200, 255; S.Rept. 91-552 (1969), 1969-3 C.B. 423, 501. *The regulations state that that section 83 applies to employees and independent contractors* (sec. 1.83-1(a), Income Tax Regs.). There is no question but that, under the foregoing circumstances, *these regulations are not "unreasonably and plainly inconsistent with the revenue statutes." Consequently, they are sustained*. (cites omitted)"

Concurring with *Cohn*, *Alves*, see *Centel Communications Co. v. CIR*, 920 F.2d 1335, 1342 (**CA7** 1990).

---

[1] That's the 9th Circuit citing US Tax Court in *Cohn v. Comm'r*, 73 USTC 443 (1979).

**2. The fair market value (FMV) of property is determined by the terms of an arm's length transaction. The value of your personal services is what your employer, customer, or client is willing to give you for them.**

> *"The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts."* Treas.Reg. §20.2031-1(b). *The willing buyer-willing seller test of fair market value is nearly as old as the federal income, estate, and gift taxes themselves,* and is not challenged here."

> " . . .The 'willing buyer' is the fully informed person who agrees to buy . . . at the redemption price. . . .It is a market made up of informed buyers and informed sellers, all dealing at arm's length." [2]

> "Fair market value is that "price which would probably agreed upon by a seller willing, but under no compulsion, to sell, and a buyer willing, but under no compulsion, to buy, where both have reasonable knowledge of the facts." *Pledger v. Commissioner of Internal Revenue,* 641 F.2d 287, 295 (CA5 1981), quoting *Newberry,* 39 BTA 1123 (1939).

> ...In general, fair market value is that amount which one ready and willing but not compelled to buy would pay to another ready and willing but not compelled to sell the property. [3]

> *Black's Law Dictionary,* 6th Edition, "Arm's length transaction." Said of a transaction negotiated between unrelated parties, each acting in his or her own self interest; *the basis for a fair market value determination.* A transaction in good faith in the ordinary course of business by parties with independent interests... The standard under which unrelated parties, each acting in his or her own best interest, would carry out a particular transaction.

**3. Section 83(a) applies to all compensation, and provides that only the excess over the "amount paid" for it is gross income.**

> 26 USC § 83 Property Transferred in Connection with the Performance of Services.
> (a) If, in connection with the performance of services, property is transferred..., *the excess of-*
> (1) the fair market value of such property...*over,*
> (2) *the amount (if any) paid* for such property . . . *shall be included in the gross income* of the person who performed such services . . ."

---

[2] See *U.S. v. Cartwright,* 411 U.S. 546, 552 (1973). See also *Hicks v. U.S.,* 335 F.Supp. 474, 481 (Colo.1971); *Robinson v. Comm'r of IRS,* 82 USTC 444, 468 (1984); *Pledger v. Comm'r of IRS,* 641 F.2d 287, 295 (CA5 1981); *Newberry.* 39 BTA 1123 (1939); *Black's,* 6th Edition, "Arm's length transaction"; IRS Publication 17, pg.120 (1994) for the fun of it.
[3] See 27 CFR 70.150(b).

If compensation for services is transferred to an employee, corporation, or self employed individual, only the excess value in the compensation which exceeds the value of the personal services paid for the compensation is gross income. The value of labor is "an amount paid" and is separated from gross income, which is the amount <u>over</u> the value of the labor. I have to violate § 83(a) to tell the IRS that my paycheck is gross income.

This is key. Do not proceed until you have squared away this conclusion, or have proven it misguided in a way which does not offend the Supreme Court decisions cited herein. These regulations have already been sustained as consistent with the language of the statute itself, in cases holding § 83 applicable to any and all compensation, subsection (g) is of primary importance because it defines "amount paid."

26 CFR 1.83-3 *Meaning and use of certain terms*.

(e) Property. For purposes of section 83 and the regulations thereunder, the term "property" *includes real and personal property other than either money or an unfunded and unsecured promise to pay money or property in the future*. The term also includes a beneficial interest in assets (including money) which are transferred or set aside from the claims of creditors of the transferor, for example, in a trust or escrow account. See, however, Sec. 1.83-8(a) with respect to employee trusts and annuity plans subject to section 402(b) and section 403(c). In the case of a transfer of a life insurance contract, retirement income contract, endowment contract, or other contract providing life insurance protection, only the cash surrender value of the contract is considered to be property. Where rights in a contract providing life insurance protection are substantially nonvested, see Sec. 1.83-1(a)(2) for rules relating to taxation of the cost of life insurance protection.

(f) *Property transferred in connection with the performance of services. Property transferred to an employee or an independent contractor (or beneficiary thereof) in recognition of the performance of, or the refraining from performance of, services is considered transferred in connection with the performance of services within the meaning of section 83*. The existence of other persons entitled to buy stock on the same terms and conditions as an employee, whether pursuant to a public or private offering may, however, indicate that in such circumstances a transfer to the employee is not in recognition of the performance of, or the refraining from performance of, services. *The transfer of property is subject to section 83 whether such transfer is in respect of past, present, or future services*.

(g) *Amount paid. For purposes of section 83 and the regulations thereunder, the term "amount paid" refers to the value of any money or property paid* for the transfer of property to which section 83 applies, and does not refer to any amount paid for the right to use such property or to receive the income therefrom. Such value does not include any stated or unstated interest payments. For rules regarding the calculation of the amount of unstated interest payments, see Sec. 1.483-1(c). When section 83 applies to the transfer of property pursuant to the exercise of an option, the term ``amount paid'' refers

to any amount paid for the grant of the option plus any amount paid as the exercise price of the option. For rules regarding the forgiveness of indebtedness treated as an amount paid, see Sec. 1.83-4(c).

[T.D. 7554, 43 FR 31916, July 24, **1978**, as amended by T.D. 8042, 50 FR 31713, Aug. 6, 1985; 50 FR 39664, Sept. 30, **1985**]

**4. The term "amount paid" refers to the value of ANY property paid, including personal services, unless an express exclusion can be found in the law. The, Supreme, Court, -**

"Section 853's *language is plain and unambiguous. Congress could not have chosen stronger words to express its intent* that forfeiture be mandatory than § 853(a)'s language that upon conviction a person "shall forfeit . . . _**any property**_" and that the sentencing court "shall order" a forfeiture. *Likewise, the statute provides a broad definition of property which does not even hint at the idea that assets used for attorney's fees are not included.* Every Court of Appeals that has finally passed on this argument has agreed with this view. *Neither the Act's legislative history nor legislators' post-enactment statements support respondent's argument that an exception should be created because the statute does not expressly include property to be used for attorney's fees, or because Congress simply did not consider the prospect that forfeiture would reach such property.* . . . Moreover, *respondent's admonition that courts should construe statutes to avoid decision as to their constitutionality is not license for the judiciary to rewrite statutory language. Pp. 606-611."* [4]

"In determining the scope of a statute, we look first to its language." *United States v. Turkette,* 452 U.S. 576, 580 (1981). *In the case before us, the language of § 853 is plain and unambiguous: all assets falling within its scope are to be forfeited upon conviction, with no exception existing for the assets used to pay attorney's fees -- or anything else, for that matter.*

As observed above, § 853(a) provides that a person convicted of the offenses charged in respondent's indictment *"shall forfeit . . . any property"* that was derived from the commission of these offenses. After setting out this rule, § 853(a) repeats later in its text that upon conviction a sentencing court "shall order" forfeiture of _**all property**_ described in § 853(a). *Congress could not have chosen stronger words to express its intent* that forfeiture be mandatory in cases where the statute applied, or broader words to define the scope of what was to be forfeited. *Likewise, the statute provides a broad definition of "property" when describing what types of assets are within the section's scope: "real property . . . tangible and intangible personal property, including rights, privileges, interests, claims, and securities."* 21 U.S.C. § 853(b) (1982 ed., Supp. V). *Nothing in this all-inclusive listing even hints at the idea that assets to be used to pay an attorney are not "property" within the statute's meaning.*

*Nor are we alone in concluding that the statute is unambiguous in failing to exclude assets that could be used to pay an attorney from its definition of forfeitable property. This argument, advanced by respondent here,* see Brief for Respondent 12-19, *has been unanimously rejected by every Court of Appeals that has finally passed on it,*

---

[4] See *US v. Monsanto,* 491 U.S. 600 (syllabus) (1989).

as it was by the Second Circuit panel below, see 836 F.2d at 78-80; id. at 85-86 (Oakes, J., dissenting); *even the judges who concurred* on statutory grounds in the en banc decision *did not accept this position*, see 852 F.2d at 1405-1410 (Winter, J., concurring). We note also that the Brief for American Bar Association as *Amicus Curiae 6, frankly admits that the statute "on [its] face, broadly cover[s] all property derived from alleged criminal activity and contain[s] no specific exemption for property used to pay bona fide attorneys' fees."*

*Respondent urges us*, nonetheless, *to interpret the statute to exclude such property for several reasons*. Principally, *respondent contends that we should create such an exemption because the statute does not expressly include property to be used for attorneys' fees* . . . In support, respondent observes that the legislative history is "silent" on this question, and that the House and Senate debates fail to discuss this prospect. But this proves nothing[.] *The fact that the forfeiture provision reaches assets that could be used to pay attorney's fees, even though it contains no express provisions to this effect, "'does not demonstrate ambiguity'" in the statute: "'It demonstrates breadth.'"* Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 499 (1985) (quoting Haroco, Inc. v. American Nat. Bank & Trust Co. of Chicago, 747 F.2d 384, 398 (CA7 1984)). *The statutory provision at issue here is broad and unambiguous,* and Congress' failure to supplement § 853(a)'s *comprehensive phrase -- "any property" -- with an exclamatory "and we even mean assets to be used to pay an attorney" does not lessen the force of the statute's plain language*." [5]

"As we have noted before, such post-enactment views "form a hazardous basis for inferring the intent" behind a statute, *United States v. Price*, 361 U.S. 304, 313 (1960); instead, Congress' intent is *"best determined by [looking to] the statutory language that it chooses,"* Sedima, S.P.R.L., supra, at 495, n.13. . . . *Finally, respondent urges us, see Brief for Respondent 2029, to invoke a variety of general canons of statutory construction*, as well as several prudential doctrines of this Court, to create the statutory exemption he advances; among these doctrines is our admonition that courts should construe statutes to avoid decision as to their constitutionality. See, *e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council*, 485 U.S. 568, 575 (1988); *NLRB. v. Catholic Bishop of Chicago*, 440 U.S. 490, 500 (1979). *We respect these canons, and they are quite often useful in close cases, or when statutory language is ambiguous. But we have observed before that such* "interpretative canon[s are] not a license for the judiciary to rewrite language enacted by the legislature." *United States v. Albertini*, 472 U.S. 675, 680 (1985). *Here, the language is clear and the statute comprehensive: § 853 does not exempt assets to be used for attorney's fees from its forfeiture provisions.* [6]

---

[5] See *Monsanto, Id.*, at 607-09.

[6] See *Monsanto, Id.*, at 610-11.

**5. Only the excess over the value of one's personal services is included in gross income under § 83(a). By what authority does the IRS exclude personal services from "any property"? In *Monsanto* the DOJ argued that "any property" means everything, but the opposite must be true of tax statutes for the IRS to get around § 83(a).**

Questions:

A. How does one apply § 83(a) to a paycheck and fail to separate from gross income the value of the personal services rendered?

B. If this indeed can be done, can it happen without offending *Monsanto*?

C. Did Congress delineate any types or items of property which are to be excluded from "any property" or "the amount paid"?

D. If Congress had intended that *some property* was to be excluded from "the amount paid," surely it could have used plain language to do so; right?

E. The DOJ says "any property" means all of it, unless a statutory exclusion can be cited, and no such exception exists which serves to exclude personal services from "any property." Can you comply with § 83(a) and still include your paycheck in "gross income"?

In sum, you've seen, **1)** allegations of § 83's applicability to all compensation paid for personal services, **2)** you've seen allegations that § 1012 is another way to figure the laborer's cost, be they self employed, **3)** you've seen allegations that § 83 "explains how property received in exchange for services is taxed," and **4)** you've seen the DOJ and Supreme Court concur on the interpretation of the term "any property." You've never seen any of this from any other source, including your accountant, attorney, or tax protestor group. The term "any property" is addressed above, but what about the rest of these allegations? Here's a 1996 Tax Court determination confirming that those § 83 decisions quoted above and these other allegations are accurate, but it clearly turns on the issue of "any property" and an intentional misinterpretation, one which diametrically opposes *Monsanto*, the decision where the DOJ and Supreme Court, even the *Amicus Curiae* (friend of court) American Bar Association, concur on the fact that "any property" leaves no room for exception - ALL PROPERTY.

"Because the issues are purely legal, this case is ripe for summary judgment. Tax protester arguments like the claim that wages are not taxable income also suffice (as an alternative to dismissal, and in the absence of better argument) to justify summary judgment for the respondent. (protester cite omitted). Even if wages are, in effect, an

exchange of value for equal value, they are nevertheless taxable income. (protester cite omitted) And even if we apply section 1001, his basis is determined under sections 1011 and 1012 as his cost, not fair market value. *Since he paid nothing for his labor, his cost and thus his basis are zero.* (protester cite omitted) Consequently, even under section 1001, his taxable income from his labor is his total gain reduced by nothing, *i.e.*, his wages.

"Petitioner's primary argument is that section 83, Property Transferred in Connection with the Performance of Services, has the effect of exempting his wages from income tax because it requires us to apply section 1012, which specifies that cost should be used to determine the basis of property (unless the Code provides otherwise) to determine the extent to which wages constitute taxable income. Petitioner asserts that he "paid" for his wages with his labor and that section 83 allows the value of his labor as a cost to be offset against his wages, thereby exempting them from tax. Section 83 provides that property received for services is taxable to the recipient of the property to the extent of its fair market value minus the amount (if any) paid for the property. In attempting to equate his wages with property for which he has a tax cost, petitioner's argument is nothing more than a variation of the wages-are-not-income claim frequently advanced by tax protesters, and it is completely without merit. (protester cites omitted) Petitioner's argument fails for the same reason that other protester's arguments fail; *the worker's cost for his services-and thus his basis-is zero, not their fair market value.*"

**\*End *Talmage v. Comm'r*, USTC docket #339-95 (1995) quote**.

**NOTE**: Mr. Talmage paid *something* for his wages. If not with his labor, then what? Was an arbitrary exclusion of labor from an "amount paid" made from the term "any money or property paid" in 26 CFR 1.83-3(g)? This exposes that policy alone determines cost, and <u>not</u> the letter of the law.

Under § 83(a), "the amount paid" is "the value of any money or property," while this decision says that "the value of any money or property within which one has a cost." No authority is found to except personal services, labor, from the term "any property." The DOJ/IRS must have it both ways regarding the term "any property," when it includes everything in sight when they seize a heroin manufacturer's property (*Monsanto*), but it does NOT include everything when the term is applied to one's compensation. In all of the past litigation of this issue, this statutory claim, the *Monsanto* decision was not argued and has only recently been discovered and applied here. It radically contradicts all prior litigation on precisely the point of contention, as is made clear by the Tax Court decision quoted above. It simply holds no water under the weight of *Monsanto*.

Tax Court, however, is quite comfortable with § 83's applicability and fundamental role as alleged, as the *explanation* of how to tax a paycheck, and also is content to apply § 1012 to all compensation. A paycheck free of income tax because labor <u>is</u> a cost, versus a taxed paycheck

because labor is not a cost, this has been narrowed down to precisely this dichotomy; the IRS/DOJ must have it both ways on the term "any property" in 1.83-3(g), and "cash or other property" in 1.1012-1(a).

> "The taxpayers were entitled to know the basis of law and fact on which the Commissioner sought to sustain the deficiencies." [7]

A full twenty years after this interpretation of § 83(a) was launched in US Tax Court litigation, the statute is still recognized as controlling:

> **Second Circuit**: "At the heart of this case is I.R.C. § 83, which governs the taxation of property transferred in connection with the performance of services." (See *Gudmundsson v. US*, 634 F.3d 212 (CA2 2011)).

Of the many Tax Court cases where this argument was made, five were pursued all of the way to the US Supreme Court by the October Term of 1998. Two of those were docketed (past the clerks to the Justices) before being denied. In only one instance (*Talmage v. Comm'r of IRS*, Tax Court docket #339-95) did the courts describe the reasoning behind the government's claim that labor and its value is not a cost to the individual.

We see that the value of labor is excluded from cost for the sole reason that you did not purchase your labor before your sold it, as an employee or self employed individual. In the arguments concerning § 83 a challenge was constantly made in every court that nowhere does the law provide for such an exclusion from cost. "Where is your authority to exclude *some property* from *any money or property paid*?"

Doesn't the term "any property" indicate that there are no exceptions to the rule? Nowhere in the excerpt from the *Talmage* decision does Tax Court disclose the statutory foundation for excluding labor from costs that are deductible, which indicates that via mere policy alone is the exclusion conducted; the exclusion is arbitrary. If "any money or property" was deemed all inclusive, clearly the value of labor would be an "amount paid" under § 83(a) and would thus be excluded from gross income.

---

[7] See *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 498 (1937).

The argument was made that the IRS has to have permission, in law, to exclude *some property* from the all inclusive term "any money or property," but the government could never point to such a provision. Observe how the government fares in the Supreme Court when others argue for an exception to the term "any."

As used in statute and regulation, the terms "any" or "any property" are to be construed as all inclusive until express statutory exceptions can be cited to support a contention that such terms are not all inclusive. (See *U.S. v. Monsanto*, 491 U.S. 600, 607-611 and (syllabus) (**1989**); *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (**1994**); *U.S. v. Gonzales*, 520 U.S. 1, 4-6 (**1997**); *Department of Housing and Urban Renewal v. Rucker*, 535 U.S. 125, 130-31 (**2002**) citing *Gonzalez* and *Monsanto*).

> **1989** - *Monsanto*: Heroin manufacturer Monsanto argues that he should be allowed to keep enough money for attorney's fees, but the DOJ argues successfully that "**any property**" is all inclusive and therefore means the U.S. can seize any and all property unless Monsanto can point to a specific exclusion of attorney's fees under the law. DOJ can seize everything owned by defendant.

> **1994** - *Alvarez*: U.S. argues successfully that, **because statute expressly provides for an exception to "any,"** that it is not all inclusive, that a "delay" should not preclude a criminal defendant's confession or statement to state police from being used as evidence in federal case commenced thereafter. DOJ can use confession sought to be suppressed by criminal defendant.

> **1997** - *Gonzales*: U.S. argues successfully that "**any**" in sentencing laws is all inclusive and therefore prevents the defendants from serving federal time concurrently with other sentences, argues for more jail time and gets it. More jail time for convict.

> **2002** - *Rucker* (citing *Monsanto* and *Gonzales*): U.S. argues successfully that "innocent owner" defense unavailable to co-tenant of low income housing who, although innocent, was subject to the statute's eviction of an all inclusive "any tenant" of a leased unit where prohibited activity had taken place. U.S. can evict the innocent tenant of low income housing unit which is scene of prohibited behavior.

And from *Monsanto, Id.*:

> "Section 853's *language is plain and unambiguous. Congress could not have chosen stronger words to express its intent* that forfeiture be mandatory than § 853(a)'s language that upon conviction a person "shall forfeit . . . *any property*" and that the sentencing court "shall order" a forfeiture. *Likewise, the statute provides a broad definition of property which does not even hint at the idea that assets used for attorney's fees are not included*. Every Court of Appeals that has finally passed on this argument has agreed

with this view. *Neither the Act's legislative history nor legislators' post-enactment statements support respondent's argument that <u>an exception should be created because the statute does not expressly include property to be used for attorney's fees</u>, or because Congress simply did not consider the prospect that forfeiture* [491 U.S. 601] *would reach such property.* . . . Moreover, *respondent's admonition that courts should construe statutes to avoid decision as to their constitutionality is not license for the judiciary to rewrite statutory language.* Pp. 606-611." [8]

"In determining the scope of a statute, we look first to its language." *United States v. Turkette*, 452 U.S. 576, 580 (1981). *In the case before us, the language of § 853 is plain and unambiguous: all assets falling within its scope are to be forfeited upon conviction, with no exception existing for the assets used to pay attorney's fees -- or anything else, for that matter*.

As observed above, § 853(a) provides that a person convicted of the offenses charged in respondent's indictment "*shall forfeit . . . any property*" that was derived from the commission of these offenses. After setting out this rule, § 853(a) repeats later in its text that upon conviction a sentencing court "shall order" forfeiture of *all property* described in § 853(a). *Congress could not have chosen stronger words to express its intent* that forfeiture be mandatory in cases where the statute applied, or broader words to define the scope of what was to be forfeited. *Likewise, the statute provides a broad definition of "property" when describing what types of assets are within the section's scope: "real property . . . tangible and intangible personal property, including rights, privileges, interests, claims, and securities." 21 U.S.C. § 853(b) (1982 ed., Supp.V). Nothing in this all-inclusive listing even hints at the idea that assets to be used to pay an attorney are not "property" within the statute's meaning.*

*Nor are we alone in concluding that <u>the statute is unambiguous in failing to exclude assets that could be used to pay an attorney from its definition of forfeitable property</u>. <u>This argument</u>, advanced by respondent here,* see Brief for Respondent 12-19, *<u>has been unanimously rejected by every Court of Appeals that has finally passed on it</u>,* as it was by the Second Circuit panel below, see 836 F.2d at 78-80; id. at 85-86 (Oakes, J., dissenting); *even the judges who concurred* on statutory grounds in the en banc decision *did not accept this position,* see 852 F.2d at 1405-1410 (Winter, J., concurring). We note also that the Brief for American Bar Association as *Amicus Curiae 6, frankly admits that the statute "on [its] face, broadly cover[s] <u>all property</u> derived from alleged criminal activity and <u>contain[s] no specific exemption for property used to pay bona fide attorneys' fees</u>."*

*Respondent urges us*, nonetheless, *to interpret the statute to exclude such property for several reasons*. Principally, *respondent contends that we should create such an exemption <u>because the statute does not expressly include property to be used for attorneys' fees</u>* . . . In support, respondent observes that the legislative history is "silent" on this question, and that the House and Senate debates fail to discuss this prospect. <u>But this proves nothing</u>[.] *The fact that the forfeiture provision reaches assets that could be used to pay attorney's fees, even though it contains no express provisions to this effect, "'does not demonstrate ambiguity'" in the statute: "'It demonstrates breadth.'"* Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 499 (1985) (quoting *Haroco*,

---

[8] See *U.S. v. Monsanto*, 491 U.S. 600 (syllabus) (1989).

*Inc. v. American Nat. Bank & Trust Co. of Chicago*, 747 F.2d 384, 398 (CA7 1984)). **The statutory provision at issue here is _broad and unambiguous_, and Congress' failure to supplement § 853(a)'s _comprehensive phrase_ -- "_any property_" -- with an exclamatory "and we even mean assets to be used to pay an attorney" does not lessen the force of the statute's plain language.**" [9]

"As we have noted before, such post-enactment views "form a hazardous basis for inferring the intent" behind a statute, *United States v. Price*, 361 U.S. 304, 313 (1960); instead, Congress' intent is "**best determined by [looking to] the statutory language that it chooses**," *Sedima, S.P.R.L., supra*, at 495, n.13. . . . **Finally, respondent urges us, see Brief for Respondent 2029, to invoke a variety of general canons of statutory construction**, as well as several prudential doctrines of this Court, to create the statutory exemption he advances; among these doctrines is our admonition that courts should construe statutes to avoid decision as to their constitutionality. See, *e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council*, 485 U.S. 568, 575 (1988); *NLRB. v. Catholic Bishop of Chicago*, 440 U.S. 490, 500 (1979). **We respect these canons, and they are quite often useful in close cases, or when statutory language is ambiguous. But we have observed before that such "interpretative canon[s are] not a license for the judiciary to rewrite language enacted by the legislature."** *United States v. Albertini*, 472 U.S. 675, 680 (1985). **_Here, the language is clear and the statute comprehensive: § 853 does not exempt assets to be used for attorney's fees from its forfeiture provisions_.** [10]

Since the 1989 *Monsanto* decision regarding "any property," three very recent decisions ('94, '97 and '02, *supra*) deal directly with the same question as to how to interpret the term "any," the question as to whether it is all inclusive or subject to arbitrary derogation. The inclusion here of lengthy excerpts is intended to offer appreciable input upon the topic and is not intended to delay or hinder process.

Here, in this unanimous 2002 decision (REHNQUIST, C.J. delivered opinion, BEYER, J. took no part), the Supreme Court draws upon *Monsanto* for guidance in another instance hinged upon interpretation of the term "any," affirming the claim made herein.

"That this is so seems **evident from the plain language of the statute**. It provides that -

each public housing authority shall utilize leases which . . . provide that . . . **any** drug-related criminal activity on or off such premises, engaged in by a public housing tenant, **any** member of the tenant's household, or **any** guest or other person under the tenant's control, shall be cause for termination of tenancy.

---

[9] See *Monsanto, Id.*, at 607-09.
[10] See *Monsanto, Id.*, at 610-11.

42 U.S.C. § 1437d(l)(6) (1994 Ed., Supp. V). The en banc Court of Appeals thought the statute did not address "the level of personal knowledge or fault that is required for eviction." 237 F.3d at 1120. *Yet Congress' decision not to impose any qualification in the statute, combined with its use of the term "any" to modify "drug-related criminal activity," precludes any knowledge requirement.* See *United States v. Monsanto,* 491 U.S. 600, 609 (1989). *As we have explained, "the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" United States v. Gonzales,* 520 U.S. 1, 5 (1997). Thus, __any__ drug-related activity engaged in by the specified persons is grounds for termination, not just drug-related activity that the tenant knew or should have known about." [11]

Below is an excerpt from *U.S. v. Gonzales,* 520 U.S. 1, 4-6 (1997) just cited in *Dept. of Housing & Urban Renewal v. Rucker, Id..*

"Our analysis begins, as always, with the statutory text. Section 924(c)(1) provides:

> Whoever, during and in relation to any . . . drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime . . . , be sentenced to imprisonment for five years. . . . Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with *any other term of imprisonment* including that imposed for the . . . drug trafficking crime in which the firearm was used or carried.

18 U.S.C. § 924(c)(1) (emphasis added). The question we face is whether the phrase "any other term of imprisonment" "means what it says, or whether it should be limited to some subset" of prison sentences, *Maine v. Thiboutot,* 448 U.S. 1, 4 (1980) -- namely, only federal sentences. *Read naturally, the word "any" has an expansive meaning, that is, "one or some indiscriminately of whatever kind." Webster's Third New International Dictionary 97 (1976). Congress did not add any language limiting the breadth of that word, and so we must read § 924(c) as referring to all "term[s] of imprisonment," including those imposed by state courts. Cf. United States v. Alvarez-Sanchez,* 511 U.S. 350, 358 (1994) (noting that statute referring to "any law enforcement officer" includes "federal, state, or local" officers); *Collector v. Hubbard,* 12 Wall. 1, 15 (1871) (*stating "it is quite clear" that a statute prohibiting the filing of suit "in any court" "includes the State courts as well as the Federal courts," because "there is not a word in the [statute] tending to show that the words 'in any court' are not used in their ordinary sense"*). There is no basis in the text for limiting § 924(c) to federal sentences.

In his dissenting opinion, JUSTICE STEVENS suggests that the word "any" as used in the first sentence of § 924(c) "unquestionably has the meaning 'any federal.'" *Post* at 14. In that first sentence, however, Congress *explicitly* limited the scope of the phrase "any crime of violence or drug trafficking crime" to those "for which [a defendant] may be prosecuted in a court of the United States." Given that Congress

---

[11] See *Department of Housing and Urban Renewal v. Rucker,* 535 U.S. 125, 130-31 (2002).

expressly limited the phrase "any crime" to only federal crimes, we find it significant that no similar restriction modifies the phrase "any other term of imprisonment," which appears only two sentences later and is at issue in this case. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("'*Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion*'").

The Court of Appeals also found ambiguity in Congress' decision, in drafting § 924(c), to prohibit concurrent sentences instead of simply mandating consecutive sentences. 65 F.3d at 820. Unlike the lower court, however, we see nothing remarkable (much less ambiguous) about Congress' choice of words. Because consecutive and concurrent sentences are exact opposites, Congress implicitly required one when it prohibited the other. This "ambiguity" is, in any event, beside the point, because this phraseology has no bearing on whether Congress meant § 924(c) sentences to run consecutively only to other federal terms of imprisonment.

*Given the straightforward statutory command, there is no reason to resort to legislative history. Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992). Indeed, far from clarifying the statute, the legislative history only muddies the waters. The excerpt from the Senate Report accompanying the 1984 amendment to § 924(c), relied upon by the Court of Appeals, reads:

> [T]he Committee intends that the mandatory sentence under the revised subsection 924(c) be served prior to the start of the sentence for the underlying or any other offense.

S.Rep. at 313-314. This snippet of legislative history injects into § 924(c) an entirely new idea -- that a defendant must serve the five-year prison term for his firearms conviction before any other sentences. *This added requirement, however, is "in no way anchored in the text of the statute." Shannon v. United States*, 512 U.S. 573, 583 (1994). [12]

From *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (1994):

> "Respondent contends that he was under "arrest or other detention" for purposes of § 3501(c) during the interview at the Sheriff's Department, and that his statement to the Secret Service agents constituted a confession governed by this subsection. *In respondent's view, it is irrelevant that he was in the custody of the local authorities, rather than that of the federal agents, when he made the statement. Because the statute applies to persons in the custody of "any" law enforcement officer or law enforcement agency, respondent suggests that the § 3501(c) 6-hour time period begins to run whenever a person is arrested by local, state, or federal officers.*
> *We believe respondent errs in placing dispositive weight on the broad statutory reference to "any" law enforcement officer or agency without considering the rest of the statute.*" [13]

**\*End excerpts.**

---

[12] See *U.S. v. Gonzales*, 520 U.S. 1, 4-6 (1997).
[13] See *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (1994).

In reviewing U.S. Tax Court's disposition of the 26 USC § 83 claim (*Talmadge v. Comm'r*) we recall that <u>its restrictive application</u> of the term "any" allowing *some* property (labor, property with no tangible basis or cost) to be excluded under 26 CFR's 1.83-3(g)'s reference to "any money or property" <u>was its only exculpatory reasoning</u> or thread of logic to overcome the claim. HOWEVER, in the cases above, decided in 1989, 1994, 1997, and 2002, Tax Court's reasoning regarding "any property" is clearly dismembered as arbitrary and therefore impermissible.

A very noteworthy point is that we see in each of those cases the U.S. as party movant to the argument that "any" is all inclusive, the party seeking to benefit under that interpretation. When the United States is on the offense the term "any" means everything, but when the lowly citizen demands the same reading it must be refused so the U.S. can take his paycheck. This alone distinguishes those controversies from this one.

In four cases the Supreme Court rules in favor of the U.S. government stating that a written exclusion in the law has to be identified before "any" or "any property" will be interpreted as anything but all inclusive. Only when those four decisions are ignored does one defeat an interpretation of § 83(a) as an acknowledgement of the value or personal services as a deductible cost; the government wants it both ways. If an all inclusive interpretation favors the government, it wins. HOWEVER, if an all inclusive interpretation favors the individual, the IRS and Dept. of Justice are allowed to arbitrarily make exclusions; they're stealing.

In summer of 2007 I attended two days of testimony in *U.S. v. Ray Gebauer*, a criminal tax evasion case in US Dist. Court in Seattle, WA, after counseling his defense counsel, Alan Ritchie, on the operation of § 83 as detailed in this manual. Mr. Gebauer was accused of failing to pay federal income taxes on $3.5 million in self employment income earned through multilevel marketing and sales of Mannatech dietary supplements.

Twenty year IRS Officer, Sue Besson, was sworn in and faced questions from Mr. Ritchie who asked her, "How many investigations have you done in your career?" She answered that she had conducted approx. 500 investigations.

"How did § 83 operate in your conclusion that Mr. Gebauer owes an income tax on his compensation for services?"

"I am unfamiliar with § 83," answered Besson.

Permit me to elaborate and paraphrase - "I've been an IRS Agent and Officer for over twenty years and I am unfamiliar with the statute that explains how property received in exchange for services is taxed." The judge instructed counsel to move on to the next topic before he could follow up with further inquiry into § 83. Here's a bona fide expert in the employ of the IRS who would rather lie about § 83 than get into an argument over its operation. "The taxpayers were entitled to know the basis of law and fact on which the Commissioner sought to sustain the deficiencies." [14]

From the Supreme Court in *United Dominion Industries, Inc. v. United States*, 532 US 822 (2001):

> "I agree with the Court that the Internal Revenue Code provision and the corresponding Treasury Regulations that control consolidated filings are best interpreted as requiring a single-entity approach in calculating product liability loss. I write separately, however, because *I respectfully disagree with the dissent's suggestion that, when a provision of the Code and the corresponding regulations are ambiguous, this Court should defer to the Government's interpretation.* See *post* this page (opinion of Stevens, J.). *At a bare minimum, in cases such as this one, in which the complex statutory and regulatory scheme lends itself to any number of interpretations, we should be inclined to rely on the traditional canon that construes revenue-raising laws against their drafter.* See *Leavell* v. *Blades*, 237 Mo. 695, 700-701, 141 S.W. 893, 894 (1911) ("*When the tax gatherer puts his finger on the citizen, he must also put his finger on the law permitting it*"); *United States* v. *Merriam*, 263 U.S. 179, 188 (1923) ("*If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer*"); *Bowers* v. *New York & Albany Lighterage Co.*, 273 U.S. 346, 350 (1927) ("*The provision is part of a taxing statute; and such laws are to be interpreted liberally in favor of the taxpayers*"). Accord, *American Net & Twine Co.* v. *Worthington*, 141 U.S. 468, 474 (1891); *Benziger* v. *United States*, 192 U.S. 38, 55 (1904)."

The 6th Circuit Court of Appeals in *OfficeMax, Inc. v. US*, 428 F.3d 583 (CA6 2005):

> "The argument also comes perilously close to suggesting an interpretive presumption in favor of the government and against the taxpayer. *Regardless of the current status of the "traditional canon that construes revenue-raising laws against their drafter*," *United Dominion Indus. v. United States*, 532 U.S. 822, 839, 121 S.Ct. 1934, 150 L.Ed.2d 45 (2001) (Thomas, J., concurring), *the government has not identified any case establishing an opposite presumption. See Bowers v. New York & Albany Lighterage Co.*, 273 U.S. 346, 350, 47 S.Ct. 389, 71 L.Ed. 676 (1927) ("*The provision is part of a taxing statute; and such laws are to be interpreted liberally in favor of the taxpayers.*"); *United States v. Merriam,* 263 U.S. 179, 188, 44 S.Ct. 69, 68

---

[14] See *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 498 (1937).

L.Ed. 240 (1923) ("*If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer.*"); *Benziger v. United States*, 192 U.S. 38, 55, 24 S.Ct. 189, 48 L.Ed. 331 (1904); *American Net & Twine Co. v. Worthington*, 141 U.S. 468, 474, 12 S.Ct. 55, 35 L.Ed. 821 (1891); *Leavell v. Blades*, 237 Mo. 695, 141 S.W. 893, 894 (1911) ("<u>*When the tax gatherer puts his finger on the citizen, he must also put his finger on the law permitting it.*</u>").

" . . . *On the one hand*, the Court has said that "[w]here an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). *On the other hand*, the Court has said: "We walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle." *Helvering v. Hallock*, 309 U.S. 106, 121, 60 S.Ct. 444, 84 L.Ed. 604 (1940); *see also Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 186, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994)."

" . . . In abandoning this natural interpretation, the revenue ruling says that "a new type of service" cannot avoid taxation "merely because charges for it are determined in a manner which is not within the literal language of the statute." *Id. The dissent does not defend that reasoning, and it does not defend the government's litigating position in this case. Cf. Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) ("*Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate.*"). *Skidmore deference does not apply to a line of reasoning that an agency could have, but has not yet, adopted.*"

The presumption of correctness enjoyed by the IRS disappears when evidence to the contrary exists. A "determination" must be the result of a consideration of all relevant facts and statutes. [15]    What is an American to think when the government can't deny allegations of racketeering and extortion? Can the IRS and DOJ simply ignore § 83? How did § 83 operate in the government's conclusion that an individual, that you, should go to prison for not paying income taxes on his compensation? What of it?

18 USC § 2. Principals.-

(a) Whoever *commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission*, is punishable as a principal.

(b) Whoever *willfully causes an act to be done* which if directly performed by him or another *would be an offense against the United States*, is punishable as a principal.

---

[15] See *Portillo v. C.I.R.*, 932 F.2d 1128 (CA5 1991); *Carson v. U.S.*, 560 F.2d 693 (1977); *Pizzarello v. U.S.*, 408 F.2d 579 (1969); *U.S. v. Janis*, 428 U.S. 433, 442 )1975); *Couzens*, 11 B.T.A. 1140, 1159, 1179; *Terminal Wine Co.*, 1 B.T.A. 697, 701-702 (1925); *Scar v. C.I.R.*, 814 F.2d 1363 (CA9 1987); *Benzvi v. C.I.R.*, 787 F.2d 1541 (CA11 1986); *Elias v. Connett*, 908 F.2d 521 (CA9 1990); *Hughes v. U.S.*, 953 F.2d 531(CA9 1992); *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 758-770 (1973); *Maxfield v. U.S. Postal Service*, 752 F.2d 433 (1984); *Jensen v. I.R.S.*, 835 F.2d 196 (CA9 1987).

18 USC § 3 Accessory after the fact.- *Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender* in order to hinder or prevent his apprehension, trial or punishment, *is an accessory after the fact*.

Except as otherwise expressly provided by any Act of Congress, *an accessory after the fact shall be imprisoned not more than one-half the maximum term of imprisonment* or (notwithstanding section 3571) fined not more than one-half the maximum fine prescribed for the punishment of the principal, or both; or if the principal is punishable by life imprisonment or death, the accessory shall be imprisoned not more than 15 years.

18 USC § 4 Misprision of felony. *Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known* the same to some judge or other person in civil or military authority under the United States, *shall be fined under this title or imprisoned not more than three years, or both*.

18 USC § 241 Conspiracy against rights. *If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State*, Territory, Commonwealth, Possession, or District *in the free exercise or enjoyment of any right or privilege secured to him by the Constitution* or laws of the United States, or because of his having so exercised the same; or

*If two or more persons go* in disguise on the highway, or *on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right* or privilege so secured -

*They shall be fined under this title or imprisoned not more than ten years, or both*; and *if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap*, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, *they shall be fined under this title or imprisoned for any term of years or for life*, or both, or *may be sentenced to death*.

18 USC § 242 Deprivation of rights under color of law. *Whoever, under color of any law, statute, ordinance, regulation*, or custom, *willfully subjects any person in any State*, Territory, Commonwealth, Possession, or District *to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States*, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, *shall be fined under this title or imprisoned not more than one year, or both*; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, *shall be fined under this title or imprisoned not more than ten years*, or both; *and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap*, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be *fined under this title, or imprisoned for any term of years or for life*, or both, or *may be sentenced to death*.

18 USC § 872 Extortion by officers or employees of the United States. *Whoever, being an officer, or employee of the United States or any department or agency thereof*, or representing himself to be or assuming to act as such, *under color or pretense of office or employment commits or attempts an act of extortion, shall be fined under this title or imprisoned not more than three years*, or both; but if the amount so extorted or demanded does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

18 USC § 876 Mailing threatening communications.

(a) *Whoever knowingly deposits in any post office or authorized depository for mail matter*, to be sent or delivered by the Postal Service or knowingly causes to be delivered by the Postal Service according to the direction thereon, any communication, with or without a name or designating mark subscribed thereto, addressed to any other person, and *containing any demand or request for ransom or reward for the release of any kidnapped person*, shall be fined under this title or imprisoned not more than twenty years, or both.

(b) *Whoever, with intent to extort* from any person any money or other thing of value, *so deposits*, or causes to be delivered, as aforesaid, *any communication containing any threat to kidnap any person or any threat to injure the person of the addressee or of another*, shall be fined under this title or imprisoned not more than twenty years, or both.

(c) *Whoever knowingly so deposits or causes to be delivered as aforesaid*, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and *containing any threat to kidnap any person or any threat to injure the person of the addressee* or of another, shall be fined under this title or imprisoned not more than five years, or both. If such a communication is addressed to a United States judge, a Federal law enforcement officer, or an official who is covered by section 1114, the individual shall be fined under this title, imprisoned not more than 10 years, or both.

(d) *Whoever, with intent to extort from any person any money or other thing of value, knowingly so deposits or causes to be delivered, as aforesaid, any communication, with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to injure the property or reputation of the addressee or of another*, or the reputation of a deceased person, *or any threat to accuse the addressee or any other person of a crime*, shall be fined under this title or imprisoned not more than two years, or both. If such a communication is addressed to a United States judge, a Federal law enforcement officer, or an official who is covered by section 1114, the individual shall be fined under this title, imprisoned not more than 10 years, or both.

18 USC § 880 Receiving the proceeds of extortion.- *A person who receives, possesses, conceals, or disposes of any money or other property which was obtained from the commission of any offense under this chapter* that is punishable by imprisonment for more than 1 year, knowing the same to have been unlawfully obtained, shall be imprisoned not more than 3 years, fined under this title, or both.

18 USC § 1201. Kidnapping.-

(a) *Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom* or reward or otherwise any person, except in the case of a minor by the parent thereof, when-

(1) the person *is willfully transported in interstate or foreign commerce*, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;

(2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States;

(3) any such act against the person is done within the special aircraft jurisdiction of the United States as defined in section 46501 of title 49;

(4) the person is a foreign official, an internationally protected person, or an official guest as those terms are defined in section 1116 (b) of this title; or

(5) the person is among those officers and employees described in section 1114 of this title and any such act against the person is done while the person is engaged in, or on account of, the performance of official duties, . . . Shall be *punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.*

18 USC § 1341 Frauds and swindles.- *Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises*, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, *for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service*, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 USC § 1343 Fraud by wire, radio, or television.- *Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises*, *transmits or causes to be transmitted* by means of wire, radio, or television communication in interstate or foreign commerce, *any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice*, shall be *fined under this title or imprisoned not more than 20 years*, or both. If the violation affects a

financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 USC § 1621 Perjury generally.- *Whoever* -

(1) *having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered*, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) *in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true*;

Is guilty of perjury and shall, except as otherwise expressly provided by law, be *fined under this title or imprisoned not more than five years*, or both. This section is applicable whether the statement or subscription is made within or without the United States.

18 USC § 1951 Interference with commerce by threats or violence.

(a) *Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property* in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section -

(1) The term "*robbery*" means *the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury*, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

(2) The term "*extortion*" means *the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right*.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

18 USC § 1957 Engaging in monetary transactions in property derived from specified unlawful activity.

(a) *Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000* and is derived from specified unlawful activity, shall be punished as provided in subsection (b),

(b)(1) Except as provided in paragraph (2), the punishment for an offense under this section is a fine under title 18, United States Code, or imprisonment for not more than ten years or both.

(d) The circumstances referred to in subsection (a) are -

(1) *that the offense under this section takes place in the United States* or in the special maritime and territorial jurisdiction of the United States; or . . [.]

18 USC § 1961 Definitions. As used in this chapter -

(1) *"racketeering activity" means* -

(A) *any act or threat involving* murder, kidnapping, gambling, arson, *robbery*, bribery, *extortion*, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), *which is chargeable under State law and punishable by imprisonment for more than one year* . . [.]

18 USC § 1962 Prohibited activities.

(a) *It shall be unlawful for any person who has received any income derived*, directly or indirectly, *from a pattern of racketeering activity* or through *collection of an unlawful debt* in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, *any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce*.

(b) *It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise* which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) *It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate,* directly or indirectly, *in the conduct of such enterprise's affairs* through a pattern of racketeering activity or collection of unlawful debt.

(d) *It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.*

18 USC § 1963 Criminal penalties.

(a) *Whoever violates any provision of section 1962 of this chapter* shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both, and shall forfeit to the United States, irrespective of any provision of State law -

(1) *any interest the person has acquired or maintained* in violation of § 1962;

(2) *any -*

(A) *interest in*;

(B) *security of*;

(C) *claim against*; or

(D) *property or contractual right of any kind affording a source of influence* over; . . . *any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of*, in violation of section 1962; and . . [.]

18 USC § 2235 Search warrant procured maliciously.- *Whoever maliciously and without probable cause procures a search warrant* to be issued and executed, shall be *fined under this title or imprisoned not more than one year*, or both.

18 USC § 2381 Treason.- *Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death*, or shall be imprisoned not less than five years and fined under this title but not less than $10,000; and shall be incapable of holding any office under the United States.

18 USC § 2383 Rebellion or insurrection.- *Whoever incites, sets on foot, assists, or engages in any rebellion or insurrection against the authority of the United States or the laws* thereof, *or gives aid or comfort* thereto, *shall be fined under this title or imprisoned not more than ten years*, or both; and shall be incapable of holding any office under the United States.

18 USC § 2384 Seditious conspiracy.- *If two or more persons in any State or Territory*, or in any place subject to the jurisdiction of the United States, *conspire to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them*, or to *oppose by force the authority thereof, or by force to prevent, hinder, or delay the execution of any law of the United States*, or by force to seize, take, or *possess any property of the United States contrary to the authority thereof*, they *shall each be fined under this title or imprisoned not more than twenty years*, or both.

18 USC § 3282 Offenses not capital.- Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

**Tax Code**:

26 USC § 7214 Offenses by officers and employees of the United States. -

(a) Unlawful acts of revenue officers or agents. Any officer or employee of the United States acting in connection with any revenue law of the United States -

(1) *who is guilty of any extortion or willful oppression* under color of law; or

(2) *who knowingly demands other or greater sums than are authorized by law*, or receives any fee, compensation, or reward, except as by law prescribed, for the performance of any duty; or

(3) *who with intent to defeat the application of any provision of this title* fails to perform any of the duties of his office or employment; or

(4) who conspires or colludes with any other person to defraud the United States; or

(5) who knowingly makes opportunity for any person to defraud the United States; or

(6) who does or omits to do any act with intent to enable any other person to defraud the United States; or

(7) *who makes or signs any fraudulent entry in any book, or makes or signs any fraudulent certificate, return, or statement*; or

(8) *who, having knowledge or information of the violation of any revenue law* by any person, or of fraud committed by any person against the United States under any revenue law, *fails to report*, in writing, such knowledge or information to the Secretary; or

(9) who demands, or accepts, or attempts to collect, directly or indirectly as payment or gift, or otherwise, any sum of money or other thing of value for the compromise, adjustment, or settlement of any charge or complaint for any violation or alleged violation of law, except as expressly authorized by law so to do;

*shall be dismissed from office or discharged from employment and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both.* The court may in its discretion award out of the fine so imposed an amount, not in excess of one-half thereof, for the use of the informer, if any, who shall be ascertained by the judgment of the court. The court also shall render judgment against the said officer or employee for the amount of damages sustained in favor of the party injured, to be collected by execution.

**\*End list of criminal statutes**.

How many of those statutes are violated when the IRS and DOJ demand purported income taxes from those who have received only the value of their personal services as compensation? When the government imprisons somebody for alleged tax crimes, obtains search warrants, uses the mail to threaten liens and levies, makes threats on web sites, on and on about the government's standard operating procedures, when they clearly have to ignore the very statute that determines whether you and I owe an income tax to begin with. Reflect on past

articles and news stories you've seen that reported on indictments and guilty verdicts in tax cases and ask if the law has been honored in any such instances. Perhaps you've been contacted and threatened by the IRS in the past, or perhaps somebody you know. Bank accounts seized, automobiles, homes, marriages destroyed, college educations for the children of the parents who saved money for that purpose - wiped out. How did § 83 operate in any of those cases?

"I am unfamiliar with § 83."

Is ignorance of the law an excuse? No, especially for a public servant who's charged with applying the law fairly and realistically.

26 CFR 601.106(f)(1) "Rule 1. *An exaction* by the U.S. Government, which is not based upon law, statutory or otherwise, *is a taking of property without due process of law*, in violation of the [5[th] Amendment]. . . ."

"[T]axpayers [are] entitled to know the basis of law and fact on which the Commissioner sought to sustain the deficiencies." [16]

"With the IRS' broad power must come a concomitant responsibility to exercise it within the confines of the law." [17]

"More importantly, the statute does not require that the taxpayer put a legal classification on his protest. The Service, however, with its expertise, is obliged to know its own governing statutes and to apply them realistically." [18]

*"The mission of the Service* is to encourage and achieve the highest possible degree of voluntary compliance with the tax laws and regulations and *to maintain the highest degree of public confidence in the integrity and efficiency of the Service. This includes communicating the requirements of the law to the public*, determining the extent of compliance and causes of non-compliance, *and doing all things needful to a proper enforcement of the law.*" *Federal Register*, Vol.39, #62, Fri.March 29, 1974, 1110 Organization and functions of the Internal Revenue Service, Sec.1111.1 Mission, <u>since revised to sound less congenial</u>.

"It has long been established that a taxpayer has the right to arrange his affairs so as to minimize the taxes he pays. See *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935) . . The firm's arrangements were not illegal and so were not prohibited[.]" [19]

---

[16] See *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 498 (1937).
[17] See *Bothke v. Fluor Engineers and Constructors, Inc.*, 713 F.2d 1405, 1413, at [11] (CA9 1983).
[18] *Id.*
[19] See *Boccardo v. C.I.R.*, 56 F.3d 1016, 1018, 1020 (CA9 1995).

Tax Code § 83(a) is just one, solitary paragraph that's said to "explain" how to tax compensation for services, that "governs" how to tax compensation, yet those charged with applying it to every taxpayer claim to be "unfamiliar with § 83" despite the fact that the IRS has been assailed with it since 1993. What is one to think when the law is off limits? Just because some judge chooses to steamroll you when you argue § 83, does that change how you are to interpret it? What of those four Supreme Court decisions that say "any property" is all inclusive? How is what the judge does NOT merely another act by another conspirator against your rights to due process and to property? Isn't that a felony under 18 USC § 241?

There's a plethora of federal decisions affirming this posture from coast to coast. The state statutes below are from the Revised Code of Washington and relate to citizen's arrest, the use of force, and to justifiable homicide.

RCW 9A.16.020 Use of force-When lawful. ***The use, attempt, or offer <u>to use force upon or toward the person of another is not unlawful</u> in the following cases***:
    (1) Whenever necessarily used by a public officer in the performance of a legal duty, or a person assisting the officer and acting under the officer's direction;
    (2) ***Whenever necessarily used by a person arresting one <u>who has committed a felony</u> and delivering him or her to a public officer competent to receive him or her into custody***;
    (3) ***Whenever used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting <u>to prevent an offense</u> against his or her person, or a malicious trespass, or other malicious interference with real or personal property lawfully in his or her possession***, in case the force is not more than is necessary;
    (4) Whenever reasonably used by a person to detain someone who enters or remains unlawfully in a building or on real property lawfully in the possession of such person, so long as such detention is reasonable in duration and manner to investigate the reason for the detained person's presence on the premises, and so long as the premises in question did not reasonably appear to be intended to be open to members of the public;
    ((5) and (6) omitted). [1986 c 149 § 2; 1979 ex.s. c 244 § 7; 1977 ex.s. c 80 § 13; 1975 1st ex.s. c 260 § 9A.16.020.]

RCW 9A.16.030 Homicide-When excusable. ***Homicide is excusable when committed*** by accident or misfortune in doing any lawful act by lawful means, ***without criminal negligence, or without any unlawful intent***. [1979 ex.s. c 244 § 8; 1975 1st ex.s. c 260 § 9A.16.030.]

RCW 9A.16.050 Homicide-By other person-When justifiable. Homicide is also justifiable when committed either:

(1) *In the lawful defense of the slayer, or his or her husband, wife, parent, child, brother, or sister, or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slain <u>to commit a felony</u>* or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished; or

(2) *In the actual resistance of an <u>attempt to commit a felony</u> upon the slayer, in his presence, or upon or in a dwelling, or other place of abode, in which he is*. [1975 1st ex.s. c 260 § 9A.16.050.]

Protected speech v. self defense:

This is an examination of certain common law rights that may find substantial disfavor with law enforcement authorities, despite the obvious innocence of the person who seeks to exercise such rights. It's no secret that public servants view the public at large as a threat to national security, and it's firmly established that government abuses its authority whenever it (public servants) deals with the average individual.

"You're a felon, and I'm going to convince others that they have the authority to arrest you - and you WILL be arrested!"

Is that a threat? Is it a violation of the law? Can this statement be used as valid grounds to prosecute the one who makes that particular statement to a public servant or other individual? Two examples of federal statutes that prohibit "threats" are 18 USC § 879 which relates to presidential candidates, and 18 USC § 875 which deals generally with threats made to another individual.

18 USC 875. Interstate communications.

(a) Whoever transmits in interstate or foreign commerce any communication containing *any demand or request for a ransom or reward for the release of any kidnapped person*, shall be fined under this title or imprisoned not more than twenty years, or both.

(b) Whoever, *with intent to extort* from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing *any threat to kidnap any person or any threat to injure the person of another*, shall be fined under this title or imprisoned not more than twenty years, or both.

(c) Whoever transmits in interstate or foreign commerce any communication containing *any threat to kidnap any person or any threat to injure the person of another*, shall be fined under this title or imprisoned not more than five years, or both.

(d) Whoever, *with intent to extort* from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any *threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime*, shall be fined under this title or imprisoned not more than two years, or both

18 USC 879. Threats against former Presidents and certain other persons

(a) Whoever *knowingly and willfully threatens to kill, kidnap, or inflict bodily harm upon-*

(1) *a former President or a member of the immediate family* of a former President;

(2) *a member of the immediate family of the President, the President-elect, the Vice President, or the Vice President-elect*;

(3) *a major candidate for the office of President or Vice President, or a member of the immediate family of such candidate*; or

(4) *a person protected by the Secret Service* under section 3056(a)(6); *shall be fined under this title or imprisoned not more than 5 years, or both.*

These are not the only threat statutes but rather are provided merely for the purposes of example. As used in case cites herein "CA" indicates "Court of Appeals," and "US" indicates the Supreme Court Reporter volumes. As seen here - *US* (United States) *v. Lanier*, 520 US (United States Reporter) 259, 269, 137 L.Ed.2d (Lawyer's Edition Reporter) 432, 117 S.Ct. (Supreme Court Reporter) 1219 (1997) - you see the US Reporter, the Lawyer's Edition Reporter, and the Supreme Court Reporter volumes all cited as reference guides for finding where the case of *United States v. Lanier* can be found.

To be guilty under these statutes one has to have uttered what is called a "true threat," which is a threat to commit an act of "unlawful violence" again an individual or group of individuals. (See *US v. Bagdasarian*, 652 F.3d 1113 (CA9 **July 19, 2011**) (citing *Virginia v.*

Page **84** of **94**

*Black*, 538 US 343 (2003); see also *US v. Twine*, 853 F.2d 676 (CA9 1988); *US v. Sutcliffe*, 505 F.3d 944 (CA9 2007)). An example of such a threat might be:

> "I will kill you . . . I am now armed[.]"

See *Sutcliffe*, *id.* at 951. But in *Bagdasarian* the nature of the threat was contextually third-person, not first-person:

**Defendant Walter Bagdasarian said (about presidential candidate Obama) on a blog:**

> "Re: Obama fuck the niggar, he will have a 50 cal. in the head pretty soon."

> "Shoot the nig, country fucked for another 4 years+ What nig has done ANYTHING right???? long term???? never in history, except sambos."

> "Re: And so it begins."

> "Pistol? Dude, Josh needs to get us one of these, just shoot the nigga's car and POOF!"

**9th Circuit ruled:**

> "[I]t does not convey the notion that Bagdasarian himself had plans to fulfill the prediction[.]"

> "Neither does the . . . statement reflect the defendant's intent to threaten that he himself would kill or injure Obama."

> "The statement makes no reference to Bagdasarian himself and so [it] cannot reasonably be taken to express his intent to shoot Obama."

> ". . . fail to express an intent on his part to take any action. . ."

> ". . . is not sufficient to establish that he intended to threaten Obama himself."
> "As we have explained, supra at 9808-13, that neither of Bagdasarian's statements on its face constitutes a true threat unprotected by the First Amendment. Most significantly, one is predictive and the other, exhortatory. For the same reasons, the evidence is not sufficient for any reasonable finder of fact to have concluded beyond a reasonable doubt that Bagdasarian intended his statements to be taken as threats. See *Jackson*, 443 US at 319."

> "But, as we have explained, incitement [of others] to injure or kill a presidential candidate does not qualify as an offense under 18 USC § 879(a)(3)."

***End quotes of Bagdasarian decision.***

The threatened conduct must constitute unlawful violence, and the threat must express a first-person intent on the part of the speaker to so act. Incitement of others to kill or injure a presidential candidate is not an offense. More importantly, for our purposes, the arrest of a felon is entirely legal; it is not unlawful violence.

> "[P]utting certain individuals in harm's way by singling them out for the attentions of violent but unrelated third parties is [conduct]protected by the First Amendment."

See *Sheehan v. Gregoire*, 272 F.Supp.2d 1135, 1149-50 (US Dist. Court, Western District of WA at Seattle 2003) (citing *Planned Parenthood*,290 F.3d 1063)).

**Citizen's arrest:**

The authorities below suffice to prove the legality of the arrest of the person of a suspected felon without a warrant by a private person acting upon reasonable cause and suspicion. The right of citizen's arrest extends to any felony violation, state or federal, and is governed by state law. (See *Brady v. US*, 300 F. 540 (CA6 1924); *US v. Coplon*, 185 F.2d 629 (CA2 1950); *Richardson v. US*, 217 F.2d 696 (CA8 1954); *Ward v. US*, 316 F.2d 113 (CA9 1963); *Elkanich v. US*, 327 F.2d 417 (CA9 1964); *US v. Swarovski*, 557 F.2d 40 (CA2 1977); *Dorsey v. US*, 174 F.2d.899 (CA5 1949)).

> "The rule seems to be similar when an arrest is a so-called citizen's arrest, made by one not a law enforcement officer, it requires reasonable cause to believe the arrested party guilty of a felony before the arrest will support a search and seizure of evidence of crime. Information, belief, or suspicion as to commission of a felony, as jurisdiction for arrest by a private person without a warrant; 133 A.L.R. 608 (1941)."

See *State v. Jack*, 63 Wn.2d 632, 388 P.2d 566 (1964); see also *State v. Darst*, 65 Wn.2d 808, 811-12, 399 P.2d 618 (1965); *State v. Williams*, 27 Wn.App. 848, 621 P.2d 176 (1980); *State v. Harp*, 13 Wn.App. 239, 534 P.2d 842 (1975); *State v. Clarke*, 61 Wn.2d 138, 377 P.2d 449 (1962)).

In relation to citizen's arrest, a state may even derogate to extend the right to apply to the arrest of one who has committed a mere misdemeanor.

"In Arizona, statutes that are in derogation of the common law are strictly construed. See *Foundation Dev. Corp. v. Loehmann's*, 163 Ariz. 438, 444, 788 P.2d 1189, 1195 (1990). In the case of misdemeanors such as shoplifting, there is no common law privilege of arrest. *Gortarez v. Smitty's Super Valu, Inc.*, 140 Ariz. 97, 102, 680 P.2d 807, 812 (1984). A.R.S. § 13-1805 is in derogation of the common law because it allows private individuals to detain persons suspected of shoplifting. Therefore, A.R.S. § 13-1805 must be strictly construed to only permit detention of "persons suspected" of shoplifting."

See *Shelburg v. City of Scottsdale*, #CV-09-1800-PHX-NVW, USDC Arizona (8/23/2010).

Recent decisions relating to citizen's arrest include *US v. Fullbright*, 105 F.3d 443 (CA9 1995) in **MT**; *US v. Grigg*, 498 F.3d 1070 (CA9 2007) in **OR**; *Tekle v. US*, 457 F.3d 1088 (CA9 2005) in **CA**; *Rhomberg v. Wilson*, 108 F.3d 339 (CA9 1996) in **CA**; *Collins v. Womancare*, 878 F.2d 1145 (CA9 1989); *Hopkins v. Bonvicino*, 573 F.3d 752 (CA9 2008).

**\*SPECIFIC QUOTES from US Dist. Court and Circuit Courts:**

**FIRST CIRCUIT:**

UNPUBLISHED: *Budnick v. Barnstable County Bar Advocates, Inc.*, #92-1933 (CA1 1993): "But, "a police officer, while unable to act as an officer in an adjoining jurisdiction, does not cease to be a citizen in that jurisdiction . . . and may lawfully conduct a citizen's arrest there if he has probable cause to believe that a felony has been committed and that the person arrested has committed it." *Commonwealth v. Dise*, 31 Mass. App.Ct. 701, 704, 583 N.E.2d 271 (1991), further appellate review denied, 412 Mass. 1102, 588 N.E.2d 691 (1992)."

**USDC 1st Cir.:**

*Aldrich v. Town of Milton*, Civil #2009-11282-JLT (USDC of Mass. July 9, 2012): "In the Commonwealth, "a private citizen may lawfully arrest someone who has in fact committed a felony." *Grise*, 398 Mass. at 250, 496 N.E.2d at 164; Harris, 11 Mass.App.Ct. at 170, 415 N.E.2d at 220."

*Holm v. Town of Derry*, Civil #11-cv-32-JD (USDC New Hampshire on 1st Cir., Dec. 20, 2011): "In support, Sienkiewicz cites RSA 627:5, IV, which states that a "private person acting on his own is justified in using non-deadly force upon another when and to the extent that he reasonably believes it necessary to arrest or prevent the escape from custody of such other whom he reasonably believes to have committed a felony and who in fact has committed that felony."

**SECOND CIRCUIT**:

*US v. Gowen*, 40 F.2d 593, 596 (1930): "This [NY Code Crmnl. Proc. § 183] in effect is declaratory of the common law, which concededly permits a peace officer or a private individual to arrest without a warrant where a felony has in fact been committed by the person arrested and the person making the arrest had probable cause for so believing. See *Carroll v. United States*, 267 US 132, 161, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; *Brady v. United States*, 300 F. 540 (CA 6); Bishop, New, Crim. Proc. (2d Ed.) § 181." (See also *US v. Lindenfield*, 142 F.2d 829, 831 (CA2 1944) (citing *Gowen, id.*)).

*US v. Swarovski*, 557 F.2d 40, 45 (CA2 1977) (quoting *Marsh v. US*, 29 F.2d 172 (CA2 1928) judge L. Hand, quoting *US v. Rosse*, 418 F.2d 38, 39 (CA2 1969) cert. den. 397 US 998, 25 L.Ed.2d 408, 90 S.Ct. 1143 (1970): "Initially, there can be no doubt that defendant was lawfully arrested, even though the agents possessed no warrants. The law is clear that any person, law enforcement officer or private citizen, can make an arrest where a felony has in fact been committed, and the person making the arrest has probable cause for so believing. *US v. Gowen*, 2nd Cir., 40 F.2d 593, rev. on other grounds in *Go-Bart Importing Co. v. US*, 282 US 344, 51 S.Ct. 153, 75 L.Ed. 374; *Carroll v. US*, 267 US 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; *Brady v. US*, 6th Cir., 300 F. 540, cert. den. 266 US 620, 45 S.Ct. 99, 69 L.Ed. 472; *Pritchett v. Sullivan*, 8th Cir. 182 F. 480; cf. also 5 USCA § 300a, codifying the common law with regard to arrests by agents of the Federal Bureau of Investigation, and A.L.I. Code of Criminal Procedure, 1930, § 21, and commentary, pp. 231-238. And the agents here certainly had more than probable cause for believing that defendant had just committed a felony.. 142 F.2d 829, at 831-2. (footnote omitted.) (This case concerned an arrest and prosecution for illicit sales of morphine, but took place long before the enactment of 26 USC § 7607 on July 18, 1956.)·"

**FIFTH CIRCUIT**:

*Dorsey v. United States*, 174 F.2d 899 (CA5 1949): "As to Dorsey, we have concluded his arrest though without a warrant, and by persons who were not arresting officers, was lawful. There being no federal statute on the subject, the arrest in Florida for a federal offense is governed by Florida law. *United States v. DiRe*, 332 US 581, 68 S.Ct. 222, 92 L.Ed. 210. The Florida law is the common law, as modified by statute. The common law authorizes a private person also to arrest for a felony committed in his presence; or if a felony has been committed, and he has probable cause to believe and does believe the arrested person to be guilty. He can justify his not getting a warrant, though he had the opportunity, by proving that arrested person was actually guilty. 4 Am.Jur., Arrest, 35, 36, 37; C.J.S., Arrest sec. 8. See also *US v. Gowen*, 40 F.2d 593 (CA2), and *Brady v. US*, 300 F. 540, 541 (CA6)."

## SIXTH CIRCUIT:

*Brady v. United States*, 300 F. 540, 543 (1924): "It is well established that the right of arrest without a warrant by a private person, in the absence of restrictive statutes, goes at least this far: That if a felony has in fact been committed, he may so arrest the one who is comitting it in his presence, or whom he has reasonable ground to suspect of having committed it. . . In the circumstance of this case, as hereinabove set forth, a private person would have been justified in arresting the defendants, without a warrant and in taking from them evidences of their crime, either on the ground that a felony had been committed[.]"

## EIGHTH CIRCUIT:

*Richardson v. US*, 217 F.2d 696, 698 (CA8 1954): "Complaint is made about the March 16[th] arrest by the narcotics agents. The arrest was made in Missouri, and under Missouri law a private person may make an arrest on showing of actual commission of a felony and reasonable grounds to suspect the accused."

## USDC 8th Cir.:

*Hester v. Redwood County*, Civil #11-1690-ADM-JJK (USDC Minn. Aug. 6, 2012): "Under Minnesota law, a citizen's arrest may be made when (1) a misdemeanor or felony has been committed in the arresting person's presence, (2) the person arrested has committed the felony, even if not in the arresting person's presence, or (3) if a felony has in fact been committed and the arresting person has reasonable cause to believe the person arrested committed it. Minn.Stat. § 629.37."

*US v. Kriz*, 301 F.Supp. 1329 1331 (USDC Minnesota, Division III (July 25, 1969)): "Absent a federal statute, the validity of the arrest of defendant is to be resolved by state law subject to federal constitutional safeguards. (cites omitted). Minn. State § 629.37(3) authorizes an arrest without a warrant by a private person 'when a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.' "

## NINTH CIRCUIT:

*Foss v. US*, 266 F. 881, 882 (1920): "It is the duty and the right, not only of every peace officer of the United States, but of every citizen, to assist in prosecuting, and in securing the punishment of, a breach of the peace of the United States. It is the right, as well as the duty of every citizen, when called upon by the proper officer to act as part of the posse comitatus in upholding the laws of the country."

"In *Motes v. United States*, 178 US 458, 20 S.Ct. 993, 44 L.Ed. 1150, the statute was held applicable to a conspiracy to injure, oppress, threaten, and intimidate one who had informed the collector of internal revenue of the carrying on of the distillery business in violation of the law. Said the court: "It was the right and privilege of Thompson, in return for the protection he enjoyed under the Constitution and laws of the United States, to aid in the execution of the laws of his country by giving information to the proper authorities of

violations of those laws. The right and privilege may properly be said to be secured by the Constitution and laws of the United States." "

*Ward v. US*, 316 F.2d 113, (1963): "The postal inspectors are not 'peace officers,' as that term is defined by §§ 7 and 817 of the California Penal Code. But this is of no consequence, for the same right exists in private citizens to make arrests without a warrant, as in peace officers, provided subsection (3) (or some other subsection) of California Penal Code § 837 is satisfied. Subsection (3) has two requirements: (a) a felony must have been committed by someone; and (b) 'reasonable cause must exist' to believe the person arrested committed the felony."

"Any fair reading of the evidence hereinbefore set forth convinces us that reasonable cause for the arrest of appellant existed. 'Reasonable cause to arrest' is no esoteric formula. Would the information and knowledge the arresting person had lead a person of ordinary reasonable judgment, intelligence, care and prudence, to believe the person to be arrested had committed the felony? *Mackie v. Ambassador Hotel & Inv. Corp.*, 1932, 123 Cal.App. 215, 11 P.2d 3; *People v. Boss*, 1930, 210 Cal. 245, 290 P. 881."

"The belief may amount only to an honest and strong suspicion that the person arrested is guilty of a felony. *Taylor v. Fine*, D.C., 1953, 115 F.Supp. 68; *United States v. Bell*, D.C., 1943, 48 F.Supp. 986."

"Mere suspicion alone is not enough. *Casserly v. Wheeler*, 9 Cir. 1922, 282 F. 389; *Poldo v. United States*, 9 Cir. 1932, 55 F.2d 866; *Cook v. Singer Sewing Machine Co.*, 1934, 138 Cal.App. 418, 32 P.2d 430."

"'Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in belief that charge is true.' *People v. Brite*, 9 Cal.2d 666, 72 P.2d 122. We agree with the trial judge that reasonable cause was established by substantial evidence sufficient to authorize appellant's arrest without a warrant."

*Jack v. Rhay*, 366 F.2d 191 (CA9 1966): "Under all of the facts it is established to my satisfaction that the arrest was lawful and the search incident to it. This made the evidence admissible. Reasonable cause to believe that felony has been committed and the arrested person committed it are sufficient to legalize the arrest even if made by private citizens. (See *Fernandez v. Klinger*, 346 F.2d 210, 211-12 (CA9 1965); *Elkanich v. US*, 327 F.2d 417 (CA9 1964), cert. den. 377 US 917; *Ward v. US*, 316 F.2d 113 (CA9 1963), cert. den. 375 US 862; *Richardson v. US*, 217 F.2d 696 (CA8 1964); *US v. Coplon*, 185 F.2d 629, 634, 28 A.L.R.2d 1041 (CA2 1950), cert. den. 342 US 920; *Dorsey v. US*, 174 F.2d 899 (CA6 1949), cert. den. 388 US 950 and 340 US 878; *State v. McClung*, 66 Wash.2d 654, 404 P.2d 460 (1965)."

*Elkanich v. US*, 327 F.2d 417, 420 (1964): "Speaking of probable cause sufficient to justify an arrest without a warrant, the Supreme Court, in *Draper v. US*, [358 US 307, 310, 314, 79 S.Ct. 329, 3 L.Ed.2d 327] *supra*, stated at page 313 of 358 US Reports, at page 333 of 79 S.Ct., 3 L.Ed.2d 327:

> "In dealing with probable cause, ***as the very name implies, we deal with probabilities.    There are not technical;   they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act.' *Brinegar v. United States*, *supra*, 338 US 175 (69 S.CT. at page 1310, 93 L.Ed. 1879). Probable cause exists where 'the facts and circumstances within (the arresting officer's) knowledge and of which they had reasonably trustworthy information  (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed: *Carroll v. US*, 267 US 132, 162 (45 S.Ct. 280, 69 L.Ed. 543.' "

## USDC 9th Cir.:

*Smock v. Peppermill Casinos, Inc.*, #3:11-cv-00094-RCJ-VPC USDC Nevada (May 14, 2012): "Defendant notes that its employees, like any citizen, have the statutory privilege to arrest another citizen for a public offense committed or attempted in their presence. See Nev. Rev. Stat. § 171.126(1). **(Fn.4)**."

> **Fn.4:** "If the offense is a felony, a private person may arrest the offender even though the offense was not committed in his presence, so long as he has "reasonable cause." See *id.* § 171.126(2)-(3). Defendants only allege misdemeanor trespassing here."

"Still, the guards were only entitled to use reasonable force. See *State v. Weddell*, 118 Nev. 206, 43 P.3d 987, 988 (Nev.2002) ("[A]private person, when arresting another person pursuant to NRS § 171.126, may use no more force than is necessary and reasonable to secure the arrest.")."

*Huang v. McEwen*, Civil #09-0355-PA-JCG (USDC Central Dist. of Cal. April 26, 2012): "In California, the defense of citizen's arrest mandates in pertinent part that a private person may arrest another for a public offense committed or attempted in his presence. See Cal. Penal Code § 837. "An arrest is taking a person into custody, in a case and in the manner authorized by law. An arrest may be made by a peace officer or by a private person." *Id.* § 834."

**TENTH CIRCUIT:**

**USDC 10ᵗʰ Cir.:**

> *Stroh v. US*, Civil #11-cv-00344-LTB-BNB (USDC Colorado, Sept. 17, 2012): "However, I do find a private analogue is available, under Colorado law. to a private individual making a citizen's arrest.' Colorado Revised Statutes § 16-3-201 allows a person who is not a peace officer to arrest another person when any crime has been or is being committed by the arrested person in the presence of the person making the arrest. See also Colo.Rev.Stat. § 18-1-707(7) (providing that "[a] private person acting on his own account is justified in using reasonable and appropriate physical force upon another person when and to the extent that he reasonably believes it necessary to effect the arrest, or to prevent the escape from custody of an arrested person who has committed an offense in his presence")."

**D.C. CIRCUIT:**

> *US v. Lima*, 424 A.2d 113, 120 (1980): "Congress' intent by enacting this statute was to define and restrict the private citizen's common law right to arrest. [S]ection 23-528(b) limits the scope of citizen's arrest power to both felonies and specific misdemeanors, committed in the presence of the private person as distinguished from those not committed in his presence." (cites to Congressional Hearings omitted). By so limiting the citizen's power of arrest, Congress recognized that "law enforcement should generally be carried out by professionals." H.R. REP. No.907, 91ˢᵗ Cong., 1ˢᵗ Sess. 118 (1969-70); 1970 D.C. Legislative and AdministrativeService 511. See also *US v. Dorsey*, 146 US. App.D.C. 28, 30 n.4, 449 F.2d 1104, 1106 n.4 (1971). A citizen's arrest power presumes that a law-abiding citizen for his own personal purposes may desire to stop criminal activity just as a merchant has a personal interest in deterring theft of his goods. Consequently, Congress has recognized these legitimate private interests of apprehending persons committing certain crimes within their presence."

***End federal citizen's arrest cites.***

This collection of relevant decisions, from appellate and district courts across the country, make clear and firmly establishes that the right to arrest a felon at large is entirely legal for anyone who has reasonable suspicion that the person to be arrested is indeed guilty of having committed the crime. A great state case about citizen's arrest is *State v. Sobrino*, 587 So.2d 1347 3ʳᵈ District Court of Appeals of Florida (July 11, 1991). The Supreme Court has held that:

> "[W]e have referred to the Court of Appeals when enquiring whether a right was "clearly established." "

See *US v. Lanier*, 520 US 259, 269, 137 L.Ed.2d 432, 117 S.Ct. 1219 (1997) (citing *Mitchell v. Forsyth*, 427 US 511, 533, 86 L.Ed.2d 411, 105 S.Ct. 2806 (1985); *Davis v. Scherer*, 468 US 183,

191-92, 82 L.Ed.2d. 139, 104 S.Ct. 3012 (1984); *Elder v. Halloway*, 510 US 510, 516, 127 L.Ed.2d 344, 114 S.Ct. 1019 (1994) (treating Court of Appeals decisions as "relevant authority" that must be considered as part of qualified immunity enquiry)).

It is also clear that the individual's right to arrest a felon at large is independent of the opinion and discretion of governmental authorities, that it doesn't require the intervention of the courts, that no prior approval on the part of law enforcement authorities need be sought in advance of making such an arrest. Nowhere was there any mention of an exclusion of any particular felon or felony violation from this clearly established right. If the police, the IRS, or a prosecutor, can reasonably be deemed to have committed one or more felony violations of state or federal law, there's nothing in these authorities that seeks to exempt them from being arrested by any individual as a matter of right.

We also saw no limitation on the number of individuals who would have the right to arrest a felon at large. If a felony has been committed, and if 300+ million Americans thereafter become reasonably convinced of the fact, there's nothing to prevent each and all of them from entering the home of the felon, arresting them, and delivering them to authorities competent to receive them into custody.

I'm not here to tell anyone what to think or to believe, nor am I attempting to give or offer legal advice. What you think is felonious misconduct is your business and concern, as is what you believe you are permitted to do about it. When the government is "unfamiliar with § 83," despite having faced this particular challenge since 1993, what is the average individual to think? When the government can't even put its own interpretation of § 83(a) on the record when seeking to obtain a guilty verdict in a tax criminal case, can it mean anything but that a felonious conspiracy is afoot?

Can you arrest any IRS employee you see? If not, how did § 83 operate in your conclusion that taxation of the fair market value of your compensation is not a conspiracy against your rights to due process and to property? How did those four Supreme Court decisions about "any" and about "any property" factor in when you applied 26 CFR 1.83-3(g) to calculate your "amount paid"?

Have you ever owed a dime to the IRS? You have no choice but to apply § 83 before you can answer the question. The same is true of your accountant, H&R Block, and every other tax professional, tax attorney, judge, or other federal public servant. Have you been deprived of the

provisions of Tax Code §§ 83, 212, 1001, 1011, and 1012? Inasmuch as the government has chosen silence relating to these provisions, it's up to you to answer the question.

******************************

The courts and the IRS claim that personal services, while indeed are property, are not an "amount paid" because the services were of no cost to the person who performed the services. This exclusion is nowhere to be found, in the law, and this contention of the IRS' most certainly contradicts the DOJ in *Monsanto* and other cases cited therein. The IRS must have it both ways on the same phrase to take all of a heroin manufacturer's money under forfeiture statutes <u>and</u> tax the value of one's paycheck; why do we all lose right along with the heroin manufacturer? Why does *Monsanto* and the Supreme Court mean nothing when tax statutes are involved? How did § 83 operate in your conclusion that my paycheck is gross income?

Now ask yourself, American, if the federal government has always stolen every cent of Social Security, § 1 income taxes, capital gains, how has it changed the world? Look at how <u>all</u> of that money's been spent, the aircraft carriers, the atomic weapons, the cruise missiles, the foreign military bases; is it any wonder America has so many enemies? A government that's willing to steal from 300+ million gun owners is spreading its proclivities and approach to governance around the planet in a banker's image but in your name. State governments are no better, stealing to fund the encroachment you see and feel, and the swarms of attorneys and police who each and all stand ready to skin and gut your liberty and property whenever you raise your head or your voice. Man or mouse, American?

"To sin by silence when they should protest, makes cowards of men." A. Lincoln

**David R. Myrland**

**For more information and new materials relating to income taxation and law in general, please bookmark revisit -**

**<u>TakeFromCaesar.US</u>**

**Thank you!**

**Verification:**

3.9 I, David R. Myrland, do hereby declare under penalties of perjury that the foregoing statements are true and correct to the best of my knowledge and belief, and the attached exhibits are authentic and have not been misrepresented in any way. Executed this _25th_ day of August, 2014.

_[signature]_

David R. Myrland, Affiant

3.10 The above affirmation was duly subscribed and sworn to before me, this _25th_ day of August, 2014, by David R. Myrland.

3.11 I, Donald Theodore Grahn, am a Notary under license from the State of Washington, whose Commission expires on October 1*8*, 2014, and be it known by my Hand and my Seal as follows:

_[notary seal]_

Notary signature

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

SUPPLEMENTAL BRIEFING by original
Complainant, David R. Myrland.              Page 53 of 53

*fortiori*, of Americans as a society. Tax Code enforcement is a blight, a civic pestilence; the anti-polity. In all of this there is an obvious reliance upon decisions of the U.S. Supreme Court on the part of the Complainant.

> "It is, of course, true that Supreme Court decisions are on occasion overruled and that the opportunity to overrule them would never arise if litigants did not continue to challenge their validity. But, in this context at least, it is unnecessary to penalize the United States' proper reliance on our past decisions in order to re-examine them, since there is no bar to a suit by plaintiffs below directly against Oklahoma for recovery of the tax. Cf. *Poafpybitty v. Skelly Oil Co.*, 390 U.S. 365 (1968). *And if the doctrine of stare decisis has any meaning at all, it requires that people in their everyday affairs be able to rely on our decisions and not be needlessly penalized for such reliance.* Cf. *Flood v. Kuhn*, 407 U.S. 258, 283 (1972); *Wallace v. M'Connell*, 13 Pet. 136, 150 (1839)."

See *U.S. v. Mason*, 412 U.S. 391, 399-400 (1973).

3.7 Defendants have yet to issue a response of any nature to the 2006 criminal complaint mailed to eighty members of Congress, the DOJ, the Sec. of Treasury, and Comm'r of IRS. All courts are loathe to glance at the claims expanded upon herein. Americans are in prison while the scope of 26 USC remains a secret, if different from what the Complainant has detailed. When Defendants again sprint from any quest for the truth, Complainant will view it as further proof that these claims are precisely how the law must be read.

3.8 Defendants hereto are clearly in violation of 18 USC §§ 241, 242, and other statutes under which the 2006 complaint makes accusations. It is the Complainant's intent to cause the discharge from employment, arrest, prosecution, and conviction of the Defendants. Until such time as cogent and responsible refutation of Complainant's claims are provided, he must view the Defendants as common criminals and not as public servants.

///
///
///
///
///
///
///
///

SUPPLEMENTAL BRIEFING by original
Complainant, David R. Myrland.                    Page 52 of 53

See *US. v National Dairy Corp.*, 372 US 29, 32 (1963); <u>see also</u> *Browning-Ferris Industries of Vermont v. Kelso Disposal, Inc.*, 492 US 257, 300-301 (1989); *US v. Classic*, 313 US 299, 331 (1941). Albert Einstein said:

> "The hardest thing in the world to understand is the income tax."

See: http://www.irs.gov/uac/Tax-Quotes.

    3.5 What could be simpler? Complainant claims, **(1)** Americans are named in regulation alone, in violation of the 16th Amdt. which authorizes only Congress to lay and collect an income tax, **and (2)** the law recognizes the value of personal services as a cost or "amount paid," so compensation for services is not profit or "gross income." It's worse than this for the criminal defendant in a tax case. In *Warner*, he fired his public defender and demanded another that had a working knowledge of the Tax Code and its § 83, and the DOJ went on record saying that the government couldn't satisfy this request. The DOJ, the IRS, the judges, and the attorneys of the world, each and all are ignorant of tax law in the most fundamental of ways. To ignore the provisions cited by the Complainant is a proclamation that the executive and judicial branches are the ones in control of taxation; not the legislative.

> "The executive not only dispenses the honors, but holds the sword of the community. <u>The Legislature not only commands the purse</u>, but prescribes the rules by which the duties and rights of every citizen are to be regulated. The judiciary, on the contrary, *has no influence* over either the sword or the purse; *no direction* either of the strength or of the wealth of the society; and *can take no active resolution whatever. It may truly be said to have neither force nor will, but merely judgment.*" [47]

> "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." US Constitution, Article I, § 1.

> "I've appointed former Federal Reserve Chairman, Paul Volcker, to totally overhaul the Tax Code." B.H. Obama, March 25, 2009.

    3.6 The complexities of the Tax Code have isolated Congress and swept it aside, putting the executive and judicial branches fully in charge of taxation; the progressives' dream. Taxation without representation rules the day while a mock is made of Congress, *a*

---

[47] See *Evans v. Gore*, 253 U.S. 245, 249, 40 S.Ct. 550, 551 (1920).

SUPPLEMENTAL BRIEFING by original
Complainant, David R. Myrland.       Page 51 of 53

"I agree with the Court that the Internal Revenue Code provision and the corresponding Treasury Regulations that control consolidated filings are best interpreted as requiring a single-entity approach in calculating product liability loss. I write separately, however, because *I respectfully disagree with the dissent's suggestion that, when a provision of the Code and the corresponding regulations are ambiguous, this Court should defer to the Government's interpretation*. See *post* this page (opinion of Stevens, J.). *At a bare minimum, in cases such as this one, in which the complex statutory and regulatory scheme lends itself to any number of interpretations, we should be inclined to rely on the traditional canon that construes revenue-raising laws against their drafter*. See *Leavell* v. *Blades*, 237 Mo. 695, 700-701, 141 S.W. 893, 894 (1911) ("*When the tax gatherer puts his finger on the citizen, he must also put his finger on the law permitting it*"); *United States* v. *Merriam*, 263 U.S. 179, 188 (1923) ("*If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer*"); *Bowers* v. *New York & Albany Lighterage Co.*, 273 U.S. 346, 350 (1927) ("*The provision is part of a taxing statute; and such laws are to be interpreted liberally in favor of the taxpayers*"). Accord, *American Net & Twine Co.* v. *Worthington*, 141 U.S. 468, 474 (1891); *Benziger* v. *United States* - 192 U.S. 38, 55 (1904)."

3.3 Is this - "I am unfamiliar with § 83." - a valid standard of due process to support or justify mandating that financial privacy be vanquished or sending an American to prison? Would you demand better if you faced prison time under tax criminal charges?

3.4 A tax must be imposed by clear and unequivocal language. Where the construction of a tax law is doubtful, the doubt is to be resolved in favor of whom upon which the tax is sought to be laid. (See *Spreckles Sugar Refining* v. *McClain*, 192 U.S. 397, 416 (1904); *Gould v. Gould*, 245 U.S. 151, 153 (1917); *Smietanka v. First Trust & Savings Bank*, 257 U.S. 602, 606 (1922); *Lucas v. Alexander*, 279 U.S. 573, 577 (1929); *Crooks v. Harrelson*, 282 U.S. 55 (1930); *Burnet v. Niagra Falls Brewing Co.*, 282 U.S. 648, 654 (1931); *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 508 (1932); *Gregory v. Helvering*, 293 U.S. 465, 469 (1935); *Hassett v. Welch*, 303 U.S. 303, 314 (1938); *U.S. v. Batchelder*, 442 U.S. 114, 123 (1978); *Security Bank of Minnesota v. C.I.R.*, 994 F.2d 432, 436 (CA8 1993)).

"Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. *United States v. Harris*, 347 US 612, 617 (1954)."

*legislation of which it is an integral part.*" (Cite omitted) According to the Court, the construing court's duty is "*to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested.*'" (Cite omitted) The circumstances of the enactment of particular legislation may be particular relevant to this inquiry. (Cite omitted) *Finally, when there is reasonable doubt about the meaning of a revenue statute, the doubt is resolved in favor of those taxed.* (Cite omitted)

As in all cases of statutory interpretation, *we must start with the text of the statute.* But we cannot simply focus on sections 1281 through 1283 because they do not exist in a vacuum. *Rather, we must consider the context provided by the more general statutory scheme of which [they] are a part.* "[43]

"Thus, the statutory scheme into which [the provisions] fit shows a concern with the treatment of discounted obligations. *We find no mention* in this scheme of the treatment of bank loans made in the ordinary course of business. Given this context, we would expect that if Congress initially covered loans without discount, as the commissioner contends, *it would provide language* clearly stating such an intention. We next examine the statutory text to see if it contains such a clear statement.

We conclude that the statutory text does not clearly cover obligations containing only stated interest. First, nothing in either the sections at issue or in the broader statutory scheme specifically refers to loans [of that type].

Second, we conclude that the actual text of the provisions is ambiguous with regard to whether such obligations are covered." [44]

"We are not convinced that the language is as clear as the Commissioner contends." [45]

"An examination of the statutory context, *the text of the relevant provisions*, and the legislative history convinces us that the construction that is "most harmonious with its scheme and with the general purposes that Congress manifested." (Cite omitted) Moreover, because the application of [the provision] to these loans is ambiguous, we follow the venerable rule that "[i]n the interpretation of statutes levying taxes . . . *[courts must not] enlarge their operation so as to embrace matters not specifically pointed out.* In case of doubt they are construed most strongly against the government."

"'I respectfully dissent. If the [statutory] intent of Congress is clear, that is the end of the matter.' *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)." [46]

3.2 The courts refuse to do this. The void for vagueness doctrine was briefed at ¶¶ 3.14 to 3.18 of Memo of Jan. 2006. In *United Dominion Industries, Inc. v. United States,* 532 US 822 (2001) it is held that:

---

[43] See *Security Bank of Minnesota v. Commissioner of IRS*, 994 F.2d 432, 435-36 (CA8 1993).
[44] *Id.*, at 437.
[45] *Id.*, at 438.
[46] *Id.*, at 441.

(QB)4. In consideration of these provisions, is the FMV of labor (contract value) appropriately termed "gain derived from labor"?

(QB)5. Is the FMV of labor excluded from gross income by law? (See § 83, 212, 1001, 1012; 26 CFR 1.83-3(g)). If so, by what authority?

(QB)6. Can a Court order the exclusion from cost of property within which the Complainant has no basis when such exception to cost cannot be found in statute or in regulation, especially when it constitutes the difference between paying a tax and not even being subject to it? Can the Defendants claim in one case that "any property" means <u>all</u> property, and in another case argue that "any property" lawfully excludes certain things not recorded, mentioned, or manifest in law? Would such accounting offend the holdings in *Monsanto, Gonzales, Alvarez,* and *Rucker*? If not, why not?

### III. CONCLUSION & VERIFICATION.

3.1 The burden is squarely upon the Defendants to identify the legitimate promulgation which does not create an application or requirement lacking clear statutory foundation.

"In light of the above discussion, *we cannot but regard this Treasury Regulation as no more than an attempted addition to the statute of something which is not there.*"

See *United States v. Calamaro*, 354 U.S. 351, 358-359 (1957).

"*But the section contains nothing to that effect,* and, therefore, *to uphold* [IRS Commr's] addition to the tax *would be to hold that it may be imposed by regulation, which, of course, the law does not permit. U.S. v. Calamaro,* 354 US 351, 359; *Koshland v. Helvering,* 298 US 441, 446-67; *Manhattan Equipment Co. v. Commissioner,* 297 US 129, 134."

See *C.I.R. v. Acker*, 361 U.S. 87, 92 (1959). Further:

"*The parties provide vastly differing interpretations of the statutory language, and both contend that the language clearly supports their position.*"

"The Commissioner's argument has considerable force, if one focuses solely on the language of sections 1281 and 1283 and divorces them from the broader statutory context. But we cannot do that. The Supreme Court has noted that, "*the true meaning of a single section of a statute in a setting as complex as that of the revenue acts, however precise its language, cannot be ascertained if it be considered apart from related sections, or if the mind be isolated from the history of the income tax*

among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property." [42]

2.69 In instructional publications, the IRS reminds the individual who sells personal services that the cost of their paycheck is the "value of services provided in the transaction," that ALL property is a cost.

**Summary of this claim:**

2.70 Under law, to tax the FMV of services actually rendered, the Complainant must be deprived of the provisions of 26 USC §§ 83, 212, 1001, 1011, and 1012. The law (26 CFR 1.83-3(g)) embraces the FMV of labor as a cost ("*value of any money or property paid*"), despite the fact that it is property within which the Complainant has no basis. Property within which one has no basis is not excluded from cost under the law.

2.71 Defendants exclude from cost Complainant's services merely upon the fact that it is property within which Complainant has no basis, but such an exclusion is unauthorized under provisions which embrace ALL property as a cost. Complainant must violate §§ 83, 212, 1001, 1011, and 1012 by not restoring the "adjusted basis" and allowing only the amount that remains thereafter to be taxed as "realized gain," as required under 26 CFR 1.1001-1(a). To report as gross income the value of personal services the Complainant must enter a false statement on a gov't form in violation of 18 USC § 1001.

**Questions for review:**

(QB)1. Since § 83 is applicable to amounts now sought to be included in gross income, it is clear that either the Defendants or the Complainant is in violation of it, but silence abounds. Does it apply, and, if so, how does it operate and how is the Complainant to comply with it in the future?

(QB)2. Where, under §§ 83 and 1012, and 26 CFR 1.83-3(g), does it provide that only property within which one has a basis is to be recognized as a cost or, that intangible personal property is excluded from that which is cost?

(QB)3. If such exclusions alluded to in #(2) above do not exist, can "income tax" approach such property's FMV, as contemplated under §83?

---

[42] See *Coppage v. Kansas*, 236 U.S. 1, 14 (1915).

2.65 The posture of the Defendants and the contrast to *Monsanto* to which it amounts is quite easily portrayed. Complainant is siding, and will act in accordance with, *Monsanto*:

| - THIS - | vs. | - THIS - |
|---|---|---|
| U.S. Tax Court/Secretary of Treasury and Commissioner of IRS say that "Any property" excludes *some* property *i.e.*, labor, resulting in an income tax on the FMV of labor. | \| \| \| \| \| | U.S. Supreme Court and U.S. Department of Justice in *Gonzales, Rucker, Monsanto, Alvarez*, regarding "any" and "any property." (IRS Pub.17, 26 CFR 1.83-3(g), 1.1012-1(a)) "Any property" includes all property, like labor; no income tax on FMV of labor. |

2.66 In case law under § 83, the term "amount paid" is universally equated with the term and concept of "cost." The cost of Complainant's compensation is figured by applying the provisions of § 1012 and the regulations thereunder. (See 26 CFR 1.83-4(b)(2)).

2.67 The term "amount paid" is defined as the value of **any property** paid by the Complainant for his compensation for services. (See 26 CFR 1.83-3(g)). Regulation 26 CFR 1.1012-1(a) defines Complainant's cost as "cash or other property" and fails to exclude from cost that *property within which Complainant has no basis*. When regulation is read in light of *Monsanto*, as Complainant demands and subscribes, the value of his personal services is a cost, expressly excluded from gross income as an "amount paid" by the terms of § 83(a).

> "The regulations...now govern, and will continue to govern, the abbreviated application process. See *Fort Stewart Schools v. FLRA*, 495 U.S. 641, 654, 110 S.Ct. 2043, 2051, 109 L.Ed.2d 659 (1990). *No matter what an agency said in the past, or what it did not say, after an agency issues regulations it must abide by them.*" [39]

2.68 The Supreme Court has ruled that a tax on the FMV of labor constitutes a diminution of compensation, that it constitutes the taking of part of a contract for the sale of labor. [40] It is said that the 16th Amendment did not extend Congress' taxing power to objects or subjects previously immune, [41] and the right of contract is held in high regard:

> "Included in the right of personal liberty and the right of private property, partaking of the nature of each is the right to make contracts for the acquisition of property. Chief

---

[39] See *Schering Corp. v. Shalala*, 995 F.2d 1103 (D.C.Cir.1993).

[40] See *Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550 (1920).

[41] See *Peck v. Lowe*, 247 U.S. 165; *Stanton v. Baltic Mining Co.*, 240 U.S. 103.

**(1) *Rule I.*** An exaction by the U.S. Government, which is not based upon law, statutory or otherwise, is a taking of property without due process of law, in violation of the Fifth Amendment to the U.S. Constitution. Accordingly, an Appeals representative in his or her conclusions of fact or application of the law, shall hew to the law and the recognized standards of legal construction. It shall be his or her duty to determine the correct amount of the tax, with strict impartiality as between the taxpayer and the Government, and without favoritism or discrimination as between taxpayers.

2.62 Regulation 26 CFR 1.83-3(g) must be read to include the value of personal services in its prescription that "the value of any money or property paid" be deemed to be an "amount paid" for the purposes of 26 USC 83(a).

2.63 The Defendants want it both ways, but the Supreme Court has already ruled in favor of only one; "any property" means EVERYTHING. Defendants must offend *Monsanto* and their victory there and in the other decisions to argue for the exclusion of the FMV of personal services from the language of 26 USC §§ 83 ("the value of any money or property paid" in 1.83-3(g)) and § 1012 ("cash or other property"), and this alone, as proven through repeated litigation of this very claim, is the sole source of the Defendants' ability to tax as gross income the value of personal services actually rendered; Defendants are demanding that it not only *have* the cake, but that it also be allowed to gorge itself upon it at any time of its choosing.

2.64 The Defendants say in publication precisely what has been argued here, and then destroys the lives of anyone who acts upon such advice. [38] (See above captioned complaint of 2006 at its Ex.4, Tab #11). IRS Publication 17 is sent to [every] household in America, around Dec.-Jan., and is called "Tax Guide for Individuals," and covers nearly every aspect of personal income taxes; it's the most heavily distributed of all IRS publications. Since § 83 applies to all compensation, FICA wages/tips in § 3121(a) and (q), and § 3401(a) wages, and § 1402(a) self employed Social Security, are likewise classified under the law as § 83 compensation; everything the respondent collects under 26 USC ch.1, 2, 21, and 24 is theft through the violation/deprivation of the protections of §§ 83, 212, 1001, 1011, and 1012, to say nothing of 26 USC § 7214 (crime to demand more money than is allowed by law) and 26 CFR 601.106(f)(1) (exaction is a taking of property, violates due process).

---

[38] See above captioned complaint of 2006 at its Ex. 4, Tab #11 - IRS Publication 17 "Tax Guide for Individuals" (excerpts), *ala*, all property is cost, cost is the value of personal services actually rendered.

received for services is taxable to the recipient of the property to the extent of its fair market value minus the amount (if any) paid for the property. In attempting to equate his wages with property for which he has a tax cost, petitioner's argument is nothing more than a variation of the wages-are-not-income claim frequently advanced by tax protesters, and it is completely without merit. (protester cites omitted) Petitioner's argument fails for the same reason that other protester's arguments fail; *the worker's cost for his services-and thus his basis-is zero, not their fair market value*."

**\*End quote** from *Talmage* in US Tax Court. The appeal:

"Stephen V. Talmage appeals from the tax court's orders (1) entered March 11, 1996, granting summary judgment to the Commissioner and imposing a penalty under 26 U.S.C. § 6673(a)(1)(B) (1994) for pursuing a frivolous action in tax court; and, (2) entered April 17, 1996, denying his motion for reconsideration. *We affirm, based on the reasoning of the tax court*."

See *Talmage v. Comm'r of IRS*, 101 F.3d 695 (CA4 Nov. 15, 1996) (unpublished decision).

2.60 In Tax Court's decisions the *policy* of excluding the value of personal services is articulated without pointing to a lawful basis for such an exclusion, and this upheld by the 4th Circuit which makes the same leap in logic. However, before and after this the Defendants win four Supreme Court cases arguing that such an arbitrary exclusion from "any" or "any property" is impermissible. This is why *Talmage* was not cited by the Defendants in *Warner* when he presented this challenge in his criminal trial; the exclusion of the value of personal services from "any money or property paid" and from "cash or other property" is arbitrary. Who wins out and why? When interpreting 26 USC §§ 83 and 1012, and 26 CFR 1.83-3(g) and 1.1012-1(a), is it Tax Court's arbitrary exclusion or the U.S. Supreme Court's prescription that an exclusion not be arbitrary that prevails? Congressional mandate or executive and judicial contrivance?

2.61 A very noteworthy point is that we see in each of those cases the U.S. as party movant to the argument that "any" is all inclusive, the party seeking to benefit under that interpretation. When the Defendants are on the offense the term "any" means everything, but when the lowly citizen demands the same reading it must be refused so the U.S. can take his paycheck. This alone distinguishes those controversies from this one. Naturally, lawfully, fairly, as taxpayers, every American has the right to expect from any court treatment in kind, lest they be the victim of an exaction. (See 26 CFR 601.106(f)(1), exaction violates due process).

From *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (1994):

> "Respondent contends that he was under "arrest or other detention" for purposes of § 3501(c) during the interview at the Sheriff's Department, and that his statement to the Secret Service agents constituted a confession governed by this subsection. *In respondent's view, it is irrelevant that he was in the custody of the local authorities, rather than that of the federal agents, when he made the statement. Because the statute applies to persons in the custody of "any" law enforcement officer or law enforcement agency, respondent suggests that the § 3501(c) 6-hour time period begins to run whenever a person is arrested by local, state, or federal officers.*
>
> *We believe respondent errs in placing dispositive weight on the broad statutory reference to "any" law enforcement officer or agency without considering the rest of the statute.*" [37]

***End excerpts.***

2.59 In reviewing U.S. Tax Court's disposition of the 26 USC § 83 claim we recall that its restrictive application of the term "any" allowing *some* property (labor, property with no tangible basis or cost) to be excluded under 26 CFR's 1.83-3(g)'s reference to "any money or property" was its only exculpatory reasoning or thread of logic to overcome the claim. In the cases above, decided in 1989, 1994, 1997, and 2002, Tax Court's reasoning regarding "any property" is clearly dismembered as arbitrary and therefore impermissible. The correct answer is *Talmage v. Comm'r of IRS*, USTC docket #339-95, 71 T.C.M. 2370 (1996):

> "Because the issues are purely legal, this case is ripe for summary judgment. Tax protester arguments like the claim that wages are not taxable income also suffice (as an alternative to dismissal, and in the absence of better argument) to justify summary judgment for the respondent. (protester cite omitted). Even if wages are, in effect, an exchange of value for equal value, they are nevertheless taxable income. (protester cite omitted) And even if we apply section 1001, his basis is determined under sections 1011 and 1012 as his cost, not fair market value. *Since he paid nothing for his labor, his cost and thus his basis are zero.* (protester cite omitted) Consequently, even under section 1001, his taxable income from his labor is his total gain reduced by nothing, *i.e.,* his wages.
>
> "Petitioner's primary argument is that section 83, Property Transferred in Connection with the Performance of Services, has the effect of exempting his wages from income tax because it requires us to apply section 1012, which specifies that cost should be used to determine the basis of property (unless the Code provides otherwise) to determine the extent to which wages constitute taxable income. Petitioner asserts that he "paid" for his wages with his labor and that section 83 allows the value of his labor as a cost to be offset against his wages, thereby exempting them from tax. Section 83 provides that property

---

[37] See *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (1994).

*New International Dictionary 97 (1976). Congress did not add any language limiting the breadth of that word, and so we must read § 924(c) as referring to all "term[s] of imprisonment,"* including those imposed by state courts. Cf. *United States v. Alvarez-Sanchez*, 511 U.S. 350, 358 (1994) (noting that statute referring to "any law enforcement officer" includes "federal, state, or local" officers); *Collector v. Hubbard*, 12 Wall. 1, 15 (1871) (*stating "it is quite clear" that a statute prohibiting the filing of suit "in any court" "includes the State courts as well as the Federal courts," because "there is not a word in the [statute] tending to show that the words 'in any court' are not used in their ordinary sense"*). There is no basis in the text for limiting § 924(c) to federal sentences.

In his dissenting opinion, JUSTICE STEVENS suggests that the word "any" as used in the first sentence of § 924(c) "unquestionably has the meaning 'any federal.'" *Post* at 14. In that first sentence, however, Congress *explicitly* limited the scope of the phrase "any crime of violence or drug trafficking crime" to those "for which [a defendant] may be prosecuted in a court of the United States." Given that Congress expressly limited the phrase "any crime" to only federal crimes, we find it significant that no similar restriction modifies the phrase "any other term of imprisonment," which appears only two sentences later and is at issue in this case. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("'*Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion*'").

The Court of Appeals also found ambiguity in Congress' decision, in drafting § 924(c), to prohibit concurrent sentences instead of simply mandating consecutive sentences. 65 F.3d at 820. Unlike the lower court, however, we see nothing remarkable (much less ambiguous) about Congress' choice of words. Because consecutive and concurrent sentences are exact opposites, Congress implicitly required one when it prohibited the other. This "ambiguity" is, in any event, beside the point, because this phraseology has no bearing on whether Congress meant § 924(c) sentences to run consecutively only to other federal terms of imprisonment.

*Given the straightforward statutory command, there is no reason to resort to legislative history. Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992). Indeed, far from clarifying the statute, the legislative history only muddies the waters. The excerpt from the Senate Report accompanying the 1984 amendment to § 924(c), relied upon by the Court of Appeals, reads:

> [T]he Committee intends that the mandatory sentence under the revised subsection 924(c) be served prior to the start of the sentence for the underlying or any other offense.

S.Rep. at 313-314. This snippet of legislative history injects into § 924(c) an entirely new idea -- that a defendant must serve the five-year prison term for his firearms conviction before any other sentences. *This added requirement, however, is "in no way anchored in the text of the statute." Shannon v. United States*, 512 U.S. 573, 583 (1994). [36]

---

[36] See *U.S. v. Gonzales*, 520 U.S. 1, 4-6 (1997).

2.57 Here, in this <u>unanimous</u> 2002 decision (REHNQUIST, C.J. delivered opinion, BEYER, J. took no part), the Supreme Court draws upon *Monsanto* for guidance in another instance hinged upon interpretation of the term "any," affirming the claim made herein.

> "That this is so seems *evident from the plain language of the statute.* It provides that -
>
> > each public housing authority shall utilize leases which . . . provide that . . . *any* drug-related criminal activity on or off such premises, engaged in by a public housing tenant, *any* member of the tenant's household, or *any* guest or other person under the tenant's control, shall be cause for termination of tenancy.
>
> 42 U.S.C. § 1437d(l)(6) (1994 Ed., Supp.V). The en banc Court of Appeals thought the statute did not address "the level of personal knowledge or fault that is required for eviction." 237 F.3d at 1120. *Yet Congress' decision not to impose any qualification in the statute, combined with its use of the term "any" to modify "drug-related criminal activity," precludes any knowledge requirement.* See *United States v. Monsanto,* 491 U.S. 600, 609 (1989). *As we have explained, "the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"* *United States v. Gonzales,* 520 U.S. 1, 5 (1997). Thus, <u>any</u> drug-related activity engaged in by the specified persons is grounds for termination, not just drug-related activity that the tenant knew or should have known about." [35]

2.58 Below is an excerpt from *U.S. v. Gonzales,* 520 U.S. 1, 4-6 (1997) just cited in *Dept. of Housing & Urban Renewal v. Rucker, Id.*.

> "Our analysis begins, as always, with the statutory text. Section 924(c)(1) provides:
>
> > Whoever, during and in relation to any . . . drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime . . . , be sentenced to imprisonment for five years. . . . Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with *any other term of imprisonment* including that imposed for the . . . drug trafficking crime in which the firearm was used or carried.
>
> 18 U.S.C. § 924(c)(1) (emphasis added). The question we face is whether the phrase "any other term of imprisonment" "means what it says, or whether it should be limited to some subset" of prison sentences, *Maine v. Thiboutot,* 448 U.S. 1, 4 (1980) -- namely, only federal sentences. *Read naturally, the word "any" has an expansive meaning, that is, "one or some indiscriminately of whatever kind." Webster's Third*

---

[35] See *Department of Housing and Urban Renewal v. Rucker,* 535 U.S. 125, 130-31 (2002).

*Curiae 6, frankly admits that the statute "on [its] face, broadly cover[s] all property derived from alleged criminal activity and contain[s] no specific exemption for property used to pay bona fide attorneys' fees."*

*Respondent urges us,* nonetheless, *to interpret the statute to exclude such property for several reasons.* Principally, *respondent contends that we should create such an exemption because the statute does not expressly include property to be used for attorneys' fees* . . . In support, respondent observes that the legislative history is "silent" on this question, and that the House and Senate debates fail to discuss this prospect. *But this proves nothing[.] The fact that the forfeiture provision reaches assets that could be used to pay attorney's fees, even though it contains no express provisions to this effect, "'does not demonstrate ambiguity'" in the statute: "'It demonstrates breadth.'" Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 499 (1985) (quoting *Haroco, Inc. v. American Nat. Bank & Trust Co. of Chicago,* 747 F.2d 384, 398 (CA7 1984)). *The statutory provision at issue here is broad and unambiguous,* and Congress' failure to supplement § 853(a)'s *comprehensive phrase — "any property" — with an exclamatory "and we even mean assets to be used to pay an attorney" does not lessen the force of the statute's plain language.*[33]

"As we have noted before, such post-enactment views "form a hazardous basis for inferring the intent" behind a statute, *United States v. Price,* 361 U.S. 304, 313 (1960); instead, Congress' intent is *"best determined by [looking to] the statutory language that it chooses," Sedima, S.P.R.L., supra,* at 495, n.13. . . . *Finally, respondent urges us, see Brief for Respondent 2029, to invoke a variety of general canons of statutory construction,* as well as several prudential doctrines of this Court, to create the statutory exemption he advances; among these doctrines is our admonition that courts should construe statutes to avoid decision as to their constitutionality. See, *e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council,* 485 U.S. 568, 575 (1988); *NLRB. v. Catholic Bishop of Chicago,* 440 U.S. 490, 500 (1979). *We respect these canons, and they are quite often useful in close cases, or when statutory language is ambiguous. But we have observed before that such "interpretative canon[s are] not a license for the judiciary to rewrite language enacted by the legislature." United States v. Albertini,* 472 U.S. 675, 680 (1985). *Here, the language is clear and the statute comprehensive: § 853 does not exempt assets to be used for attorney's fees from its forfeiture provisions.*[34]

2.56 Since the 1989 *Monsanto* decision regarding "any property," three very recent decisions ('94, '97 and '02, *supra*) deal directly with the same question as to how to interpret the term "any," the question as to whether it is all inclusive or is subject to arbitrary derogation. The inclusion here of lengthy excerpts is intended to offer appreciable input upon the topic and is not intended to delay or hinder process.

---

[33] See *Monsanto, Id.,* at 607-09.
[34] See *Monsanto, Id.,* at 610-11.

SUPPLEMENTAL BRIEFING by original
Complainant, David R. Myrland.                   Page 40 of 53

unit where prohibited activity had taken place. U.S. can evict the innocent tenant of low income housing unit which is scene of prohibited behavior.

And from *Monsanto, Id.*:

"Section 853's *language is plain and unambiguous. Congress could not have chosen stronger words to express its intent* that forfeiture be mandatory than § 853(a)'s language that upon conviction a person "shall forfeit . . . ___*any property*" and that the sentencing court "shall order" a forfeiture. *Likewise, the statute provides a broad definition of property* which does not even hint at the idea that assets used for *attorney's fees are not included.* Every Court of Appeals that has finally passed on this argument has agreed with this view. *Neither the Act's legislative history nor legislators' post-enactment statements support respondent's argument that an exception should be created before the statute does not expressly include property to be used for attorney's fees,* or because Congress simply did not consider the prospect *that forfeiture* [491 U.S. 601] *would reach such property. . . .* Moreover, *respondent's admonition that courts should construe statutes to avoid decision as to their constitutionality is not license for the judiciary to rewrite statutory language,* Pp. 606-611."[32]

"In determining the scope of a statute, we look first to its language." *United States v. Turkette,* 452 U.S. 576, 580 (1981). *In the case before us, the language of § 853 is plain and unambiguous: all assets falling within its scope are to be forfeited upon conviction, with no exception existing for the assets used to pay attorney's fees — or anything else, for that matter.*

As observed above, § 853(a) provides that a person convicted of the offenses charged in respondent's indictment *"shall forfeit . . . any property"* that was derived from the commission of these offenses. After setting out this rule, § 853(a) repeats later in its text that upon conviction a sentencing court "shall order" forfeiture of *all property* described in § 853(a). *Congress could not have chosen stronger words to express its intent* that forfeiture be mandatory in cases where the statute applied, or broader words to define the scope of what was to be forfeited. *Likewise, the statute provides a broad definition of "property" when describing what types of assets are within the section's scope: "real property . . . tangible and intangible personal property, including rights, privileges, interests, claims, and securities."* 21 U.S.C. § 853(b) (1982 ed., Supp.V). *Nothing in this all-inclusive listing even hints at the idea that assets to be used to pay an attorney are not "property" within the statute's meaning.*

*Nor are we alone in concluding that the statute is unambiguous in failing to exclude assets* that could be used to pay an attorney from its definition of forfeitable property. *This argument,* advanced by respondent here, see Brief for Respondent 12-19, *has been unanimously rejected by every Court of Appeals that has finally passed on it,* as it was by the Second Circuit panel below, see 836 F.2d at 78-80; id. at 85-86 (Oakes, J., dissenting); *even the judges who concurred* on statutory grounds in the en banc decision *did not accept this position,* see 852 F.2d at 1405-1410 (Winter, J., concurring). We note also that the Brief for American Bar Association as *Amicus*

---

[32] See *U.S. v. Monsanto,* 491 U.S. 600 (syllabus) (1989).

Dear Counsel -

In an effort to keep the crowd as small as possible for these hearings due to COVID-19 restrictions, please be advised of the following:

If the defendant intends to plead guilty, please have a plea agreement filed by noon on **Wednesday, March 23, 2022.**   Judge Lewis will either take the plea after the PTCs or will schedule it for a later date. Please note that plea agreements must be filed 24 hours prior to the hearing; change of plea hearings filed less than 24 hours prior to the PTC will be scheduled for a different day.

If the defendant intends to request a continuance to the next term of court, please file a motion that includes the defendant's original signature and states that they consent to the continuance and waive their right to a speedy trial by noon on **Wednesday, March 23, 2022**; the motion should also state if the government consents.   If you cannot obtain a signature by **Wednesday** at noon, you may submit either a motion without a signature with a statement from counsel that the right to a speedy trial has been discussed with the defendant and that they consent to continuance/waive that right, and that the motion will be supplemented with the defendant's consent signature ASAP.    Please note that even if a continuance motion is filed, counsel and the defendant will be expected to be present at the pretrial conference until a cancellation notice is entered.

If the defendant intends to go to trial during the **April 2022** term of court, please let me know ASAP and advise me of the anticipated length of trial and any dates for which you are not available. Please keep in mind that due to COVID-19 restrictions we are limited to one trial in the building at a time, so we may be unable to accommodate your schedule.

Thanks.

**Tab #11**

# Exhibit 4:

**Exhibit 4**. IRS Publication 17 "Tax Guide for Individuals" excerpts showing reflection of statutes claimed by Petitioner to have been violated. Here, the IRS clearly states that <u>all</u> property is a cost, and that Petitioner's cost is the value of personal services.

Exhibit: _____ *4*

20 years ago. To me the IRS is drowning in incompetence and inefficiency and yet billions are spent for improvements that never seem to be effective. I would go out of business if I operated this way so why can't the IRS improve itself. It has more resources to make improvements than anyone on earth but even so these improvements do not take place. This needless incompetence adds a distinct and readily identifiable cost or excise upon the business I am seeking to conduct.

**Summary and Overview -    The conduct and performance of the Internal Revenue Service is a disgrace to the people of the United States and their Government.**

Is it not the Governments' duty to help its people prosper and not to snag them into poverty? The arbitrary treatment dispensed by the IRS proves to me that Congress (tax law) is insignificant and non-influential in the minds and procedures which affect my clients, in simple words the IRS does what it likes. On a daily basis and in a broad pattern over many years I have watched the IRS be what it is and behave as it does, and it has always served as a hurdle to the efficient operation of my accounting practice. I have read the brief attached hereto and see that litigation yields a result identical to what my administrative efforts have yielded.

**Verification.**

I, Timothy G. Garrison, do declare under penalty of perjury that the above statements are true and correct to the best of my knowledge and belief. Signed on this 19th day of December 2005.

Timothy G. Garrison,  Affiant/Complainant

The above affirmation was duly subscribed and sworn to before me, on this 19th day of December, 2005, by Timothy G. Garrison.

I, Chandra E. Laferriere , am a Notary under license from the State of Washington whose Commission expires on 5-1-09 , and be it known by my Hand and my Seal as follows:

Signature of Notary

promoting abusive Tax Shelters and in the end just wasted my time and the Governments money with his meeting.

The IRS has a mission statement - to provide an understanding of tax laws, yet when ask they provide no understanding but try and avoid the questions. Many times I have written the IRS with a question about an unclear tax Law and receive no answer. As a Return Preparer I now have a problem. I must guess the solution because the Law is not how the IRS operates.

If I guess right then all is good. But if I guess wrong then I have caused the Taxpayer to overpay his Tax Liability which is wrong. Why doesn't the IRS answer questions about the Tax Laws? And why do judges relieve IRS Agents from answering questions or prevent citizens from properly defending themselves in tax court? The IRS exemption from judicial review stands in the way of my being truly effective for my clientele.

**Concern #6 -    Civil Penalties are being wrongfully assessed for asking simple questions of clarification.**

I have  Clients who have been assessed $500 civil penalties for asking questions to clarify issues uncertain on the filing of their Tax Returns. When no answer is provided and the question is attached to the Taxpayer's Return the Service Center often will claim the Return to be a frivolous Return, again not provide any answers and fine the Taxpayer a $500 civil penalty. How can this be following the IRS Mission Statement? There is no help being given here. It is totally unfair to penalize people who cannot be expected to understand the tax Code in the first place.

**Concern #7 -    IRS Competence and Efficiency is becoming worse not better.**

Today the IRS takes months to process a simple request and often looses documentation and does not inform the taxpayer for months if at all. With today's technology why does it take the IRS months to do a few minutes work. I receive many letters from the IRS stating that they need 30, 60 or even 90 more days to research an answer. Then another similar letter is received and finally no answer is ever provided.

The IRS spends billions on improvements yet no improvements are seen. It now takes much longer for a response from the IRS than it did 20 years ago. Also a phone call to the IRS often takes over 30 minutes to get a response of any value. This also is much worse that it was

meaning of law.  I have found that most of today's IRS Agents have little to no background in the Tax Laws they are trying to enforce.  These Agents will not sign anything or stand behind their claims with supporting code yet they continue to enforce these unknown laws.

I find that today that many IRS Agents seem only concerned with how much they can make a Citizen pay.  They are not helpful in explaining the tax laws because either they do not know them as their job requirement says they should or they are purposely being vague so as to mislead the citizen or both.

Seattle IRS Agent Sandy Bowman refused to answer questions given to her in writing and claimed that the IRS code book was the law.  She was arrogant, abusive and did not help at all in explaining the laws she was trying to enforce.  To me she created unnecessary hardship in her representation of the government.  Under Title 31 paragraph O subparagraphs .207 and .208 A Treasury employee is required by answer a question including questions from Taxpayers. Why then do IRS Agents deliberately defy the law.

What can a private sector citizen who is being accused of being a Government Employee do to correct this classification error?  I had a client who this same Sandy Bowman assessed over $25,000 in additional tax to and the client was not provided any basis in law.  If the IRS were more open and helpful about the tax laws their image would greatly improve.  But instead they are deceitful and misleading and last of all helpful to the public.

**Concern #5 -    IRS Abuse and Lying costs everyone time and money especially the Government.**

I was called into the Seattle Service Center to answer questions about abusive Tax Shelters by Tacoma Agent Terry Martin because I attached a letter asking unanswered tax questions to a Tax Return I prepared.  Mr. Martin promised me three times to provide me with IRS Counsel to answer questions about the Tax Laws and when reminded of this promise finally told me to find competent tax counsel on my own.  I am competent Tax Counsel for several hundred Citizens.  I do not need to seek outside counsel for what I can look up on my own.  What I wanted was to talk to an IRS Attorney and ask him where certain laws are found that are being enforced that are not in the IRS Code Book and what the Statutes as implemented by Congress so state as opposed to the IRS Code Book.  This meeting never happened and was deliberately misrepresented by Terry Martin.  Mr. Martin at our first meeting agreed that I was not

It therefore seems pretty clear that unless one's work involves the performance of the functions of a public office one has no "self-employment income and no net earnings therefrom" and need file no return regarding the proceeds of self-employment; and no private sector person or company should ever issue a 1099 MISC.

**Concern #2 -    Enforcement of the 1998 INTERNAL REVENUE RESTRUCTURING AND REFORM ACT found lacking.**

In 1997 Senator William Roth spearheaded an extensive tax-collection reform effort by investigating the IRS and uncovering horrifying stories of abuse. The IRS was to change its methods of administration however, very little of this has happened. Once the heat was off, the IRS returned to their old methods and today they are as abusive as ever. My question is who is responsible to oversee that the IRS follows the guidelines set down by the 1998 Reform Act? I could not locate such an office.

I called the Government Accounting Office in Seattle, and in Washington D.C. and even spoke to the lady who drafted the Reform summary report for congress and even she did not know who it was that monitored the IRS compliance efforts. With no one holding the IRS accountable for their correction efforts the Reform Act is lost, the abuse continues and the IRS becomes even more hated.

**Concern #3 -    False Collection Letters paid because of fear of abuse.**

The IRS sends out letters to Citizens to see if they can get them to pay because of fear. Many times I have seen collection letters sent by the IRS stating that a citizen has a balance owing for some unexplained or ridiculous reason. When a query is sent to the Service Center they either do not respond or send back a letter thanking the Citizen for updating their records. I have known many Citizens who have just paid this 'balance owing' amount to satisfy this IRS rather than have the IRS inquire further. I understand that the IRS collects millions of dollars with these fishing letters even though most Citizens do not owe the amount.

**Concern #4 -    IRS Agents not held accountable due to lack of enforcement of compliance.**

IRS agents will not sign statements and stand behind their answers when asked a question. They issue forms without signature and purposely leave off information that changes the

including the cash value of all remuneration (including benefits) paid in any medium other than cash;...

(c) Employee.
For purposes of this chapter, the term "employee" includes an officer, employee, or elected official of the United States, a State, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any one or more of the forgoing. The term "employee" also includes an officer of a corporation. [A "United States Corporation", defined in Sec. 207 of the Public Salary Tax Act as, "a corporate agency or instrumentality, is one (a) a majority of the stock of which is owned by or on behalf of the United States, or (b) the power to appoint or select a majority of the board of directors of which is exercisable by or on behalf of the United States". However, we are instructed by the IRS in Pub. 15A that such officers are only to be considered "employees" if they are paid as a consequence of their positions.]

(d) Employer. For purposes of this chapter, the term "employer" means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person...

**Note:** Withholding therefore only applies to the pay of federal government workers, exactly as it always has (plus "State government workers, since 1939, and those of the District of Columbia since 1921). Remembering the inclusion-exclusion rule: Where the remuneration (compensation) of one group is explicitly identified as an object of the law, whether for withholding or as "income", or in any other respect, the remuneration of an omitted group is explicitly excluded as an object of the law.

**Note:** The word "includes" when use in defining a word can be considered to mean "only".

The way in which the Internal Revenue Code acknowledges the 'self-employed' is patronage beneficiaries performing work for, and being paid by, the federal government. This is of the same misleading character as that relating to "employees". The related portions of the code have nothing to do with or say about private-sector workers/entrepreneurs.

Sec. 7701 - Definitions:
(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof -
(26) Trade or business. The term "trade or business" (Only) includes the performance of the functions of a public office.

Note: The instructions accompanying the 1099 forms themselves are even more explicit: The instructions so state "Trade or business reporting only. Report on Form 1099-MISC only when payments are made in the course of your trade or business".

During my years of practice with the public and the Internal Revenue Service I have seen many issues from small areas of concern to major errors with outright deceit and fraud on the part of IRS personnel.

I began my Tax Accounting career after graduating from the University of Washington in Accounting in 1972. I then studied and passed the Enrollment Exam to practice before the Internal Revenue Service in 1973 and last I studied and passed the Tax and Financial portions of the CPA Exam but did not complete the last two parts due to personal circumstances. I have taken many additional Tax Courses and have reviewed the IRS Code Book and accompanying Federal Statues and with this additional research and through practice have found many laws that conflict with the way they are administered.

To be brief I have chosen 7 of my major tax concerns to discuss at this time which I work with continually and of which I have tried to resolve but found no support from the Internal Revenue or the Legislature as of this date.

**Concern #1 - Word/Term Definitions should be standardized:**

Because of the IRS being allowed to use word crafting and uncommon meanings for word/terms in the code the majority of Americans are filing Tax Returns under false pretenses. I believe that Congress should establish a standard terminology to be used in all of its laws and not have the meaning of a word change from one law to the next. Documents should be drafted so that a reasonably educated man can read and understand a document and not be mislead by it.

Example: The IRS Code Book defines terms so that the average American is deceived into believing he is a government worker which is a privileged occupation subject to tax and not a worker in the private sector who is not subject to tax. Because of deceptive terms this private sector worker files and pays taxes on his income when in reality he was not required to do so. This word deception is done so that no violations of the Constitution are made and that the private sector citizen is filing under a voluntary and not mandatory compliance. As I see it:

IRC Sec. 3401 – Definitions:

(a) Wages.
For purposes of this chapter, the term "wages" means all remuneration (other than fees paid to a public official) for services performed by an employee for his employer,

1

2

3

4

5

6

7

8

TO THE UNITED STATES CONGRESS

WASHINGTON, D.C.

| | |
|---|---|
| David R. Myrland, Tim Garrison, Lee J. Herold, Paul Broward, Greg Weiss, Jim L. Walden, and We the People,           Complainants, <br><br> vs. <br><br><br> UNITED STATES DEPARTMENT OF JUSTICE, ALBERT GONZALES, UNITED STATES TREASURY DEPARTMENT, JOHN W. SNOW, INTERNAL REVENUE SERVICE, MARK W. EVERSON, U.S. DISTRICT COURT, GARR M. KING, LEE YEAKEL, ROBERT WESTINGHOUSE, LISA PERKINS, STEVEN B. BASS, TERRY L. MARTIN, U.S. TAX COURT, JOEL BERGER, NORTHWEST AIRLINES (a corporation), and all those similarly situated or so involved, marital communities spared, <br>           DEFENDANTS. | ) No. _____ <br>) <br>) <br>) AFFIDAVIT OF FACT of <br>) Co-Complainant Tim Garrison. <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

STATE OF WASHINGTON     )
                                 ) ss.
COUNTY OF KING           )

24

25

26

     I appreciate this chance to be a co-Complainant with Dave Myrland and others and to have the opportunity to inform the Congress of the United States of America of my experiences in dealing with the Internal Revenue Service over these last 33 years.

**Tab #10**

# Exhibit 3:

**Exhibit 3**. Affidavit of Tim Garrison, accountant of thirty years, describing the arbitrary elements of dealing directly with the IRS on behalf of clients with tax controversies.

Exhibit: __**3**__

*noncompliance with those requirements*. Thus, for example, if an employer transferred to an employee property to which section 83 applies and failed to withhold income tax on the payment, the employer would be liable for the tax under section 3403. . . In addition, *nothing in this proposed regulation would relieve the service recipient from the penalties or additions to tax* for noncompliance with the requirements of section 6041 or 6041A (relating to information reporting) to the extent they otherwise apply.

How can an employer be both a chapter 1 (subtitle A) and chapter 24 (subtitle C) employer at the same time? Does that employer file a Tax Court petition (§ 6213) or does he file a claim for abatement (§ 6404)? If an employer withholds, the employee is still deprived of § 83(a), and he still must claim a § 31(a) credit on his tax return for which he is ineligible to escape paying the withheld amounts all over again. So all the IRS did was to observe 1/3 of the challenge, coming into harmony with § 162 which allows the employer to deduct wages as a cost. The employer can get the deduction if no withholding occurs, but suffer the penalties still for not doing so. For as long as the § 3401(c) definition of "employee" and § 3121(e) definition of "citizen" are applied to private U.S. Citizen employees, this regulation is still the chapter 1 invitation to use the Form W-4 and to deduct FICA from paychecks. An employer doesn't have to withhold to deduct as a cost the wages paid out to employees, but if withholding doesn't occur penalties will be assessed.

***End 1.83-6 amendment discussion**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

language of section 83(h). The service recipient would be allowed a deduction for the amount "included" in the service provider's gross income. . ."

What you just saw is a proposal to amend the only chapter 1 regulation linking private employees there to the procedures and provisions of chapter 24, the Form W-4, the withholding from paychecks.

So, the employer gets an expense deduction only for the amount he pays to employees that is "included" in the employee's gross income. What about the "amount paid" in § 83(a) that doesn't make it to gross income? IRC § 83 provides that only the amount "over the amount paid" is to be included in gross income. Why can't the employer get a deduction of amounts paid to employees that only equals the employees "amount paid" or *cost*? The IRS takes care of this by presuming that everything is gross income, and by avoiding discussion of § 83(a) and its enforcement.

**Revised regulation:**

26 CFR 1.83-6(a) -

(2) *Special rule.* For the purposes of paragraph (a)(1) of this section, the services provider is deemed to included the amount as compensation in gross income if the person for whom the services were performed satisfies in a timely manner all requirements under section 6041 or section 6041A, and the regulations thereunder, with respect to that amount of compensation. For purposes of the preceding sentence, whether the person for whom the services were performed satisfies all requirements of section 6041 or section 6041A, and the regulations thereunder , is determined without regard to § 1.6041-3(c) (exception to payments to corporations). In the case of a disqualifying disposition of stock described in section 421(b), an employer that otherwise satisfies all requirements of section 6041 and the regulations thereunder will be considered to have so timely if the Form W-2 or Form W2c, as appropriate, is furnished to the employee or former employee, and is filed with the federal government, on or before the date on which the employer files the tax return claiming the deduction relating to the disqualifying disposition.

**\*End revised regulation.**

So, the requirement for the employer to deduct and withhold from paychecks has been removed. This would be good news if it weren't for this from the "overview":

> **Although the withholding requirement would be eliminated** as a prerequisite for claiming a deduction, **the proposed amendments would not relieve the service recipient from any applicable withholding requirements of subtitle C or from the statutorily prescribed penalties or additions to tax for**

withhold with the Form W-4 – at least to get a deduction for the expense of paying employees.

**Proposed regulations:**

**Proposed Regulations**
**[¶ 49,538]**

**Proposed Amendments of Regulations (EE-81-88)**, published in the Federal Register 12/5/94:

**Transfer of property by employer: Deduction: Withholding requirement.–Amendments of Reg. § 1.83-6, relating to the special rule that requires an employer to deduct and withhold income tax as a prerequisite for claiming a deduction for property transferred to an employee in connection with the performances of services, are proposed. Amendments of Reg. § 1.83-6, as proposed on November 16, 1983, are withdrawn.**

AGENCY: Internal Revenue Service (IRS), Treasury.

ACTION: Notice of proposed rulemaking and notice of hearing.

SUMMARY: This document contains proposed *amendments to the regulations to eliminate the special rule that requires an employer to deduct and withhold income tax* as a prerequisite for claiming a deduction for property transferred to an employee in connection with the performance of services.

*Overview (this is partial)*

"This document contains the proposed amendments to the Income Tax Regulations (26 CFR Part 1) under section 83(h) of the Internal Revenue Code of 1986 (Code). *The proposed regulations eliminate the requirement to deduct and withhold income tax* as a prerequisite for claiming a deduction."

"Taxpayers have expressed a concern that it is often difficult to satisfy the prerequisite that employers must deduct and withhold income tax from payments in kind as a condition for claiming a deduction. *The proposed amendments to the section 83 regulations would address this concern by eliminating this prerequisite*, while still ensuring consistent treatment between service recipients and service providers as required by the statute. In addition, because the deduction no longer would be conditioned on withholding, there no longer would be a need to have different rules for those who receive services from employees and those who receive services from others.

Under the proposed amendments, the existing general rule and special rule would be replaced by a revised general rule that more closely follows the statutory

over the value of any property paid by the Petitioner to his employer that is to be included in gross income, and not the FMV of any property paid that is to be so included.

26 CFR 1.83-3(g) Amount paid. For the purposes of section 83 and the regulations thereunder, the term "amount paid" refers to the value of *any money or property paid* for the transfer of property to which § 83 applies.

10. Regulation 1.83-6(a)(2) must be declared a nullity because, 1) It conflicts with statutory provisions permitting an employer's deductions for all amounts paid for services without regard for their inclusion gross income of the service provider; 2) It requires the collection of tax imposed by chapter 24 from those who cannot claim credit for having paid said tax against their chapter 1 liability; 3) It seeks to tax as gross income those amounts not includible in gross income under § 83(a). These are in addition to those intrusions into personal privacy of the employee to which the Form W-4 amounts.

*\*End briefed challenge.*

**Original regulation 1.83-6:**

26 CFR 1.83-6. Deduction by employer. – (a) *Allowance of a deduction.* – (1) *General rule.* In the case of a transfer of property in connection with the performance of services, or a compensatory cancellation of a nonlapse restriction described in section 83(d) and 1.83-5, a deduction is allowable under section 162 or 212, to the person for whom the services were performed. *The amount of the deduction* is equal to the amount includible as compensation in the gross income of the service provider, under section 83(a), (b), or (d)(2), but only to the extent such amount meets the requirements of section 162 or 212 and the regulations thereunder. *Such deduction shall be allowed* only for the taxable year of such person in which or with which ends the taxable year of the service provider in which such amount is includible as compensation. . . .

(2) *Special rule.* If the service provider is an employee of the person for whom the services are performed, *such deduction is allowed* for the taxable year of the employer in which or with which ends the taxable year of the employee in which such amount is includible as compensation, but *only if the employer deducts and withholds upon such amount in accordance with section 3402.* A deduction will not be disallowed under the preceding sentence if the employer does not deduct and withhold upon amounts excluded from gross income, such a amounts excluded under section 79, section 101(b), or . . .

This regulation was challenged as briefed above, and months later it was amended in accordance with the challenge; employers are no longer required to deduct and

§ 31(a) Wage Withholding for Income Tax Purposes.-

(1) In General.-The amount withheld as tax under chapter 24 shall be allowed to the recipient of the income as a credit against the tax imposed by this subtitle.

5. Eligibility for this § 31 credit is limited to foreign corporate employees and gov't employees and thus, said statute excludes the Petitioner from eligibility.

26 CFR 1.31-2(b) Federal and State employees and employees of certain foreign corporations. The provisions of this section shall apply to the amount of a special refund allowable to an employee of a Federal agency or a wholly owned instrumentality of the United States, ...employee of any State of political subdivision thereof (or an instrumentality of any one or more of the foregoing), and to the amount of a special refund allowable to employees of certain foreign corporations.

6. **FURTHER**, another element of 1.83-6(a)(1) demands clarification. It would serve to first note a very basic and fundamental provision permitting the person for whom services are performed to deduct all amounts paid in wages and salaries for such services from gross income derived from the conduct of trade or business.

§ 162(a) In General.- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including –

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered.

7. Compare the terms of this provision to this requirement out of 26 CFR 1.83-6(a)(1) which is clearly pervasive.

"  . . . The amount of the deduction is equal to the amount includible as compensation in the gross income of the service provider, under § 83(a), (b) . . ."

8. While § 162 freely permits a deduction of all amounts paid out as compensation for services, said regulation only permits a deduction of amounts includible in gross income. Even if no excess, as defined under § 83, is paid to employees for services rendered, the FMV that *is* paid out should surely still constitute a deductible cost to the employer who paid it.

9. **FURTHER**, although § 83 addresses the FMV of the services of the Petitioner, nowhere in its language, or decisions thereunder, is there any allowance for the FMV of the Petitioner's labor to be included in gross income. Under § 83, it is only the excess

While it is a valid challenge under general principles to argue that the Form W-4 from chapter 24 enforced against a chapter 1 (U.S. Citizen) violated § 3401(c) which defines "employee" as a federal public servant, [3] I chose to omit this challenge in favor of these others. The three challenges were stated as follows:

***Begin briefed challenge.***

1. In chapter 1, under § 83, regulation 1.83-6 instruct employers to deduct and withhold upon taxable excesses paid in connection with the performance of services and to do so in accordance with § 3402 in chapter 24.

1.83-6(a)(1) General rule. In the case of a transfer of property in connection with the performance of services . . . a deduction is allowable under section 162 or 212, to the person for whom such services were performed. The amount of the deduction is equal to the amount includible as compensation in the gross income of the service provider, under section 83(a), (b), or (d)(2) . . .

1.83-6(a)(2) Special rule. If the service provider is an employee of the person for whom the services were performed, such deduction is allowed for the taxable of the employer . . . ***but only if the employer deducts and withholds upon such amount in accordance with § 3402.***

2. The deduction and withholding in accordance with § 3402 pertains only to amounts includible in gross income and § 83 permits only the excess to be so included; the deduction does not pertain to compensation that is excluded from gross income by law.

3. In the event of an excess being paid and when amounts are withheld, the employee has been placed in a regulatory black hole.

4. Code § 3402, in chapter 24, outlines requirements pertaining to the filing of a Form W-4 upon commencement of employment. Code § 31 is the only chapter 1 provision allowing an individual to receive credit for any payments of the tax imposed by chapter 24 against the chapter 1, § 1, liability.

---

Columbia, or any agency or instrumentality of any one or more of the foregoing. The term "employee" also includes an officer of a corporation.

[3]  You will actually find two definitions of the term "employee" in regulations under § 3401(c), one is a specific definition which adheres to the narrow language of the statutory definition (federal public servant), while the other provides a "general" definition which, of course, embraces any and all individuals having an employer. See 26 CFR 31.3401(c)-1(a) and (b). This is a primary regulatory deviation from statute in the IRS' standard operating procedures and in the big picture.

a deduction for the wages as an expense of doing business. As you will see, this created three conflicts which were statutory derogation (§ 162), technical (§ 31(a)), and profoundly fundamental (§ 83(a)).

The challenged regulation had been in force since its promulgation in 1978. In it, readily identifiable is an element of chapter 24 encroachment, the mingling of provisions and requirements from one chapter with those of another, without regard for pertinent definitions, encroachment that makes it possible to enforce chapter 24 provisions (Form W-4) against the chapter 1 subject and his income; the Citizen of the United States as defined in that chapter, in 26 CFR 1.1-1(c). I know of no other receptacle in chapter 1 which invites the Form W-4's application there.

This regulation, 26 CFR 1.83-6, is still the chapter 24 pipeline into chapter 1, but its revision under the weight of these challenge speaks volumes about just how much the IRS is hiding in its attempt to subvert the true operation of the IRC. In discussion regarding the amendments it is openly stated that no such withholding requirement remains (for the employer to get a deduction for wages paid). The three challenges are these:

> **Statutory**: How did § 83(a) operate when you imposed chapter 24 income taxes on the wages paid out by the employer? To impose these withholding requirements on the fair market value of the services performed deprives the employee of §§ 83, 212, 1001, 1011, and 1012.

> **Regulatory**: By requiring W-4 procedures (all the confusion, loss of privacy) be imposed by the employer, the regulation unreasonably imposes requirements to get a deduction for the wages paid out when Congress freely permits the deduction as a cost under § 162 of the IRC.

> **Due process**: Private sector employees aren't eligible for the credit they need against their year's end liability of the wage withholding under chapter 24 that they dealt with all year. One provision allows an employee to get, for example, credit for the $5k deducted from their paycheck against the $4500 the IRS booklet says to pay which would get a tax refund of $500 after filing the Form 1040 tax return. That provision is § 31(a) but only public servants are eligible, as dictated by regulations promulgated (written) thereunder; 26 CFR 1.31-2(b). [1] [2]

---

[1] This is the infamous year's end tax refund where the amount of withholding taken out of paychecks with the Form W-4 from chapter 24 is credited against the total owed for the year imposed under chapter 1; pay to little and you pay some more, pay to much and you get a refund.

[2] It is important to note the definition of the term "employee" from chapter 24 which imposes the tax deducted from private sector employee paychecks. When this definition is honored and the Form W-4 is applied only to THIS employee, this regulation is only harmonious.

§ 3401(c) EMPLOYEE.–For the purposes of this chapter, the term "employee" includes an officer, employee, or elected official of the United States, a State, or any political subdivision thereof, or the District of

**The 1.83-6 Amendment:**

The individual who comes to understand this issue can claim substantial knowledge of the operation of the Internal Revenue Code (hereinafter "IRC"). This exercise is not for the beginner and it would serve you to have first reviewed the other contents of this filing.

**This exercise** is about a particular regulation challenged in Tax Court by petition and brief in June, 1994. The regulation was, and still is, key to the use of the Form W-4, and up until a few months after my challenge was written in a way so as to constitute the only *written* avenue for the imposition of that form from chapter 24 upon chapter 1 subjects.

This information is presented to highlight two particular axioms, (1) regulations cannot deviate from statutory parameters, Congress writes the law and the IRS is bound by it, and (2) the Form W-4 used to collect the amount of withholding from paychecks is a provision of chapter 24 and it is imposed on the Citizen they say we are, the U.S. Citizen of 26 CFR 1.1-1(c) in chapter 1 of the Code. How is this cross-chapter enforcement accomplished and is it appropriate or lawful? Is the chapter 1 Citizen really subject to the provisions of chapter 24? If not, why must they deal with wage withholding via the Form W-4?

From my very first exposure to materials written about the IRC this question has dominated the discussion from the standpoint of popular concerns, loss of privacy, loss of control over one's finances, confusion and frustration, and perplexing elements of enforcement, spawning a veritable plethora of challenges, most are hair-brained but some are valid. The simple facts or standards relevant to this exercise are these:

The Internal Revenue Code is perfect and its internal operation is precise.

The imposition of chapter 24 provisions upon chapter 1 subjects must be permitted by law and provided for in the IRC.

Regulations cannot deviate from statute or cause conflict between certain statutes. Congressional intent is first and agencies are bound by the laws that Congress enacts.

Something must change when a regulation, by its terms, requires that the law be violated. The credits claimed on a tax return must be available under the law to the filer of the return.

What you will see here is a single chapter 1 invitation to chapter 24 to send over the Form W-4 and its requirements found there (chapter 24 is § 3401-3456, Form W-4 is § 3402). The regulation did not require outright that the chapter 1 wages must withheld upon via the W-4, but rather said that the employer must impose § 3402 provisions to get

**Tab #9**

# Exhibit 2:

**Exhibit 2**. 26 CFR 1.83-6 amendment described. See also - **"Proposed Regulations, ¶ 49,538, Proposed Amendments of Regulations (EE-81-88)**, Federal Register 12/5/94."

Exhibit: __2__

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2005 AUG -2  AM 8: 33

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
        DEPU

| | |
|---|---|
| JIM L. WALDEN,<br><br>  Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>JOHN F. PANISZCZYN, and<br>JAMES ASHTON,<br><br>  Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  Civil Action No.  A-05-CA-444-LY |

### ORDER ON UNITED STATES MOTION FOR PROTECTIVE ORDER

Came on to be heard the United States of America's Motion for Protective Order and the Court

being of the opinion that the motion should be GRANTED, it is hereby

ORDERED and DECREED that United States of America's Motion for Protective Order is

GRANTED and that any discovery in this matter is prohibited~~, it is further~~

~~ORDERED and DECREED that the Plaintiff's Complaint for the Perpetuation of Testimony~~

~~is DENIED.~~

Signed this _2nd_ day of _August_ 2005.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE

10

**Tab #8**

# Exhibit 1:

**Exhibit 1**. Protective Order issued against questions/discovery regarding tax law in *Walden, Jim L. Walden v. United States, et al.*, #A-05-CA-444-LY, U.S. Dist. Court, Austin, TX.

Exhibit: ___*1*___

**Tab #7**

## - DECLARATION -

I, David R. Myrland, do declare the accuracy of the exhibits attached hereto, and the claims made with respect to said exhibits.

I declare under penalties of perjury that the attached exhibits are true and correct, and that they represent precisely what I claim to be so.

**Exhibit 1**. Protective Order issued by U.S. Dist. Court (Austin, TX) against discussion of the law.

**Exhibit 2**. 26 CFR 1.83-6 amendment described. - 8 pages.

**Exhibit 3**. Affidavit of Tim Garrison, accountant of thirty years. - 7 pages.

**Exhibit 4**. IRS Publication 17 "Tax Guide for Individuals" excerpts. - 8 pages.

**Exhibit 5**. Three annually consecutive copies of 26 CFR 602.101. - 13 pages.

I, David R. Myrland, do hereby declare under penalties of perjury (28 USC § 1746) that the exhibits attached hereto is not misrepresented or fabricated in any way, and that statements made which rely upon them are true and correct to the very best of my knowledge. Executed this 18th day of December, 2005, by David R. Myrland.

David R. Myrland

Dated: 12/18/05

Respectfully submitted:

David R. Myrland

///
///
///
///
///

DECLARATION OF TRUTH.          Page 1 of 1

**Also mailed via U.S. Post 1ˢᵗ Class to:**

Department of the Treasury
1500 Pennsylvania Avenue NW
Washington, D.C. 20220

Commissioner of Internal Revenue
IRS Mail
6295 Edsall Road
Alexandria, VA   22312

U.S. Dept. Of Justice
Albert Gonzales
950 Pennsylvania Ave.,  NW
Washington, D.C.   20530-0001

I, Brad Garrett, am a citizen of the United States, I am over 18 years of age, and I am not a party to this action.

Date: December 28, 2005

_____
Signature

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

CERTIFICATE OF SERVICE.       Page 7 of 7

John D. Rockefeller IV
531 Hart Senate Office Building
Washington, D.C.    20510

**House Committee on Government Reform -**
    **Tom Davis -** Chairman

**Its Subcommittee on Federal Workforce and Agency Organization**

John C. Porter - Chairman (House)
**John L. Mica** (House)
**Tom Davis** (House)
Darrell E. Issa (House)
Kenny Marchant (House)
**Patrick T. McHenry** (House)
Vacancy

**Danny K. Davis** - Ranking Member (House)
**Major R. Owens** (House)
**Eleanor Holmes Norton** (House)
**Elijah E. Cummings** (House)
Chris Van Hollen (House)

**Its Subcommittee on Criminal Justice, Drug Policy and Human Resources**

Mark Souder - Chairman (House)
**Patrick T. McHenry** (House)
Dan Burton (House)
**John L. Mica** (House)
Gil Gutknecht (House)
Steven C. LaTourette (House)
Chris Cannon (House)
Candice S. Miller (House)
Ginny Brown-Waite (House)
Virginia Foxx (House)

**Elijah E. Cummings** - Ranking Member (House)
Bernard Sanders (House)
**Danny K. Davis** (House)
Diane E. Watson (House)
Linda T. Sanchez (House)
C.A. Dutch Ruppersberger (House)
**Major R. Owens** (House)
**Eleanor Holmes Norton** (House)

**TOTAL - 71 Copies to Congressional members and committees.**

CERTIFICATE OF SERVICE.        Page 6 of 7

Hon. Sánchez
1007 Longworth House Office Building
Washington, D.C.   20515

---

## JOINT COMMITTEE ON TAXATION -

**HOUSE -**

William M. Thomas
2208 Rayburn House Office Building
Washington, D.C.   20515

E. Clay Shaw  Jr.
1236 Longworth House Office Building
Washington, D.C.   20515

Nancy L. Johnson
2409 Rayburn Building
Washington, D.C.   20515

Charles B. Rangel
Washington, D.C. Office
2354 Rayburn House Office Building
Washington, D.C.   20515

Fortney Pete Stark
239 Cannon Building
Washington, D.C.   20515

**SENATE -**

Charles E. Grassley
135 Hart Senate Office Building
Washington, D.C.   20510-1501

Orrin G. Hatch
104 Hart Office Building
Washington, D.C.   20510

The Honorable Trent Lott
487 Russell Senate Office Building
Washington, D.C.   20510

Max Baucus
511 Hart Senate Office Bldg.
Washington, D.C.   20510

CERTIFICATE OF SERVICE.       Page 5 of 7

Hon. Nadler
2334 Rayburn House Office Building
Washington, D.C.  20515

Hon. Scott
2464 Rayburn House Office Building
Washington, D.C.  20515

Hon. Watt
2236 Rayburn House Office Building
Washington, D.C.  20515

Hon. Lofgren
102 Cannon House Office Building
Washington, D.C.  20515

Hon. Jackson Lee
2435 Rayburn Building
Washington, D.C.  20515

Hon. Waters
2344 Rayburn House Office Building
Washington, D.C.  20515

Hon. Meehan
2229 Rayburn House Office Building
Washington, D.C.  20515

Hon. Delahunt
1317 Longworth House Office Building
Washington, D.C.  20515

Hon. Wexler
213 Cannon House Office Building
Washington, D.C.  20515

Hon. Weiner
1122 Longworth House Office Building
Washington, D.C.  20515

Hon. Schiff
326 Cannon House Office Building
Washington, D.C.  20515

Hon. Keller
419 Cannon House Office Building
Washington, D.C.  20515

Hon. Issa
211 Cannon House Office Bldg.
Washington, D.C.  20515

Hon. Flake
424 Cannon House Office Building
Washington, D.C.  20515-0301

Hon. Pence
1605 Longworth House Office Building
Washington, D.C.  20515

Hon. Forbes
307 Cannon House Office Building
Washington, D.C.  20515

Hon. King
1432 Longworth Office Building
Washington, D.C.  20515

Hon. Feeney
323 Cannon House Office Building
Washington, D.C.  20515

Hon. Franks
1237 Longworth House Office Building
Washington, D.C.  20515

Hon. Gohmert
508 Cannon House Bldg.
Washington, D.C.  20515

**Democrats -**
Hon. Berman
2221 Rayburn House Office Building
Washington, D.C.  20515

Hon. Boucher
2187 Rayburn House Office Building
Washington, D.C.  20515

CERTIFICATE OF SERVICE.     Page 3 of 7

Hon. Lamar S. Smith
2231 Rayburn House Office Building
Washington, D.C.  20515

Hon. Gallegly
2427 Rayburn House Office Building
Washington, D.C.  20515-0523

Hon. Goodlatte
2240 Rayburn House Office Building
Washington, D.C.  20515

Hon. Chabot
129 Cannon House Office Building
Washington, D.C.  20515

Hon. Lungren
2448 Rayburn House Office Building
Washington, D.C.  20515

Hon. Jenkins
1207 Longworth Office Building
Washington, D.C.  20515

Hon. Cannon
118 Cannon House Office Building
Washington, D.C.  20515

Hon. Bachus
442 Cannon House Office Building
Washington, D.C.  20515

Hon. Inglis
330 Cannon House Office Building
Washington, D.C.  20515

Hon. Hostettler
1214 Longworth House Office Building
Washington, D.C.  20515

Hon. Green
1314 Longworth House Office Building
Washington, D.C.  20515

///

///

CERTIFICATE OF SERVICE.        Page 2 of 7

UNITED STATES CONGRESS

WASHINGTON, D.C.

---

CERTIFICATE OF SERVICE

---

I, Brad Garrett, do hereby declare that on December 28, 2005, I placed in U.S. 1st Class Post and in adequate packaging the attached documents (18 U.S.C. § 4 Complaint with exhibits and attachments (Tabs #1 through #13), one copy for each member of Congress below) addressed to the following members of Congress at the two addresses below and as instructed by postal protocol personnel:

**U.S. Senate:**

    U.S. Senate Post Office
    MAIL ROOM SH - B21
    Washington, D.C.  20510-7220

**U.S. House of Representatives:**

House Postal Operations
9140 East Hampton Drive
Capital Heights, MD  20743

**House of Representatives:**

    Ron Paul - (HOUSE)
    203 Cannon HOB
    Washington, DC 20515-4314

**House of Representatives, Committee on the Judiciary -**
**Chairman -**

    Hon. F. James Sensenbrenner Jr.
    2449 Rayburn House Office Building
    Washington, D.C.  20515

**Ranking Member -**

    Hon. John Conyers Jr.
    2426 Rayburn Building
    Washington, D.C.  20515

**Republicans -**

    Hon. Hyde
    2110 Rayburn House Office Building
    Washington, D.C.  20515

    Hon. Coble
    2468 Rayburn House Office Building
    Washington, D.C.  20515-3306

CERTIFICATE OF SERVICE.    Page 1 of 7

# Exhibit A

**Exhibit A:** IRS' Revenue Ruling 2007-19 which alludes to 26 USC §§ 83 and 1001 but which fails to cite the reasons for the IRS' opposing interpretation of said provisions.

# Exhibit A

Internal Revenue Bulletin: 2007-14
April 2, 2007

Rev. Rul. 2007-19

---

**Table of Contents**

- PURPOSE
- ISSUE
- FACTS
- LAW AND ANALYSIS
- HOLDING
- CIVIL AND CRIMINAL PENALTIES
- DRAFTING INFORMATION

**Frivolous tax returns; wages not taxable income.** This ruling discusses and refutes the frivolous position taken by some taxpayers that wages are not taxable income.

**PURPOSE**

The Internal Revenue Service (Service) is aware that some taxpayers are attempting to reduce or eliminate their federal income tax liability by claiming that compensation received in exchange for personal services is not taxable income. These taxpayers often attempt to avoid their federal income tax liability by failing to file federal income tax returns or by failing to report all income from wages or other compensation on their federal income tax return. They often furnish Forms W-4, *Employee's Withholding Allowance Certificate*, on which they claim excessive withholding allowances or claim complete exemption from withholding. In addition, they often claim deductions from gross income for personal, living and family expenditures in order to reduce the tax liability related to wages or other compensation.

The Service is aware that some promoters and return preparers are advising or recommending that taxpayers take these or other meritless positions. This revenue ruling emphasizes to taxpayers, promoters and return preparers that wages and other compensation received in exchange for personal services are taxable income subject to federal income tax. Any argument that such compensation is not taxable income has no merit and is frivolous.

The Service is committed to identifying taxpayers who attempt to avoid their federal tax obligations by taking frivolous positions. The Service will take vigorous enforcement action against these taxpayers and against promoters and return preparers who assist taxpayers in taking these frivolous positions. Frivolous returns and other similar documents submitted to the Service are processed through the Service's Frivolous Return Program. As part of this program, the Service determines whether taxpayers who have taken frivolous positions have filed all required tax returns; computes the correct amount of tax and interest due; and determines whether civil or criminal penalties should apply. The Service also determines whether civil or criminal penalties

should apply to return preparers, promoters and others who assist taxpayers in taking frivolous positions and recommends whether an injunction should be sought to halt these activities. Other information about frivolous tax positions is available on the Service website at *www.irs.gov*.

## ISSUE

Whether Taxpayer A may avoid federal income tax liability by maintaining that the Internal Revenue Code does not tax wages or other compensation received in exchange for personal services.

## FACTS

Taxpayer A receives wages in exchange for personal services. Taxpayer A then does one or more of the following: (1) furnishes a Form W-4 to the employer on which Taxpayer A claims excessive withholding allowances or claims complete exemption from withholding; (2) fails to file a federal income tax return; (3) fails to report the wages on the federal income tax return; (4) claims a refund for any withheld income tax; or (5) claims deductions for personal, living and family expenditures to offset the wages reported on the federal income tax return. Taxpayer A claims that compensation received for personal services is not subject to federal income tax.

Arguments that wages are not subject to federal income tax take many forms including, but not limited to, the following:

1. A tax on wages is a direct tax subject to the provision in Article I, Section 2, Clause 3 of the Constitution that requires that direct taxes be apportioned among the states by population.
2. Money received in exchange for personal labor constitutes an equal, nontaxable exchange of property.
3. Taxable income from wages or other compensation for personal services can only be determined after deduction of the cost of providing the labor.

## LAW AND ANALYSIS

1. Article 1, Section 2, Clause 3 of the United States Constitution states that "direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers . . . ." This statement has been used to support the argument that there is a constitutional impediment to the imposition of a direct tax on an individual's wages. The Sixteenth Amendment to the Constitution, ratified in 1913, provides that "[t]he Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." The Sixteenth Amendment has been reviewed by the Supreme Court and upheld. *Brushaber v. Union Pacific Railroad Co.*, 240 U.S. 1 (1916). Thus, the imposition of income tax on wages, without apportionment among the states, is authorized. *See, e.g., Funk v. Commissioner*, 687 F.2d 264 (8th Cir. 1982); *Abrams v. Commissioner*, 82 T.C. 403 (1984).

Section 61(a) of the Internal Revenue Code defines gross income as income from whatever source derived, including (but not limited to) "compensation for services, including fees, commissions, fringe benefits, and similar items." I.R.C. § 61(a)(1). Courts consistently have upheld the determination that wages fall within section 61(a)(1)'s definition of compensation and, accordingly, constitute taxable income. *See, e.g., Ledford v. United States*, 297 F.3d 1378 (Fed. Cir. 2002); *United States v. Connor*, 898 F.2d 942 (3d Cir. 1990); *Casper v. Commissioner*, 805 F.2d 902 (10th Cir. 1986); *Connor v. Commissioner*, 770 F.2d 17 (2d Cir. 1985); *Lovell v. United States*, 755 F.2d 517 (7th Cir. 1984); *Perkins v. Commissioner*, 746 F.2d 1187 (6th Cir. 1984); *Funk v. Commissioner*, 687 F.2d 264 (8th Cir. 1982); *Lonsdale v. Commissioner*, 661 F.2d 71 (5th Cir. 1981); *Rowlee v. Commissioner*, 80 T.C. 1111 (1983).

In *United States v. Connor*, 898 F.2d at 943, the Third Circuit noted that "[e]very court which has ever considered the issue has unequivocally rejected the argument that wages are not income." All income received by a taxpayer is income under section 61 unless it is specifically exempted or excluded. *See Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429-30 (1955) ("Congress applied no limitations as to the source of taxable receipts, nor restrictive labels as to the intention of Congress to tax all gains except those specifically exempted.").

2. Some taxpayers claim that the payment of wages or other compensation in exchange for personal labor is a nontaxable exchange of property. *These taxpayers sometimes rely on sections 83 or 1001 of the Internal Revenue Code* to support this argument. *Section 83 provides for the determination of the amount to be included in gross income* and the timing of the inclusion *when property is transferred to an employee or independent contractor in connection with the performance of services. Section 1001 provides for the determination of the amount and timing of the recognition of gain or loss* from the sale or other disposition of property.

Courts have universally rejected the argument that labor is property that can be exchanged for wages or other compensation in a nontaxable transaction. *See Casper v. Commissioner*, 805 F.2d at 905; *Funk v. Commissioner*, 687 F.2d at 265. Courts recognize a distinction between selling labor and selling or exchanging property. *See Reading v. Commissioner*, 70 T.C. 730, 733-34 (1978), *aff'd*, 614 F.2d 159 (8th Cir. 1980). Further, the courts have concluded that a taxpayer has no tax basis in one's labor and, therefore, the full amount of the wages or other compensation received represents gain which may be taxed as income. *See, e.g., Casper*, 805 F.2d at 905; *Abrams*, 82 T.C. at 407; *Reading*, 70 T.C. at 733-34.

3. A related argument is that income from the sale of labor cannot be determined until the taxpayer's investment in that labor has been recovered. This argument has been repeatedly rejected. *See Rowlee*, 80 T.C. at 1120; *Reading*, 70 T.C. at 733-34. In *Reading*, the Tax Court examined the contention that gain must be realized for there to be income, analyzing the distinction recognized under federal tax law between producing a physical product and providing services. The court flatly rejected the idea that living expenses constitute the cost of "goods" sold for providing labor or services. *Reading*, 70 T.C. at 733-34. Thus, the court concluded that the gain from the sale of labor is the entire amount received and upheld the disallowance of deductions for personal living expenses.

IRS' Revenue Ruling 2007-19.                    Page 3 of 5

Courts have uniformly rejected arguments that wages and other compensation for personal services are not taxable income. Accordingly, raising these arguments justifies the imposition of sanctions. *See Ledford v. United States*, 297 F.3d at 1381-82 (Fed. Cir. 2002); *Casper v. Commissioner*, 805 F.2d at 906; *Connor v. Commissioner*, 770 F.2d at 20.

## HOLDING

1. Wages fall within the definition of income set forth in section 61(a)(1) of the Internal Revenue Code. Taxpayer A's wages and other compensation for services are income subject to federal income tax and must be reported on Taxpayer A's federal income tax return.
2. The payment of wages and other compensation for personal services is not an equal exchange of property. The full amount of wages received by Taxpayer A is subject to federal income tax and must be reported on Taxpayer A's federal income tax return.
3. Wages and other compensation received by Taxpayer A in exchange for personal services are subject to federal income tax without reduction of Taxpayer A's personal living expenses.

## CIVIL AND CRIMINAL PENALTIES

The Service will challenge the claims of individuals who improperly attempt to avoid or evade their federal tax liability. In addition to liability for the tax due plus statutory interest, taxpayers who fail to file valid returns or pay tax based on arguments that wages and other compensation for personal services are exempt from federal income tax face substantial civil and criminal penalties. Potentially applicable civil penalties include: (1) the section 6662 accuracy-related penalties, which are generally equal to 20 percent of the amount of tax the taxpayer should have paid; (2) the section 6663 penalty for civil fraud, which is equal to 75 percent of the amount of tax the taxpayer should have paid; (3) the section 6702(a) penalty of $5,000 for a "frivolous tax return"; (4) the section 6702(b) penalty of $5,000 for submitting a "specified frivolous submission"; (5) the section 6651 additions to tax for failure to file a return, failure to pay the tax owed, and fraudulent failure to file a return; (6) the section 6673 penalty of up to $25,000 if the taxpayer makes frivolous arguments in the United States Tax Court; and (7) the section 6682 penalty of $500 for providing false information with respect to withholding.

Taxpayers relying on these frivolous positions also may face criminal prosecution under: (1) section 7201 for attempting to evade or defeat tax, the penalty for which is a significant fine and imprisonment for up to 5 years; (2) section 7203 for willful failure to file a return, the penalty for which is a significant fine and imprisonment for up to one year; (3) section 7206 for making false statements on a return, statement, or other document, the penalty for which is a significant fine and imprisonment for up to 3 years; or (4) other provisions of federal law.

Persons, including return preparers, who promote these frivolous positions and those who assist taxpayers in claiming tax benefits based on frivolous positions may face civil and criminal penalties and also may be enjoined by a court pursuant to sections 7407 and 7408. Potential penalties include: (1) a $250 penalty under section 6694 for each return or claim for refund prepared by an income tax return preparer who knew or should have known that the taxpayer's

IRS' Revenue Ruling 2007-19.                    Page 4 of 5

position was frivolous (or $1,000 for each return or claim for refund if the return preparer's actions were willful, intentional or reckless); (2) a penalty under section 6700 for promoting abusive tax shelters; (3) a $1,000 penalty under section 6701 for aiding and abetting the understatement of tax; and (4) criminal prosecution under section 7206, for which the penalty is a significant fine and imprisonment for up to 3 years, for assisting or advising about the preparation of a false return, statement or other document under the internal revenue laws.

## DRAFTING INFORMATION

This revenue ruling was authored by the Office of Associate Chief Counsel (Procedure & Administration), Administrative Provisions and Judicial Practice Division. For further information regarding this revenue ruling, contact that office at (202) 622-7950 (not a toll-free call).

*End Revenue Ruling 2007-19.*

# Exhibit B

**Exhibit B:** IRS' 2013 list of frivolous arguments which makes no mention of the conclusions and claims briefed in the fifty-eight page Memo filed with Congress.

Exhibit **B**

# THE TRUTH ABOUT FRIVOLOUS TAX ARGUMENTS

## MARCH 4, 2013

I. FRIVOLOUS TAX ARGUMENTS IN GENERAL ............................................... 1

A. The Voluntary Nature of the Federal Income Tax System ........................... 1

1. Contention: The filing of a tax return is voluntary. ............................... 1

2. Contention: Payment of federal income tax is voluntary. ...................... 2

3. Contention: Taxpayers can reduce their federal income tax liability by filing a "zero return." ......................................................................................... 5

4. Contention: The IRS must prepare federal tax returns for a person who fails to file. ............................................................................................................. 7

5. Contention: Compliance with an administrative summons issued by the IRS is voluntary ...................................................................................................... 8

B. The Meaning of Income:  Taxable Income and Gross Income ..................... 9

1. Contention: Wages, tips, and other compensation received for personal services are not income ................................................................................. 9

2. Contention: Only foreign-source income is taxable. ............................. 13

3. Contention: Federal Reserve Notes are not income. ............................ 15

4. Contention: Military retirement pay does not constitute income. ........... 16

C. The Meaning of Certain Terms Used in the Internal Revenue Code .......... 17

1. Contention: Taxpayer is not a "citizen" of the United States, and thus is not subject to the federal income tax laws. ..................................................... 17

2. Contention: The "United States" consists only of the District of Columbia, federal territories, and federal enclaves. .................................................... 18

3. Contention: Taxpayer is not a "person" as defined by the Internal Revenue Code, thus is not subject to the federal income tax laws ............................ 20

4. Contention: The only "employees" subject to federal income tax are employees of the federal government ............................................................................ 21

D. Constitutional Amendment Claims ........................................................... 22

1. Contention: Taxpayers can refuse to pay income taxes on religious or moral grounds by invoking the First Amendment ................................................. 22

2. Contention: Federal income taxes constitute a "taking" of property without due process of law, violating the Fifth Amendment ........................................... 24

3. Contention: Taxpayers do not have to file returns or provide financial information because of the protection against self-incrimination found in the Fifth Amendment ......................................................................................... 25

4. Contention: Compelled compliance with the federal income tax laws is a form of servitude in violation of the Thirteenth Amendment. ................................ 26

5. Contention: The federal income tax laws are unconstitutional because the Sixteenth Amendment to the United States Constitution was not properly ratified. ...................................................................................................... 27

6. Contention: The Sixteenth Amendment does not authorize a direct non-apportioned federal income tax on United States citizens ............................ 29

E. Fictional Legal Bases ................................................................ 30

  1. Contention: The Internal Revenue Service is not an agency of the United States. ...................................................................... 30

  2. Contention: Taxpayers are not required to file a federal income tax return, because the instructions and regulations associated with the Form 1040 do not display an OMB control number as required by the Paperwork Reduction Act. 31

  3. Contention: African Americans can claim a special tax credit as reparations for slavery and other oppressive treatment. ........................................ 32

  4. Contention: Taxpayers are entitled to a refund of the Social Security taxes paid over their lifetime. ............................................................. 34

  5. Contention: An "untaxing" package or trust provides a way of legally and permanently avoiding the obligation to file federal income tax returns and pay federal income taxes. ............................................................ 34

  6. Contention: A "corporation sole" can be established and used for the purpose of avoiding federal income taxes. ................................................ 36

  7. Contention: Taxpayers who did not purchase and use fuel for an off-highway business can claim the fuels tax credit. ......................................... 37

  8. Contention: A Form 1099-OID can be used as a debt payment option or the form or a purported financial instrument may be used to obtain money from the Treasury. ............................................................................. 38

II. FRIVOLOUS ARGUMENTS IN COLLECTION DUE PROCESS CASES ..... 41

  A. Invalidity of the Assessment ..................................................... 42

    1. Contention: A tax assessment is invalid because the taxpayer did not get a copy of the Form 23C, the Form 23C was not personally signed by the Secretary of the Treasury, or a form other than Form 23C is not a valid record of assessment. ...................................................................... 42

    2. Contention: A tax assessment is invalid because the assessment was made from a substitute for return prepared pursuant to section 6020(b), which is not a valid return. ......................................................................... 43

  B. Invalidity of the Statutory Notice of Deficiency .............................. 44

    1. Contention: A statutory notice of deficiency is invalid because it was not signed by the Secretary of the Treasury or by someone with delegated authority. ...... 44

    2. Contention: A statutory notice of deficiency is invalid because the taxpayer did not file an income tax return. ...................................................... 45

  C. Invalidity of Notice of Federal Tax Lien ...................................... 45

    1. Contention: A notice of federal tax lien is invalid because it is unsigned or not signed by the Secretary of the Treasury, or because IRS employees lack the delegated authority to file a notice of federal tax lien. .......................... 45

    2. Contention: The form or content of a notice of federal tax lien is controlled by or subject to a state or local law, and a notice of federal tax lien that does not comply in form or content with a state or local law is invalid. ............... 46

  D. Invalidity of Collection Due Process Notice .................................. 47

    1. Contention: A collection due process notice (e.g., Letter 1058, LT-11 or Letter 3172) is invalid because it is not signed by the Secretary or his delegate. ....... 47

iii

2. Contention: A collection due process notice is invalid because no certificate of assessment is attached. ...............................................................................48

E. Verification Given as Required by I.R.C. § 6330(c)(1) ...............................48

    1. Contention: Verification requires the production of certain documents. ...........48

F. Invalidity of Statutory Notice and Demand ...............................................49

    1. Contention: No notice and demand, as required by I.R.C. § 6303, was ever received by taxpayer. ...............................................................................49

    2. Contention: A notice and demand is invalid because it is not signed, it is not on the correct form (such as Form 17), or because no certificate of assessment is attached. ...............................................................................50

G. Tax Court Authority ...............................................................................51

    1. Contention: The Tax Court does not have the authority to decide legal issues. 51

H. Challenges to the Authority of IRS Employees. ...........................................52

    1. Contention: Revenue Officers are not authorized to seize property in satisfaction of unpaid taxes. ...............................................................................52

    2. Contention: IRS employees lack credentials. For example, they have no pocket commission or the wrong color identification badge. ...............................53

I. Use of Unauthorized Representatives ...............................................................53

    1. Contention: Taxpayers are entitled to be represented at hearings, such as collection due process hearings, and in court, by persons without valid powers of attorney. ...............................................................................53

J. No Authorization Under I.R.C. § 7401 to Bring Action ...............................54

    1. Contention: The Secretary has not authorized an action for the collection of taxes and penalties or the Attorney General has not directed an action be commenced for the collection of taxes and penalties. ...............................54

III. PENALTIES FOR PURSUING FRIVOLOUS TAX ARGUMENTS ...............55

1

# THE TRUTH ABOUT FRIVOLOUS TAX ARGUMENTS

## MARCH 4, 2013

This document describes and responds to some of the more common frivolous arguments made by individuals and groups who oppose compliance with the federal tax laws. The first section groups these arguments under five general categories, with variations within each category. Each contention is briefly explained, followed by a discussion of the legal authority that rejects the contention. The second section responds to some of the more common frivolous arguments made in collection due process cases brought pursuant to sections 6320 and 6330. These arguments are grouped under ten general categories and contain a brief description of each contention followed by a discussion of the correct legal authority. A final section explains the penalties that the courts may impose on those who pursue tax cases on frivolous grounds. The court opinions cited as relevant legal authority illustrate how these arguments are treated by the IRS and the courts. Note that courts often decline "to refute [frivolous] arguments with somber reasoning and copious citation of precedent" for a variety of reasons. Wnuck v. Commissioner, 136 T.C. 498 (2011) (quoting Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984). This document, including the relevant legal authorities cited, is not intended to provide an exhaustive list of frivolous tax arguments.

## I. FRIVOLOUS TAX ARGUMENTS IN GENERAL

### A. The Voluntary Nature of the Federal Income Tax System

#### 1. Contention: The filing of a tax return is voluntary.

Some taxpayers assert that they are not required to file federal tax returns because the filing of a tax return is voluntary. Proponents of this contention point to the fact that the IRS itself tells taxpayers in the Form 1040 instruction book that the tax system is voluntary. Additionally, these taxpayers frequently quote Flora v. United States, 362 U.S. 145, 176 (1960), for the proposition that "[o]ur system of taxation is based upon voluntary assessment and payment, not upon distraint."

The Law: The word "voluntary," as used in Flora and in IRS publications, refers to our system of allowing taxpayers initially to determine the correct amount of tax and complete the appropriate returns, rather than have the government determine tax for them from the outset. The requirement to file an income tax return is not voluntary and is clearly set forth in sections 6011(a), 6012(a), et seq., and 6072(a) of the Internal Revenue Code. See also Treas. Reg. § 1.6011-1(a).

Any taxpayer who has received more than a statutorily determined amount of gross income is obligated to file a return. Failure to file a tax return

2

could subject the non-complying individual to criminal penalties, including fines and imprisonment, as well as civil penalties. In United States v. Tedder, 787 F.2d 540, 542 (10th Cir. 1986), the court stated that, "although Treasury regulations establish voluntary compliance as the general method of income tax collection, Congress gave the Secretary of the Treasury the power to enforce the income tax laws through involuntary collection . . . . The IRS' efforts to obtain compliance with the tax laws are entirely proper." The IRS warned taxpayers of the consequences of making this frivolous argument. Rev. Rul. 2007-20, 2007-1 C.B. 863.

**Relevant Case Law:**

Helvering v. Mitchell, 303 U.S. 391, 399 (1938) – the Supreme Court stated that "[i]n assessing income taxes, the Government relies primarily upon the disclosure by the taxpayer of the relevant facts . . . in his annual return. To ensure full and honest disclosure, to discourage fraudulent attempts to evade the tax, Congress imposes [either criminal or civil] sanctions."

United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993), cert. denied, 510 U.S. 1193 (1994) – the court held that "[a]ny assertion that the payment of income taxes is voluntary is without merit."

United States v. Tedder, 787 F.2d 540, 542 (10th Cir. 1986) – the court upheld a conviction for willfully failing to file a return, stating that the premise "that the tax system is somehow 'voluntary' . . . is incorrect."

United States v. Richards, 723 F.2d 646, 648 (8th Cir. 1983) – the court upheld conviction and fines imposed for willfully failing to file tax returns, stating that the claim that filing a tax return is voluntary "was rejected in

Woods v. Commissioner, 91 T.C. 88, 90 (1988) – the court rejected the claim that reporting income taxes is strictly voluntary, referring to it as a "'tax protester' type" argument, and found Woods liable for the penalty for failure to file a return.

**Other Cases:**

United States v. Drefke, 707 F.2d 978, 981 (8th Cir. 1983), cert. denied sub nom., Jameson v. United States, 464 U.S. 642 (1983); United States v. Schulz, 529 F. Supp. 2d 341 (N.D.N.Y. 2007), aff'd, 517 F.3d 606 (2d Cir. 2008), cert. denied, 555 U.S. 946 (2008); Johnson v. Commissioner, T.C. Memo. 1999-312, 78 T.C.M. (CCH) 468, 471 (1999), aff'd, 242 F.3d 382 (9th Cir. 2000).

## 2. Contention: Payment of federal income tax is voluntary.

In a similar vein, some argue that they are not required to pay federal taxes because the payment of federal taxes is voluntary. Proponents of

3

this position argue that our system of taxation is based upon voluntary assessment and payment. They frequently claim that there is no provision in the Internal Revenue Code or any other federal statute that requires them to pay or makes them liable for income taxes, and they demand that the IRS show them the law that imposes tax on their income. They argue that, until the IRS can prove to these taxpayers' satisfaction the existence and applicability of the income tax laws, they will not report or pay income taxes. These individuals or groups reflexively dismiss any attempt by the IRS to identify the laws, thereby continuing the cycle. The IRS discussed this frivolous position at length and warned taxpayers of the consequences of asserting it. Rev. Rul. 2007-20, 2007-1 C.B. 863.

**The Law:** The requirement to pay taxes is not voluntary and is clearly set forth in section 1 of the Internal Revenue Code, which imposes a tax on the taxable income of individuals, estates, and trusts as determined by the tables set forth in that section. (Section 11 imposes a tax on the taxable income of corporations.)

Furthermore, the obligation to pay tax is described in section 6151, which requires taxpayers to submit payment with their tax returns. Failure to pay taxes could subject the non-complying individual to criminal penalties, including fines and imprisonment, as well as civil penalties.

In discussing section 6151, the Eighth Circuit Court of Appeals stated in Drefke that "when a tax return is required to be filed, the person so required 'shall' pay such taxes to the internal revenue officer with whom the return is filed at the fixed time and place. The sections of the Internal Revenue Code imposed a duty on Drefke to file tax returns and pay the appropriate rate of income tax, a duty which he chose to ignore." United States v. Drefke, 707 F.2d 978, 981 (8th Cir. 1983), cert. denied sub nom., Jameson v. United States, 464 U.S. 642 (1983).

There have been no civil cases where the IRS's lack of response to a taxpayer's inquiry has relieved the taxpayer of the duty to pay tax due under the law. Courts have in rare instances waived civil penalties because they have found that a taxpayer relied on an IRS misstatement or wrongful misleading silence with respect to a factual matter. Such an estoppel argument does not, however, apply to a legal matter such as whether there is legal authority to collect taxes. See, e.g., McKay v. Commissioner, 102 T.C. 465 (1994), rev'd as to other issues, 84 F.3d 433 (5th Cir. 1996).

**Relevant Case Law:**

United States v. Schiff, 379 F.3d 621 (9th Cir. 2004), cert. denied, 546 U.S. 812 (2005); see also http://www.usdoj.gov/tax/txdv04551.htm. – the court affirmed a federal district court's preliminary injunction barring Irwin Schiff, Cynthia Neun, and Lawrence N. Cohen from selling a tax scheme

4

that fraudulently claimed that payment of federal income tax is voluntary. In subsequent criminal trials, these three individuals were convicted of violating several criminal laws relating to their scheme. See 2005 TNT 206-18. Schiff received a sentence of more than 12 years in prison and was ordered to pay more than $4.2 million in restitution to the IRS; Neun received a sentence of nearly 6 years and was ordered to pay $1.1 million in restitution to the IRS; and Cohen received a sentence of nearly 3 years and was ordered to pay $480,000 in restitution to the IRS. See http://www.usdoj.gov/opa/pr/2006/February/06_tax_098.html.

Adams v. Commissioner, 170 F.3d 173, 181-82 (3d Cir. 1999), cert. denied, 528 U.S. 1117 (2000) – the court affirmed the imposition of penalties for failure to file tax returns and pay tax, as Adams' religious beliefs—payment of taxes to fund the military is against the will of God— did not constitute reasonable cause for failing to pay taxes.

United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993), cert. denied, 510 U.S. 1193 (1994) – the court stated that the "[taxpayers'] claim that payment of federal income tax is voluntary clearly lacks substance" and imposed sanctions in the amount of $1,500 "for bringing this frivolous appeal based on discredited, tax-protester arguments."

Wilcox v. Commissioner, 848 F.2d 1007, 1008 (9th Cir. 1988) – the court rejected Wilcox's argument that payment of taxes is voluntary for American citizens and imposed a $1,500 penalty against Wilcox for raising frivolous claims.

United States v. Bressler, 772 F.2d 287, 291 (7th Cir. 1985), cert. denied 474 U.S. 1082 (1986), – the court upheld Bressler's conviction for tax evasion, noting that "[he] has refused to file income tax returns and pay the amounts due not because he misunderstands the law, but because he disagrees with it . . . . [O]ne who refuses to file income tax returns and pay the tax owing is subject to prosecution, even though the tax protester believes the laws requiring the filing of income tax returns and the payment of income tax are unconstitutional."

United States v. Schulz, 529 F.Supp.2d 341 (N.D.N.Y. 2007), aff'd, 517 F.3d 606 (2d Cir. 2008), cert. denied, 555 U.S. 946 (2008) – the court permanently barred Robert Schulz and his organizations, We the People Congress and We the People Foundation, from promoting a tax scheme that helped employers and employees improperly stop tax withholding from wages on the false premise that federal income taxation is voluntary.

Packard v. United States, 7 F.Supp.2d 143, 145 (D. Conn. 1998), aff'd, 198 F.3d 234 (2d Cir. 1999) – the court dismissed Packard's refund suit for recovery of penalties for failure to pay income tax and failure to pay estimated taxes where the taxpayer contested the obligation to pay taxes on religious grounds, noting that "the ability of the Government to function

5

could be impaired if persons could refuse to pay taxes because they
disagreed with the Government's use of tax revenues."

**Other Cases:**

Schiff v. United States, 919 F.2d 830, 833 (2d Cir. 1990), cert. denied, 501
U.S. 1238 (1991); United States v. Sieloff, 2009 WL 1850197, 104
A.F.T.R.2d (RIA) 2009-5067 (M.D. Fla. Jun. 25, 2009); United States v.
Scott, 2009 WL 1439187, 103 A.F.T.R.2d (RIA) 2009-2336 (D.D.C. May
20, 2009); Horowitz v. Commissioner, T.C. Memo. 2006-91, 91 T.C.M.
(CCH) 1120; Bonaccorso v. Commissioner, T.C. Memo. 2005-278, 90
T.C.M. (CCH) 554 (2005).

### 3. Contention: Taxpayers can reduce their federal income tax liability by filing a "zero return."

Some taxpayers attempt to reduce their federal income tax liability by filing
a tax return that reports no income and no tax liability (a "zero return")
even though they have taxable income. Many of these taxpayers also
request a refund of any taxes withheld by an employer. These individuals
typically attach to the zero return a "corrected" Form W-2, or another
information return that reports income and income tax withholding, and
rely on one or more of the frivolous arguments discussed throughout this
outline to support their position.

**The Law:** A taxpayer that has taxable income cannot legally avoid
income tax by filing a zero return. Section 61 provides that gross income
includes all income from whatever source derived, including compensation
for services. Courts have repeatedly penalized taxpayers for making the
frivolous argument that the filing of a zero return can allow a taxpayer to
avoid income tax liability or permit a refund of tax withheld by an
employer. Courts have also imposed the frivolous return and failure to file
penalties because such forms do not evidence an honest and reasonable
attempt to satisfy the tax laws or contain sufficient data to calculate the tax
liability, which are necessary elements of a valid tax return. See Beard v.
Commissioner, 82 T.C. 766, 777-79, aff'd 793 F.2d 139 (6th Cir. 1986).
The IRS warned taxpayers of the consequences of making this frivolous
argument. Rev. Rul. 2004-34, 2004-1 C.B. 619. Furthermore, the
inclusion of the phrase "nunc pro tunc," or other legal phrase, does not
have any legal effect and does not serve to validate a zero return. See
Rev. Rul. 2006-17, 2006-1 C.B. 748.

**Relevant Case Law:**

Kelly v. United States, 789 F.2d 94, 97 (1st Cir. 1986) – the court found
that the taxpayer's failure to report any income from wages, the
"unexplained designation of his Form W-2 as 'Incorrect', and his attempt to
deduct as a cost of labor expense on Schedule C an amount almost

6

identical to the amount of wages on Form W-2" established that his
position (that compensation for his labor was not "wages" or taxable
income) was both incorrect and frivolous.

Sisemore v. United States, 797 F.2d 268, 270-71 (6th Cir. 1986) – the
court upheld the assessment of a frivolous return penalty on taxpayers
because "their amended return [showing no income] on its face clearly
showed that their assessment of their taxes was substantially incorrect
and that their position on the matter [that their wages were zero because
received in equal exchange for their labor] was frivolous."

Olson v. United States, 760 F.2d 1003, 1005 (9th Cir. 1985) – the circuit
court held that the district court properly found the taxpayer was liable for
a penalty for filing a frivolous tax return because he listed his wages as
zero and attempted "to escape tax by deducting his wages as 'cost of
labor' and by claiming that he had obtained no privilege from a
governmental agency."

Davis v. United States Government, 742 F.2d 171, 172 (5th Cir. 1984) –
the court held as clearly frivolous the taxpayers' reasons for reporting no
wages and no gross income ("rejected . . . time and time again"), while
having received over $60,000 in earnings or other compensation as
demonstrated by the Forms W-2 attached to their Form 1040.

United States v. Ballard, 101 A.F.T.R.2d (RIA) 1241, 2008 WL 918278
(N.D. Tex. Feb. 12, 2008) – the court permanently enjoined a tax return
preparer from engaging in further tax return preparation or tax advice
because he prepared federal income tax returns for customers that falsely
showed nothing but zeroes.

Bonaccorso v. Commissioner, T.C. Memo. 2005-278, 90 T.C.M. (CCH)
554 (2005) – the taxpayer filed zero returns based on the argument that
he found no Code section that made him liable for any income tax. The
court held that the taxpayer's argument was frivolous citing to section 1
(imposes an income tax), section 63 (defines taxable income as gross
income minus deductions), and section 61 (defines gross income). The
court also imposed a $10,000 sanction against the taxpayer under section
6673 for making frivolous arguments.

**Other Cases:**

United States v. Conces, 507 F.3d 1028 (6th Cir. 2007), cert. denied, 553
U.S. 1042 (2008); United States v. Schiff, 379 F.3d 621 (9th Cir. 2004);
Waltner v. United States, 98 Fed. Cl. 737 (2011), aff'd, 679 F.3d 1329
(Fed. Cir. 2012), cert. denied, 133 S. Ct. 319, 2012 U.S. LEXIS 6248 (Oct.
1, 2012); Alexander v. Commissioner, T.C. Memo. 2012-75; Schultz v.
United States, 2005 WL 1155203, at *3, 95 A.F.T.R.2d (RIA) 2005-1977
(W.D. Mich. Mar. 23, 2005); Little v. United States, 2005 WL 2989696, at

7

*4, 96 A.F.T.R.2d (RIA) 2005-7086 (M.D.N.C. Nov. 7, 2005), aff'd, 178 F. App'x 230 (4th Cir. 2006); United States v. Hill, 2005 WL 3536118, 97 A.F.T.R.2d (RIA) 548 (D. Ariz. Dec. 22, 2005), aff'd, United States v. Romero-Hill, 197 F. App'x 613 (9th Cir. 2006); Yuen v. United States, 290 F.Supp.2d 1220, 1224 (D. Nev. 2003); Gillett v. United States, 233 F.Supp. 2d 874, 881 (W.D. Mich. 2002); Oman v. Commissioner, T.C. Memo. 2010-276, 100 T.C.M. (CCH) 548 (2010); Blaga v. Commissioner, T.C. Memo. 2010-170, 100 T.C.M. (CCH) 91 (2010); Halcott v. Commissioner, T.C. Memo. 2004-214, 88 T.C.M. (CCH) 286 (2004); Hill v. Commissioner, T.C. Memo. 2003-144, 85 T.C.M. (CCH) 1328, 1331 (2003); Rayner v. Commissioner, T.C. Memo. 2002-30, 83 T.C.M. (CCH) 1161 (2002), aff'd, 70 F. App'x 739 (5th Cir. 2003), cert. denied, 540 U.S. 1139 (2004).

## 4. Contention: The IRS must prepare federal tax returns for a person who fails to file.

Proponents of this argument contend that section 6020(b) obligates the IRS to prepare and sign under penalties of perjury a federal tax return for a person who does not file a return. Thus, those who subscribe to this contention claim that they are not required to file a return for themselves.

**The Law:** Section 6020(b) merely provides the IRS with a mechanism for determining the tax liability of a taxpayer who has failed to file a return. Section 6020(b) does not require the IRS to prepare or sign under penalties of perjury tax returns for persons who do not file, and it does not excuse the taxpayer from civil penalties or criminal liability for failure to file.

**Relevant Case Law:**

United States v. Cheek, 3 F.3d 1057, 1063 (7th Cir. 1993), cert. denied, 510 U.S. 1112 (1994) – the court held the district court did not err when it instructed the jury that defendant's belief that section 6020 permitted the Secretary of the Treasury to prepare a tax return for a person did not negate "in any way" the obligation to file a tax return.

In re Bergstrom, 949 F.2d 341, 343 (10th Cir. 1991) – the court recognized that "[c]ourts have held that 26 U.S.C. § 6020(b) provides the IRS with some recourse if a taxpayer fails to file a return as required under 26 U.S.C. § 6012, but that it does not excuse a taxpayer from the filing requirement."

Schiff v. United States, 919 F.2d 830, 832 (2d Cir. 1990) cert. denied, 501 U.S. 1238 (1991) – the court rejected the taxpayer's argument that the IRS must prepare a substitute return pursuant to section 6020(b) prior to assessing deficient taxes, stating "[t]here is no requirement that the IRS complete a substitute return."

8

Moore v. Commissioner, 722 F.2d 193, 196 (5th Cir. 1984) – the court stated that "section [6020(b)] provides the Secretary with some recourse should a taxpayer fail to fulfill his statutory obligation to file a return, and does not supplant the taxpayer's original obligation to file established by 26 U.S.C. § 6012."

Stewart v. Commissioner, T.C. Memo. 2005-212, 90 T.C.M. (CCH) 269 (2005) – the court found that the IRS need not prepare a substitute return in order to determine a deficiency where the taxpayer has not filed a return for the year at issue.

**Other Cases:**

United States v. Barnett, 945 F.2d 1296, 1300 (5th Cir. 1991), cert. denied, 503 U.S. 941 (1992); United States v. Lacy, 658 F.2d 396, 397 (5th Cir. 1981).

### 5.  Contention: Compliance with an administrative summons issued by the IRS is voluntary.

Some summoned parties may assert that they are not required to respond to or comply with an administrative summons issued by the IRS. Proponents of this position argue that a summons thus can be ignored. The Second Circuit's opinion in Schulz v. IRS, 413 F.3d 297 (2d Cir. 2005) ("Schulz II") is often inappropriately cited to support this proposition.

**The Law:**  A summons is an administrative device with which the IRS can summon persons to appear, testify, and produce documents.  The IRS is statutorily authorized to inquire about any person who may be liable to pay any internal revenue tax, and to summons a witness to testify or to produce books, papers, records, or other data that may be relevant or material to an investigation.  I.R.C. § 7602; United States v. Arthur Young & Co., 465 U.S. 805, 816 (1984); United States v. Powell, 379 U.S. 48 (1964).  Sections 7402(b) and 7604(a) of the Internal Revenue Code grant jurisdiction to district courts to enforce a summons, and section 7604(b) governs the general enforcement of summonses by the IRS.

Section 7604(b) allows courts to issue attachments, consistent with the law of contempt, to ensure attendance at an enforcement hearing "[i]f the taxpayer has contumaciously refused to comply with the administrative summons and the [IRS] fears he may flee the jurisdiction." Powell, 379 U.S. at 58 n.18; see also Reisman v. Caplin, 375 U.S. 440, 448-49 (1964) (noting that section 7604(b) actions are in the nature of contempt proceedings against persons who "wholly made default or contumaciously refused to comply," with an administrative summons issued by the IRS). Under section 7604(b), the courts may also impose contempt sanctions for disobedience of an IRS summons.

9

Failure to comply with an IRS administrative summons also could subject the non-complying individual to criminal penalties, including fines and imprisonment. I.R.C. § 7210. While the Second Circuit held in Schulz II that, for due process reasons, the government must first seek judicial review and enforcement of the underlying summons and to provide an intervening opportunity to comply with a court order of enforcement prior to seeking sanctions for noncompliance, the court's opinion did not foreclose the availability of prosecution under section 7210.

**Relevant Case Law:**

Schulz v. IRS, 413 F.3d 297 (2d Cir. 2005) ("Schulz II") – the court, upholding its prior per curiam opinion, reported at Schulz v. IRS, 395 F.3d 463 (2d Cir. 2005) ("Schulz I"), held that, based upon constitutional due process concerns, an indictment under section 7210 shall not lie and contempt sanctions under section 7604(b) shall not be levied based on disobedience of an IRS summons until that summons has been enforced by a federal court order and the summoned party, after having been given a reasonable opportunity to comply with the court's order, has refused. The court noted that "[n]either this opinion nor Schulz I prohibits the issuance of pre-hearing attachments consistent with due process and the law of contempts." Schulz II, 413 F.3d at 304.

United States v. Becker, 58-1 U.S.T.C. ¶ 9403 (S.D.N.Y. 1958), aff'd, 259 F.2d 869 (2d Cir. 1958) (per curiam), cert. denied, 258 U.S. 929 (1959) – in a case in which the defendant failed to produce certain books and records specified in an IRS summons, claiming that the books and records had been destroyed by fire, the court found that based upon the evidence (including the fact that some of the specified books were subsequently produced in compliance with a grand jury subpoena), Becker willfully and knowingly neglected to produce information called for by a summons in violation of section 7210

## B. The Meaning of Income: Taxable Income and Gross Income

### 1. Contention: Wages, tips, and other compensation received for personal services are not income.

This argument asserts that wages, tips, and other compensation received for personal services are not income because there is allegedly no taxable gain when a person "exchanges" labor for money. Under this theory, wages are not taxable income because people have basis in their labor equal to the fair market value of the wages they receive; thus, there is no gain to be taxed. A variation of this argument misconstrues section 1341, which deals with computations of tax where a taxpayer restores a substantial amount held under claim of right, to somehow allow a deduction claim for personal services rendered.

10

Another similar argument asserts that wages are not subject to taxation where individuals have obtained funds in exchange for their time. Under this theory, wages are not taxable because the Code does not specifically tax these so-called "time reimbursement transactions." Some individuals or groups argue that the Sixteenth Amendment to the United States Constitution did not authorize a tax on wages and salaries, but only on gain or profit.

**The Law:** For federal income tax purposes, "gross income" means all income from whatever source derived and includes compensation for services. I.R.C. § 61. Any income, from whatever source, is presumed to be income under section 61, unless the taxpayer can establish that it is specifically exempted or excluded. See Reese v. United States, 24 F.3d 228, 231 (Fed. Cir. 1994) (stating that "an abiding principle of federal tax law is that, absent an enumerated exception, gross income means all income from whatever source derived."). The IRS advised taxpayers that wages and other compensation received in exchange for personal services are taxable income and warned of the consequences of making frivolous arguments to the contrary. Rev. Rul. 2007-19, 2007-1 C.B. 843.

Section 1341 and the court opinions interpreting it require taxpayers to return funds previously reported as income before they can claim a deduction under claim of right. To have the right to a deduction, the taxpayer should appear to have an unrestricted right to the income in question. See Dominion Resources, Inc. v. United States, 219 F.3d 359 (4th Cir. 2000). The IRS warned taxpayers of the consequences of making the frivolous claim to the section 1341 deduction when there has been no repayment by the taxpayer of an amount previously reported as income. Rev. Rul. 2004-29, 2004-1 C.B. 627.

The Sixteenth Amendment provides that Congress shall have the power to lay and collect taxes on income, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration. U.S. Const. amend. XVI. Furthermore, the United States Supreme Court upheld the constitutionality of the income tax laws enacted subsequent to ratification of the Sixteenth Amendment. Brushaber v. Union Pacific R.R., 240 U.S. 1 (1916). Since that time, the courts have consistently upheld the constitutionality of the federal income tax. For a further discussion of the constitutionality of the federal income tax laws, see section I.D. of this outline.

All compensation for personal services, no matter what the form of payment, must be included in gross income. This includes salary or wages paid in cash, as well as the value of property and other economic benefits received because of services performed, or to be performed in the future. Criminal and civil penalties have been imposed against individuals who rely upon this frivolous argument.

11

Though a handful of taxpayers who were criminally charged with violations of the internal revenue laws avoided conviction, taxpayers should not mistake these few cases for an indication that frivolous positions that lead to criminal acquittals are legitimate or that the outcome of other cases will protect a taxpayer from sanctions resulting from noncompliance. While a few defendants have prevailed, the vast majority are convicted. Furthermore, even if a taxpayer is acquitted of criminal charges of noncompliance with Federal tax laws, the IRS may pursue any underlying tax liability and is not barred from determining civil penalties. See Helvering v. Mitchell, 303 U.S. 391 (1938); Price v. Commissioner, T.C. Memo. 1996-204.

**Relevant Case Law:**

Cheek v. United States, 498 U.S. 192 (1991) – the Supreme Court reversed and remanded Cheek's conviction of willfully failing to file federal income tax returns and willfully attempting to evade income taxes solely on the basis of erroneous jury instructions. The Court noted, however, that Cheek's argument that he should be acquitted because he believed in good faith that the income tax law is unconstitutional "is unsound, not because Cheek's constitutional arguments are not objectively reasonable or frivolous, which they surely are, but because the [law regarding willfulness in criminal cases] does not support such a position." Id. On remand, Cheek was convicted on all counts and sentenced to jail for a year and a day. Cheek v. United States, 3 F.3d 1057 (7th Cir. 1993), cert. denied, 510 U.S. 1112 (1994).

Commissioner v. Kowalski, 434 U.S. 77 (1977) – the Supreme Court found that payments are considered income where the payments are undeniably accessions to wealth, clearly realized, and over which a taxpayer has complete dominion.

Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-30 (1955) – referring to the statute's words "income derived from any source whatever," the Supreme Court stated, "this language was used by Congress to exert in this field 'the full measure of its taxing power.' . . . And the Court has given a liberal construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted."

United States v. Sloan, 939 F.2d 499, 500 (7th Cir. 1991), cert. denied, 502 U.S. 1060 (1992) – in rejecting the taxpayer's argument that the revenue laws of the United States do not impose a tax on income, the court recognized the "Internal Revenue Code imposes a tax on all income."

12

United States v. Connor, 898 F.2d 942, 943-44 (3d Cir. 1990), cert. denied, 497 U.S. 1029 (1990) – the court stated that "[e]very court which has ever considered the issue has unequivocally rejected the argument that wages are not income."

Stelly v. Commissioner, 761 F.2d 1113, 1115-16 (5th Cir. 1985), cert. denied, 474 U.S. 851 (1985) – the court imposed double costs and attorney's fees on the taxpayers for bringing a frivolous appeal and rejected the taxpayers' argument that taxing wage and salary income is a violation of the constitution because compensation for labor is an exchange rather than gain.

United States v. Richards, 723 F.2d 646, 648 (8th Cir. 1983) – the court upheld conviction and fines imposed for willfully failing to file tax returns, stating that the taxpayer's contention that wages and salaries are not income within the meaning of the Sixteenth Amendment is "totally lacking in merit."

Lonsdale v. Commissioner, 661 F.2d 71, 72 (5th Cir. 1981) – the court rejected as "meritless" the taxpayer's contention that the "exchange of services for money is a zero-sum transaction . . . ."

United States v. Romero, 640 F.2d 1014, 1016 (9th Cir. 1981) – the court affirmed Romero's conviction for willfully failing to file tax returns stating that "Romero's proclaimed belief that he was not a 'person' and that the wages he earned as a carpenter were not 'income' is fatuous as well as obviously incorrect."

Callahan v. Commissioner, 334 F. App'x 754 (7th Cir. 2009) – the court rejected the petitioner's argument that only "the gain from wages" (not the wages themselves) is taxable and characterized the argument as "beyond frivolous."

Sumter v. United States, 61 Fed. Cl. 517, 523 (2004) – the court found the taxpayer's "claim of right" argument "devoid of any merit" and that section 1341 only applies to situations in which the claimant is compelled to return the taxed item because of a mistaken presumption that the right held was unrestricted and, thus, the item was previously reported, erroneously, as taxable income. Section 1341 was inapplicable to Ms. Sumter, because she had a continuing, unrestricted claim of right to her salary income and had not been compelled to repay that income in a later tax year.

Carskadon v. Commissioner, T.C. Memo. 2003-237, 86 T.C.M. (CCH) 234, 236 (2003) – the court rejected the taxpayer's frivolous argument that "wages are not taxable because the Code, which states what is taxable, does not specifically state that 'time reimbursement transactions,' a term of art coined by [taxpayers], are taxable." The court imposed a $2,000

13

penalty against the taxpayers for raising "only frivolous arguments which can be characterized as tax protester rhetoric."

**Other Cases:**

United States v. Becker, 965 F.2d 383, 389 (7th Cir. 1992), cert. denied, 507 U.S. 971 (1993); United States v. White, 769 F. 2d 511 (8th Cir. 1985); O'Brien v. Commissioner, No. 11736-10L, slip op., 2012 WL 5935675 (T.C. Memo. 2012); United States v. Reading, No. CV 11-00698-PHX-FJM, slip op., 2012 WL 4120439 (D. Ariz. 2012); Abdo v. United States, 234 F.Supp.2d 553 (M.D.N.C. 2002), aff'd, 63 F. App'x 163 (4th Cir. 2003), cert. denied, 540 U.S. 1120 (2004); Abrams v. Commissioner, 82 T.C. 403, 413 (1984); Reading v. Commissioner, 70 T.C. 730 (1978), aff'd, 614 F.2d 159 (8th Cir. 1980); Pugh v. Commissioner, T.C. Memo. 2009-138, 97 T.C.M. (CCH) 1791 (2009); Wheelis v. Commissioner, T.C. Memo. 2002-102, 83 T.C.M. (CCH) 1543-45 (2002), aff'd, 63 F. App'x 375 (9th Cir. 2003); Cullinane v. Commissioner, T.C. Memo. 1999-2, 77 T.C.M. (CCH) 1192, 1193 (1999).

## 2. Contention: Only foreign-source income is taxable.

Some individuals and groups maintain that there is no federal statute imposing a tax on income derived from sources within the United States by citizens or residents of the United States. They argue instead that federal income taxes are excise taxes imposed only on nonresident aliens and foreign corporations for the privilege of receiving income from sources within the United States. The premise for this argument is a misreading of sections 861, et seq., and 911, et seq., as well as the regulations under those sections. These frivolous assertions are contrary to well-established legal precedent.

**The Law:** As stated above, for federal income tax purposes, "gross income" means all income from whatever source derived and includes compensation for services. I.R.C. § 61. Further, Treas. Reg. § 1.1-1(b) provides, "[i]n general, all citizens of the United States, wherever resident, and all resident alien individuals are liable to the income taxes imposed by the Code whether the income is received from sources within or without the United States." Sections 861 and 911 define the sources of income (U.S. versus non-U.S. source income) for such purposes as the prevention of double taxation of income that is subject to tax by more than one country. These sections neither specify whether income is taxable nor determine or define gross income.

The IRS warned taxpayers of the consequences of making these frivolous arguments. Rev. Rul. 2004-28, 2004-1 C.B. 624 (discussing section 911); Rev. Rul. 2004-30, 2004-1 C.B. 622 (discussing section 861).

**Relevant Case Law:**

14

United States v. Ambort, 405 F.3d 1109 (10th Cir. 2005) – the court affirmed the conviction and 108-month sentence of Ernest G. Ambort for willfully aiding and assisting in the preparation of false income tax returns, specifically the seminars he conducted during which he falsely instructed the attendees that they could claim to be nonresident aliens with no domestic-source income, regardless of place of birth, so that they were exempt from most federal income taxes

Great-West Life Assurance Co. v. United States, 678 F.2d 180, 183 (Ct. Cl. 1982) – the court stated that "[t]he determination of where income is derived or 'sourced' is generally of no moment to either United States citizens or United States corporations, for such persons are subject to tax under sections 1 and 11, respectively, on their worldwide income."

Takaba v. Commissioner, 119 T.C. 285, 295 (2002) – the court rejected the taxpayer's argument that income received from sources within the United States is not taxable income, stating that "[t]he 861 argument is contrary to established law and, for that reason, frivolous." The court imposed sanctions against the taxpayer in the amount of $15,000, as well as sanctions against the taxpayer's attorney in the amount of $10,500, for making such groundless arguments.

Corcoran v. Commissioner, T.C. Memo. 2002-18, 83 T.C.M. (CCH) 1108, 1110 (2002), aff'd, 54 F. App'x 254 (9th Cir. 2002), cert. denied, 538 U.S. 1036 (2003) – the court rejected the taxpayers' argument that their income was not from any of the sources in Treas. Reg. § 1.861-8(f), stating that the "source rules [of sections 861 through 865] do not exclude from U.S. taxation income earned by U.S. citizens from sources within the United States." The court further required the taxpayers to pay a $2,000 penalty under section 6673(a)(1) because "they . . . wasted limited judicial and administrative resources."

Williams v. Commissioner, 114 T.C. 136, 138 (2000) – the court rejected the taxpayer's argument that his income was not from any of the sources listed in Treas. Reg. § 1.861-8(a), characterizing it as "reminiscent of tax-protester rhetoric that has been universally rejected by this and other courts."

**Other Cases:**

Hillecke v. United States, 2009 WL 2015009, 2009-2 U.S.T.C. ¶ 50,481 (D. Or. Jun. 30, 2009); United States v. Thompson, 2009 WL 1531571, 103 A.F.T.R.2d (RIA) 2009-2421 (E.D. Cal. May 28, 2009); Rodriguez v. Commissioner, T.C. Memo. 2009-92, 97 T.C.M. (CCH) 1482 (2009); Madge v. Commissioner, T.C. Memo. 2000-370, 80 T.C.M. (CCH) 804 (2000), aff'd, 23 F. App'x 604 (8th Cir. 2001), cert. denied, 537 U.S. 825 (2002); Aiello v. Commissioner, T.C. Memo. 1995-40, 69 T.C.M. (CCH)

15

1765 (1995); Solomon v. Commissioner, T.C. Memo. 1993-509, 66 T.C.M. (CCH) 1201, 1202 (1993), aff'd, 42 F.3d 1391 (7th Cir. 1994).

### 3. Contention: Federal Reserve Notes are not income.

Proponents of this contention assert that Federal Reserve Notes currently used in the United States are not valid currency and cannot be taxed because Federal Reserve Notes are not gold or silver and may not be exchanged for gold or silver. This argument misinterprets Article I, Section 10 of the United States Constitution. The courts have rejected this argument on numerous occasions.

**The Law:** Congress is empowered "[t]o coin Money, regulate the value thereof, and of foreign coin, and fix the Standard of weights and measures." U.S. Const. Art. I, § 8, cl. 5. Article I, Section 10 of the Constitution prohibits the states from declaring as legal tender anything other than gold or silver, but does not limit Congress' power to declare the form of legal tender. See 31 U.S.C. § 5103; 12 U.S.C. § 411. In an opinion affirming a conviction for willfully failing to file a return and rejecting the argument that Federal Reserve Notes are not subject to taxation, the court stated that "Congress has declared federal reserve notes legal tender . . . and federal reserve notes are taxable dollars." United States v. Rifen, 577 F.2d 1111, 1112 (8th Cir. 1978).

**Relevant Case Law:**

Sanders v. Freeman, 221 F.3d 846, 855 (6th Cir. 2000), cert. denied, 531 U.S. 1014 (2000) – finding that the defendant's argument "that imposing sales tax on the sale of legal-tender silver and gold coins unconstitutionally interferes with Congress's exclusive power to coin money is simply untenable," the court recognized that "most, if not all, of the courts that have considered this issue have held that imposing sales tax on the purchase of gold and silver coins and bullion for cash does not infringe on Congress's constitutional power to coin and regulate currency."

United States v. Condo, 741 F.2d 238, 239 (9th Cir. 1984), cert. denied, 469 U.S. 1164 (1985) – the court upheld the taxpayer's criminal conviction, rejecting as "frivolous" the argument that Federal Reserve Notes are not valid currency, cannot be taxed, and are merely "debts."

Jones v. Commissioner, 688 F.2d 17 (6th Cir. 1982) – the court found the taxpayer's claim that his wages were paid in "depreciated bank notes" as clearly without merit and affirmed the Tax Court's imposition of an addition to tax for negligence or intentional disregard of rules and regulations.

United States v. Rickman, 638 F.2d 182, 184 (10th Cir. 1980) – the court affirmed the conviction for willfully failing to file a return and rejected the taxpayer's argument that "the Federal Reserve Notes in which he was

16

paid were not lawful money within the meaning of Art. 1, § 8, United States Constitution."

United States v. Daly, 481 F.2d 28, 30 (8th Cir. 1973), cert. denied, 414 U.S. 1064 (1973) – the court rejected as "clearly frivolous" the assertion "that the only 'Legal Tender Dollars' are those which contain a mixture of gold and silver and that only those dollars may be constitutionally taxed" and affirmed Daly's conviction for willfully failing to file a return.

**Other Cases:**

United States v. Davenport, 824 F.2d 1511, 1521 (7th Cir. 1987).

### 4.  Contention:  Military retirement pay does not constitute income.

Eligible retired United States military personnel may receive military retirement pay (MRP) from the agency responsible for disbursing these payments, the Defense Finance and Accounting Service (DFAS).  Some individuals attempt to claim MRP does not constitute income for federal income tax purposes.

**The Law:**  The Tax Code defines gross income as "all income from whatever source derived, including . . . pensions." I.R.C. § 61(a)(11). Military retirement pay is pension income within the meaning of section 61. Wheeler v. Commissioner, 127 T.C. 200, 205 n.11 (2006), aff'd 521 F.3d 1289 (10th Cir. 2008); see also Eatinger v. Commissioner, T.C. Memo. 1990-310.

**Relevant Case Law:**

Wheeler v. Commissioner, T.C. Memo. 2010-188 – after ruling multiple filings from taxpayer were frivolous and warning taxpayer to stop making such arguments, Tax Court imposed a $25,000 penalty under section 6673(a)(1) because taxpayer continued to make the argument that his military retirement pay was not income and that he did not need to file federal income tax returns.

Mathews v. Commissioner, T.C. Memo. 2010-226 – Tax Court held that a military veteran's retirement pay was includable in gross income, that he was subject to additions to tax for failure to file and pay taxes, and imposed a $500 penalty for "frivolous" arguments intended to delay the proceedings under section 6673(a)(1).  Taxpayer had argued that his military retirement pay, including an amount garnished by the state for child support, was not income.

17

## C. The Meaning of Certain Terms Used in the Internal Revenue Code

### 1. Contention: Taxpayer is not a "citizen" of the United States, and thus is not subject to the federal income tax laws.

Some individuals argue that they have rejected citizenship in the United States in favor of state citizenship; therefore, they are relieved of their federal income tax obligations. A variation of this argument is that a person is a free born citizen of a particular state and thus was never a citizen of the United States. The underlying theme of these arguments is the same: the person is not a United States citizen and is not subject to federal tax laws because only United States citizens are subject to these laws.

**The Law:** The Fourteenth Amendment to the United States Constitution defines the basis for United States citizenship, stating that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." The Fourteenth Amendment therefore establishes simultaneous state and federal citizenship. Claims that individuals are not citizens of the United States but are solely citizens of a sovereign state and not subject to federal taxation have been uniformly rejected by the courts. The IRS warned taxpayers of the consequences of making this frivolous argument. Rev. Rul. 2007-22, 2007-1 C.B. 866.

**Relevant Case Law:**

United States v. Bowden, 402 F. App'x 967 (5th Cir. 2010) – in denying an appeal of a sentence for tax evasion, the court rejected the taxpayer's argument that he was a sovereign and not subject to the laws of the United States.

United States v. Drachenberg, 623 F.3d 122 (2d Cir. 2010) – the court affirmed the conviction of Drachenberg for tax evasion and conspiracy to defraud the United States and rejected his argument that the federal courts lacked jurisdiction because he was not a citizen of the United States.

United States v. Hilgeford, 7 F.3d 1340, 1342 (7th Cir. 1993) – the court rejected "shop worn" argument that defendant is a citizen of the "Indiana State Republic" and therefore an alien beyond the jurisdictional reach of the federal courts.

United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993), cert. denied, 510 U.S. 1193 (1994) – the court rejected the Gerads' contention that they were "not citizens of the United States, but rather 'Free Citizens of the Republic of Minnesota' and, consequently, not subject to taxation"

18

and imposed sanctions "for bringing this frivolous appeal based on discredited, tax-protester arguments."

United States v. Sloan, 939 F.2d 499, 500 (7th Cir. 1991), cert. denied, 502 U.S. 1060, reh'g denied, 503 U.S. 953 (1992) – the court affirmed a tax evasion conviction and rejected Sloan's argument that the federal tax laws did not apply to him because he was a "freeborn, natural individual, a citizen of the State of Indiana, and a 'master' – not 'servant' – of his government."

United States v. Ward, 833 F.2d 1538, 1539 (11th Cir. 1987), cert. denied, 485 U.S. 1022 (1988) – the court found Ward's contention that he was not an "individual" located within the jurisdiction of the United States to be "utterly without merit" and affirmed his conviction for tax evasion.

Kay v. Commissioner, T.C. Memo. 2010-59 – the court imposed a $500 penalty under section 6673(a) for raising frivolous arguments in the proceeding, including that the petitioner "was not born a [U.S.] taxpayer" and that the United States may not tax him because "the United States is a corporation" to which he holds no "allegiance."

**Other Cases:**

Carlson v. Commissioner, T.C. Memo. 2012-76, 103 T.C.M. (CCH) 1408 (2012); United States v. Sileven, 985 F.2d 962 (8th Cir. 1993); O'Driscoll v. IRS, 1991 U.S. Dist. LEXIS 9829, at *5-6 (E.D. Pa. Jul. 16, 1991); Callahan v. Commissioner, T.C. Memo. 2010-201, 100 T.C.M. (CCH) 225 (2010); Rice v. Commissioner, T.C. Memo. 2009-169, 98 T.C.M. (CCH) 40 (2009); Knittel v. Commissioner, T.C. Memo. 2009-149, 97 T.C.M. (CCH) 1837 (2009); Bland-Barclay v. Commissioner, T.C. Memo. 2002-20, 83 T.C.M. (CCH) 1119, 1121 (2002); Marsh v. Commissioner, T.C. Memo 2000-11, 79 T.C.M. (CCH) 1327 (2000), aff'd, 23 F. App'x 874 (9th 2002), cert. denied, 537 U.S. 1029 (2002); Solomon v. Commissioner, T.C. Memo. 1993-509, 66 T.C.M. (CCH) 1201, 1202-03 (1993), aff'd 42 F.3d 1391 (7th Cir. 1994).

### 2. Contention: The "United States" consists only of the District of Columbia, federal territories, and federal enclaves.

Some individuals and groups argue that the United States consists only of the District of Columbia, federal territories (e.g., Puerto Rico, Guam, etc.), and federal enclaves (e.g., American Indian reservations, military bases, etc.) and does not include the "sovereign" states. According to this argument, if a taxpayer does not live within the "United States," as so defined, he is not subject to the federal tax laws.

**The Law:** The Internal Revenue Code imposes a federal income tax upon all United States citizens and residents, not just those who reside in the

19

District of Columbia, federal territories, and federal enclaves. The United States Supreme Court has "recognized that the sixteenth amendment authorizes a direct nonapportioned tax upon United States citizens throughout the nation, not just in federal enclaves." United States v. Collins, 920 F.2d 619, 629 (10th Cir. 1990) (citing Brushaber v. Union Pac. R.R., 240 U.S. 1, 12-19 (1916)), cert. denied, 500 U.S. 920 (1991). This frivolous contention has been uniformly rejected by the courts, and the IRS warned taxpayers of the consequences of making this frivolous argument. Rev. Rul. 2006-18, 2006-1 C.B. 743.

**Relevant Case Law:**

United States v. Cooper, 170 F.3d 691, 691 (7th Cir. 1999) – the court sanctioned defendant for filing a frivolous appeal wherein he argued that only residents of Washington, D.C. and other federal enclaves are subject to the federal tax laws because they alone are citizens of the United States.

United States v. Mundt, 29 F.3d 233, 237 (6th Cir. 1994) – the court rejected the "patently frivolous" argument that defendant was not a resident of any "federal zone" and therefore not subject to federal income tax laws.

In re Becraft, 885 F.2d 547, 549-50 (9th Cir. 1989) – the court imposed monetary damages on Becraft, an attorney, based on his advocacy of frivolous claims, such as that federal laws apply only to United States territories and the District of Columbia, which the court found had "no semblance of merit."

United States v. Ward, 833 F.2d 1538, 1539 (11th Cir. 1987), cert. denied, 485 U.S. 1022 (1988) – the court rejected as a "twisted conclusion" the contention "that the United States has jurisdiction over only Washington, D.C., the federal enclaves within the states, and the territories and possessions of the United States," and affirmed a conviction for tax evasion.

Wnuck v. Commissioner, 136 T.C. 498 (2011) – the court described in detail why this argument (based on a misreading of an employment tax provision that includes Puerto Rico, the Virgin Islands, Guam, and American Samoa within the term "United States") is frivolous and imposed a $5,000 penalty under section 6673 for maintaining this and other frivolous arguments.

**Other Cases:**

Holmes v. Commissioner, T.C. Memo. 2010-42, 99 T.C.M. (CCH) 1165 (2010); Barcroft v. Commissioner, T.C. Memo. 1997-5, 73 T.C.M. (CCH) 1666, 1667 (1997).

20

### 3. Contention: Taxpayer is not a "person" as defined by the Internal Revenue Code, thus is not subject to the federal income tax laws.

Some individuals and groups maintain that they are not a "person" as defined by the Internal Revenue Code, and thus not subject to the federal income tax laws. This argument is based on a tortured misreading of the Code.

**The Law:** The Internal Revenue Code clearly defines "person" and sets forth which persons are subject to federal taxes. Section 7701(a)(14) defines "taxpayer" as any person subject to any internal revenue tax and section 7701(a)(1) defines "person" to include an individual, trust, estate, partnership, or corporation. Arguments that an individual is not a "person" within the meaning of the Internal Revenue Code have been uniformly rejected. A similar argument with respect to the term "individual" has also been rejected. The IRS warned taxpayers of the consequences of making this frivolous argument. Rev. Rul. 2007-22, 2007-1 C.B. 866.

**Relevant Case Law:**

*United States v. Karlin*, 785 F.2d 90, 91 (3d Cir. 1986), cert. denied, 480 U.S. 907 (1987) – the court affirmed Karlin's conviction for failure to file income tax returns and rejected his contention that he was "not a 'person' within meaning of 26 U.S.C. § 7203" as "frivolous and requir[ing] no discussion."

*United States v. Studley*, 783 F.2d 934, 937 n.3 (9th Cir. 1986) – in affirming a conviction for failure to file income tax returns, the court rejected the taxpayer's contention that she was not subject to federal tax laws because she was "an absolute, freeborn, and natural individual" and noted that "this argument has been consistently and thoroughly rejected by every branch of the government for decades."

*Biermann v. Commissioner*, 769 F.2d 707, 708 (11th Cir. 1985), reh'g denied, 775 F.2d 304 (11th Cir. 1985) – the court said the claim that Biermann was not "a person liable for taxes" was "patently frivolous," and given the Tax Court's warning to Biermann that his positions would never be sustained in any court, awarded the government double costs plus attorney's fees.

*Smith v. Commissioner*, T.C. Memo. 2000-290, 80 T.C.M. (CCH) 377, 378-89 (2000) – the court described the argument that Smith "is not a 'person liable' for tax" as frivolous, sustained failure to file penalties, and imposed a penalty for maintaining "frivolous and groundless positions."

**Other Cases:**

21

McCoy v. Internal Revenue Service, 2001 U.S. Dist. LEXIS 15113, at *21, 22, 88 A.F.T.R.2d (RIA) 5909 (D. Col. Aug. 7, 2001); United States v. Rhodes, 921 F. Supp. 261, 264 (M.D. Pa. 1996).

### 4. Contention: The only "employees" subject to federal income tax are employees of the federal government.

This contention asserts that the federal government can tax only employees of the federal government; therefore, employees in the private sector are immune from federal income tax liability. This argument is based on a misinterpretation of section 3401, which imposes responsibilities to withhold tax from "wages." That section establishes the general rule that "wages" include all remuneration for services performed by an employee for his employer. Section 3401(c) goes on to state that the term "employee" includes "an officer, employee, or elected official of the United States, a State, or any political subdivision thereof . . . ."

**The Law:** Section 3401(c) defines "employee" and states that the term "includes an officer, employee or elected official of the United States . . . ." This language does not address how other employees' wages are subject to withholding or taxation. Section 7701(c) states that the use of the word "includes" "shall not be deemed to exclude other things otherwise within the meaning of the term defined." Thus, the word "includes" as used in the definition of "employee" is a term of enlargement, not of limitation. It makes federal employees and officials a part of the definition of "employee," which generally includes private citizens. The IRS warned taxpayers of the consequences of making this frivolous argument. Rev. Rul. 2006-18, 2006-1 C.B. 743.

**Relevant Case Law:**

Montero v. Commissioner, 354 F. App'x 173 (5th Cir. 2009) – the court affirmed a $20,000 section 6673(a) penalty against the petitioner for advancing frivolous arguments that he is not an employee earning wages as defined by sections 3121 and 3401.

Sullivan v. United States, 788 F.2d 813, 815 (1st Cir. 1986) – the court imposed sanctions on the taxpayer for bringing a frivolous appeal and rejected his attempt to recover a civil penalty for filing a frivolous return, stating "to the extent [he] argues that he received no 'wages'. . . because he was not an 'employee' within the meaning of 26 U.S.C. § 3401(c), that contention is meritless. . . . The statute does not purport to limit withholding to the persons listed therein."

United States v. Latham, 754 F.2d 747, 750 (7th Cir. 1985) – calling the instructions the taxpayer wanted given to the jury "inane," the court said, "[the] instruction which indicated that under 26 U.S.C. § 3401(c) the category of 'employee' does not include privately employed wage earners

22

is a preposterous reading of the statute. It is obvious within the context of [the law] the word 'includes' is a term of enlargement not of limitation, and the reference to certain entities or categories is not intended to exclude all others."

<u>United States v. Hendrickson</u>, 100 A.F.T.R.2d (RIA) 2007-5395, 2007 WL 2385071 (E.D. Mich. May 2, 2007) – the court permanently barred Peter and Doreen Hendrickson, who filed tax returns on which they falsely reported their income as zero, from filing tax returns and forms based on frivolous claims in Hendrickson's book, "Cracking the Code," that only federal, state, or local government workers are liable for federal income tax or subject to the withholding of federal taxes.

**Other Cases:**

<u>Peth v. Breitzmann</u>, 611 F. Supp. 50, 53 (E.D. Wis. 1985); <u>Pabon v. Commissioner</u>, T.C. Memo. 1994-476, 68 T.C.M. (CCH) 813, 816 (1994).

## D. Constitutional Amendment Claims

### 1. Contention: Taxpayers can refuse to pay income taxes on religious or moral grounds by invoking the First Amendment.

Some individuals or groups claim that taxpayers may refuse to pay federal income taxes based on their religious or moral beliefs, or an objection to the use of taxes to fund certain government programs. These persons mistakenly invoke the First Amendment in support of this frivolous position.

**The Law:** The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The First Amendment, however, does not provide a right to refuse to pay income taxes on religious or moral grounds or because taxes are used to fund government programs opposed by the taxpayer. The First Amendment does not protect commercial speech or speech that aids or incites taxpayers to unlawfully refuse to pay federal income taxes, including speech that promotes abusive tax avoidance schemes.

**Relevant Case Law:**

<u>United States v. Lee</u>, 455 U.S. 252, 260 (1982) – the Supreme Court held that the broad public interest in maintaining a sound tax system is of such importance that religious beliefs in conflict with the payment of taxes provide no basis for refusing to pay, and stated that "[t]he tax system could not function if denominations were allowed to challenge the tax

23

system because tax payments were spent in a manner that violates their religious belief."

Jenkins v. Commissioner, 483 F.3d 90, 92 (2d Cir. 2007), cert. denied, 552 U.S. 821 (2007) – upholding the imposition of a $5,000 frivolous return penalty against the taxpayer, the court held that the collection of tax revenues for expenditures that offended the religious beliefs of individual taxpayers did not violate the Free Exercise Clause of the First Amendment, the Religious Freedom Restoration Act of 1993, or the Ninth Amendment.

United States v. Indianapolis Baptist Temple, 224 F.3d 627, 629-31 (7th Cir. 2000), cert. denied, 531 U.S. 1112 (2001) – the court rejected defendant's Free Exercise challenge to the federal employment tax as those laws were not restricted to the defendant or other religion-related employers generally, and there was no indication that they were enacted for the purpose of burdening religious practices.

Adams v. Commissioner, 170 F.3d 173, 175-82 (3d Cir. 1999) – the court affirmed adjudged tax deficiencies and penalties for failure to file tax returns and pay tax, holding that the Religious Freedom Restoration Act did not require that the federal income tax accommodate Adams' religious beliefs that payment of taxes to fund the military is against the will of God, and that her beliefs did not constitute reasonable cause for purposes of the penalties.

United States v. Ramsey, 992 F.2d 831, 833 (8th Cir. 1993) – the court rejected Ramsey's argument that filing federal income tax returns and paying federal income taxes violates his pacifist religious beliefs and stated that Ramsey "has no First Amendment right to avoid federal income taxes on religious grounds."

Wall v. United States, 756 F.2d 52 (8th Cir. 1985) – the court upheld the imposition of a $500 frivolous return penalty against Wall for taking a "war tax deduction" on his federal income tax return based on his religious convictions and stated the "necessities of revenue collection through a sound tax system raise governmental interests sufficiently compelling to outweigh the free exercise rights of those who find the tax objectionable on bona fide religious grounds."

United States v. Peister, 631 F.2d 658, 665 (10th Cir. 1980), cert. denied, 449 U.S. 1126 (1981) – the court rejected Peister's argument that he was exempt from income tax based on his vow of poverty after he became the minister of a church he formed and found his First Amendment right to freedom of religion was not violated.

24

2. **Contention: Federal income taxes constitute a "taking" of property without due process of law, violating the Fifth Amendment.**

Some individuals or groups assert that the collection of federal income taxes constitutes a "taking" of property without due process of law, in violation of the Fifth Amendment. Thus, any attempt by the IRS to collect federal income taxes owed by a taxpayer is unconstitutional.

**The Law:** The Fifth Amendment to the United States Constitution provides that a person shall not be "deprived of life, liberty, or property, without due process of law . . . ." The United States Supreme Court stated that "it is . . . well settled that [the Fifth Amendment] is not a limitation upon the taxing power conferred upon Congress by the Constitution; in other words, that the Constitution does not conflict with itself by conferring, upon the one hand, a taxing power, and taking the same power away, on the other, by the limitations of the due process clause." Brushaber v. Union Pacific R.R., 240 U.S. 1, 24 (1916). Further, the Supreme Court has upheld the constitutionality of the summary administrative procedures contained in the Internal Revenue Code against due process challenges, on the basis that a post-collection remedy (e.g., a tax refund suit) exists and is sufficient to satisfy the requirements of constitutional due process. Phillips v. Commissioner, 283 U.S. 589, 595-97 (1931).

The Internal Revenue Code provides methods to ensure due process to taxpayers: (1) the "refund method," set forth in section 7422(e) and 28 U.S.C. §§ 1341 and 1346(a), where a taxpayer must pay the full amount of the tax and then sue in a federal district court or in the United States Court of Federal Claims for a refund; and (2) the "deficiency method," set forth in section 6213(a), where a taxpayer may, without paying the contested tax, petition the United States Tax Court to redetermine a tax deficiency asserted by the IRS. Courts have found that both methods provide constitutional due process.

The IRS discussed this frivolous argument in more detail and warned taxpayers of the consequences of attempting to pursue a claim on these grounds. Rev. Rul. 2005-19, 2005-1 C.B. 819.

For a discussion of frivolous tax arguments made in collection due process cases arising under sections 6320 and 6330, see Section II of this outline.

**Relevant Case Law:**

Flora v. United States, 362 U.S. 145, 175 (1960) – the Supreme Court held that a taxpayer must pay the full tax assessment before being able to file a refund suit in district court, noting that a person has the right to appeal an assessment to the Tax Court "without paying a cent."

25

Schiff v. United States, 919 F.2d 830 (2d Cir. 1990), cert. denied, 501 U.S. 1238 (1991) – the court rejected a due process claim where the taxpayer chose not to avail himself of the opportunity to appeal a deficiency notice to the Tax Court.

3. **Contention: Taxpayers do not have to file returns or provide financial information because of the protection against self-incrimination found in the Fifth Amendment.**

Some individuals or groups claim that taxpayers may refuse to file federal income tax returns, or may submit tax returns on which they refuse to provide any financial information, because they believe that their Fifth Amendment privilege against self-incrimination will be violated.

**The Law:** There is no constitutional right to refuse to file an income tax return on the ground that it violates the Fifth Amendment privilege against self-incrimination. As the Supreme Court has stated, a taxpayer cannot "draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government blank would bring him into danger of the law." United States v. Sullivan, 274 U.S. 259, 264 (1927). The failure to comply with the filing and reporting requirements of the federal tax laws will not be excused based upon blanket assertions of the constitutional privilege against compelled self-incrimination under the Fifth Amendment.

The IRS discussed this frivolous argument in more detail and warned taxpayers of the consequences of attempting to pursue a claim on these grounds. Rev. Rul. 2005-19, 2005-1 C.B. 819.

**Relevant Case Law:**

Sochia v. Commissioner, 23 F.3d 941 (5th Cir. 1994), cert. denied, 513 U.S. 1153 (1995) – the court affirmed tax assessments and penalties for failure to file returns, failure to pay taxes, and filing a frivolous return and imposed sanctions for pursuing a frivolous case because the taxpayers claimed a Fifth Amendment privilege on each line calling for financial information, rather than provide any information on their tax return about income and expenses.

United States v. Neff, 615 F.2d 1235, 1241 (9th Cir. 1980), cert. denied, 447 U.S. 925 (1980) – the court affirmed a failure to file conviction, noting that the taxpayer "did not show that his response to the tax form questions would have been self-incriminating. He cannot, therefore, prevail on his Fifth Amendment claim."

United States v. Schiff, 612 F.2d 73, 83 (2d Cir. 1979) – the court said that "the Fifth Amendment privilege does not immunize all witnesses from testifying. Only those who assert as to each particular question that the

26

answer to that question would tend to incriminate them are protected . . . .
[T]he questions in the income tax return are neutral on their face . . .
[h]ence privilege may not be claimed against all disclosure on an income
tax return."

United States v. Brown, 600 F.2d 248, 252 (10th Cir. 1979), cert. denied,
444 U.S. 917 (1979) – the court held Brown made "an illegal effort to
stretch the Fifth Amendment to include a taxpayer who wishes to avoid
filing a return."

United States v. Daly, 481 F.2d 28, 30 (8th Cir. 1973), cert. denied, 414
U.S. 1064 (1973) – the court affirmed a failure to file conviction, rejecting
the taxpayer's Fifth Amendment claim because of his "error in . . . his
blanket refusal to answer any questions on the returns relating to his
income or expenses."

### 4. Contention: Compelled compliance with the federal income tax laws is a form of servitude in violation of the Thirteenth Amendment.

This argument asserts that the compelled compliance with federal tax laws
is a form of servitude in violation of the Thirteenth Amendment.

**The Law:** The Thirteenth Amendment to the United States Constitution
prohibits slavery within the United States, as well as the imposition of
involuntary servitude, except as punishment for a crime of which a person
shall have been duly convicted. "If the requirements of the tax laws were
to be classed as servitude, they would not be the kind of involuntary
servitude referred to in the Thirteenth Amendment." Porth v. Brodrick, 214
F.2d 925, 926 (10th Cir. 1954) (per curiam). Courts have consistently
found arguments that taxation constitutes a form of involuntary servitude
to be frivolous.

The IRS discussed this frivolous argument in more detail and warned
taxpayers of the consequences of attempting to pursue a claim on these
grounds. Rev. Rul. 2005-19, 2005-1 C.B. 819.

**Relevant Case Law:**

United States v. Drefke, 707 F.2d 978, 983 (8th Cir. 1983), cert. denied
sub nom., Jameson v. United States, 464 U.S. 942 (1983) – the court
affirmed the taxpayer's failure to file conviction and rejected his claim that
the Thirteenth Amendment prohibited his imprisonment because that
amendment "is inapplicable where involuntary servitude is imposed as
punishment for a crime."

Ginter v. Southern, 611 F.2d 1226 (8th Cir. 1979), cert. denied, 446 U.S.
967 (1980) – the court rejected the taxpayer's claim that the Internal

Revenue Code results in involuntary servitude in violation of the Thirteenth Amendment.

Kasey v. Commissioner, 457 F.2d 369 (9th Cir. 1972), cert. denied, 409 U.S. 869 (1972) – the court rejected as without merit the argument that the requirements to keep records and to prepare and file tax returns violated the taxpayers' Fifth Amendment privilege against self-incrimination and amount to involuntary servitude prohibited by the Thirteenth Amendment.

Porth v. Brodrick, 214 F.2d 925, 926 (10th Cir. 1954) – the court described the taxpayer's Thirteenth and Sixteenth Amendment claims as "clearly unsubstantial and without merit," as well as "far-fetched and frivolous."

Wilbert v. IRS (In re Wilbert), 262 B.R. 571, 578 (Bankr. N.D. Ga. 2001) – the court rejected the taxpayer's argument that taxation is a form of involuntary servitude prohibited by the Thirteenth Amendment.

5. **Contention: The federal income tax laws are unconstitutional because the Sixteenth Amendment to the United States Constitution was not properly ratified.**

This argument is based on the premise that all federal income tax laws are unconstitutional because the Sixteenth Amendment was not officially ratified or because the State of Ohio was not properly a state at the time of ratification. Proponents mistakenly believe that the courts have refused to address this issue.

**The Law:** The Sixteenth Amendment provides that Congress shall have the power to lay and collect taxes on income, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration. The Sixteenth Amendment was ratified by forty states, including Ohio (which became a state in 1803; see Bowman v. United States, 920 F. Supp. 623 n.1 (E.D. Pa. 1995) (discussing the 1953 joint Congressional resolution that confirmed Ohio's status as a state retroactive to 1803), and issued by proclamation in 1913. Shortly thereafter, two other states also ratified the Amendment. Under Article V of the Constitution, only three-fourths of the states are needed to ratify an Amendment. There were enough states ratifying the Sixteenth Amendment even without Ohio to complete the number needed for ratification. Furthermore, the United States Supreme Court upheld the constitutionality of the income tax laws enacted subsequent to ratification of the Sixteenth Amendment. Brushaber v. Union Pacific R.R., 240 U.S. 1 (1916). Since that time, the courts have consistently upheld the constitutionality of the federal income tax.

The IRS discussed this frivolous argument in more detail and warned taxpayers of the consequences of attempting to pursue a claim on these grounds. Rev. Rul. 2005-19, 2005-1 C.B. 819.

28

**Relevant Case Law:**

Sochia v. Commissioner, 23 F.3d 941, 944 (5th Cir. 1994), reh'g denied, 32 F.3d 568 (5th Cir. 1994), cert. denied, 513 U.S. 1153 (1995) – the court held that defendant's appeals, which challenged Sixteenth Amendment income tax legislation, were frivolous and warranted sanctions.

Miller v. United States, 868 F.2d 236, 241 (7th Cir. 1989) (per curiam) – the court imposed sanctions on the taxpayer for advancing a "patently frivolous" position and stated, "We find it hard to understand why the long and unbroken line of cases upholding the constitutionality of the sixteenth amendment generally, Brushaber v. Union Pacific Railroad Company . . . and those specifically rejecting the argument advanced in The Law That Never Was, have not persuaded Miller and his compatriots to seek a more effective forum for airing their attack on the federal income tax structure."

United States v. Stahl, 792 F.2d 1438, 1441 (9th Cir. 1986), cert. denied, 479 U.S. 1036 (1987) – the court stated that "the Secretary of State's certification under authority of Congress that the sixteenth amendment has been ratified by the requisite number of states and has become part of the Constitution is conclusive upon the courts" and the court upheld Stahl's conviction for failure to file returns and for making a false statement.

United States v. Foster, 789 F.2d 457 (7th Cir. 1986), cert. denied, 479 U.S. 883 (1986) – the court affirmed the taxpayer's conviction for tax evasion, failing to file a return, and filing a false W-4 statement and rejected his claim that the Sixteenth Amendment was never properly ratified.

Knoblauch v. Commissioner, 749 F.2d 200, 201 (5th Cir. 1984), cert. denied, 474 U.S. 830 (1986) – the court rejected as "totally without merit" the contention that the Sixteenth Amendment was not constitutionally adopted and imposed monetary sanctions against Knoblauch based on the frivolousness of his appeal.

**Other Cases:**

United States v. Benson, 2008 WL 267055 (N.D. Ill. Jan. 10, 2008), aff'd in part, rev'd in part, 561 F.3d 718 (7th Cir. 2009), cert. denied, 130 S. Ct. 759 (2009); United States v. Schulz, 529 F.Supp.2d 341 (N.D.N.Y. 2007), aff'd 517 F.3d 606 (2nd Cir. 2008), cert. denied, 555 U.S. 946 (2008); Stearman v. Commissioner, T.C. Memo. 2005-39, 89 T.C.M. (CCH) 823 (2005), aff'd, 436 F.3d 533 (5th Cir. 2006), cert. denied, 547 U.S. 1207 (2006).

29

**6. Contention: The Sixteenth Amendment does not authorize a direct non-apportioned federal income tax on United States citizens.**

Some individuals and groups assert that the Sixteenth Amendment does not authorize a direct non-apportioned income tax and thus, U.S. citizens and residents are not subject to federal income tax laws.

**The Law:** The constitutionality of the Sixteenth Amendment has invariably been upheld when challenged. Numerous courts have both implicitly and explicitly recognized that the Sixteenth Amendment authorizes a non-apportioned direct income tax on United States citizens and that the federal tax laws are valid as applied.

**Relevant Case Law:**

United States v. Collins, 920 F.2d 619, 629 (10th Cir. 1990) (relying on Brushaber v. Union Pac. R.R., 240 U.S. 1, 12-19 (1916)), cert. denied, 500 U.S. 920 (1991) – the court found defendant's argument that the Sixteenth Amendment does not authorize a direct, non-apportioned tax on United States citizens to be "devoid of any arguable basis in law."

In re Becraft, 885 F.2d 547, 548-49 (9th Cir. 1989) – the court affirmed a failure to file conviction and rejected the taxpayer's frivolous position that the Sixteenth Amendment does not authorize a direct non-apportioned income tax.

Lovell v. United States, 755 F.2d 517, 518-20 (7th Cir. 1984) – the court rejected the argument that the Constitution prohibits imposition of a direct tax without apportionment, upheld assessment of the frivolous return penalty, and imposed sanctions for pursuing "frivolous arguments in bad faith" on top of the lower court's award of attorneys' fees to the government.

Maxwell v. Internal Revenue Service, 103 A.F.T.R.2d (RIA) 2009-1571, 2009 WL 920533 (M.D. Tenn. Apr. 1, 2009) – the court found the taxpayer's arguments have been "routinely rejected," principally, that there is no law that imposes an income tax, nor is there a non-apportioned direct tax that could be imposed on him as a supposed non-citizen.

**Other Cases:**

Broughton v. United States, 632 F.2d 706 (8th Cir. 1980), cert. denied, 450 U.S. 930 (1981); United States v. Hockensmith, 2009 WL 1883521, 104 A.F.T.R.2d 2009-5133 (M.D. Pa. June 30, 2009); Stearman v. Commissioner, T.C. Memo. 2005-39, 89 T.C.M. (CCH) 823 (2005), aff'd, 436 F.3d 533 (5th Cir. 2006), cert. denied, 547 U.S. 1207 (2006).

30

## E. Fictional Legal Bases

### 1. Contention: The Internal Revenue Service is not an agency of the United States.

Some argue that the IRS is not an agency of the United States but rather a private corporation, because it was not created by positive law (i.e., an act of Congress) and that, therefore, the IRS does not have the authority to enforce the Internal Revenue Code.

**The Law:** There is a host of constitutional and statutory authority establishing that the IRS is an agency of the United States. Indeed, the United States Supreme Court has stated "that the Internal Revenue Service is organized to carry out the broad responsibilities of the Secretary of the Treasury under § 7801(a) of the 1954 Code for the administration and enforcement of the internal revenue laws." Donaldson v. United States, 400 U.S. 517, 534 (1971).

Pursuant to section 7801, the Secretary of the Treasury has full authority to administer and enforce the internal revenue laws and has the power to create an agency to enforce such laws. Based upon this legislative grant, the IRS was created. Thus, the IRS is a body established by "positive law" because it was created through a congressionally mandated power. Moreover, section 7803(a) explicitly provides that there shall be a Commissioner of Internal Revenue who shall administer and supervise the execution and application of the internal revenue laws.

**Relevant Case Law:**

United States v. Fern, 696 F.2d 1269, 1273 (11th Cir. 1983) – the court declared "[c]learly, the Internal Revenue Service is a 'department or agency' of the United States."

Salman v. Dept. of Treasury, 899 F.Supp. 471, 472 (D. Nev. 1995) – the court described Salman's contention that the IRS is not a government agency of the United States as "wholly frivolous" and dismissed his claim with prejudice.

Young v. IRS, 596 F.Supp. 141, 147 (N.D. Ind. 1984) – the court granted summary judgment in favor of the government, rejecting Young's claim that the IRS is a private corporation, rather than a government agency.

31

**2. Contention: Taxpayers are not required to file a federal income tax return, because the instructions and regulations associated with the Form 1040 do not display an OMB control number as required by the Paperwork Reduction Act.**

Some individuals and groups claim that taxpayers are not required to file tax returns because of the Paperwork Reduction Act of 1980, 44 U.S.C. § 3501, et seq. ("PRA"). The PRA was enacted to limit federal agencies' information requests that burden the public. The "public protection" provision of the PRA provides that no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved does not display a current control number assigned by the Office of Management and Budget [OMB] Director. 44 U.S.C. § 3512. Advocates of this contention claim that they cannot be penalized for failing to file Form 1040 because the instructions and regulations associated with the Form 1040 do not display any OMB control number.

**The Law:** The courts have uniformly rejected this argument on multiple grounds. Some courts have simply noted that the PRA applies to the forms themselves, not to the instruction booklets, and because the Form 1040 does have a control number, there is no PRA violation. Other courts have held that Congress created the duty to file returns in section 6012(a) and "Congress did not enact the PRA's public protection provision to allow OMB to abrogate any duty imposed by Congress." United States v. Neff, 954 F.2d 698, 699 (11th Cir. 1992).

The IRS warned taxpayers of the consequences of making this frivolous argument. Rev. Rul. 2006-21, 2006-1 C.B. 745.

**Relevant Case Law:**

Dodge v. Commissioner, 317 F. App'x 581 (8th Cir. 2009) – the court treated the taxpayer's argument that the Form 1040 does not comply with the PRA as frivolous.

Wolcott v. Commissioner, 103 A.F.T.R.2d 2009-1300 (6th Cir. 2008) – the court rejected the taxpayer's argument that Form 1040 does not comply with the PRA and imposed sanctions of $4,000 under 12 U.S.C. § 1912 for bringing a frivolous appeal.

United States v. Patridge, 507 F.3d 1092 (7th Cir. 2007), cert. denied, 552 U.S. 1280 (2008), reh'g denied, 553 U.S. 1062 (2008) – in upholding the taxpayer's conviction for tax evasion, the court addressed and rejected the taxpayer's contention that the PRA foreclosed his conviction.

32

Salberg v. United States, 969 F.2d 379 (7th Cir. 1992) – rejecting the taxpayer's claims under the PRA, the court affirmed his conviction for tax evasion and failing to file a return.

United States v. Holden, 963 F.2d 1114 (8th Cir. 1992), cert. denied, 506 U.S. 958 (1992) – the court affirmed the taxpayer's conviction for failing to file a return and rejected his contention that he should have been acquitted because tax instruction booklets fail to comply with the PRA.

United States v. Hicks, 947 F.2d 1356, 1359 (9th Cir. 1991) – the court affirmed the taxpayer's conviction for failing to file a return, finding that the requirement to provide information is required by law, not by the IRS. "This is a legislative command, not an administrative request. The PRA was not meant to provide criminals with an all-purpose escape hatch."

Lonsdale v. United States, 919 F.2d 1440, 1445 (10th Cir. 1990) – the court held that the PRA does not apply to summonses and collection notices.

United States v. Wunder, 919 F.2d 34 (6th Cir. 1990) – the court rejected the taxpayer's claim of a PRA violation and affirmed his conviction for failing to file a return.

**Other Cases:**

Saxon v. United States, T.C. Memo. 2006-52, 91 T.C.M. (CCH) 914 (2006).

### 3. Contention: African Americans can claim a special tax credit as reparations for slavery and other oppressive treatment.

Proponents of this contention assert that African Americans can claim a so-called "Black Tax Credit" on their federal income tax returns as reparations for slavery and other oppressive treatment suffered by African Americans. A similar frivolous argument has been made that Native Americans are entitled to a credit on their federal income tax returns as a form of reparations for past oppressive treatment.

**The Law:** There is no provision in the Internal Revenue Code which allows taxpayers to claim a "Black Tax Credit" or a credit for Native American reparations. It is a well settled principle of law that deductions and credits are a matter of legislative grace. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Unless specifically provided for in the Internal Revenue Code, no deduction or credit may be allowed.

The IRS warned taxpayers of the consequences of claiming refunds or other tax benefits based on frivolous reparations tax credits. Rev. Rul. 2004-33, 2004-1 C.B. 628. Also, with respect to a somewhat similar

argument, the IRS warned taxpayers about the frivolous nature of claiming an exemption for Native Americans from federal income tax liability based upon an unspecified "Native American Treaty." Rev. Rul. 2006-20, 2006-1 C.B. 746.

Persons who claim refunds based on the slavery reparation tax credit or assist others in doing so are subject to prosecution for violation of federal tax laws. Furthermore, the United States has a cause of action for injunctive relief against a party suspected of violating the tax laws. Sections 7407 and 7408 provide for injunctive relief against income tax preparers and promoters of abusive tax shelters, respectively, in these types of cases.

**Relevant Case Law:**

United States v. Bridges, 86 A.F.T.R.2d (RIA) 2000-5280 (4th Cir. 2000) – the court upheld the taxpayer's conviction of aiding and assisting the preparation of false tax returns, on which he claimed a non-existent "Black Tax Credit."

United States v. Foster, 2002 U.S. Dist. LEXIS 3092, 2002-1 U.S.T.C. (CCH) ¶ 50,263 (E.D. Va. 2002), aff'd, 51 F. App'x 915 (4th Cir. 2002) – the court held that the United States clearly established its right to recover an erroneously paid refund in the amount of $500,000, plus interest, where the claim for refund was based on the slavery reparation tax credit.

Taylor v. United States, 57 Fed. Cl. 264, 266 (2003) – the court upheld the IRS's denial of the taxpayer's refund claim, which was based on "being reduced to a second class citizen, but billed first class citizenship taxes for over 60 years," and held that the Internal Revenue Code does not contain a provision allowing slavery reparation claims.

George v. Commissioner, T.C. Memo. 2006-121 – the court rejected the taxpayer's frivolous argument that he is an "Indian not paying taxes," finding that Native Americans are subject to the same federal income tax laws as are other United States citizens, unless there is an exemption created by treaty or statute.

Wilkins v. Commissioner, 120 T.C. 109 (2003) – the court found that the Internal Revenue Code does not provide a tax deduction, credit, or other allowance for slavery reparations.

**Other Cases:**

United States v. Haugabook, 2002 U.S. Dist. LEXIS 25314 (M.D. Ga. Dec. 9, 2002); United States v. Mims, 2002 U.S. Dist. LEXIS 25291 (S.D. Ga. Oct. 3, 2002); United States v. Foster, 2002 U.S. Dist. LEXIS 3092 (E.D. Va. Jan. 16, 2002), aff'd, 51 F. App'x 915 (4th Cir. 2002); Gunton v. Commissioner, T.C. Memo. 2006-122, 91 T.C.M. (CCH) 1261 (2006).

34

**4. Contention: Taxpayers are entitled to a refund of the Social Security taxes paid over their lifetime.**

Proponents of this contention encourage individuals to file claims for refund of the Social Security taxes paid during their lifetime on the basis that the claimants have sought to waive all rights to their Social Security benefits. Additionally, some advise taxpayers to claim a charitable contribution deduction as a result of their "gift" of these benefits or of the Social Security taxes to the United States.

**The Law:** There is no provision in the Internal Revenue Code, or any other provision of law, which allows for a refund of Social Security taxes paid on the grounds asserted above. A person may not claim a charitable contribution deduction based upon the purported waiver of future Social Security benefits. Crouch v. Commissioner, T.C. Memo. 1990-309, 59 T.C.M. (CCH) 938 (1990).

The IRS discussed this frivolous argument in more detail and warned taxpayers of the consequences of attempting to pursue a claim on these grounds. Rev. Rul. 2005-17, 2005-1 C.B. 823.

**5. Contention: An "untaxing" package or trust provides a way of legally and permanently avoiding the obligation to file federal income tax returns and pay federal income taxes.**

Advocates of this idea believe that an "untaxing" package or trust provides a way of legally and permanently "untaxing" oneself so that a person is no longer required to file federal income tax returns and pay federal income taxes. Promoters who sell such tax evasion plans and supposedly teach individuals how to remove themselves from the federal tax system rely on many of the above-described frivolous arguments, such as the claim that payment of federal income taxes is voluntary, that there is no requirement for a person to file federal income tax returns, and that there are legal ways not to pay federal income taxes.

**The Law:** The underlying claims for these "untaxing" packages are frivolous, as specified above. Furthermore, the IRS warned that taxpayers may not eliminate their federal income tax liability by attributing income to a trust and claiming expense deductions related to that trust. Rev. Rul. 2006-19, 2006-1 C.B. 749.

Promoters of these "untaxing" schemes as well as willful taxpayers have been subjected to criminal penalties for their actions. Taxpayers who have purchased and followed these "untaxing" plans have also been subjected to civil penalties for failure to timely file a federal income tax return and failure to pay federal income taxes. Those who promote, advise on, or assist with these schemes can be enjoined from further

carrying out this conduct or may be denied the ability to practice before the IRS.

**Relevant Case Law:**

United States v. Bell, 414 F.3d 474 (3d Cir. 2005) – the court affirmed a permanent injunction against Bell, who sold customers access to materials instructing them on how to use a phony "U.S. Sources rationale" to file income tax returns reporting zero income.

United States v. Andra, 218 F.3d 1106 (9th Cir. 2000) – in affirming the conviction of a promoter of an untaxing scheme for tax evasion and conspiracy, the court found that it was proper to include the tax liabilities of persons Andra recruited into a tax fraud conspiracy when calculating the effect of his actions for sentencing.

United States v. Raymond, 228 F.3d 804, 812 (7th Cir. 2000), cert. denied, 533 U.S. 902 (2001) – the court affirmed a permanent injunction against taxpayers who promoted a "De-Taxing America Program" forbidding them from engaging in certain activities that incited others to violate tax laws. The court said, "[W]e conclude that the statements the appellants made in the Just Say No advertisement were representations concerning the tax benefits of purchasing and following the De-Taxing America Program that the appellants reasonably should have known were false."

United States v. Clark, 139 F.3d 485 (5th Cir. 1998), cert. denied, 525 U.S. 899 (1998) – the court upheld convictions of defendants involved with The Pilot Connection Society for conspiracy to defraud the United States and aiding and abetting the filing of fraudulent Forms W-4.

United States v. Scott, 37 F.3d 1564 (10th Cir. 1994), cert. denied, Skinner v. United States, 513 U.S. 1100 (1995) – the court concluded the defendants were the promoters of a multi-tiered trust package marketed to purchasers as a device to eliminate tax liability without losing control over their assets or income.

United States v. Meek, 998 F.2d 776 (10th Cir. 1993) – the court upheld Meek's conviction of willfully failing to file an income tax return and willfully attempting to evade taxes because his "trust" had been formed through his membership in an organization (a "warehouse bank") that provided its members the opportunity to warehouse their funds until directed to disburse them.

United States v. Kaun, 827 F.2d 1144 (7th Cir. 1987) – the court affirmed the district court's injunction prohibiting the taxpayer from inciting others to submit tax returns based on false income tax theories.

United States v. Krall, 835 F.2d 711 (8th Cir. 1987) – the court held that the trusts used by the defendant were shams, in which he exercised the same dominion and control over the corpus and income of the trusts as he had before the trusts were executed.

Lizalek v. United States, T.C. Memo. 2009-122, 97 T.C.M. (CCH) 1639 (2009) – the court held that a trust, which the taxpayer claimed was created when the Social Security Administration issued a Social Security card to the taxpayer, did not exist and that the taxpayer earned the wages and other income includable in gross income.

**Other Cases:**

United States v. Binge, 2004 WL 2600770, 94 A.F.T.R. 2d 2004-6502 (N.D. Ohio Sep. 27, 2004); King v. Commissioner, T.C. Memo. 1995-524, 70 T.C.M. (CCH) 1152 (1995); Robinson v. Commissioner, T.C. Memo. 1995-102, 69 T.C.M. (CCH) 2061, 2062 (1995) (citing Hanson v. Commissioner, 696 F.2d 1232, 1234 (9th Cir. 1983)).

### 6. Contention: A "corporation sole" can be established and used for the purpose of avoiding federal income taxes.

Advocates of this idea believe they can reduce their federal tax liability by taking the position that the taxpayer's income belongs to a "corporation sole" (these have also been referred to as "ministerial trusts"), an entity created for the purpose of avoiding taxes. A valid corporation sole is a corporate form that enables religious leaders to hold property and conduct business for the religious entity. Participants in this scheme apply for incorporation under the pretext of being an official of a church or other religious organization. Participants contend that their income is exempt from taxation because the income allegedly belongs to the corporation sole, which is claimed to be a tax exempt organization described in section 501(c)(3).

**The Law:** A valid corporation sole enables a bona fide religious leader, such as a bishop or other authorized religious official, to incorporate under state law, in his capacity as a religious official. See, e.g., Berry v. Society of Saint Pius X, 69 Cal. App. 4th 354 (1999). A corporation sole may own property and enter into contracts as a natural person, but only for the purposes of the religious entity and not for the individual office holder's personal benefit. A legitimate corporation sole is designed to ensure continuity of ownership of property dedicated to the benefit of a legitimate religious organization.

A taxpayer cannot avoid income tax or other financial responsibilities by purporting to be a religious leader and forming a corporation sole for tax avoidance purposes. The claims that such a corporation sole is described in section 501(c)(3) and that assignment of income and transfer of assets

to such an entity will exempt an individual from income tax are meritless. Courts have repeatedly rejected similar arguments as frivolous, imposed penalties for making such arguments, and upheld criminal tax evasion convictions against those making or promoting the use of such arguments.

The IRS discussed this frivolous argument in more detail and warned taxpayers of the consequences of attempting to use this scheme. Rev. Rul. 2004-27, 2004-1 C.B. 625.

**Relevant Case Law:**

United States v. Heinemann, 801 F.2d 86 (2d Cir. 1986), cert. denied, 479 U.S. 1094 (1987) – the court upheld the conviction and three year prison sentence imposed against the defendants for promoting use of purported church entities to avoid taxes.

United States v. Adu, 770 F.2d 1511 (9th Cir. 1985), cert. denied, 475 U.S. 1030 (1986) – the court upheld the defendant's conviction for aiding and assisting in the preparation and presentation of false income tax returns with respect to false charitable deductions to purported church entities.

United States v. Gardner, 101 A.F.T.R.2d (RIA) 2008-2016, 2008 WL 906696 (D. Ariz. Mar. 21, 2008), aff'd, 108 A.F.T.R.2d (RIA) 2011-6961, 2011 WL 5149150 (9th Cir. Nov. 1, 2011) – the court permanently enjoined the Gardners from promoting a tax fraud scheme involving a "corporation sole" program that they had sold to over 300 people.

Svedahl v. Commissioner, 89 T.C. 245 (1987) – the court sanctioned the taxpayer under section 6673 in the amount of $5,000 for using contributions to purported church entities to shield income and pay personal expenses.

**7. Contention: Taxpayers who did not purchase and use fuel for an off-highway business can claim the fuels tax credit.**

Proponents of this idea assert that taxpayers can claim the section 6421 fuels tax credit without regard to whether they qualify for the credit through the purchase and use of gasoline for an off-highway business. In addition, certain purveyors of fraudulent tax schemes have claimed on behalf of clients (usually on IRS Form 4136, Credit for Federal Tax Paid on Fuels) the tax credit under section 6427 for nontaxable uses of fuel when the taxpayers clearly are not entitled to the credit based on the facts, such as the taxpayers' occupation and income level, type of motor vehicle and how it is used, and the volume of fuel claimed.

**The Law:** These claims are frivolous. Section 6421(a) allows a tax credit for gasoline purchased and used in an off-highway business. Similarly,

38

section 6427 provides a tax credit to certain purchasers of undyed diesel fuel used in an off-highway business. The diesel fuel credit is allowable both for off-highway business use or any use other than in a registered diesel-powered highway vehicle (e.g., in a private home for personal heating purposes). The circumstances in which the credits are available are specific and limited. The principal requirement is that the fuel be used in an off-highway business. Off-highway business use is the use of fuel in a trade or business or in an income-producing activity other than as a fuel in a vehicle registered for use on public highways. IRS Publication 225 (2008), Farmer's Tax Guide, gives as examples of the off-highway business use of fuels: (1) use in stationary machines like generators, compressors, power saws, and similar equipment; (2) use in forklifts, bulldozers, and earthmovers; and (3) use in cleaning. Also, Publication 510 (2008), Excise Taxes, explains that, with some exceptions, a highway vehicle is one "designed to carry a load over a public highway," including federal, state, county, and city roads and streets. Passenger cars, motorcycles, buses, highway trucks, tractor trailers, etc., generally are highway vehicles. The fuels tax credits, however, are being claimed without regard to these requirements and often in absurdly huge amounts that cannot possibly be for the quantity of fuel expended for off-highway purposes. Notice 2010-33, 2010-1 C.B. 609, lists such positions as frivolous.

**Relevant Case Law:**

United States v. Kasten, No. 4:08-cv-2740 (S.D. Tex. Nov. 13, 2008) – the court permanently enjoined Kasten and any person in active concert with him from acting as a federal tax return preparer and from preparing or filing federal tax returns for taxpayers. Kasten prepared tax returns claiming false fuels tax credits.

United States v. Totou, No. 3:07-cv-391 (W.D.N.C. May 14, 2008) – the court permanently enjoined a tax return preparer from preparing or filing federal tax returns. Totou claimed fraudulent fuels tax credits on customers' returns.

8. **Contention: A Form 1099-OID can be used as a debt payment option or the form or a purported financial instrument may be used to obtain money from the Treasury.**

Advocates of this contention encourage individuals to use a Form 1099-OID, Original Issue Discount, or a bogus financial instrument such as a bonded promissory note as what purports to be a debt payment method for credit cards or mortgage debt. This scheme has evolved somewhat from an earlier frivolous position under which a secret bank account (sometimes referred to as a "straw man" account) was supposedly created at the Treasury Department for each U.S. citizen that individuals could use

39

to pay tax and non-tax debts and claim withholding credits. Those who put forth this theory often argue that the proper way to redeem or draw on the account is to use some form of made-up financial instrument. This has frequently involved what looks like a check drawn on the United States Treasury or other similar paper instruments, e.g., bonded promissory notes.

More recently, this redemption theory asserts that persons can draw on the secret or "straw man" Treasury account by sending a Form 1099-OID to a creditor and the creditor can present the form to the Treasury Department and receive full payment of the debt. The proponents appear to assert that the Form 1099-OID permits them to access their secret Treasury Account for an amount equal to the face amount of the Form 1099-OID in the form of a tax refund.

Proponents of this theory also argue that they have sold or transferred their debt or obligation to the person to whom they issued the Form 1099-OID in a transaction subject to sections 1271 through 1275 and that the debt or obligation is transferred with a discount of the full face amount. The issuer of the Form 1099-OID then treats the face amount of the Form 1099-OID as "other income" on the individual's return. The "other income" amount, however, is not included in the taxable income line.

Persons asserting this theory often significantly overstate withholding and claim an excessive refund in an amount close or identical to the inflated withholding.

**The Law:** As the instructions to the Form 1099-OID indicate, the purpose of the form is to report the original issue discount of holders of OID obligations, like certificates of deposit, time deposits, bonds, debentures, bonus saving plans, and Treasury inflation-indexed securities, having a term of more than one year. OID is simply the excess of the stated redemption of the deposit, bond, or other financial obligation at maturity over its issue price. Under section 1272, OID is taxable as interest over the life of the obligation and must be included in the holder's gross income each taxable year that the obligation is held. Certain obligations are excepted, including United States savings bonds and short-term (less than one year) and tax-exempt obligations.

The Form 1099-OID is in no way a financial instrument. It is not a legitimate method of payment of any public or private debt, and it is not a means to withdraw or redeem money from the Treasury. Furthermore, as the federal Court of Appeals for the Sixth Circuit stated in United States v. Anderson, 353 F.3d 490, 500 (6th Cir. 2003), cert. denied, 541 U.S. 1068 (2004), the Treasury Department does not maintain depository accounts against which an individual can draw a check, draft, or any other financial

40

instrument. The notion of secret accounts assigned to each citizen is pure fantasy.

In addition to potential civil and criminal tax penalties for misuse of the Form 1099-OID, persons who fraudulently use false or fictitious instruments may be guilty of federal criminal offenses, such as under sections 287 and 514(a) of title 18.

The IRS has warned taxpayers of the consequences of making such frivolous arguments. Rev. Rul. 2005-21, 2005-1 C.B. 822 (discussing the "straw man" theory); Rev. Rul. 2004-31, 2004-1 C.B. 617 (discussing the commercial redemption theory).

There are variations of this argument. A taxpayer, for example, may claim false withholding or tax payments on an income tax return or purported return using another document from the Form 1099 series of information returns or a Form 2439, Notice to Shareholder of Undistributed Long-Term Capital Gains. When such a taxpayer uses the Form 2439, the form is prepared to show false amounts of tax payments allegedly made for the taxpayer by a Regulated Investment Company (RIC) or Real Estate Investment Trust (REIT).

**Relevant Case Law:**

United States v. Heath, 525 F.3d 451 (6th Cir. 2008) - the court convicted the defendant of presenting a fictitious financial instrument under 18 U.S.C. § 514(a) for sending to the IRS a so-called "Registered Bill of Exchange" that appeared to be a certified check but for which there was no actual account.

United States v. Anderson, 353 F.3d 490, 500 (6th Cir. 2003), cert. denied, 541 U.S. 1068 (2004) – the court upheld criminal convictions relating to a conspiracy involving the creation and offering of almost 200 fictitious sight drafts purporting to be drawn on the United States Treasury with an aggregate face value of more than $550 million.

United States v. Cunningham, No. 10cv1377-IEG(RBB), 2011 WL 11445 (S.D. Cal. Jan. 3, 2011) – the court held the taxpayer in contempt for refusing to comply with a court order to provide documents and testimony summoned by the IRS pursuant to an investigation regarding his participation in a Form 1099 OID scheme.

Ernle v. Commissioner, T.C. Memo. 2010-237 – the court held petitioner liable for fraud based on various filings, including phony Forms 1099-OID and imposed a penalty of $4,000 under section 6673(a).

**Other Cases:**

Miller v. Commissioner, 2009 WL 4060274, 2010-1 U.S.T.C. ¶ 50,175 (M.D. Tenn. Nov. 23, 2009); United States v. Guan, 2009 WL 4609654, 104 A.F.T.R. 2d 2009-7471 (C.D. Cal. Nov. 18, 2009); United States v. Oehler, 2003 WL 1824967 (D. Minn. Apr. 2, 2003), aff'd, 116 F. App'x 43 (8th Cir. 2004).

## II.  FRIVOLOUS ARGUMENTS IN COLLECTION DUE PROCESS CASES

Under sections 6320 (pertaining to liens) and 6330 (pertaining to levies), the IRS must provide taxpayers notice and an opportunity for an administrative appeals hearing upon the filing of a notice of federal tax lien (section 6320) and prior to levy (section 6330). Taxpayers have the right to seek judicial review of the IRS's determination in these proceedings. I.R.C. § 6330(d). These reviews can extend to the merits of the underlying tax liability, if the taxpayer has not previously received the opportunity for review of the merits, e.g., did not receive a notice of deficiency. I.R.C. § 6330(c)(2)(B). A face-to-face administrative hearing concerning a taxpayer's underlying liability will not be granted if the hearing request raises solely frivolous arguments. Treas. Reg. §§ 301.6320-1(d)(2) Q&A D8 and 301.6330-1(d)(2) Q&A D8. The Tax Court will impose sanctions pursuant to section 6673 against taxpayers who seek judicial relief based upon frivolous or groundless positions.

On December 6, 2006, Congress passed the Tax Relief and Health Care Act of 2006 (TRHCA), Pub. L. No. 109-432, 120 Stat. 2922 (2006). Section 407 of TRHCA revised sections 6320 and 6330. The TRHCA amended section 6330 by adding new subsection (g) to provide that the IRS may disregard any portion of a section 6320 or 6330 hearing request that is based upon a position identified as frivolous by the IRS in a published list or that reflects a desire to delay or impede tax administration. Such portion shall not be subject to any further administrative or judicial review. If the entire hearing request meets one or both of these criteria, the hearing request will be denied. The TRHCA also amended section 6702 to allow imposition of a $5,000 penalty for specified frivolous submissions, including frivolous section 6320 or 6330 hearing requests, where any portion of the submission meets one or both of these criteria. See section III below. These amendments are effective for hearing requests made after March 15, 2007, the release date of Notice 2007-30, 2007-1 C.B. 883, which listed frivolous positions (most recently updated by Notice 2010-33, 2010-1 C.B. 609). Accordingly, in cases where the TRHCA amendments are applicable, a taxpayer raising only frivolous issues may not only be ineligible for a face-to-face hearing but may be denied any section 6320 or 6330 hearing.

This section discusses some of the more common frivolous tax arguments raised in collection due process cases.

42

## A.  Invalidity of the Assessment

1. **Contention:  A tax assessment is invalid because the taxpayer did not get a copy of the Form 23C, the Form 23C was not personally signed by the Secretary of the Treasury, or a form other than Form 23C is not a valid record of assessment.**

**The Law:** Tax assessments are formally recorded on a record of assessment. I.R.C. § 6203. The assessment is made by an assessment officer signing the summary record of assessment. Treas. Reg. § 301.6203-1. The summary record of assessment must "provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment." Id. The date of the assessment is the date the summary record is signed. Id. There is no requirement in the statute or regulation that the assessment be recorded on a specific form, that the Secretary of the Treasury personally sign it, or that the taxpayer be provided with a copy of the record of assessment before the IRS takes collection action.

The IRS has refuted the frivolous argument that before the IRS may collect overdue taxes, the IRS must provide taxpayers with a summary record of assessment made on a Form 23-C, Assessment Certificate – Summary Record of Assessments, or on another particular form. Rev. Rul. 2007-21, 2007-1 C.B. 865.

**Relevant Case Law:**

March v. IRS, 335 F.3d 1186, 1188 (10th Cir. 2003), cert. denied, 541 U.S. 1031 (2004) – the court held that the computer-generated certificate of assessment and payment form utilized by the IRS to make assessment against the taxpayers satisfied the regulatory requirements because the computer-generated form contained the same information as the non-computer-generated form previously used and was signed by the assessment officer.

Roberts v. Commissioner, 118 T.C. 365 (2002), aff'd, 329 F.3d 1224 (11th Cir. 2004) – the court held that there was nothing in the law to show that the use of the Revenue Accounting Control System (RACS) report was not in compliance with the statute and regulation.

Nestor v. Commissioner, 118 T.C. 162 (2002) – the court held that the petitioner was not entitled to production of Form 23C at his collection due process hearing and it was not an abuse of discretion for the Appeals Officer to use Form 4340, Certificate of Assessments and Payments to verify the assessment, for purposes of section 6330(c)(1).

Powell v. Commissioner, T.C. Memo. 2009-174, 98 T.C.M. (CCH) 56 (2009) – the court awarded a $25,000 section 6673 penalty against the

43

petitioner for asserting, among other frivolous arguments, that respondent was obligated to produce a Form 23C even though petitioner received notices of deficiency.

Williams v. Commissioner, T.C. Memo. 2005-94, 89 T.C.M. (CCH) 114 (2005) – in this collection due process case, the court held that it was not an abuse of discretion for the appeals officer to provide copies of the transcripts of account (so-called MFTRA-X transcripts) to the taxpayer in lieu of the copies of the assessment documents that the taxpayer had requested.

**Other Cases:**

Roberts v. Commissioner, 118 T.C. 365 (2002), aff'd, 329 F.3d 1224 (11th Cir. 2004); Nestor v. Commissioner, 118 T.C. 162 (2002); Chang v. Commissioner, T.C. Memo. 2007-100, 93 T.C.M. (CCH) 1143 (2007); Perez v. Commissioner, T.C. Memo. 2002-274, 84 T.C.M. (CCH) 501 (2002).

### 2. Contention: A tax assessment is invalid because the assessment was made from a substitute for return prepared pursuant to section 6020(b), which is not a valid return.

**The Law:** Section 6020(b)(1) provides that "[i]f any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefore, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise." Section 6020(b)(2) further provides that any return prepared pursuant to section 6020(b)(1) shall be prima facie good and sufficient for all legal purposes. See also Treas. Reg. § 301.6020-1.

**Relevant Case Law:**

Douglas v. United States, 324 F. App'x 320, 321 (5th Cir. 2009) – the court rejected the taxpayer's claim that "the IRS committed 'fraud'" by completing a section 6020(b) return and held that the IRS properly issued notices of levy.

Nicklaus v. Commissioner, T.C. Memo. 2005-156, 89 T.C.M. (CCH) 1499 (2005), aff'd, 202 F. App'x 171 (9th Cir. 2006) - the court held that the IRS may prepare substitute returns for taxpayers who fail to do so themselves under section 6020(b).

**Other Cases:**

44

United States v. Updegrave, 1997 WL 297074, 97-1 U.S.T.C. ¶ 50,465 (E.D. Pa. May 28, 1997); Holland v. Louisiana Sec'y of Revenue & Taxation, 97-1 U.S.T.C. ¶ 50,403 (W.D. La. Feb. 7, 1997).

B. **Invalidity of the Statutory Notice of Deficiency**

1. **Contention: A statutory notice of deficiency is invalid because it was not signed by the Secretary of the Treasury or by someone with delegated authority.**

The Law: Section 6212(a) provides the authority for the Secretary to send notices of deficiency to taxpayers. Section 7701(a)(11)(B) defines "Secretary" to include the Secretary of the Treasury or his delegate. Section 7701(a)(12)(A)(i) defines the term "delegate," as used with respect to the Secretary of the Treasury, to mean any officer, employee, or agency of the Treasury Department duly authorized by the Secretary directly, or indirectly by redelegation of authority, to perform a certain function. There is no statutory requirement that, to be valid, a notice of deficiency must be signed by the Secretary of the Treasury or his delegate.

**Relevant Case Law:**

Selgas v. Commissioner, 475 F.3d 697, 699-700 (5th Cir. 2007) (citations omitted), cert. denied, 552 U.S. 824 – the court held that a signature is not required on a notice of deficiency to render the notice of deficiency valid. The court stated, "Like our sister circuits, we conclude that a notice of deficiency is valid as long as it informs a taxpayer that the IRS has determined that a deficiency exists and specifies the amount of the deficiency . . . [and] [t]he existence of a signature or the identity of any IRS official who provides one, is superfluous."

Urban v. Commissioner, 964 F.2d 888, 889 (9th Cir. 1992) – the court held that the Internal Revenue Code does not require a notice of deficiency to be signed.

Tavano v. Commissioner, T.C. Memo. 1991-237, 61 T.C.M. (CCH) 2743, aff'd, 986 F.2d 1389 (11th Cir. 1993) – the court rejected petitioner's argument that the notice of deficiency was invalid because it was unsigned.

**Other Cases:**

Marcinek v. Commissioner, 467 F. App'x 153 (3rd Cir. 2012); Nestor v. Commissioner, 118 T.C. 162 (2002); Reynolds v. Commissioner, T.C. Memo. 2006-192, 92 T.C.M. (CCH) 260 (2006); Ball v. Commissioner, T.C. Memo. 2006-141, 92 T.C.M. (CCH) 7 (2006); Wheeler v. Commissioner, T.C. Memo. 2006-109, 91 T.C.M. (CCH) 1194 (2006), aff'd, 528 F.3d 773 (10th Cir. 2008).

45

**2. Contention: A statutory notice of deficiency is invalid because the taxpayer did not file an income tax return.**

**The Law:** Section 6211(a) defines "deficiency" as the amount by which the tax imposed by subtitle A or B – (including income, estate, and gift taxes), or chapter 41, 42, 43, 44 (excise taxes) exceeds the excess of the sum of the amount shown as the tax by the taxpayer upon his return (if return made and amount shown thereon) plus any amounts previously assessed (or collected without assessment) as a deficiency, over the amount of rebates, as defined in section 6211(b)(2), made. In accordance with this definition, a taxpayer's failure to report tax on a return does not prevent the IRS from determining a deficiency in his federal income tax and issuing a notice of deficiency, pursuant to section 6212(a).

**Relevant Case Law:**

Brennan v. Commissioner, T.C. Memo. 2009-77, 97 T.C.M. (CCH) 1379 (2009) – the court upheld the deficiencies determined by respondent when the taxpayer made only frivolous arguments, including that the "respondent lacked the authority to issue a notice of deficiency and that no statute required him to pay income tax."

Johnston v. Commissioner, T.C. Memo. 2004-107, 87 T.C.M. (CCH) 1256 (2004) – the court stated that "[p]etitioners' contention that the Commissioner cannot determine a deficiency for a year for which a taxpayer did not file a return is frivolous." The court further emphasized that the "petitioners' contention that failure to file a return shields the nonfiler from income tax liability is also frivolous." Due to the petitioner's frivolous arguments, the court imposed a penalty under section 6673.

Robinson v. Commissioner, T.C. Memo. 2002-316, 84 T.C.M. (CCH) 694 (2002), aff'd, 73 F. App'x 624 (4th Cir. 2003) – the court found the petitioner liable for the section 6673(a) penalty in this case where petitioner argued, among other frivolous arguments, that the IRS was not authorized to determine a deficiency for a taxpayer who has not filed a return.

**C. Invalidity of Notice of Federal Tax Lien**

**1. Contention: A notice of federal tax lien is invalid because it is unsigned or not signed by the Secretary of the Treasury, or because IRS employees lack the delegated authority to file a notice of federal tax lien.**

**The Law:** The form and content of the notice of federal tax lien is controlled by federal law. Section 6323(f)(3) provides that the form and content of the notice of federal tax lien shall be prescribed by the Secretary and shall be valid notwithstanding any other provision of law

46

regarding the form or content of a notice of lien. Treas. Reg. § 301.6323(f)-1(d) further provides that the notice of federal tax lien must be filed on a Form 668, Notice of Federal Tax Lien Under Internal Revenue Laws, and must identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose. There is no statutory or regulatory requirement that, to be valid, a notice of federal tax lien must be signed by anyone or, if it is signed, that it must be signed by the Secretary of the Treasury.

Section 6323(a) provides that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." Section 7701(a)(11)(B) defines "Secretary" to include the Secretary of the Treasury or his delegate. Section 7701(a)(12)(A)(i) defines the term "delegate," as used with respect to the Secretary of the Treasury, to mean any officer, employee, or agency of the Treasury Department duly authorized by the Secretary directly, or indirectly by redelegation of authority, to perform a certain function. Treasury Order 150-10 delegates to the Commissioner the Secretary's authority to enforce and administer the internal revenue laws. Delegation Order 5-4, Rev. 2 delegates to IRS personnel the Commissioner's authority with respect to notices of federal tax lien.

**Relevant Case Law:**

Uveges v. United States, 2002-2 U.S.T.C. ¶ 50,740 (D. Nev. 2002) – the court noted that with respect to section 6323, along with other Code sections that use the term "Secretary," "Secretary" refers to the Secretary of the Treasury and any delegates.

Hult v. Commissioner, T.C. Memo. 2007-302, 94 T.C.M. (CCH) 359 (2007) – the court dismissed petitioner's argument that the notice of federal tax lien was invalid because it was not signed, as it is not necessary for a notice of federal tax lien to be signed.

Fairchild v. Internal Revenue Service, 450 F. Supp. 2d 654, 659 (M.D. La. 2006) – the court rejected the argument that IRS employees lacked the authority to file notices of federal tax lien.

**Other Cases:**

In re Kroll, 1994 WL 650127, 74 A.F.T.R. 2d 94-6161 (W.D. Mich. Aug. 11, 1994); Thompson v. Commissioner, T.C. Memo. 2004-204, 88 T.C.M. (CCH) 219 (2004).

**2. Contention: The form or content of a notice of federal tax lien is controlled by or subject to a state or local law, and a notice of**

47

federal tax lien that does not comply in form or content with a state or local law is invalid.

**The Law:** The form and content of the notice of federal tax lien is controlled by federal law. Section 6323(f)(3) provides that the form and content of the notice of federal tax lien shall be prescribed by the Secretary and shall be valid notwithstanding any other provision of law regarding the form or content of a notice of lien. Treas. Reg. § 301.6323(f)-1(d) further provides that the notice of federal tax lien must be filed on a Form 668, Notice of Federal Tax Lien Under Internal Revenue Laws, and must identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose.

**Relevant Case Law:**

United States v. Union Cent. Life Ins. Co., 368 U.S. 291, 294 (1961) – the Supreme Court held that the form used for filing a federal tax lien does not have to comply with an additional state law requirement that it describe the property affected, although the lien did have to be filed in a designated state office.

Tolotti v. Commissioner, T.C. Memo. 2002-86, 83 T.C.M. (CCH) 1436 (2002), aff'd, 70 F. App'x 971 (9th Cir. 2003) - in upholding the validity of a notice of federal tax lien filed even though the lien was not certified pursuant to a Nevada statute, the court noted that it is "well settled" that the form and content of the notice of federal tax lien is controlled by federal, not state, law.

**D. Invalidity of Collection Due Process Notice**

1. **Contention: A collection due process notice (e.g., Letter 1058, LT-11 or Letter 3172) is invalid because it is not signed by the Secretary or his delegate.**

**The Law:** Section 6320(a)(1) provides that the Secretary shall notify a taxpayer in writing of the filing of a notice of federal tax lien, pursuant to section 6323, advising the taxpayer of the right to request a collection due process hearing. Section 6330(a)(1) provides that no levy may be made on any property or rights to property of any person unless the Secretary has notified such person of his or her right to a collection due process hearing before levy. There is no requirement for a signature on the collection due process notice in the statute or regulations.

**Relevant Case Law:**

Oropeza v. Commissioner, T.C. Memo. 2008-94, 95 T.C.M. (CCH) 1367 (2008) – the court reaffirmed that there is "no statutory requirement" that

48

the Final Notice of Intent to Levy and Notice of Your Right to a Hearing be signed.

Craig v. Commissioner, 119 T.C. 252 (2002) – the court held that for purposes of section 6330(a), either the Secretary or his delegate (e.g., the Commissioner) may issue a final notice of intent to levy. In this case, the authority to levy was delegated to the Automated Collection Branch Chiefs pursuant to a delegation order.

**Other Cases:**

Thompson v. Commissioner, T.C. Memo. 2004-204, 88 T.C.M. (CCH) 219 (2004); Hodgson v. Commissioner, T.C. Memo. 2003-122, 85 T.C.M. (CCH) 1232 (2003).

2. **Contention: A collection due process notice is invalid because no certificate of assessment is attached.**

**The Law:** Sections 6320(a)(3) and 6330(a)(3) list the information required to be included with the collection due process notice, such as the amount of unpaid tax, the right of the person to request a collection due process hearing, administrative appeals available, and the provisions of the Internal Revenue Code and procedures pertaining to the notice of federal tax lien or levy. See also Treas. Reg. §§ 301.6320-1(a)(2), Q&A A10 and 301.6330-1(a)(3), Q&A A6. There is no requirement in the statute or regulations that a certificate of assessment be attached to the collection due process notice.

E. **Verification Given as Required by I.R.C. § 6330(c)(1)**

1. **Contention: Verification requires the production of certain documents.**

**The Law:** Pursuant to sections 6320(c) and 6330(c)(1), at a collection due process hearing, the appeals officer is required to obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met. Treas. Reg. §§ 301.6320-1(e)(1) and 301.6330-1(e)(1) direct Appeals to obtain verification from the IRS office collecting the tax. Neither the statutes nor the regulations require the appeals officer to rely upon a particular document (e.g., the summary record of assessment) to satisfy the verification requirement. Sections 6320(c) and 6330(c)(1) also do not require the appeals officer to give the taxpayer a copy of the verification upon which the appeals officer relied. See also Treas. Reg. §§ 301.6320-1(e)(1) and 301.6330-1(e)(1). There is no requirement in the statute or regulations that the taxpayer be provided with any documents as a part of the verification process. As a matter of practice, however, the taxpayer will be provided with a transcript of account such as a Form 4340 or MFTRA-X computer transcript.

49

Transcripts such as the Form 4340 or MFTRA-X, which identify the taxpayer, the character of the liability assessed, the taxable period and the amount of the assessment, are sufficient to show the validity of an assessment, absent a showing of irregularity.

**Relevant Case Law:**

Standifird v. Commissioner, T.C. Memo. 2002-245, 84 T.C.M. (CCH) 371 (2002), aff'd, 72 F. App'x 729 (9th Cir. 2003) – the court held that a MFTRA-X transcript "is a valid verification that the requirements of any applicable law or administrative procedure have been met."

Schroeder v. Commissioner, T.C. Memo. 2002-190, 84 T.C.M. (CCH) 141 (2002) – the court held that the TXMODA transcript is sufficient for the verification requirement.

Craig v. Commissioner, 119 T.C. 252 (2002) – the court held that section 6330(c)(1) does not require the appeals officer to rely upon a particular document, such as the summary record of assessment, to satisfy the verification requirement of section 6330(c)(1) or mandate that the appeals officer actually provide the taxpayer with a copy of the verification upon which the appeals officer relied.

**Other Cases:**

Nestor v. Commissioner, 118 T.C. 162 (2002); Davis v. Commissioner, 115 T.C. 35 (2000); Wagner v. Commissioner, T.C. Memo. 2002-180, 84 T.C.M. (CCH) 96 (2002).

F. **Invalidity of Statutory Notice and Demand**

   1. **Contention: No notice and demand, as required by I.R.C. § 6303, was ever received by taxpayer.**

   **The Law:** Section 6303(a) provides that the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. This notice is to be left at the dwelling or usual place of business of such person, or shall be mailed to such person's last known address. See also Treas. Reg. § 301.6303-1(a) (establishing that failure to give notice within 60 days does not invalidate notice). Nothing in the statute or regulation requires the IRS to establish receipt of the notice and demand, as long as it is mailed to the taxpayer's last known address.

   At a collection due process hearing, an appeals officer may rely upon a computer transcript to verify that notice and demand for payment has been sent to a taxpayer in accordance with section 6303. For example,

the entry in a Form 4340 showing "notice of balance due" is a section 6303 notice and demand.

**Relevant Case Law:**

United States v. Chila, 871 F.2d 1015, 1018-19 (11th Cir. 1989), cert. denied, 493 U.S. 975 (1985) – the court held in a case in which the taxpayer denied receiving notice under section 6303 that, even though notice was not required under section 6303 prior to judicial collection, proper notice was given as established by the Form 4340.

Williams v. Commissioner, T.C. Memo. 2008-173, 96 T.C.M. (CCH) 25 (2008) – the court rejected petitioner's argument that he is entitled to see proof that the Notice and Demand Letter was received, and held that Forms 4340 sufficiently showed that the IRS issued notices of balance due (which constitute notice and demand for payment under section 6303(a)) on the same day that the IRS assessed petitioner's tax.

**Other Cases:**

United States v. Lisle, 92-1 U.S.T.C. ¶ 50,286 (N.D. Cal. 1992) (citing Thomas v. United States, 755 F.2d 728, 730 (9th Cir. 1985)), aff'd, 5 F.3d 542 (9th Cir. 1993); Craig v. Commissioner, 119 T.C. 252, 262-63 (2002); Reynolds v. Commissioner, T.C. Memo. 2006-192, 92 T.C.M. (CCH) 260 (2006).

2. **Contention: A notice and demand is invalid because it is not signed, it is not on the correct form (such as Form 17), or because no certificate of assessment is attached.**

**The Law:** Section 6303(a) provides that the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. This notice is to be left at the dwelling or usual place of business of such person, or shall be mailed to such person's last known address. See also Treas. Reg. § 301.6303-1(a) (failure to give notice within 60 days does not invalidate notice). Notice and demand is sufficient for purposes of section 6303 as long as it states the amount due and makes demand for payment. There is no requirement in the statute or regulation that the notice and demand be made on a specific form, have a signature, or include any specific attachments.

**Relevant Case Law:**

Flathers v. Commissioner, T.C. Memo. 2003-60, 85 T.C.M. (CCH) 969 (2003) – the court rejected as frivolous and/or groundless petitioner's argument that she did not receive proper notice and demand under

51

section 6303(a) because, according to petitioner, the IRS must use Form 17 in issuing such notice and demand.

Craig v. Commissioner, 119 T.C. 252, 262-63 (2002) – the court held that notices received by the petitioner, such as notices of intent to levy and notices of deficiency, were sufficient to meet the requirements of section 6303(a) and the form on which notice of assessment and demand for payment is made was irrelevant, as long as it provided the taxpayer with the information specified in section 6303(a).

Keene v. Commissioner, T.C. Memo. 2002-277, 84 T.C.M. (CCH) 514 (2002) – the court rejected as frivolous and groundless petitioner's argument that a notice and demand for payment was not in accord with a Treasury decision issued in 1914 that required a Form 17 be used for such purpose.

## G. Tax Court Authority

### 1. Contention: The Tax Court does not have the authority to decide legal issues.

**The Law:** The United States Tax Court is a federal court of record established by Congress under Article I of the United States Constitution. Congress created the Tax Court to provide a judicial forum in which affected persons could dispute tax deficiencies prior to payment of the disputed amount. The jurisdiction of the Tax Court includes the authority to hear tax disputes concerning notices of deficiency, notices of transferee liability, certain types of declaratory judgment, readjustment and adjustment of partnership items, review of the failure to abate interest, administrative costs, worker classification, relief from joint and several liability on a joint return, and review of collection due process actions.

Section 7441 provides that "[t]here is hereby established, under article I of the Constitution of the United States, a court of record to be known as the United States Tax Court. The members of the Tax Court shall be the chief judge and the judges of the Tax Court." Section 7442 provides that "[t]he Tax Court and its divisions shall have such jurisdiction as is conferred on them by this title, by Chapters 1, 2, 3, and 4 of the Internal Revenue Code of 1939, by title II and title III of the Revenue Act of 1926 (44 Stat. 10-87), or by laws enacted subsequent to February 26, 1926." See also I.R.C. §§ 7443-7448.

**Relevant Case Law:**

Freytag v. Commissioner, 501 U.S. 868 (1991) – contrary to the petitioners' challenge, the Supreme Court held that section 7443A(b)(4) authorized the Chief Judge of the Tax Court to assign petitioners' cases to

52

a special trial judge and concluded that the special trial judge's appointment did not violate the Appointments Clause of the Constitution.

Knighten v. Commissioner, 705 F.2d 777 (5th Cir. 1983), cert. denied, 464 U.S. 897 (1983) – the court held as frivolous the contention that, as a court created under Article I of the Constitution, the Tax Court could not hear any cases that could be heard by Article III courts.

Martin v. Commissioner, 358 F.2d 63 (7th Cir. 1966), cert. denied, 385 U.S. 920 (1966) – the court ruled that petitioners' contention that the Tax Court is without a valid constitutional existence lacked substance and merit.

**Other Cases:**

Burns, Stix Friedman & Co. v. Commissioner, 57 T.C. 392 (1971).

## H. Challenges to the Authority of IRS Employees

### 1. Contention: Revenue Officers are not authorized to seize property in satisfaction of unpaid taxes.

**The Law:** Section 6331(a) provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax." Section 6331(b) provides that the term "levy" includes the power of distraint and seizure by any means. In any case in which the Secretary may levy upon property or property rights, he may also seize and sell such property or property rights. I.R.C. § 6331(b).

Section 7701(a)(11)(B) defines "Secretary" to include the Secretary of the Treasury or his delegate. Section 7701(a)(12)(A)(i) defines the term "delegate," as used with respect to the Secretary of the Treasury, to mean any officer, employee, or agency of the Treasury Department duly authorized by the Secretary directly, or indirectly by redelegation of authority, to perform a certain function. Treasury Order 150-10 delegates to the Commissioner the Secretary's authority to enforce and administer the internal revenue laws. See also Treas. Reg. § 301.6331-1(a)(1) (district director is authorized to levy); see, e.g., Delegation Order 5-3 (formerly D.O. 191 Rev. 3) (redelegation of authority with respect to levies to revenue officers and other IRS employees).

**Relevant Case Law:**

Gibbs v. Commissioner, 673 F. Supp. 1088, 1092 (N.D. Ala. 1987), aff'd, 846 F.2d 754 (11th Cir. 1988) – the court held that revenue officers "are specifically delegated and charged with the responsibility for collection of taxes. "

Craig v. Commissioner, 119 T.C. 252 (2002) – the court found that the authority to levy on petitioner's property was delegated to Automated Collection Branch Chiefs pursuant to delegation order.

### 2. Contention: IRS employees lack credentials. For example, they have no pocket commission or the wrong color identification badge.

**The Law:** The authority of IRS employees is derived from Internal Code provisions, Treasury Regulations, and other redelegations of authority (such as delegation orders). See the previous discussion on the authority of revenue officers to seize property. The authority of IRS employees is not contingent upon such criteria as possession of a pocket commission or a specific type of identification badge.

**Relevant Case Law:**

Oropeza v. Commissioner, T.C. Memo. 2008-94, 95 T.C.M. (CCH) 1367 (2008) – the court ordered the taxpayer to pay a fine of $10,000 for making only frivolous and groundless arguments, including the argument that he never received the pocket commissions of the IRS agents, which is one of the "patently spurious" issues the taxpayer raised.

Gunselman v. Commissioner, T.C. Memo. 2003-11, 85 T.C.M. (CCH) 756 (2003) – the court held that an Appeals Officer at a collection due process hearing does not have to produce enforcement pocket commission for himself or for the IRS employee who signed the notice of lien filing.

## I. Use of Unauthorized Representatives

### 1. Contention: Taxpayers are entitled to be represented at hearings, such as collection due process hearings, and in court, by persons without valid powers of attorney.

**The Law:** Section 330 of Title 31 of the United States Code authorizes the Secretary of the Treasury to regulate the practice of representatives before the Treasury Department and, after notice and an opportunity for a proceeding, to suspend or disbar from practice before the Treasury Department those representatives who are incompetent, disreputable, or who violate regulations prescribed under section 330. Pursuant to section 330, the Secretary, in Circular No. 230 (31 CFR part 10), published regulations that authorize the Office of Professional Responsibility to act on matters related to practitioner conduct and discipline, including

54

disciplinary proceedings and sanctions. The regulations provide that only certain practitioners are entitled to represent taxpayers before the IRS. Attorneys and non-attorneys are entitled to practice before the United States Tax Court only upon application and admission to practice, pursuant to Tax Court Rule of Practice and Procedure 200.

**Relevant Case Law:**

Young v. Commissioner, T.C. Memo. 2003-6, 85 T.C.M. (CCH) 739 (2003) – the court held that a third party was not entitled to represent taxpayer in a collection due process hearing because he was not a practitioner listed in Circular No. 230 (attorney, CPA, etc.).

## J. No Authorization Under I.R.C. § 7401 to Bring Action

1. **Contention: The Secretary has not authorized an action for the collection of taxes and penalties or the Attorney General has not directed an action be commenced for the collection of taxes and penalties.**

**The Law:** Section 7401 provides that "[n]o civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced." Treas. Reg. § 301.7401-1(a) further provides that such action must be authorized by the Commissioner (or the Director, Alcohol, Tobacco and Firearms Division, with respect to subtitle E of the Code), or Chief Counsel for the IRS or his delegate, and such action must be commenced by the Attorney General or his delegate.

The Attorney General is the head of the Department of Justice, appointed by the President. 28 U.S.C. § 503. The Attorney General may from time to time make such provisions as he or she deems appropriate delegating authority to any other officer, employee, or agency of the Department of Justice. 28 U.S.C. § 510. See 28 U.S.C. §§ 501-530D.

**Relevant Case Law:**

Perez v. United States, 2001-2 U.S.T.C. ¶ 50,735 (W.D. Tex. 2001) – the court held that section 7401 does not require production of a certified copy of a document in which the Attorney General or a United States Attorney authorized the cause of action against the plaintiff. The court held that the United States demonstrated compliance with section 7401 by producing a letter from the Office of Chief Counsel to a United States Attorney and a declaration from the counsel of record for the United States.

United States v. Bodwell, 96-2 U.S.T.C. ¶ 50,592 (E.D. Cal. 1996) – the court noted that the defendant's argument that this suit was not authorized

55

because section 7401 is rooted in the Federal Regulations concerning the Bureau of Alcohol, Tobacco and Firearms has been "flatly rejected" by the Ninth Circuit.

**Other Cases:**

United States v. Nuttall, 713 F. Supp. 132 (D. Del. 1989), aff'd, 893 F.2d 1332 (3d Cir. 1989).

## III.  PENALTIES FOR PURSUING FRIVOLOUS TAX ARGUMENTS

Those who act on frivolous positions risk a variety of civil and criminal penalties. Those who adopt these positions may face harsher consequences than those who merely promote them. "Like moths to a flame, some people find themselves irresistibly drawn to the tax protester movement's illusory claim that there is no legal requirement to pay federal income tax. And, like moths, these people sometimes get burned." United States v. Sloan, 939 F.2d 499, 499-500 (7th Cir. 1991).

Taxpayers filing returns with frivolous positions may be subject to the accuracy-related penalty under section 6662 (twenty percent of the underpayment attributable to negligence or disregard of rules or regulations) or the civil fraud penalty under section 6663 (seventy-five percent of the underpayment attributable to fraud) or the erroneous claim for refund penalty under section 6676 (twenty percent of the excessive amount). Additionally, late filed returns setting forth frivolous positions may be subject to an addition to tax under section 6651(f) for fraudulent failure to timely file an income tax return (triple the amount of the standard failure to file addition to tax under section 6651(a)(1)). See Mason v. Commissioner, T.C. Memo. 2004-247, 88 T.C.M. (CCH) 398 (2004) (stating that frivolous arguments "may be indicative of fraud if made in conjunction with affirmative acts designed to evade paying federal income tax").

The Tax Relief Health Care Act of 2006 amended section 6702 to allow imposition of a $5,000 penalty for frivolous tax returns and for specified frivolous submissions other than returns, if the purported returns or specified submissions are either based upon a position identified as frivolous by the IRS in a published list or reflect a desire to delay or impede tax administration. Pub. L. No. 109-432, § 407(a), 120 Stat. 2922 (2006). The term "specified submission" means: a request for a hearing under section 6320 (relating to notice and opportunity for hearing on filing of a notice of lien), a request for hearing under section 6330 (relating to notice and opportunity for hearing before levy), an application under section 6159 (relating to agreements for payment of tax liability in installments), an application under section 7122 (relating to compromises), or an application under section 7811 (relating to taxpayer assistance orders). This amendment is effective for frivolous returns or specified frivolous submissions made after March 15, 2007, the release date of Notice 2007-30, 2007-1 C.B. 883, which identified the list of frivolous positions (last updated by Notice 2010-33, 2010-1 C.B. 609)

56

Section 6673(a) allows the Tax Court to impose a penalty of up to $25,000 when it appears that:

- a taxpayer instituted or maintained a proceeding primarily for delay,
- a taxpayer's position in such proceeding is frivolous or groundless, or
- a taxpayer unreasonably failed to pursue administrative remedies.

"The purpose of § 6673 . . . is to induce litigants to conform their *behavior* to the governing rules regardless of their subjective beliefs. Groundless litigation diverts the time and energies of judges from more serious claims; it imposes needless costs on other litigants. Once the legal system has resolved a claim, judges and lawyers must move on to other things. They cannot endlessly rehear stale arguments . . . . [T]here is no constitutional right to bring frivolous suits . . . . People who wish to express displeasure with taxes must choose other forums, and there are many available." Coleman v. Commissioner, 791 F.2d 68, 72 (7th Cir. 1986) (emphasis in original).

A tax return preparer, as defined by section 7701(a)(36), who prepares any return or claim of refund with respect to which any part of an understatement of liability is due to an unreasonable position, including any frivolous position discussed in this outline, and who knew or reasonably should have known of the position may be required to pay a penalty equal to the greater of $1,000 or 50 percent of the income derived by the tax return preparer with respect to the preparation of the return or claim for refund. I.R.C. § 6694(a). The minimum penalty amount increases to $5,000 for willful or reckless conduct of the tax return preparer. I.R.C. § 6694(b). The IRS may impose a penalty of $1,000 for aiding or assisting in the preparation or presentation of any portion of a return with knowledge that it will result in an understatement of tax liability. I.R.C. § 6701(a).

Taxpayers who rely on frivolous arguments may also face criminal prosecution. These taxpayers may be convicted of a felony for attempting to evade or defeat tax. I.R.C. § 7201. Section 7201 provides as a penalty a fine of up to $100,000 ($500,000 in the case of a corporation) and imprisonment for up to 5 years. Similarly, taxpayers may be convicted of a felony for willfully making and signing under penalties of perjury any return, statement, or other document that the person does not believe to be true and correct as to every material matter. I.R.C. § 7206(1). The penalty for violating section 7206 is a fine of up to $100,000 ($500,000 in the case of a corporation) and imprisonment for up to 3 years. Any individual found guilty of either offense may be subject to an increased fine of up to $250,000. 18 U.S.C. § 3571(b)(3).

Persons who promote frivolous arguments and those who assist taxpayers in claiming tax benefits based on frivolous arguments may be prosecuted for a criminal felony for which the penalty is up to $100,000 ($500,000 in the case of a corporation) and imprisonment for up to 3 years for assisting with or advising

57

about the preparation or presentation of a false return or other document under the internal revenue laws. I.R.C. § 7206(2). Any individual found guilty of a felony under section 7206 may be subject to an increased fine of up to $250,000. 18 U.S.C. § 3571(b)(3).

**Relevant Case Law:**

Deyo v. United States, 296 F. App'x 157, 158 (2d Cir. 2008) – the court held that the IRS complied with any applicable personal approval requirement of section 6751 and upheld the assessment of penalties against a married couple for filing frivolous income tax returns, on which the taxpayers claimed zero adjusted gross income based on the frivolous position that they did not receive any income from sources listed in the regulations under section 861.

Szopa v. United States, 460 F.3d 884, 887 (7th Cir. 2006) – the court found that a frivolous tax appeal warrants a presumptive sanction of $4,000, but imposed an $8,000 sanction against the taxpayer for repeatedly filing frivolous appeals.

Gass v. United States, 4 F. App'x 565 (10th Cir. 2001) – the court imposed an $8,000 penalty for contending that taxes on income from real property are unconstitutional.

Brashier v. Commissioner, 12 F. App'x 698 (10th Cir. 2001) – the court imposed $1,000 penalties on taxpayers who argued that filing sworn income tax returns violated their Fifth Amendment privilege against self-incrimination, after the Tax Court had warned them that their argument – rejected consistently for more than seventy years – was frivolous.

Baskin v. United States, 738 F.2d 975 (8th Cir. 1984) – the court found that the IRS's assessment of a frivolous return penalty without a judicial hearing was not a denial of due process because there was an adequate opportunity for a later judicial determination of legal rights.

Jones v. Commissioner, 688 F.2d 17 (6th Cir. 1982) – the court found the taxpayer's claim that his wages were paid in "depreciated bank notes" as clearly without merit and affirmed the Tax Court's imposition of an addition to tax for negligence or intentional disregard of rules and regulations.

United States v. Rempel, 87 A.F.T.R.2d (RIA) 1810 (D. Ark. 2001) – the court warned the taxpayers of sanctions and stated: "It is apparent to the court from some of the papers filed by the Rempels that they have at least had access to some of the publications of tax protester organizations." The court went on to say, "The publications of these organizations have a bad habit of giving lots of advice without explaining the consequences which can flow from the assertion of totally discredited legal positions and/or meritless factual positions."

58

Rowe v. United States, 583 F. Supp. 1516, 1520 (D. Del. 1984), aff'd, 749 F.2d 27 (3d Cir. 1984) – the court upheld the viability of section 6702 penalties against various objections, including that it was unconstitutionally vague because it does not define a "frivolous" return. "Frivolous is commonly understood to mean having no basis in law or fact," the court stated.

**Other Cases:**

Holker v. United States, 737 F.2d 751, 752-53 (8th Cir. 1984); McAfee v. United States, 2001-1 U.S.T.C. (CCH) ¶ 50,433 (N.D. Ga. 2001).

**Sanctions Imposed Generally in Tax Court Cases:**

Lee v. Commissioner, 463 F. App'x 236 (5th Cir. 2012) – the court affirmed the Tax Court's sua sponte imposition of a $1,000 section 6673 penalty when the taxpayer had argued that the amounts shown on her Form 1099 were not taxable income, she was not a person subject to tax, and she was not involved in a trade or business.

Leyva v. Commissioner, 483 F. App'x 371 (9th Cir. 2012) – the court affirmed the Tax Court's imposition of the section 6673 penalty against the petitioner after petitioner argued that the IRS was prohibited from collecting income tax from him because he had filed a Form 1040 reporting zero income.

Thomason v. Commissioner, 401 F. App'x 921 (5th Cir. 2010) – the court affirmed the Tax Court's imposition of a $2,000 penalty against petitioner under section 6673 because petitioner made numerous frivolous arguments, including that the section 6020(b) substitute tax return prepared by the IRS was invalid and that United States citizens are exempt from paying income tax on income earned in the United States.

Tinnerman v. Commissioner, T.C. Memo. 2010-150 – the court imposed a $25,000 penalty under section 6673 in a CDP case for delaying the proceedings by making "stale and recycled" frivolous arguments.

Precourt v. Commissioner, T.C. Memo. 2010-24 – against a background of eleven separate actions in which the taxpayer advanced frivolous arguments in both Tax Court and district court, as well as previous sanctions against the taxpayer of over $22,000, the Tax Court dismissed the taxpayer's case and imposed the maximum penalty of $25,000 for failing to appear for court proceedings and for failing to comply with court orders. In addition to petitioner's dilatory conduct, his petition was plagued with frivolous constitutional and other claims.

McCammon v. Commissioner, T.C. Memo. 2008-114, 95 T.C.M. (CCH) 1421 (2008) – the court imposed a $25,000 sanction against a taxpayer who argued that she "did not have any income 'in a constitutional sense,'" despite almost

59

$200,000 paid to the taxpayer in her medical practice and despite being previously warned by the court against instituting meritless proceedings.

Stearman v. Commissioner, T.C. Memo. 2005-39, 89 T.C.M. (CCH) 823 (2005), aff'd, 436 F.3d 533 (5th Cir. 2006) – the court imposed sanctions totaling $25,000 against the taxpayer for advancing arguments characteristic of tax-protester rhetoric that has been universally rejected by the courts, including arguments regarding the Sixteenth Amendment. In affirming the Tax Court's holding, the Fifth Circuit granted the government's request for further sanctions of $6,000 against the taxpayer for maintaining frivolous arguments on appeal, and the Fifth Circuit imposed an additional $6,000 sanctions on its own, for total additional sanctions of $12,000.

Haines v. Commissioner, T.C. Memo. 2000-126, 79 T.C.M. (CCH) 1844, 1846 (2000) – stating that "[p]etitioner knew or should have known that his position was groundless and frivolous, yet he persisted in maintaining this proceeding primarily to impede the proper workings of our judicial system and to delay the payment of his Federal income tax liabilities," the court imposed a $25,000 penalty.

**Other Cases:**

Rodriguez v. Commissioner, T.C. Memo. 2009-92, 97 T.C.M. (CCH) 1482 (2009); Rhodes v. Commissioner, T.C. Memo. 2008-225, 96 T.C.M. (CCH) 215 (2008); Hanloh v. Commissioner, T.C. Memo. 2006-194, 92 T.C.M. (CCH) 266 (2006).

**Sanctions Imposed in Collection Due Process Cases:**

Oropeza v. Commissioner, 402 F. App'x 221 (9th Cir. 2010) – the court affirmed the imposition of a $10,000 penalty on the taxpayer for raising frivolous and groundless arguments related to collection due process.

Goff v. Commissioner, 135 T.C. 231 (2010) – the court held that the IRS may proceed with collection of taxpayer's unpaid taxes and penalties because the bonded promissory note she presented to the IRS did not constitute payment of her liabilities. The court also held that her position was groundless and her arguments in support of the position were frivolous, and it imposed a $15,000 penalty against her under section 6673.

Pierson v. Commissioner, 115 T.C. 576, 581 (2000) – the court considered imposing sanctions against the taxpayer, but decided against doing so, stating, "we regard this case as fair warning to those taxpayers who, in the future, institute or maintain a lien or levy action primarily for delay or whose position in such a proceeding is frivolous or groundless."

**Other Cases:**

60

Burke v. Commissioner, 124 T.C. 189 (2005); Roberts v. Commissioner, 118 T.C. 365 (2002), aff'd, 329 F.3d 1224 (11th Cir. 2003); Battle v. Commissioner, T.C. Memo. 2009-171, 98 T.C.M. (CCH) 45 (2009); Oropeza v. Commissioner, T.C. Memo. 2008-94, 95 T.C.M. (CCH) 1367 (2008), aff'd, 402 F. App'x 221 (9th Cir. 2010); Hassell v. Commissioner, T.C. Memo. 2006-196, 92 T.C.M. (CCH) 273 (2006).

## Sanctions Imposed Against Taxpayer's Counsel:

Powell v. Commissioner, T.C. Memo. 2009-174, 98 T.C.M. (CCH) 56 (2009) – the court imposed sanctions against the taxpayer in the amount of $25,000 and against the taxpayer's attorney in the amount of $4,725 for making frivolous arguments and delaying the proceedings.

Wetzel v. Commissioner, T.C. Memo. 2005-211, 90 T.C.M. (CCH) 266 (2005) – the court imposed a $15,000 penalty against Wetzel, a professional tax return preparer, for making frivolous arguments because he knew or should have known the arguments were frivolous.

Takaba v. Commissioner, 119 T.C. 285, 295 (2002) – the court rejected the argument that income received from sources within the United States is not taxable income, stating that "[t]he 861 argument is contrary to established law and, for that reason, frivolous" and imposed sanctions of $10,500 against the taxpayer's attorney, as well as sanctions of $15,000 against the taxpayer, for making such groundless arguments.

The Nis Family Trust v. Commissioner, 115 T.C. 523, 545-46 (2000) – concluding that the petitioners chose "to pursue a strategy of noncooperation and delay, undertaken behind a smokescreen of frivolous tax-protester arguments," the court imposed a $25,000 penalty against them, and also imposed sanctions of more than $10,600 against their attorney for arguing frivolous positions in bad faith.

Edwards v. Commissioner, T.C. Memo. 2002-169, 84 T.C.M. (CCH) 24, 42 (2002), aff'd, 119 F. App'x 293 (D.C. Cir. 2005) – the court found that sanctions were appropriate against both the taxpayer and the taxpayer's attorney for making groundless arguments and stated that "[a]n attorney cannot advance frivolous arguments to this Court with impunity, even if those arguments were initially developed by the client." In a supplemental opinion, the court imposed sanctions against the taxpayer in the amount of $24,000 and against the taxpayer's attorney in the amount of $13,050. Edwards v. Commissioner, T.C. Memo. 2003-149, 85 T.C.M. (CCH) 1357.

# CERTIFICATE OF SERVICE

**Republic/State of South Carolina** )
**Subscribed and Affirmed** )
**County of Lexington** )

I, 4 Charlotte Mayers _____, the undersigned mailer/server, being of sound mind and under no duress, do hereby certify, attest and affirm that the following facts are true and correct, to wit:

1. That on the 16th day of March 2018 on behalf of Richard E. Boggs, a human being, the undersigned personally deposited the following documents (listed below) inside the envelope, sealed them and transmitted them via the carrier indicated in item 2 below, to wit:

| Item # | Document Description | Number of pages |
|---|---|---|
| 1 | AFFIRMATION OF FACT & Notice of: Offer of Performance of Necessity to Satisfy Alleged Tax Obligations | 5 |
| 2 | | |

   Total of _1_ documents with combined total of _5_ pages.

2. That I personally mailed said document(s) via:

   _____ United States Postal Office, by regular mail, postage prepaid
   __X__ United States Postal Office, by **Certified Mail #** _see below_
   _____ Return Receipt Requested
   _____ United Parcel Service (UPS), tracking number # _____
   _____ Federal Express, tracking number # _____
   _____ Other (specify): _____

   at said City and State, one (1) complete set of **ORIGINAL/COPIED** (circle one) documents, as described in item 1 above, properly enveloped and addressed to (addressee(s) and address(es)):

| # | Recipient(s) |
|---|---|
| 1 | DEPARTMENT OF THE TREASURY INTERNAL REVENUE SERVICE 1835 ASSEMBLY ST. COLUMBIA, SC 29201 ATTN: DISTRICT DIRECTOR  Certified Mail # _7017 0530 0000 5220 4949_ |
| 2 | DEPARTMENT OF THE TREASURY INTERNAL REVENUE SERVICE 1111 CONSTITUTION AVENUE NW WASHINGTON, DC 20224 ATTN: JOHN KOSKINEN COMMISSIONER  Certified Mail # _7017 0530 0000 5220 4932_ |

3. That I am at least 18 years of age;

4. That I am not related to  Richard E. Boggs  by blood, marriage, adoption, or employment, but serve as a "disinterested third party" (herein "Server"); and further,

5. That I am in no way connected to, or involved in or with, the person and/or matter at issue in this instant action.

I now affix my signature to these affirmations.

(Signature): _Charlotte Mayers_____, Mailer/Server

(Printed name): _Charlotte Mayers_____

---

# NOTARY PUBLIC'S JURAT

Subscribed and sworn to (or affirmed) before me on this _16_ day of _March_____, 20_18_, by

_Richard E. Boggs_, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal.


_____ SEAL
Notary Public

My Commission Expires On: _02-18-2026_

Richard E. Boggs
7001 St. Andrews Road #124
Columbia, South Carolina 20212

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
1835 ASSEMBLY ST.
COLUMBIA, SC 29201
ATTN: DISTRICT DIRECTOR

Certified Mail #____7017 0530 0000 5220 4949____

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
1111 CONSTITUTION AVENUE NW
WASHINGTON, DC 20224
ATTN: JOHN KOSKINEN COMMISSIONER

Certified Mail #____7017 0530 0000 5220 4932____



Re: Alleged Taxes owed on Wages, Salary, and Other Property pertaining to your tracking/file
number XXX-XX-5787

### **AFFIRMATION OF FACT &**

### **Notice of: Offer of Performance of Necessity**

### **to Satisfy Alleged Tax Obligations**

**I, Richard-Edward:Boggs Affiant, state that:**

1.    I am a private party known as: Richard-Edward:Boggs

2.    I, the Affiant, having first-hand knowledge of the facts, affirm the following to be true, cor-
      rect, complete, and not misleading, pursuant to the laws of the united States of
      America: 28 U.S.C. 1746(2).

3.    I am a living breathing human upon the land and not a "dead person" or a corporation.

4.    My mailing and service location is as shown above.

5.    I am not a resident of a Federal or State District within a National or State Regional Area

6.    I am not now, nor have I ever been, a citizen of the United States, as defined within the
      limitations of the declaratory Fourteenth Amendment.

7.    I am not a member of a foreign body politic as established through the Social Security Act
      of 1935 or as amended.

8.    I am not a member of the armed forces of the United States.

9.    I am not a resident of the United States/U.S./District of Columbia/Philippines/Puerto
      Rico/Virgin Islands/Guam/Northern Mariana Islands/American Samoa/any territories/ any
      insular possessions/et. al. pursuant to the Constitution for the United States of America
      (1787), Article I, Section 8, Clauses 17 and 18.

1

10. I am not one of those listed pursuant to the Proclaimed List of Blocked Nationals, U.S.

11. It has come to my attention that the Internal Revenue Service (hereinafter IRS) has assessed a tax/penalty against Me, Richard-Edward:Boggs, I do not believe that there is any truth, validity, or accuracy to such alleged tax assessment.

12. It is certainly possible that the IRS has made a mistake and has assessed the tax erroneously without any reasonable or factual basis. However, I do not want to go to the extra time, trouble and expense of hiring an attorney, CPA, Enrolled Agent, or other tax professional to dispute this matter with the IRS. It is my intent to resolve this question with as little hassle as possible.

13. Therefore, this constitutes my good faith offer to pay the alleged tax obligation in full or in agreed installments if the IRS can show the reasonable and lawful basis for its claim.

14. Although reference is made herein to state statutory language, I certainly do not rely upon any statutes, state or federal, for the legal significance of this offer. The statutes of the states Civil Codes, for example, are quoted herewith merely as an aid to understanding the nature and meaning of an Offer of Performance.

15. The existence of these statutes is clear evidence that a tender of this type has been used effectively and extensively for commercial and business purposes throughout the history of America. The legislature in this state merely codified the known common law significance of an Offer of this type. The legislatures in other states have done the same thing and numerous state courts have created a well-established (stare decisis) body of law with regard to an offer of this type.

16. This is an Offer of Performance of Necessity, to extinguish the alleged tax liability and the IRS may either accept this offer, reject this offer, or object to the mode of this offer. If the IRS finds it objectionable that I use the statutes of this states Civil Code, as an aid to understanding the nature and meaning of this Offer, it should lodge that objection immediately and I will re-submit this Offer without any reference to the statutes of the state Civil Code or Code of Civil Procedures.

### OFFER TO EXTINGUISH THE ALLEGED TAX LIABILITY

17. **This is an Offer of Performance with intent to extinguish the alleged tax liability.** As noted above, as an aid to understanding the nature and meaning of this Offer, please note the following language:

From the statutes enacted in virtually every state legislature setting forth the commonly understood meaning of such an offer; the state civil codes, which are generally entitled "Extinguishment of Obligation" (or similar wording), an obligation is extinguished by an offer of performance made in conformity to the rules herein provided and with intent to extinguish the obligation.

And state Civil Procedures entitled "Rejected offer as equivalent to production and tender of money, instrument, or property" -- "AN OFFER EQUIVALENT TO PAYMENT (or similar wording). An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is, if not accepted, equivalent to the actual production or tender of the money, instrument, or property.   And Civil Codes stating an offer dependent upon performance of conditions -- "PERFORMANCE OF CONDITION PRECEDENT" (or similar wording). When a debtor is entitled to the performance of a condition precedent to, or concurrent with, performance on his part, he may make his offer to depend upon the due performance of such condition.

2

18. This Offer is to pay a certain sum to the agency [Department of the Treasury, Internal Revenue Service (hereinafter IRS)] asserted as a tax liability, in full, or in agreed installments, including interest and penalties, is made dependent upon performance of conditions precedent to which I am entitled by the fundamental principles of American jurisprudence in law -- namely, presentation of documentary evidence showing the factual grounds of the alleged tax liability to wit:

    a) (1) Documentation or documentary evidence of the legislative act creating the office of the Department of the Treasury, Internal Revenue Service,
       (?) Documentation or documentary evidence of the codification of the legislative act, in the Code of Federal Regulations the "implementing regulations", and
       (3) Documentation or documentary evidence of the publishing of such act in the Federal Register, since you, the proponent, has the burden of proof, all pursuant to Title 44, USC.

    b) Documents or documentary evidence showing facts necessary to establish that I the undersigned, am specifically and unequivocally made liable by the law for the payment of a particular kind of tax alleged by the IRS and clearly identifying the particular statutes, code and regulations that allegedly create the liability for such tax.

    c) Documentation of facts necessary to establish that Richard-Edward:Boggs, the undersigned, is subject to the legislative jurisdiction, regulation, and control of the legislative entity which created the tax statutes in the first place.

    d) Documentation of facts necessary to identify the specific property upon which the tax has been imposed by legislative enactment.

    e) Documentation of facts necessary to establish that such property upon which a tax assessment has been made actually came into my possession, ownership and control.

    f) Documentation of facts necessary to determine how 26 USC § 83 factored into the calculation of the alleged amount due and owing.

19. Please take note that if these six (6) elements cannot be met, then there is no tax liability for me to pay (which I believe to be the case).

20. If, in fact, the tax liability alleged by the IRS is a tax for which, Richard-Edward:Boggs the undersigned, is made liable for by law, and I am subject to the jurisdiction, regulation and control of the legislative entity which enacted the taxing statute, and I have taken possession, control and ownership of the property upon which the legislative body has imposed the tax, then I am certainly entitled to presentation of evidence sufficient to demonstrate the factual validity of these claims.

## PRESUMPTION OF GOOD FAITH AND FAIR DEALING

21 The law presumes men act fairly and honestly -- that their dealings are in Good Faith without intention to cheat, hinder, delay or defraud another. And if any transaction is called into question, it is equally capable of two constructions -- one that is fair and honest, the other unfair and dishonest, then, in that case, the law presumes the transaction to be fair and honest. Therefore, I am not going to jump to the conclusion that the IRS is manifestly attempting to "put one over on Me", by asserting a tax liability where none exists -- and attempting to collect a tax which I do not owe by fraudulent or deceitful means. Therefore, I make this Good Faith Offer of Performance with intent to extinguish the alleged tax obligation.

## OBJECTIONS MUST BE IMMEDIATELY STATED

22. Although the principle is well established that if the IRS has any objection to My Offer, its terms or its mode, it has the duty and Good Faith obligation to express such objection to me, immediately, and not harbor said objections -- and then to surprise Me at some later date. I state the following for its explanatory value in this regard and that I do not rely upon

3

it as the legal basis for this requirement: State Civil Codes adopted by virtually all states adopted under the Uniform Commercial Code, worded in similar terms in all states, to wit:

"Time for Objection to Mode of Offer--OBJECTIONS TO MODE OF OFFER" (or similar wording). All objections to the mode of offer of performance which the creditor has an opportunity to state at the time to the person making the offer which could then be obviated by him are waived by the creditor if not then stated.

And state Codes of Civil Procedures, Objections to tender; time; specification--" OBJECTIONS TO TENDER MUST BE SPECIFIED" (or similar wording). The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount. terms, or kind which he requires, or be precluded from objecting afterwards.

23     Therefore, if the IRS has any objections to this Offer of Performance, they have the opportunity to state said objection immediately in writing and also the obligation imposed by the principle of Good Faith to do so. If no objection is made, the IRS waives its right to any objection at a later date

### ATTEMPT TO EXTINGUISH THE OBLIGATION

24.     Furthermore, it should be noted that I am making this Offer of Performance with the intent to extinguish the obligation and it is well established in American Jurisprudence that an obligation is extinguished by an Offer of Performance.

### OFFER STOPS THE RUNNING OF INTEREST

25.     It should be noted that this Offer of Performance has the effect of stopping the running of interest and all other incidents of the obligation. Merely as an aid to understanding of this fact, please take note, if you will, of what the State Legislatures recognized as far back as the year 1872, with regard to an Offer of this type: Civil Codes state: "Effect of Offer on Interest and Incidents of Obligation" (or similar wording). An offer of payment or offer of performance duly made so the title of the thing offered to the creditor stops the running of interest on the obligation and has the same effect upon incidents performed thereof.

26.     It should be possible for the agency IRS to immediately produce for My consideration the grounds upon which it asserts its claims – if such grounds exist. If I receive no response from the IRS, such lack of response to or rejection of this Offer accords the only plausible explanation for such lack of response of rejection of this Offer is that the IRS has made an erroneous and invalid tax assessment for which there is no factual and reasonable basis.

27.     In the absence of acceptance or objection to this Offer by the agency IRS, I would construe any further attempt by the agency IRS to collect the alleged tax is nothing but malicious harassment with the intent to defraud.

28.     If there are any questions regarding this tender, put them in writing for my consideration. I will be pleased to answer all correspondence--addressing any unresolved issue. As always, my serious intent is to conclude this matter according to the truth and the Law.

### CASE LAW

29.     The courts have consistently affirmed and upheld the nature and meaning and effect of an Offer of this type. I offer the following to show that you, the Department of the Treasury, Internal Revenue Service, are bound by the following case precedent, even though you are bound under the common law of contracts and commercial ventures regardless:

   a) "A tender is an offer with the intent to extinguish the obligation when properly made, it has the effect of putting the other party in default if he refuses to accept that. *'Weisenberg v. Hirschhorn, 275 P 997,79 Cal @ 532.*

4

b) "Any tender of performance including the exercise of an option is ineffective if it opposes conditions upon its acceptance which the offeror is not entitled to demand..." *Schiffner v. Papa 223 Cal App 2d 526.*

c) "However, the opposition of such condition is waived by the offeree if he does not specifically point out the alleged defect in the tender." *Warner v. Gant, 221 Cal App 2d 797.*

d) "The rationale of the requirement of specific objections is that the offeror should be permitted to remedy any defect that is in the tender. The offeree is therefore not allowed to remain silent at the time of the tender and later surprise the offeror with hidden objections." *Thomason V. Carr, 250 Cal App 2d 341 at 350.*

e) "A tender need not be kept good when it appears that it will not be accepted." *Blossom v. City of Long Beach, 189 P2d 787.*

30.    Response to this Offer should be within 30 days of receipt thereof. If additional time is needed by the IRS to consider this Offer, such additional time should be requested in writing.

31.    All withholdings shall stop pending final extinguishment of the alleged taxes owed based upon the compliance of the IRS to the herein Offer, since, if you fail, refuse, or are unable to bring forth the herein required matters, all liability to your agency is forever moot, since your failure to prove the above required matters set forth your lack of jurisdiction over me.


Submitted to the Department of the Treasury, Internal Revenue Service, this Offer of Performance dated the __16th__ day of the __3rd__ month, in the year of our Lord and Savior Yashua the Christ, Two Thousand Eighteen (2018), Anno Domini.

This letter must be filed as a permanent...
of my IRS/FBA/AIMS/IMF 23C record. If such
record(s) have/has been deleted or substituted
this demand still applies.

Initial _NEB_

Richard-Edward:Boggs, Private Party

Charlotte Mayes                    3/16/18
**Witness**                           date

Adam Farr                          3/16/18
**Witness**                           date

5

# CERTIFICATE OF SERVICE

**Republic/State of South Carolina** )
**Subscribed and Affirmed** )
**County of Lexington** )

I, *Adam Doss*, the undersigned mailer/server, being of sound mind and under no duress, do hereby certify, attest and affirm that the following facts are true and correct, to wit:

1. That on the 23rd day of April 2018 on behalf of Richard E. Boggs, a human being, the undersigned personally deposited the following documents (listed below) inside the envelope, sealed them and transmitted them via the carrier indicated in item 2 below, to wit:

| Item # | Document Description | Number of pages |
|---|---|---|
| 1 | AFFIRMATION OF FACT & Notice of Default | 2 |
| 2 | | |

   Total of __1__ documents with combined total of __5__ pages.

2. That I personally mailed said document(s) via:

   _____ United States Postal Office, by regular mail, postage prepaid
   ___X___ United States Postal Office, by **Certified Mail #** __see below__
   _____ Return Receipt Requested
   _____ United Parcel Service (UPS), tracking number # _____
   _____ Federal Express, tracking number # _____
   _____ Other (specify): _____

   at said City and State, one (1) complete set of **ORIGINAL/COPIED (circle one)** documents, as described in item 1 above, properly enveloped and addressed to (addressee(s) and address(es)):

| # | Recipient(s) |
|---|---|
| 1 | DEPARTMENT OF THE TREASURY<br>INTERNAL REVENUE SERVICE<br>1835 ASSEMBLY ST.<br>COLUMBIA, SC 29201<br>ATTN: DISTRICT DIRECTOR<br><br>Certified Mail # __7017 0530 0000 5220 4956__ |
| 2 | DEPARTMENT OF THE TREASURY<br>INTERNAL REVENUE SERVICE<br>1111 CONSTITUTION AVENUE NW<br>WASHINGTON, DC 20224<br>ATTN: JOHN KOSKINEN COMMISSIONER<br><br>Certified Mail # __7017 0530 0000 5220 4963__ |

3. That I am at least 18 years of age;

4. That I am not related to  Richard E. Boggs   by blood, marriage, adoption, or employment, but serve as a "disinterested third party" (herein "Server"); and further,

5. That I am in no way connected to, or involved in or with, the person and/or matter at issue in this instant action.

I now affix my signature to these affirmations.

(Signature): _Adam Doss_____, Mailer/Server

(Printed name): _Adam Doss_____

---

## NOTARY PUBLIC'S JURAT

Subscribed and sworn to (or affirmed) before me on this _23rd_ day of _April_____, 20_18_, by

_  Richard E. Boggs  _, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal.

_Jack Greenwell_____ **SEAL**

Notary Public

My Commission Expires On: _02-18-2026_

Richard E. Boggs
7001 St. Andrews Road #124
Columbia, South Carolina 20212

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
1835 ASSEMBLY ST.
COLUMBIA, SC 29201
ATTN: DISTRICT DIRECTOR

Certified Mail #   7017 0530 0000 5220 4956

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
1111 CONSTITUTION AVENUE NW
WASHINGTON, DC 20224
ATTN: JOHN KOSKINEN, COMMISSIONER

Certified Mail #   7017 0530 0000 5220 4963

**Re: Your "Default on Offer of Performance"**
**Ref:  Your file # XXX-XX-5787**

This Notice is Witnessed, is stated as true, correct, complete, and not misleading, as I verily believe, based upon my former notice that I cannot take an oath.

1. That on the 16th day of the 3rd month, in the year Two Thousand Eighteen (2018) I Richard-Edward:Boggs did personally serve IRS Commissioner JOHN KOSKINEN by Certified Mail, # **7017 0530 0000 5220 4932** accepted on 23 March, 2018, said green card being received back by me on 29 March, 2018 "Offer of Performance" (Tender of payment of alleged IRS debt).

2. That on the same date in (1) above, I also personally served by Certified Mail # **7017 0530 0000 5220 4949** the same "Offer of Performance" upon District Director of Internal Revenue Service at 1835 ASSEMBLY ST., COLUMBIA, SC 29201, accepted on 19 March 2018, said green card received back by me on 22 March 2018.

1

3. To the date of this instrument, neither the Commissioner nor the District Director, in their official or professional capacity, has responded as demanded by way of the "Offer of Performance", dated 16 March 2018, and properly served. That if there has been no mistake on the part of the Internal Revenue Service, opportunity to correct the default within three days from receipt hereof, by producing the answers to the questions presented in the "Offer of Performance" will be allowed.

4. As a direct operation of law, there is no more debt to pay because of the Internal Revenue Service failure to produce the conditions precedent. The above parties are now in default and the alleged tax liens, levy(s), assessments, penalties are now discharged, eliminated, dismissed, canceled, void of any action forever in the future, as a matter of law.

Dated this 23ᴿᴰ day of the 4ᵀᴴ month, in the year two-thousand eighteen (2018) Anno Domini.

Richard-Edward:Boggs , Offeror out of necessity

Witness                                04-23-18
                                       Dated

Witness                                4-23-2018
                                       Dated

2

# CERTIFICATE OF SERVICE

**Republic/State of South Carolina**  )
**Subscribed and Affirmed**  )
**County of Lexington**  )

I, _Charlotte Mayers_ , the undersigned mailer/server, being of sound mind and under no duress, do hereby certify, attest and affirm that the following facts are true and correct, to wit:

1. That on the 8th day of May 2018 on behalf of Richard E. Boggs, a human being, the undersigned personally deposited the following documents (listed below) inside the envelope, sealed them and transmitted them via the carrier indicated in item 2 below, to wit:

| Item # | Document Description | Number of pages |
|---|---|---|
| 1 | **Notice of Default Absolute and Default Absolute** | 3 |
| 2 | | |

Total of __1__ documents with combined total of __3__ pages.

2. That I personally mailed said document(s) via:

_____United States Postal Office, by regular mail, postage prepaid
___X___United States Postal Office, by **Certified Mail #** __see below__
      Return Receipt Requested
_____United Parcel Service (UPS), tracking number # _____
_____Federal Express, tracking number # _____
_____Other (specify): _____

at said City and State, one (1) complete set of **ORIGINAL/COPIED (circle one)** documents, as described in item 1 above, properly enveloped and addressed to (addressee(s) and address(es)):

| | Recipient(s) |
|---|---|
| 1 | DEPARTMENT OF THE TREASURY<br>INTERNAL REVENUE SERVICE<br>1835 ASSEMBLY ST.<br>COLUMBIA, SC 29201<br>ATTN: DISTRICT DIRECTOR<br><br>Certified Mail # __7017 0530 0000 5220 4895__ |
| 2 | DEPARTMENT OF THE TREASURY<br>INTERNAL REVENUE SERVICE<br>1111 CONSTITUTION AVENUE NW<br>WASHINGTON, DC 20224<br>ATTN: JOHN KOSKINEN COMMISSIONER<br><br>Certified Mail # __7017 0530 0000 5220 4888__ |

3. That I am at least 18 years of age;

---

*Certificate/Proof/Affidavit of Service*                 *Page 1 of 2*

4. That I am not related to __Richard E. Boggs__ by blood, marriage, adoption, or employment, but serve as a "disinterested third party" (herein "Server"); and further,

5. That I am in no way connected to, or involved in or with, the person and/or matter at issue in this instant action.

I now affix my signature to these affirmations.

(Signature): _Charlotte Mayers_ , Mailer/Server

(Printed name): _Charlotte Mayers_

---

# NOTARY PUBLIC'S JURAT

Subscribed and sworn to (or affirmed) before me on this _8th_ day of _May_ , 20_18_ , by __Richard E. Boggs__ , proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal.

_____ SEAL
Notary Public

My Commission Expires On: _02-18-2026_

---

Richard E. Boggs
7001 St. Andrews Road #124
Columbia, South Carolina 20212

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
1835 ASSEMBLY ST.
COLUMBIA, SC 29201
ATTN: DISTRICT DIRECTOR

Certified Mail #   7017 0530 0000 5220 4895

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
1111 CONSTITUTION AVENUE NW
WASHINGTON, DC 20224
ATTN: JOHN KOSKINEN, COMMISSIONER

Certified Mail #   7017 0530 0000 5220 4888

### Notice of Default Absolute and Default Absolute

This Notice is Witnessed, is stated as true, correct, complete, and not misleading, as I verily believe, based upon my former notice that I cannot take an oath.

1. I, Richard-Edward:Boggs the Aggrieved Party, do hereby submit timely notice to John Koskinen, acting as a Commissioner of the Department of the Treasury, Internal Revenue Service, and District Director of Department of the Treasury. Internal Revenue Service, Division, (hereinafter YOU, YOURS) that YOU, acting for and on behalf of the Department of the Treasury, Internal Revenue Service, are now in default and in jeopardy of being sued. YOU have been collaterally estopped from ever proceeding forth in this alleged action or any future action by the Department of the Treasury. Internal Revenue Service, against me, Richard-Edward:Boggs, by YOUR own stipulations, for failure to show cause, and by YOUR own bad faith.

2. YOUR failure to respond to the previous 'OFFER OF PERFORMANCE" sent to you by me, the above named, has collaterally estopped YOU from proceeding further in regard to the alleged action, to any future claims or actions

3. Further, silence on your part may only be equated to YOUR total acquiescence to all stipulations set forth in the previous show cause presentments. i.e. "OFFER OF PERFORMANCE" sent to you on 16 March 2018, by certified mail, return receipt requested, and received by you (a copy of which is attached hereto and incorporated herein as though fully set forth) which is further evidence of YOUR bad faith in this alleged tax issue.

2

4. YOUR default is absolute. You have been given proper Notice of a condition of default and YOU, the Department of the Treasury, Internal Revenue Service, have failed to answer the conditions precedent, the Offer of Performance, for discharge of the alleged debt. Therefore, under the terms and conditions of the Offer, the Department of the Treasury, Internal Revenue Service has rejected the offer and, under the clear terms of the Offer, and under the direct operation of law that "a debt tendered and rejected is a debt paid."

5. Case law supporting the above facts is clearly stated in the original Offer, and the Department of the Treasury, Internal Revenue Service had a duty to respond, however, failure to respond is a rejection of the Offer.

6. Furthermore, the case law states that if Department of the Treasury. Internal Revenue Service rejects the Offer, that is the equivalent of "discharge" for the purpose of extinguishment of the alleged debt and the alleged obligation.

7. The alleged claim of debt is cured and is rendered ineffective (if it had been valid, but is not), and said alleged obligation, lien or levy is rendered un-enforceable as a matter of law.

8. Any damage(s) caused the Aggrieved Party herein, without just cause being shown, has resulted in a right of tort, action at law. or other remedy for damages, including, but not limited to criminal action under 18 USC §§241 & 242.

THEREFORE, as a direct operation of law, there is no more alleged debt due and owing to the Department of the Treasury, Internal Revenue Service by me. the herein. Department of the Treasury. Internal Revenue Service has failed to produce the conditions precedent and has breached the contract together with the IRS acceptance of the contract, by law.

CONCLUSION:    The alleged debts herein above are extinguished as a matter of law. It is finished.

Dated this ___8th___ day of the ___5th___ month, in the year of our Lord, two-thousand eighteen (2018) Anno Domini.


_____
Richard-Edward:Boggs, Private Citizen

_____        ___5/8/18___
Witness                                Dated

_____        ___5/8/2018___
Witness                                Dated

2



DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
1835 ASSEMBLY ST.
COLUMBIA, SC 29201
ATTN: DISTRICT DIRECTOR

9590 9402 2490 6906 0693 61

7017 0530 0000 5220 4949



Office of the IRS Comm.
1111 Constitution Ave. NW
Washington, DC 20224-0002
Attn. John Koskinen

9590 9402 1454 6329 2132 58

7017 0530 0000 5220 4932



# *Code Breaker; The § 83 Equation*

## *- The Tax Code's forgotten paragraph -*

by

David R. Myrland

*© Copyright 1994/2014*

# *Code Breaker; The § 83 Equation*

In 1994 David R. Myrland distinguished himself as America's premier authority on the scope and intent of the Internal Revenue Code. After analyzing the IRS' standard operating procedure and comparing it to the language of relevant tax statutes over a period spanning six years, many discrepancies emerged as outright attempts to subvert provisions that serve to either constrain IRS authority or to honor rights to personal privacy and to property in the hands of the individual.

This manual focuses on Tax Code § 83 which remains unknown to the accounting industry, the legal profession, and IRS personnel. HOWEVER, the courts say that § 83 is universally applicable and fundamentally governing:

> **US Tax Court**: "The amount taxable as ordinary income was the lesser of the fair market value of the stock ... over the individual's cost of the stock. ...the language of the section [Tax Code § 83] covers the transfer of ***any property transferred*** in connection with the performance of services... The legislative history makes clear that Congress was aware that the Statute's coverage extended beyond restricted stock plans for employees." (See *Cohn v. Comm'r of IRS*, 73 USTC 443, 446 (1979)).

> **Fifth Circuit**: "Section 83(a) explains how property received in exchange for services is taxed." (See *Montelepre Systemed, Inc. v. Comm'r of IRS*, 956 F.2d 496, 498 (CA5 1992)).

> **Second Circuit**: "At the heart of this case is I.R.C. § 83 [Tax Code § 83], which governs the taxation of property transferred in connection with the performance of services." (See *Gudmundsson v. US*, 634 F.3d 212 (CA2 2011)).

This manual is the first and last word on the meaning and operation of the statute that determines whether Americans owe an income tax on their hard earned pay. When you observe how this interpretation comes together you'll quickly come to understand why the IRS refuses to indulge any and all inquiries as to how Tax Code § 83 operated in any determination of income tax liability.

"Mr. Myrland is a very intelligent individual . . . very smart indeed."
U.S. Department of Justice, November 2011

# *- Code Breaker; The § 83 Equation -*

by

David R. Myrland

Code Breaker; The § 83 Equation
by David R. Myrland

© Copyright 2014
ISBN #13:9781620309650
eBook ISBN:
Published by American Liberties, LLC
http://TakeFromCaesar.US

*All Rights Reserved - No unauthorized copying, recreation, or transmittal of this book, in full or in part, including quotes of any content, for any reason or by any person, is permitted without express written permission of the publisher.

Conclusions, quotes, excerpts, or teachings contained in this manual on 26 USC § 83 and other statutes shall not be made, exploited, duplicated, or otherwise reproduced in any form without the written and express permission of the publisher above named. All such content is hereby claimed as proprietary and are reserved as a matter of right by the publisher.

**From the author**:

You can be right as rain about the operation of the law, but if your conclusion has any impact on the revenue streams or standard operating procedure of government on any level you will be ignored; **America has no courts**. Realistically, the judges are the courts, so to say America has no courts is to say that judges are simply too corrupt to allow the law to operate, especially the Tax Code's protective provisions.

When my compensation is taxed as gross income I'm being deprived of the provisions of Tax Code §§ 83, 212, 1001, 1011, and 1012. You will be asked to determine for yourself whether the law is being violated by the IRS when it seeks to tax what you receive as compensation for your services as an employee, self employed individual, or a sole proprietor. When the government itself can offer no contrary interpretation of a statute that explains how compensation is to be taxed, would you not be the best tax attorney in the land if you offered a contrary interpretation than what is detailed herein?

When you come to agree with me, reflect on how all of that money's been spent by state and federal governments, and imagine how truly small government would have had to stay had it not chosen to steal literally 25% of the work product of honest and trusting Americans over these many decades.

The 1994 edition of this manual is first, then in an epilogue there's a 2014 update and further discussion.

Thank you.

**DISCLAIMER:** Always have your financial and tax matters handled by a certified or licensed professional account, attorney, or financial planner. Nothing you'll see herein is intended as legal advice of any nature. Anything that sounds like that to you should be deemed to be what somebody else might do on a planet far, far away where the law matters. It doesn't matter here, I prove it on daily basis - You've been warned.

**\*Begin 1994 version of *Code Breaker; The § 83 Equation.* Updates are in the epilogue.**

## TANGIBLE AND INTANGIBLE PROPERTY

The following definition of the term "property" is taken from Black's Law Dictionary, Sixth Edition.

> Property. That which is peculiar or proper to any person; that which belongs exclusively to one. In the strict legal sense, an aggregate of rights which are guaranteed and protected by the government. (Cite omitted) The term is said to extend to every species of valuable right or interest. More specifically, ownership; the unrestricted and exclusive right to a thing; the right to dispose of a thing in every legal way, to possess it, to use it, and to exclude everyone else from interfering with it. That dominion or indefinite right of use or disposition which one may lawfully exercise over particular things or subjects. The exclusive right of possessing, enjoying, and disposing of a thing. The highest right a man can have to anything; being used to refer to that right which one has to lands or tenements, goods or chattels, which no way depends on another man's courtesy.
>
> The word is also commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right or interest, and includes real and personal property, easements, franchises, and incorporeal hereditaments, and includes every invasion of one's property rights by an actionable wrong. (Cite omitted)
>
> Property, within constitutional protection, denotes group of rights inhering in citizen's relation to physical thing, as right to possess, use and dispose of it. (Cite omitted)
>
> Goodwill is property; as is an insurance policy and rights incident thereto, including rights to the proceeds. (Cite omitted)
>
> Intangible property. Property which cannot be touched because it has no physical existence such as claims, interests, and rights.
>
> Personal property. In a broad general sense, everything that is the subject of ownership, not coming under denomination of real estate. A right or interest in things personal, or right or interest less than a freehold in realty, or any right or interest which one has in things movable. Personal property includes money, goods, chattels, things in action, and evidences of debt. (Calif.Evid.Code)
>
> Black's Fifth Edition - Criminal code. "Property" means anything of value, including real estate, tangible and intangible personal property, contract rights, choses in action and other interests in or claims to wealth... (Cite omitted)

It should now be clear that "property" is not so much the object of ownership as it is the rights to that object. Indeed, "property" could easily be construed to include a person's rights

themselves. Can you find a way to exclude labor from this definition of "property"? Isn't it true that you can decide where your labor will or will not be expended? Yes. Isn't it true that nobody can make you labor where you do not wish to? Isn't it true that labor has an exchangeable worth? What does the Supreme Court have to say about labor?

> "In principle, there can be no difference between the case of selling labor and the case of selling goods." *Adkins v. Childrens Hospital*, 261 U.S. 525, 558 (1922).

Does Congress share this opinion of labor, that it is "property"? And if Congress DOES agree, have they provided for it in the Code? Yes.

> § 7701(e)(1) In general.- A contract which purports to be a service contract shall be treated as a lease of property . . .

Why would a service contract be a lease of property if services (labor) were not property? Suffices to say that the powers that be recognize labor to be property, as well as that which is given in exchange for it.

*Butcher's Union Co. v. Crescent City Co.*, 111 U.S. 746, at 756-757 (1883), "As in our intercourse with our fellow men certain principles of morality are assumed to exist, without which society would be impossible, so certain inherent rights lie at the foundation of all action, and upon a recognition of them alone can free institutions be maintained. These inherent rights have never been more happily expressed than in the Declaration of Independence, that new evangel of liberty to the people; "We hold these truths to be self evident," that is so plain that their truth is recognized upon their mere statement, "that all men are endowed," not by edicts of Emperors, or decrees of Parliament, or acts of Congress, but, "by their Creator with certain inalienable rights," that is, rights which cannot be bartered away, or given away, or taken away except in punishment of crime, "and that among these are life, liberty, and the pursuit of happiness, and to secure these," not grant them but secure them, "governments are instituted among men, deriving their just powers from the consent of the governed."

*Butcher's*, supra, at 757: "Among these inalienable rights, as proclaimed in that document, is the right of men to pursue their happiness, by which is meant the right to pursue any lawful business or vocation, in any manner not inconsistent with the equal rights of others, which may increase their prosperity or develop their faculties, so as to give their highest enjoyment."

"The common business and callings of life, the ordinary trades and pursuits, which are innocuous in themselves, and have been followed in all communities from time immemorial, must, therefore, be free in this country to all alike upon the same conditions. The right to pursue them, without let or hindrance, except that which is applied to all persons of the same age, sex, condition, is a distinguished privilege of citizens of the

Page **4** of **94**

United States, and an essential element of that freedom which they claim as their birthright."

"It has been well said that, "The property which every man has is his own labor, as it is the original foundation of all other property, so it is the most sacred and inviolable. The patrimony of the poor man lies in the strength and dexterity of his own hands, and to hinder his employing this strength and dexterity in what manner he thinks proper, without injury to his neighbor, is a plain violation of the most sacred property."

*Coppage v. Kansas*, 236 US 1, at 14 (1915): "Included in the right of personal liberty and the right of private property, partaking of the nature of each is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property."

*The Antelope*, 23 US 66, 120: "...every man has a natural right to the fruits of his own labor, as generally admitted; and that no other person can rightfully deprive him of those fruits, and appropriate them against his will..."

*Evans v. Gore*, 253 US 245 (1920): "The Sixteenth Amendment does not justify the taxation of persons or things previously immune. It was intended only to remove all occasion for any apportionment of income taxes among the states.

Constitutional Amendment 16 authorizing Congress to collect taxes on incomes, from whatever source derived, without apportionment, among the states, does not extend the taxing power to new or excepted subjects, but merely removes all occasion otherwise existing for an apportionment, and hence does not authorize a tax on the salary of a federal judge contrary to Article 3, Section 1."

Did we just hear the Supreme Court refer to the right of free labor as the "most sacred right of man"? Yes. Does a Nation under God tax that which comes from him? No. That would go against all upon which this Nation is founded. An entity that sets about doing so cannot be construed to be moral, ethical, nor American.

Having established that labor is property, let's explore the fundamental characteristics of a transaction where property is exchanged for other objects or forms of property. Remember that "property" includes the tangible, for example a stereo system, and the intangible, such as labor or a contract.

If someone agreed to give you a refrigerator worth $800 in exchange for a stereo system worth $800, would either of you owe any tax? No. If you buy a car from a dealer or other party, does the IRS get a cut? No. This is a very easy concept to grasp but, why is this the case? It is because both parties to the transaction have identical costs. The car dealer has to pay for employees' labor, wholesale car prices, lease fees, etc..., and you pay good money (property) for

the car that, ideally, will provide the car dealer with at least a modest profit. The dealer's profit is the only amount from which the IRS may derive revenue, right? In the other case, the refrigerator and the stereo system are a cost to you and the other party. Cost is not included in income, is it? This is a fundamental standard in the determination of what is or is not income to those who exchange property. Isn't it true that a business or self-employed person may deduct their cost before computing their taxes? Yes.

All property, tangible or intangible, has a value. As we have seen, to be property, a thing MUST have an exchangeable value. Value of a thing may not always be easily ascertained, and in the case of intangible property (labor), a scenario for great exploitation and oppression exists when the fair market value is not readily recognizable. A worse scenario is when the intangible property is not recognized as property at all. This is the case with regards to labor. How can the fair market value of intangible property be established?

> Black's, Sixth Edition, "Arm's Length Transaction; Said of a transaction negotiated between unrelated parties, each acting in his or her own self interest; **the basis for a fair market value determination.** A transaction in good faith in the ordinary course of business by parties with independent interests... The standard under which unrelated parties, each acting in his or her own best interest, would carry out a particular transaction.

The Supreme Court agrees with this definition. (See *U.S. v. Cartwright*, 411 U.S. 546, 551 (1973)). This definition makes perfect sense when foundations of American culture are held in consideration, foundations like free enterprise and open market. In an "arm's length transaction", the market sets the price. If your price is too high, can an unrelated party go elsewhere to obtain what it is you seek to dispose of? Yes.

If you applied for a job cleaning a kennel and offered to do the job for $10 per hour, the manager/owner can of course hire the individual who applied before you or after you, who is willing to do the job for only $5 per hour, can they not? Yes. This is because the fair market value (FMV) of that service is what an unrelated party is willing to accept in return for the service.

If, on the other hand, a company in Alaska was looking for engineers to work on the pipeline and engineers were in short supply, they may have to pay a higher price for those engineers than a company in the fifty states. This could be for many reasons, including weather conditions that must be endured by the engineers, isolation from family and friends, etc... When

offered the same rate of pay as engineers in the fifty states, you could insist on more pay to make up for these inconveniences and you may refuse if the price is not right; the market sets the price. If the price the company is willing to pay is not enough to entice a migration of a possible staff of engineers, the company will simply have to offer more.

Going back to the definition of the term "arm's length transaction" we see that there are two factors or criterion upon which one must rely when ascertaining the FMV of property. These are (1) unrelated parties and (2) both parties are acting in their own best interest. Is this not the average employment contract or service contract with an independent contractor? Yes. Is a service contract a lease of property? Yes (See § 7701(e)).

In short, labor is property, a service contract is property, wages, fees, salaries, any compensation is property, just like the refrigerator or the stereo system. If these forms of property are of exchangeable worth, they have a FMV, right (Remember the definitions)? If you dispose of your personal property to an unrelated party for a fair price, is there a gain or profit (You answer this one)? If there is no profit or gain, is any tax owed? Was the personal property that you disposed of your labor? Does it have a FMV? Is the FMV taxable? When the refrigerator is exchanged for its FMV, is there a tax owed? If not, why would labor be taxed on its FMV, why would it be treated differently? Because it is a form of intangible property; easier to exploit.

The simple truth is that when property is exchanged for its FMV, both parties have incurred the SAME cost and that cost is the full worth of the property exchanged and thus, no taxable event. When an unrelated party gives you $10 per hour to deliver packages for example, they incur a cost of $10 for every hour you work. For every hour you work, you incur a cost also, the labor (property) that cannot be reclaimed. What is the labor worth (What is your cost)? Answer: Its FMV is exactly what an unrelated party is willing to pay; $10 per hour-and this amount is your cost.

> "The basis of property you buy is usually its cost. The cost is the amount of cash and debt obligations you pay for it and the fair market value of other property or services you provide in the transaction. See IRS 1994 Publication 17, pg. 118.

Now we will examine the relationship between FMV and an employment or service contract. Is an employment contract a contract with an unrelated party? Yes. Do the parties have different interests? Yes. Is the same thing true of a service contract with an independent

contractor? Yes. Aren't both of these contracts and the amounts received under these contracts therefore representative of only the FMV of the labor performed or the services rendered? After all, a contract IS an agreement to pay. Isn't a service/employment contract an agreement with an unrelated party who is acting in their own best interest (Arm's Length Transaction)? What that employer or customer pays for labor or services is therefore only the FMV, isn't it? Yes. **CONTRACT VALUE EQUALS FAIR MARKET VALUE - THEY ARE THE SAME THING!!!**

When disposed of in an arm's length transaction, personal property's FMV is not income (refrigerator, stereo, labor). Labor is property, and when disposed of for its FMV, no taxable event has occurred. The property disposed of is cost, and compensation for that property under contract or agreement is nothing more than FMV.

Contract equals FMV and therefore, FMV should include all that is received under contract, right? Isn't it true that pensions, benefits, sick leave, vacation pay, are parts of a contractual agreement? Yes.

> § 83 Property Transferred in Connection with the Performance of Services. If, in connection with the performance of services property is transferred, **...the excess of...the fair market value of such property...over...the amount (if any) paid for such property, ...shall be included in the gross income of the person who performed such services** . . .

> **"Section 83(a) explains how property received in exchange for services is taxed."** (See *Montelepre Systemed v. C.I.R.*, 956 F.2d 496, 498 (CA5 1992)).

The Court of Appeals, on three different circuits, has ruled that § 83 applies to all compensation for services and that it explains how to tax it but, one would be hard pressed to explain how § 83 allows the FMV to be included in gross income. Section 83 addresses FMV, excess, AND gross income but, only the excess is associated with gross income. How can an individual include the FMV in gross income without violating § 83? It cannot be done.

This is the statute or Code section that is not being enforced, this is the statute that acknowledges the labor or services rendered as a **cost** to the employee or contractor/sole proprietor. Below is an assembly of conflicting opinions about § 83 from the IRS and from the Courts, authorities are in bold.

"Section 83 does not provide that a person may exclude amounts from income solely because he or she received property or the fair market value of his or her services. Section 83 applies under very specific conditions to transferred property that, when received, is subject to restrictions that effect its value." **Thomas Marusin, Chief of Customer Services Branch, IRS**.

"The section specifies that gross income includes property transferred to an employee in connection with the performance of services provided by such employee. ...It is not an exclusion. ...The checks issued by XXX Corporation (name omitted) to you as an employee do not fall within this definition of property (26 CFR 1.83-3(e)), so IRC § 83 does not determine the taxability of your wages." **Mary Solum, Internal Revenue Agent**.

"The amount taxable as ordinary income was the lesser of the fair market value of the stock...over the individual's cost of the stock. ...the language of the section covers the transfer of any property transferred in connection with the performance of services... The legislative history makes clear that Congress was aware that the Statute's coverage extended beyond restricted stock plans for employees." *Cohn v. C.I.R.*, **73 USTC 443, 446 (1979)**.

**26 CFR 1.83-3(e) Property.** For purposes of section 83 and the regulations thereunder, the term "property" includes real and personal property other than either money or an unfunded and unsecured promise to pay money or property in the future. ...In the case of a transfer of a life insurance contract, retirement income contract, or other contract providing life insurance protection, only the cash surrender value of the contract is considered to be property.

"The general rule for the taxation of compensation income upon the receipt of property, other than cash, is very simple. The taxpayer may be taxed on the fair market value of the property received less any amount which the taxpayer may have paid to receive the property. Taxable gain equals the fair market value minus basis. Fair market value is that "price which would probably be agreed upon by a seller willing, but under no compulsion, to sell, and a buyer willing, but under no compulsion, to buy, where both have reasonable knowledge of the facts." *Newberry*, 39 BTA 1123 (1939). From *Pledger v. C.I.R.*, **641 F.2d 287, 295 (U.S.App.5th Cir.1981)** (dissenting on other grounds).

*Pledger* quoting *Sakol v. Commissioner*, **574 F.2d 694, 695:** "In discussing the manner in which Congress intended section 83 to operate, the Court went on to say, "It requires a taxpayer to include in gross income the excess of the stock's fair market value over its cost, as soon as the taxpayer's interest is no longer subject to a substantial risk of forfeiture."

In an opinion affirmed by the Second Circuit, the Tax Court said, "[t]he section (83) provides that property transferred in connection with the performance of services is to be included in the income of the transferee in an amount which exceeds the employee's cost by the fair market value of the property transferred, without regard to any contractual restriction on its disposition..." **67 T.C. at 989**.

"Section 83(a) applies to all property transferred in connection with the performance of services." ***Klingler Elec. Corp. v. U.S.*, 776 F.Supp. 1158, 1164 [1] (S.D.Miss.1991)**.

"... In *Alves v. C.I.R.*, 734 F.2d 478, 481 (9th Cir.1984), the court discussed whether the phrase "in connection with the performance of services" means that the employee must be "receiving **compensation** for his performance of services." (Emphasis added). The *Alves* court stated that the plain language of section 83(a) belied this argument because the "statute applies to all property transferred in connection with the performance of services" and because no "reference is made to the term 'compensation.'" Id. See ***MacNaughton v. U.S.*, 888 F.2d 418, 421 [2] (CA6 1989)**.

Above, you see opinions about the function and applicability of Code § 83 from the Internal Revenue Service and from the Courts. It is clear that the Courts and the Service do not agree with one another. "If there is no gain, there is no income. ...Congress has taxed income, not compensation." (See *Connor v. U.S.*, 303 F.Supp. 1187 (1969), concerning a loss if tangible property).

What could possibly be the motive for the Service to deny the obvious truth about the applicability of § 83? Why would they extend it to only restricted stock transactions with employees? The answer is **money**. Such stock is the probably the least common medium of compensation for services. Apply § 83(a) less often, make more money.

It is the function of the Courts to handle any charge made alleging statutory deprivations. If the applications of the Law examined herein cannot be duly disposed of by a reviewing Court, it would appear that the axioms prevail, axioms codified by Congress.

What will be revealed in the following pages is that Rights to ALL property, tangible or intangible, etc... is a **cost** to the person disposing of it to obtain other property and that the Law perfectly and pristinely reflects this conclusion. When defining **cost,** the Law does not provide for labor's exclusion from this class of property. When the axiom of **cost deduction** is applied within this parameter, Contract Rights/Labor Rights, are secure to the seller of labor and the Service loses authority to contact the individual.

## AN AGGREGATE OF RIGHTS

Black's Law Dictionary is a widely accepted authority upon which to draw for interpretation of legal terms. One particular phrase in Black's definition of the term "property" is the focus of this segment. Property is, "In the strict legal sense, an aggregate of rights...".

An aggregate of rights is property? Like the owner's aggregate of rights to occupancy and enjoyment of a house that is rented out to others? Yes. Like the rights to the services rendered when an individual does his job? Yes.

When this "aggregate of rights" approach is applied to areas of taxation, along with the concept that even an aggregate of rights to intangible property is a cost when it is disposed of to obtain other property, it becomes possible to obtain Sovereignty under strict compliance with the Law. Yes. Sovereignty is often in the Law for the claiming. Under the Law governing the taxation of the transfers of property, there is no exclusion of intangible personal property from that which is to be treated as cost. The only problem is the defending of the Rights to such property.

Think of it. If the seller of labor was not taxed upon contract amounts, what interaction or direct involvement with the government would be required? Next to none. Is this not Sovereignty? Yes. Sovereignty lies in the recognition of the FMV of aggregates of Rights, to tangible or intangible property, as a cost.

## RIGHTS TO INTANGIBLE PROPERTY

This is an examination of the provisions of some particular statutes from the Code that seem to work in concert to allow for the deduction of the Fair Market Value (FMV) of services rendered from gross income. To do this, one must prove that, because labor is property, when it is disposed of for its FMV, there is no profit or "gross income". The property (labor) will have been disposed of and it is un-returnable to the worker thus, when an individual receives only what the property was worth, no profit was realized.

The following section of the Tax Code is said by the Courts to be applicable to virtually any property transferred in connection with the performance of services. This statute allows only for the excess received over the price paid for such compensation, and does not allow for the FMV of such compensation, to be included in gross income.

§ 83 Property Transferred in Connection with the Performance of Services.

If, in connection with the performance of services, property is transferred to any person other than the person for whom such services were performed, ***the excess of-***

(1) ***the fair market value of such property...over,***

(2) ***the amount (if any) paid for such property... shall be included in the gross income of the person who performed such services...***

No mention was made of the FMV being included in gross income in a statute that purports to be applicable to all compensation. These are the two most important factors to be derived from the provisions of Code § 83 above; total applicability and only the excess is includible in gross income.

To prove that labor is cost to the service provider, it would certainly help if the Service was in agreement, that the Service thinks of services as being a cost that is to be deducted, not included, in gross income. IRS Publication 17, page 118 (1994), tells the reader expressly that this is the case when it says:

"Cost Basis. The **basis** of property you buy is usually its **cost.** The **cost** is the amount...you pay for it...or services you provide in the transaction. Your **cost** also includes . . ."

Hasn't the IRS just informed us that services are a cost? Yes. Is cost to be taxed as if it were gain? Do corporations pay taxes on their cost? No. There is a statute in the Code that permits a deduction for all costs incurred in the production of income.

§ 212 Expenses for production of Income.- ***In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses  paid or incurred during the taxable year-***

(1) ***for the production or collection of income***;

(2) for the management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax.

Is there a reason that a cost, such as labor, would not be recognized as an expense incurred in the production of income and as a deduction under this statute? Although labor is an intangible property, when it is transferred in exchange for its FMV this certainly involves no income above the cost of the property sold (the labor). The labor has a FMV equal to the amount an unrelated buyer is willing to pay a seller, neither under compulsion to interact while both are aware of the relevant facts. See *U.S. v. Cartwright*, 411 U.S. 546, 551, 552. In case law under §

83, all payments of <u>tangible</u> property are recognized as the "amount paid" by the service provider (employee or contractor) but none speak to <u>intangible</u> property or services as an "amount paid". At this point, one particular question needs to be asked; why are rights to tangible property recognized as cost but rights to intangible property are not? After all, services cannot be returned to the service provider (laborer). If it is true that labor is property, once the labor is performed such property is most certainly gone forever and, if it is indeed property, FMV received in return for it certainly does not constitute profit or taxable gain, does it? Why is the payment of rights to tangible property acknowledged as a payment under § 83, but rights to <u>intangible</u> property are not?

There is another statute that will do much to solidify this attempt to win for labor its recognition as a cost to the service provider. It would serve to first ask a couple of fundamental questions about a lease contract for the use of property.

**Example 1:** Joe leases to XYZ Inc. a bulldozer needed to clear land intended for development. In the operation of said bulldozer, XYZ Inc. is undeniably negligent in the maintenance of the bulldozer and the engine is destroyed due to low oil, overheating, etc... Damage to the property owned by Joe is found to be in the amount of $4,000.00 and XYZ agrees to pay and does so timely.

**Question:** Is the $4,000.00 received by Joe, for the damages done to his bulldozer, an amount taxable as gross income? Is the $4k not only the FMV of personal property not returnable to Joe, property destroyed that once was of value and owned by Joe? Yes. Is the property recognized as cost <u>tangible property?</u> Yes.

**Example 2:** Joe enters into an employment contract with XYZ Inc. and sells them 400 hours of labor (property) for a fair price, $4,000.00/$10 per hour, both aware of the relevant facts and both are agreeing freely to interact. Joe cannot re-claim the property transferred (400 hours labor). In return for Joe's personal property (his labor), XYZ Inc. pays Joe the stipulated price, thus satisfying the existing contract.

**Question:** Is the $4,000.00 received by Joe, for the services performed for his employer, taxable as gross income? Isn't the $4k only the FMV of personal property (labor) disposed of or lost by Joe; the property disposed of that once was of value and owned by Joe? Yes. Is the property recognized as cost? No. Is it <u>intangible property?</u> Yes. When Joe receives only what the property (labor) is worth, why are his rights to <u>intangible</u> property not recognized as a cost?

The sole difference between the two examples above is that one concerns <u>tangible</u> property (the bulldozer) and the other concerns <u>intangible</u> property (the labor). This distinction in

tax law enforcement discriminates against the holders of intangible property in favor of those with tangible property. Why is labor not treated in the same manner as tangible property? If labor is "leased" to a party who cannot return it, is the compensation for those services not the counterpart of the $4k in Example 1? Yes. Here is a statute that mandates that services shall be treated as property.

§ 7701(e) Treatment of Certain Contracts for Providing Services, Etc.-For *the purposes of chapter 1* -
(1) In General.-A *contract which purports to be a service contract shall be treated as a lease of property if such contract is properly treated as a lease of property*, taking into all relevant factors including whether or not-
(A) the service recipient is in physical possession of the property,
(B) the service recipient controls the property,
(C) the service recipient has a significant economic interest in the property,
(D) the service provider does not bear any risk of substantially diminished receipts or substantially increased expenditures if there is nonperformance under the contract,
(E) the service provider does not use the property concurrently to provide significant services to entities unrelated to the service recipient, and
(F) the total contract price does not substantially exceed the rental value of the property for the contract period. (emphasis added)

In items (A) through (F) there is nothing that excludes the sale of labor from this outline of the components of a "service contract". The only question remaining is; in a lease of property where the property leased is destroyed or is a loss to the property provider, is just compensation for that loss includible in gross income, or is it to be allowed as a deduction under § 212? If not allowed, why? Labor IS cost, it IS property, it IS disposed of in a "service contract"; why is labor's FMV includible in gross income?!?!?

The only answer can be that <u>intangible</u> property is not cost when it is transferred and <u>tangible</u> property is. This distinction is not founded in law. The problem here is that, when labor is not recognized as property, and its FMV is included in gross income, the laborer is being deprived of the provisions of § 7701(e) which say to treat the contract as a lease of property meaning, the FMV of property lost, and received as compensation for that loss, is not includible in gross income. If the FMV is included, the contract is not being treated as a lease of property.

The simple fact at the heart of this issue is; Fair Market Value = CONTRACT. Both are what an unrelated party is willing to pay to a willing seller, neither under compulsion to do business, all relevant facts disclosed. Labor's FMV is the amount of the contract or stipulated

price. To tax a paycheck, where the amounts paid are entirely under contract (FMV), the contract is not being treated as a lease of property, thus violating § 7701(e).

In order for a service contract to be treated as a lease of property, the services rendered must be acknowledged as a payment or a cost for the purposes of § 83. Once this occurs, the FMV is not allowed into gross income and, the value of the loss (the services) is recognized as a cost to the laborer in a lease of property.

## **RIGHT TO LABOR**

The following will seek to illustrate certain characteristics about labor that seem to be lost upon the Federal and State "governments" in their taxing efforts. Decisions of the United States Supreme Court and provisions of the Tax Code, Title 26 USC, will be examined to show that the taxation of compensation FOR labor, when equaling the contract price, is not gain, increase, or profit over the cost of the "goods" sold; it is not gross income.

It will be shown that, under the Law, labor is to be granted every consideration now given to tangible property when it is disposed of to obtain other property meaning, when labor is exchanged for other property, its fair market value (FMV) is a **cost** to the service provider. This leads to only one conclusion; since cost is deductible from gross income, so is the FMV of labor. Perhaps the most fundamental and important aspect of this foray is the method for computing the FMV of personal property. In *U.S. v. Cartwright*, 411 U.S. 546, at 551 (1973), the term "FMV" is defined as:

> "The [FMV] is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." Treas. Reg. § 20.2031-1(b). The willing buyer-willing seller test of [FMV] is nearly as old as the federal income, estate, and gift taxes themselves, and is not challenged here."

> At pg.552, quoting *Hicks v. U.S.*, 335 F.Supp. 474, 481 (Colo.1971): "...The 'willing buyer' is the fully informed person who agrees to buy...at the redemption price. ...It is a market made up of informed buyers and an informed seller, all dealing at arm's length." (See also <u>Black's Law Dictionary</u>, "Arm's length transaction"; *Robinson v. Com'r. of IRS*, 82 USTC 444, 468 (1984); *Pledger v. Com'r. of IRS*, 641 F.2d 287, 295 (1981); *Newberry*, 39 BTA 1123 (1939)).

It is clear that the FMV of personal property is not decided or dictated by the IRS, the State, or any other body who is not involved in such a transaction as defined above. By

examining the income tax ramifications of the sale of personal property, such as a television, in an arm's length transaction, we will come to understand the role this plays in the sale of other personal property such as labor.

If an individual owns a T.V. outright, and sells it to an unrelated buyer who is under no compulsion to buy, the IRS and/or the State do not get a percentage by taxing the amount that the T.V. was sold for because such amount equals only the sellers cost, the value of the T.V.. If the seller made no gain, there is no "income" (See *Eisner*, 252 U.S. 189, 207 (1919)). Wouldn't the same be true if such a seller sold a couch, a bed, a car, etc... in a similar scenario? Yes. The cost of the goods sold is not to be included in gross income because gross income, and not GROSS RECEIPTS, is the foundation of income taxation (See *Clark v. U.S.*, 211 F.2d 100, cert.den. 75 S.Ct. 289 (C.A.Mo.1954)). Cost is deductible from gross income *(See Doyle v. Mitchell*, 247 U.S. 179, 183-188 (1918); *Clark, Id.*). This includes **intangible property**. (See *Musselman Brake Co. v. Com'r. of IRS*, 139 F.2d 65, 68 (1943)).

The definition of the term "property" from Black's will not be quoted herein but, suffices to say, the term "property" extends to every valuable right or interest, visible or invisible, corporeal or incorporeal, tangible or intangible. Would this not include labor? After all, it has every trait or virtue of personal property *i.e.*, you control it, you do not have to part with it, you may sell it at will, etc..

What do the authorities say of labor? Do they deem labor (intangible personal property) to be a cost when it is disposed of to obtain other property? What are services, or labor, or "work"? Is it gain, or is it cost? Can it be both? Any and all emphasis in this memorandum shall be construed to have been added.

> 'Income', as used in the statute should not be given the meaning so as to include everything that comes in. The true function of the words "gain" and "profit" is to limit the meaning of the word "income"... (See *So. Pacific v. Lowe*, 238 F. 847 (1917) (not a quote).

> "The basis of property you buy is usually its cost. The cost is the amount of cash you pay for it...or services you provide in the transaction." (emphasis added) (See IRS Pub.17, pg.118, heading of "Cost basis" (1994)).

> "...every man has a **natural right** to the fruits of his own labor, as generally admitted; and that no other person can rightfully deprive him of those fruits, and appropriate them against his will." (*The Antelope*, 23 U.S. 66, 120).

Did the IRS just inform the public that labor is a cost to the service provider (worker)? Yes. Are the fruits of labor to which a man has a "right" the amount a willing buyer is willing to pay for such labor? Yes. Is **cost** includible in gross income? No. Why is the FMV of labor taxed as gross income? Is such taxation lawful? Before proceeding, let's see what the Supreme Court has to say in their description of labor.

> "The authorities we have cited show that labor is a doom, and if submitted to with fidelity, secures a blessing to the human family. The obligation to labor being imperious, confers a right to labor, which right is **PROPERTY;** and it cannot be withdrawn or destroyed by arbitrary legislation without a violation of **NATURAL RIGHT.** This right is a social right, and constitutions have been made to secure it from invasion. No State of the American Union can deprive a man of his title by arbitrary edict; and arbitrary institutions to limit, depress, impair or to take away this right, cannot be favored or maintained. ...And it is of profound regret to me that its validity is recognized by a majority of this Court, for by it the right to free labor, one of the most sacred and imprescriptible rights of man, is violated." *Slaughterhouse*, 16 Wall. 36-130 (1872). "Among these inalienable rights, as proclaimed in that document [Dec. of Independence.], is the right of men to pursue their happiness, by which is meant the right to pursue any lawful business or vocation, in any manner not inconsistent with the equal rights of others, which may increase their prosperity or develop their faculties, so as to give their highest enjoyment.
>
> "The common business and callings of life, the ordinary trades and pursuits, which are innocuous in themselves, and have been followed in all communities from time immemorial, must, therefore, be free in this country to all alike upon the same conditions. The right to pursue them, without let or hindrance, except that which is applied to all persons of the same age, sex, condition, is a distinguished privilege of citizens of the United States, and an essential element of that freedom which they claim as their birthright.
>
> "It has been well said that, the property which every man has is his own labor, as it is the original foundation of all other property, so it is the most sacred and inviolable. The patrimony of the poor man lies in the strength and dexterity of his own hands, and to hinder his employing this strength and dexterity in what manner he thinks proper, without injury to his neighbor, is a plain violation of the **MOST SACRED PROPERTY."** *Butcher's Union Co. v. Crescent City Co.*, 111 U.S. 746 (1883).

> "Included in the right of personal liberty and the right of private property, partaking of the nature of each is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property." *Coppage v. Kansas*, 236 U.S. 1, 14 (1915).

It is clear that the Right to free labor is deserving of the highest regard in the minds of Supreme Court Justices but, is it to be granted the same status as tangible property sold or otherwise disposed of to obtain other property? Yes.

"In principle, there can be no difference between the case of selling labor and the case of selling goods." (See *Adkins v. Childrens Hospital*, 261 U.S. 525, 558 (1922)).

Above, when examining the sale of goods (the T.V.), we observed that no taxable event occurs when personal property (cost) is disposed of in the acquisition of other property. Also observed is that, the Supreme Court, the Court with VESTED Judicial power (See U.S. Constitution, Art. I, § 3) proclaims that there is no difference between labor (intangible personal property) and goods (**tangible** personal property). Why then is the FMV of such personal property (labor) included in gross income, why is it considered to be "gain"? The reason seems to be the deprivation of certain Statutory provisions in Title 26 USC, the Tax Code.

**Internal Revenue Code section 83 applies to ANY compensation income.** (See 26 CFR 1.83-3(e), (f); *Pledger v. C.I.R.*, 641 F.2d 287, 295 (U.S.App.5th Cir. 1981); *Cohn v. C.I.R.*, 73 USTC 443, 446; *MacNaughton v. U.S.*, 888 F.2d 418, 421 [2] (6th Cir.1989); *Klingler Elec. Corp. v. U.S.*, 776 F.Supp. 1158, 1164 (S.D.Miss.1991); *Robinson v. C.I.R.*, 82 T.C. 444, 453 (1984)).

**"Section 83(a) explains how property received in exchange for service is taxed."** (See *Montelepre Systemed, Inc. v. C.I.R.*, 956 F.2d 496, 498 (5 1992)) because gross income, and not gross receipts, is the foundation of income tax liability (See *Clark v. U.S.*, *supra*)

The applicability of 26 USC § 83 having been duly established, we see that it reads in pertinent part:

§ 83 Property Transferred in Connection With the Performance of Services.-
(a) If, in connection with the performance of services, property is transferred, ...*the excess of-*
(1) *the fair market value of such property*...over
(2) *the amount (if any) paid* for such property, . . . *shall be included in the gross income* of such person who performed such services...

This is an instruction that, the FMV of property received for services is to be determined (Arm's length transaction), and any excess OVER that amount is to be included in gross income. The FMV of a paycheck is supposed to be the amount an unrelated party is willing to pay for it, right? Was the laborer willing to offer 40 Hours of labor to purchase the corporate security or

paycheck? Yes. Was that the price accepted by the company as the FMV of its paycheck? Yes. Again, unrelated parties, acting in their own best interest, under no compulsion to interact, all relevant facts disclosed; Arm's length transaction, the basis of a FMV determination (See Black's, "Arm's length transaction").

Internal Revenue Code, Title 26 USC, § 83 (a) is said to explain how compensation for services is to be taxed, and accordingly, its implementing regulations is 26 CFR 1.83–1. Therefore, it may be concluded that said regulation applies to all compensation and further explains how said compensation is to be taxed. Regulations promulgated under § 83 states in no uncertain terms that:

> 26 CFR 1.83-4(b)(2) If property to which **§1.83-1** applies is transferred at arm's length, the basis [cost] of the property...shall be determined under § 1012 and the regulations thereunder.

Now it is understood that the cost of a paycheck is to be calculated by applying the provisions of § 1012 and the regulations thereunder, and they read in pertinent part:

> § 1012 Basis of Property-Cost. **The basis of property shall be the cost of the property**...

> 26 CFR 1.1012-1 Basis of property.-(a) General rule. In general, the basis of property is the cost thereof. **The cost is the amount paid** for such property **in cash or other property**.

> § 1001(a) Computation of gain or loss.-The **gain** from the sale or other disposition of property **shall be the amount realized** therefrom **over the** <u>adjusted basis</u>...

> 26 CFR 1.1001-1(a) General Rule. ...The fair market value of property is a question of fact, but <u>only in rare and extraordinary cases will property have no fair market</u> value. The general **method of computing such gain or loss** is...that from the amount realized upon the sale or exchange **there shall be withdrawn a sum sufficient to restore the adjusted basis. ...The amount that remains after the adjusted basis has been restored to the taxpayer constitutes realized gain.** If the amount realized upon the sale or exchange is insufficient to restore to the taxpayer the adjusted basis of the property, a loss is sustained to the extent of the difference between such adjusted basis and the amount realized.

> 26 CFR 1.1011-1. Adjusted basis.-The **adjusted basis** for determining the gain or loss from the sale or other disposition of property **is the cost** or other basis prescribed in section 1012 . . .

Above, it is impossible to identify any exclusion of intangible property from that which is **cost.** There is absolutely no foundation in Law for the exclusion of what the Supreme Court calls sacred property (The labor) from that which is cost when it is disposed of in the acquisition of other property. Listen to this commentary about the function of Code § 83. This is from a dissenting opinion but, the dissent was NOT about the function of § 83.

> "The general rule for the taxation of compensation income upon the receipt of property, rather than cash, is very simple. The taxpayer may be taxed upon the [FMV] of the property received less any amount he may have paid to receive the property. Taxable gain equals [FMV] minus basis." *Pledger, supra.*

The general rule is very simple, it is axiomatic, personal property, tangible or intangible, visible or invisible, when disposed of to obtain other property, is a **cost** to the person disposing of it. This should include labor if no foundation for its exclusion from this axiom can be identified. Also axiomatic is that **cost** is not gain, it is deductible from gross income.

The IRS and the Courts will insist that 26 USC § 61(a) and the regulations thereunder include ALL compensation but, if one was to read § 61(a) and 26 CFR 1.61-1 and -2, they would see that said section applies to all compensation "unless excluded by law" and/or "Except as otherwise provided."

It is therefore inescapable that, labor, being sacred personal property, is recognized as a cost under the Law, and by the IRS, and that to tax its FMV when received as compensation, the worker, employee or independent contractor, must be **deprived** of the provisions of Internal Revenue Code § 83(a).

## **COST IS DEDUCTIBLE**

One particular axiom of income taxation that is applied by virtually every business and self-employed person in figuring their tax liabilities is that any COST is to be DEDUCTED. This is not an examination of labor as property, but rather, is only a look at one Supreme Court decision where this axiom, deduct cost, was discussed at length.

*Doyle v. Mitchell Bros. Co.*, 247 U.S. 179 (1918):

> Page 184: "The formula that the entire receipts derived from a conversion of capital assets after deducting cost value must be treated as gross income, so far as it is applied to a conversion of assets acquired before the act took effect and so as to tax as income any

increased value that accrued before that date, finds no support in either the letter or the spirit of the act, and brings the former into incongruity with the latter. If the gross receipts upon such a conversion are to be treated as gross income, what authority have we for deducting either the cost or the previous market value of the assets converted in order to arrive at net income? The deductions specifically authorized are only such as expenses of maintenance and operation of the business and property, rentals, uncompensated losses, depreciation, interest, and taxes. There is no express provision that even allows a merchant to deduct the cost of the goods that he sells.

"Yes it is plain, we think, that by the true intent and meaning of the act the entire proceeds of a mere conversion of capital assets were not to be treated as income. Whatever difficulty there may be about a precise and scientific definition of "income," it imports, as used here, something entirely distinct from principal or capital either as a subject of taxation or as a measure of the tax; conveying rather the idea of gain or increase arising from corporate activities. As we said in *Stratton's Independence v. Howbert*, 231 U.S. 399, 415: "Income may be defined as the gain derived from capital, from labor, or from both combined."

Page 185: "Understanding the term in this natural sense, it cannot be said that a conversion of capital assets invariably produces income. If sold at less than the cost, it produces rather loss or outgo. ...In order to determine whether there has been gain or loss, and the amount of the gain, if any, we must withdraw from the gross proceeds an amount sufficient to restore the capital value that existed at the commencement of the period under consideration.

"This has been recognized from the beginning by the administrative officers of the Government. Shortly after the passage of the act, and before the time (March 1, 1910) for making the first returns of income, the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, promulgated Regulations No. 31, under date December 3, 1909, for the guidance of collectors and other subordinate officers in the performance of their duties under the act. These prescribed, with respect to manufacturing companies, that gross income should consist of the difference between the price received for the goods as sold and the cost of such goods as manufactured; cost to be "ascertained by an addition of a charge to the account of the cost of goods as manufactured during the year of the sum of the inventory at the beginning of the year and a credit to the account of the sum of the inventory at the end of the year."

Page 187: "...When the act took effect, Plaintiff's timber lands, with whatever value they then possessed, were a part of its capital assets, and subsequent change of form by conversion into money did not change the essence.

Page 188: "...In either case the object is to distinguish capital previously existing from income taxable under the act."

If intangible personal property, such as labor, is not excluded from that which is to be considered cost under the Law, shouldn't its FMV be allowed as a deduction? According to the above decision, yes. Code § 1012 outlines "Basis of Property.-Cost" and excludes no property

from cost. From where does this exclusion of labor from cost arise? From viewing the above, it is clear that if labor WERE recognized as a cost, its FMV, its contract price, the amount received in an arm's length transaction, would be deducted from gross income under § 212 or, the person who has only an employment contract, or he who has customers as a self-employed person, customers who pay only contract price, would be sovereign; the IRS would understand that their authority did not extend to contracts for the sale of personal property for its FMV. "In principle, there can be no difference between the case of selling labor and the case of selling goods." (See *Adkins v. Childrens Hospital*, 261 U.S. 525, 558 (1922)).

## WHY CODE SECTION 83 APPLIES IN OTHER CHAPTERS

This particular essay will illustrate perhaps the single most telling feature of the mechanics of the Code and how it was intended to operate. The fact that chapter 1 provisions would apply to FICA, Withholding, and Self-Employment tax, reveals a dynamic that is astonishing and does so much to provide agility when one is confronted with the allegation that any one of these taxes are owed by the seller of Labor. First, it is important to know which sections comprise certain chapters within the Code.

Chapter 1 = §1 through §1399 (Gross Income)
Chapter 2 = §1401 through §1403 (Self-Employment)
Chapter 21 = §3101 through §3128 (FICA)
Chapter 24 = §3401 through §3456 (Federal Withholding)

Also important is the fact that certain terms are not shared among chapters. When these terms are mentioned in certain chapters, it will instantly tell the reader whether the compensation referred to is that chapter's or, which OTHER chapter's compensation is being referred to. Compensation for services, depending upon the chapter, will be referred to in different terms.

**Chapter 1** refers to compensation as **"gross income, taxable income, and property transferred in connection with the performance of services."**

**Chapter 2** refers to compensation as **"Self-employment income, net earnings, and income derived from trade or business."**

**Chapter 21** refers to compensation as **"Remuneration for employment, and wages."**

**Chapter 24** refers to compensation as **"Remuneration for services, and wages."**

First, does § 83 apply to ALL compensation for services? **Internal Revenue Code section 83 applies to ANY compensation income.** (See 26 CFR 1.83-3(e), (f), (g); *Alves v. C.I.R.*, 734 F.2d 478, 481 (CA9 1984); *Pledger v. C.I.R.*, 641 F.2d 287, 295 (CA5 1981); *Cohn v. C.I.R.*, 73 USTC 443, 446; *MacNaughton v. U.S.*, 888 F.2d 418, 421 [2] (6th Cir.1989); *Klingler Elec. Corp. v. U.S.*, 776 F.Supp. 1158, 1164 (S.D.Miss.1991); *Robinson v. C.I.R.*, 82 T.C. 444, 453 (1984).) **"Section 83(a) explains how property received in exchange for services is taxed."** (See *Montelepre Systemed, Inc. v. C.I.R.*, 956 F.2d 496, 498 (CA5 1992)).

None of the decisions above held that § 83 does not apply to compensation to which chapters other than chapter 1 may apply. The mechanics of the Code reveal that there is a very good reason why these decisions included ALL compensation, regardless of the chapter which seeks to tax it (the excess). Code § 83 applies to compensation in all four chapters because:

**Chapter 1;** § 83 is IN chapter 1.

**Chapter 2;** Regulations under chapter 2 instruct that chapter 1 provisions are to be used to figure "tax on self-employment income" (See 26 CFR 1.1402(a)-2(a)).

**Chapter 21;** This chapter imposes the same tax as does chapter 2 *i.e.*, O.A.S.D.I. and Hospital Insurance or, Social Security (See § 1401(a) and (b), and § 3101(a) and (b)). Since chapter 2 tax on self-employment income is figured by applying chapter 1 provisions, why would one NOT use the same provisions to figure that same tax imposed upon the employee's income? Chapter 1 is in subtitle A of the Code (chapters 1-6) and this subtitle is called "Income Taxes". Since Social Security is an income tax, it should be imposed in the same fashion as the tax imposed under chapter 1. If § 83 holds protections for the laborer, shouldn't the same (equal) protection be afforded the employee in chapter 21? Yes.

**Chapter 24;** This tax withholding is to be credited against the tax imposed by chapter 1. This is permitted on line #7 of the 1040EZ (1993) and is a provision of § 31(a). If chapter 1 imposes NO tax, for example, there would be no liability against which to credit Withholding Tax and so, this would mean a total refund, right? This fact means that chapter 1 determines how much chapter 24 tax one owes. When one claims credit for their Withholding payments on line #7, they are exploiting not only § 31(a), but § 3503 "Erroneous Payments" as well.

Since all four chapters impose an "income tax", it makes perfect sense that they would be figured under the same guidelines as those imposed in subtitle A called "Income Taxes", right?

NOTE: **Neither FICA nor Federal withholding,** imposed by chapters 21 and 24 respectively, **are excises** imposed upon the forming and operation of an employment contract, or upon the activity of providing services; **they are income taxes that are being misenforced**, amounting to what is an excise tax; NOTHING MORE.

This is, I feel, the missing link so to speak. This sharing of provisions among chapters should serve to paint a much clearer picture of the mechanics of the Code and how it should be applied to the sellers of Labor, the merchants, employed or self-employed. Code § 83, applied as the Courts have held to be prudent, assures that the employee, as defined in § 3121(d), § 3401(c), and the self-employed individual in chapter 2 § 1401(a) and (b), all receive the very same protections of Free Labor as the employee or self-employed in chapter 1; they are exercising the same God given Rights, *i.e.*, Free Labor and Contracting for the sale of personal property.

## THESE THINGS ARE AXIOMATIC

This is a list or compilation of the points of Law (axioms) relied upon for the conclusions drawn. These axioms, when adhered to, reveal a Tax Code quite different from the modes of enforcement now the norm under the IRS. These axioms should be applied constantly while studying the Code. When these axioms have been applied within the Code, it is clear that enforcement is free form and in no way resembles the provisions of the Code.

The term "property" applies to every species of valuable right or interest, to anything subject to ownership, to anything with an exchangeable value, visible or invisible, corporeal or incorporeal, tangible or intangible, this should include labor. (See Black's Law Dictionary, Sixth Edition, "Property")

No property is excluded from that which is to be considered and treated as cost under the Law, namely 26 USC § 1012 and the regulations thereunder.

The term "definition" is a term of limitation (See any dictionary). When Congress calls a statute a "definition", what is listed thereunder is intended as the extent of the applicability of the statute, regardless of whether or not the terms "includes" or "including" have been incorporated into it. If a statute is to be understood to be an 'inclusion' and not a "definition", doubtless Congress would not have called it a "definition".

"The [FMV] is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." Treas. Reg. § 20.2031-1(b). The

willing buyer-willing seller test of [FMV] is nearly as old as the federal income, estate, and gift taxes themselves, and is not challenged here. (See *U.S. v. Cartwright*, 411 U.S. 546 (1973)).

*Cartwright*, at pg.552, quoting *Hicks v. U.S.*, 335 F.Supp. 474, 481 (Colo.1971): "...The 'willing buyer' is the fully informed person who agrees to buy...at the redemption price. ...It is a market made up of informed buyers and an informed seller, all dealing at arm's length." (See also <u>Black's Law Dictionary</u>, "Arm's length transaction"; *Robinson v. Com'r. of IRS*, 82 USTC 444, 468 (1984); *Pledger v. Com'r of IRS*, 641 F.2d 287, 295 (1981); *Newberry*, 39 BTA 1123 (1939); IRS Pub.17, pg.120 (1994)).

Internal Revenue Code section 83 applies to ANY compensation income. (See 26 CFR 1.83-3(e), (f); *Pledger v. C.I.R.*, 641 F.2d 287, 295 (CA5 1981); *Cohn v. C.I.R.*, 73 USTC 443, 446; *MacNaughton v. U.S.*, 888 F.2d 418, 421 [2] (6th Cir.1989); *Klingler Elec. Corp. v. U.S.*, 776 F.Supp. 1158, 1164 (S.D.Miss.1991); *Robinson v. C.I.R.*, 82 T.C. 444, 453 (1984)).

"Section 83(a) explains how property received in exchange for services is taxed." (See *Montelepre Systemed, Inc. v. C.I.R.*, 956 F.2d 496, 498 at [1] (CA5 1992))

Gross income, and not gross receipts, is the foundation of income tax liability. (See *Clark v. U.S.*, 211 F.2d 100, cert. den. 75 S.Ct. 289 (C.A.Mo.1954)).

The general rule, when taxing compensation income, is very simple; the fair market value of the amount paid for the compensation, the employee's cost, must be deducted from the amount received as compensation for services; it is not profit. (See 26 USC 212; *Pledger v. C.I.R.*, 641 F.2d 287, 295 (CA5 1981); also *Robinson v. C.I.R.*, 82 T.C. 444, 457; *Hensel Phelps Const. Co. v. C.I.R.*, 74 T.C. 939, 954, 703 F.2d 485, 488 [5] (10th Cir.1983); *Stapler v. U.S.*, 21 F.Supp. 737, 739; *Coppage v. Kansas*, 236 U.S. 1; *Butcher's Union Co. v. Crescent City Co.*, 111 U.S. 746; *Comm'l. League Ass'n. of America v. People Ex Rel. Needles, Auditor*, 90 Ill. 166; *Lauterdale Cemetary v. Matthews*, 345 PA 239, 47 A.2d 277 (1946); *Edwards v. Kieth*, 231 F. 110 (1916); *Connor v. U.S.*, 303 F.Supp. 1187 (1969)).

The right to free labor is the most sacred, inviolable right of man. (See *Butcher's Union Co. v. Crescent City Co.*, 111 U.S. 746; *Slaughterhouse case*, 16 Wall. 36-130)).

"In principle, there can be no difference between the case of selling labor and the case of selling goods." (See *Adkins v. Childrens Hospital*, 261 U.S. 525, 558 (1922)).

The presumption of correctness enjoyed by the IRS disappears when evidence to the contrary exists. A "determination" must be the result of a consideration of all relevant facts and statutes. (See *Portillo v. C.I.R.*, 932 F.2d 1128 (5th Cir,1991); *Carson v. U.S.*, 560 F.2d 693 (1977); *Pizzarello v. U.S.*, 408 F.2d 579 (1969); *U.S. v. Janis*, 428 U.S. 433, 442 1975); *Couzens*, 11 B.T.A. 1140, 1159, 1179; *Terminal Wine Co.*, 1 B.T.A. 697, 701-702 (1925); *Scar v. C.I.R.*, 814 F.2d 1363 (9th Cir.1987); *Benzvi v. C.I.R.*, 787 F.2d

1541 (11th Cir.1986); *Elias v. Connett*, 908 F.2d 521 (9th Cir.1990); *Hughes v. U.S.*, 953 F.2d 531(9th Cir.1992); *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 758-770 (1973); *Maxfield v. U.S. Postal Service*, 752 F.2d 433 (1984); *Jensen v. I.R.S.*, 835 F.2d 196 (9th Cir.1987)).

The tax must be imposed by clear and unequivocal language. Where the construction of a tax law is doubtful, doubt is to be resolved in favor of whom upon which the tax is sought to be laid. (See *U.S. v. Batchelder*, 442 U.S. 114, 123 (1978); *U.S. v. Community T.V.*, Inc., 327 F.2d 797, 800 (CA.10 1964); *Hassett v. Welch*, 303 U.S. 303, 314 at [5, 7] (1938); *Lucas v. Alexander*, 279 U.S. 573, 577 (1929); *Miller v. Gearin*, 258 F. 225, 226 (1919); *Gould v. Gould*, 245 U.S. 151, 153 (1917); *Spreckles Sugar Refining v. McClain*, 192 U.S. 397, 416 (1904)).

Regulations implement the statute. A statute for which no regulation has been written has no force and effect of Law. (See *U.S. v. Mersky*, 361 U.S. 431, 437, 438 (1959); *California Bankers Assn. v. George Schultz*, 416 U.S. 21, 39 L.Ed.2d 812, 94 S.Ct. 1494 (1974); *U.S. v. Murphy*, 809 F.2d 1427, [1, 2] (9th Cir.1987)).

For the purposes of Federal Tax Statutes, the regulations govern. *Dodd v. United States*, 233 F.Supp. 785 (1963), *Lyeth v. Hoey*, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938). Regulation cannot deviate from statute or it is void. The Secretary of the Treasury is bound by statute. Congressional intent is the deciding factor in considering the validity of a regulation (See *U.S. v. Larinoff*, 431 U.S. 864, 872-873 (1976); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *Washington Red Rasberry Com'n v. U.S.*, 657 F.Supp. 537, 545 (1987); *U.S. v. Calamaro*, 354 U.S. 351, 359 (1956); *Koshland v. Helvering*, 298 U.S. 441, 446-447 (1936); *Iglesias v. U.S.*, 848 F.2d 362, 367 (1988); *Forging Industry Ass'n v. Sec. of Labor*, 748 F.2d 211, 213 (1984); *Community for Creative Non-Violence v. Kerrigan*, 865 F.2d 382, 387-391 (1988); *Iglesias v. U.S.*, 848 F.2d 362, 367 (2nd Cir.1988); *Manhattan General Equip. Co. v. C.I.R.*, 297 U.S. 129, 134, 54 S.Ct. 397, 399 (1936); *Bank of New York v. U.S.*, 471 F.2d 247, 250 (8th Cir.1973); *Fidelity-Philadelphia Trust Ins. Co. v. U.S.*, 122 F.Supp. 551, 553, [3, 4]).

Every definition is to be treated as such, as a term of limitation, and NOT as an inclusion. Any regulation that seeks to reshape, alter, or invalidate a statutory provision is to be challenged for its construction.

Contract price equals FMV. Both sums are what unrelated parties, under no compulsion to buy or sell, agree as a fair price after the facts are disclosed.

Become familiar with the case law cited herein and apply these rules and axioms whenever necessary. Used as a basis for studying the Code, they will serve to reveal and clarify the true intent of the Code as it was written by Congress. The Code is perfectly Constitutional and it protects all property as cost, even labor.

## TAX PROTESTOR CASES

The Internal Revenue Service and Tax Court (they) seem quick to assume that any argument which purports to challenge their authority, even if it is based upon statute, is "groundless" or "frivolous", "tired argument" meritless", etc..

They work in concert to impose penalties under IRC § 6673 upon those who attempt to apply tax Law as they understand it.

It seems quite cold hearted for them to deny answers to even the simplest questions about applicable statutes or the structure of the Code, leaving it up to their employer, the Public, to figure it out alone, and then to penalize those who stand up for Rights said to exist as those bestowed by the Creator. Indeed, in this memorandum, you will see an actual demand for relief that earned a $1000 penalty under IRC § 6673 for asking how to comply with statute.

There are common threads that run through the particular Tax Protestor cases reviewed herein, somewhere penalties were imposed, that DO NOT include a statutory thread. A test is administered to the evidence submitted by the "protestor" to determine the applicability of IRC § 6673 (penalty for frivolous action to delay). If the "protestor" "should have known" that his arguments have "been disposed of repeatedly" by this Court and other Courts, arguments "lack merit" or are "obviously groundless", all of these are lexicon from certain decisions where penalties under IRC § 6673 were imposed.

If a particular argument is founded upon allegations of deprivations of statutory provisions, said to be applicable to every dollar earned as an employee or an independent contractor, is it groundless? If no case has disposed of "protestor's" argument and application of that statute, is the argument "tired"? If they cannot simply explain why STATUTORY arguments, also concerning regulatory construction, are off point in some way, does the argument "lack merit"?

Below is a condensed review of the nature of the arguments of the "protestors" as indicated through the language in the decision of the Court. Look for a claim of statutory violation or deprivation backing up the arguments. The reason for this is that, at the end of this review of Protestor cases are certain statutory issues that seem founded, detailed, and supported by case law, that were not even mentioned when dismissing the case as "frivolous and groundless", even though it was based upon a statute the Tax Court itself has ruled applicable to ALL compensation for services, Court of Appeals 5th Circuit, 1992, also.

For simplicity and brevity, it would serve to assign abbreviations of acronyms for certain arguments present in more than one case. These and their meaning are listed below.

1. "C" indicates Constitutional arguments such as deprivation of property without due process of Law, Federal jurisdiction ends at the Wa.D.C. geographical limits, slavery, trial by jury, privacy and self incrimination deprivations, etc...

2. "g" or "merit" indicates that the Court feels the claims to be "groundless" or "lacking of merit".

3. "proof" indicates an assertion that burden of proof cannot be shifted to IRS.

4. "Law" indicates an assertion that arguments have no foundation in law.

5. "SHK" "...the taxpayer **should have known** that his arguments were groundless..."

6. "61(a)" indicates that a challenge was made to the Constitutionality of IRC § 61(a).

7. "facts" indicates an assertion that no facts upon which the case may be decided were submitted.

8. Other points that relate to dialogue in certain decisions will be illustrated throughout.

SAMPLE CASES:

*Siebert v. Comm.*, T.C. Memo 1993-83 filed 3-11-93
Arguments: C; facts; g; merit; SHK. $5K penalty IRC 6673. "groundless tax protestor claims", "complete lack of merit", "knowingly filed this suit"; see last 2 paragraphs.

*Karlin v. Comm.*, T.C. Memo 1990-496 filed 9-18-90
Arguments: C; not a "taxpayer"; facts; g; 61(a); proof. Taxpayer was not allowed to put burden of proof upon the Commissioner. Tax Court will not examine the underpinnings of a Notice of Deficiency to examine evidence, HOWEVER:

> The presumption of correctness that the Defendants claim to enjoy disappears upon the introduction of evidence to the contrary. A determination must be the result of a thoughtful consideration of the relevant facts and statutes. *Portillo v. C.I.R.*, 932 F.2d 1128, 1132 (5th Cir.1991); *Scar v. C.I.R.*, 814 F.2d 1363, 1368, 1370; *Carson v. United States*, 560 F.2d 693, 695-96 (5th Cir.1977); *Janis*, 428 U.S. at 440, 96 S.Ct. at 3025, 3026; *Bar L. Ranch Inc. v. Phinney*, 426 F.2d 995, 998 (5th Cir.1970). *Weimerskirch v. Commissioner*, 596 F.2d 358, 360 (9th Cir.1979); *Pizzarello v. United States*, 408 F.2d 579 (2d Cir.), cert. denied, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969); *Terminal Wine*, 1 B.T.A. at 701-02.
>
> "...This does not mean, however, that the courts cannot or should not decide the validity of a notice that can be determined solely by references to applicable statutes and

review of the notice itself....In this case, we need not look behind the notice sent to the taxpayers to determine its invalidity....A literal reading of relevant code sections, and the absence of evidence of contrary legislative intent, leads one to conclude that the Commissioner must consider information that relates to a particular taxpayer before it can be said that the Commissioner has "determined" a "deficiency" in respect to that taxpayer. To hold otherwise would entail ignoring or judicially rewriting the plain language of the Internal Revenue Code." (From *Scar v. C.I.R.*, 814 F.2d 1363, 1368 [6, 7] (9th Cir.1987)).

In this T.C. Memo, all cases cited as authorities to deny the shifting of the burden of proof were Tax Court cases and not decisions of Federal Courts. Above we see a parting of the ways between Tax Court and Federal Courts with respect to this particular holding. No statutory claims, $15K penalty under IRC § 6673.

*Bush v. Comm.*, T.C. Memo 1991-607 filed 12-9-91
    Arguments: merit; C; direct tax; apportionment; uniformity; Citizen of State; penalty $5000 under IRC 6673.

*Allnutt v. Comm.*, T.C. Memo 1991-6 filed 1-14-91
    Arguments: "frivolous claims"; "inadequacy of petition". For "rehashing "protestor" type arguments", page 1642, "...petitioner has had no interest in disputing either the deficiencies or additions to tax...", $25K penalty under IRC 6673.

*Ladika v. Comm.*, T.C. Memo 1989-258 filed 5-30-89
    Arguments: g; merit; "...no justiciable facts..."; "specious and manifestly frivolous"; $5000 penalty under IRC 6673.

*Herbank v. Comm.*, T.C. Memo 1982-496 filed 8-30-82
    Arguments: C; W-4 exempt; 61(a).
    This Memo claims that <u>Brushaber</u> says that the Sixteenth Amendment applies to the Petitioner but <u>Brushaber</u> actually said that its application to what <u>Brushaber</u> received (stock) was Constitutional.

*Rowlee v. Comm.*, 80 USTC 1111 (1983)
    Arguments: 61(a); C; facts; SHK; "tax on source" argument; submitted 218 interrogatories; demand to face accusers; deduction for living expenses.
    Reference to Eisner, "gain" pg.1119. Filing a return establishes proof of knowledge of requirement to do so.
    This decision contains language that is indicative of the erosion of Constitutional principles and how it is carried out through the Courts by letting an interpretation evolve (change) statute into another animal.

1. On page 1120, quoting *Reading v. Comm.*, 70 TC 730 (1978), affd. 614 F.2d 159 (8th Cir.1980), at 733:

"...The logical force requiring rejection of their arguments-apart from their assertions of personal political philosophy which do not provide a basis for us, a Court sitting to interpret the law, to decide the questions dispositive of this case..."

This statement falls right in line with all the current efforts of the Service to get people into "compliance" with the law, trying to discourage non-resident alien arguments and others listed herein. Hasn't it been their claim all along, that the Code applies to United States Citizens, and that said term embraces all who live within the fifty freely associated compact states? Yes. For an example of what happens when an individual brings issues at law into Tax Court, see *Abrams*, 82 USTC 403, 408; how things change from 1980 here, to 1984.

2. On page 1120, *Rowlee* quoting Tax Court in *Reading v. Comm.*, 70 TC 730 (1978), affd. 614 F.2d 159 (8th Cir.1980), at 733:

"Nevertheless, accepting the conclusion that some kind of "gain" must be realized for there to be income, the flaw in petitioner's analogy of what they call the "cost of doing labor" to the "cost of goods sold" concept-essentially its failure to acknowledge the difference between people and property-may be shown. The "cost of goods sold" concept embraces expenditures necessary to acquire, construct or extract a physical product which is to be sold; the seller can have no gain until he recovers the economic investment that he has made directly in the actual item sold. <u>Labor,</u> on the other hand, <u>is, in the current context, behavior performed by human beings in exchange for compensation.</u>"

Did they actually call labor "behavior"? Isn't it true that the Supreme Court says that labor is <u>property?</u> Yes. To believe that labor is behavior and not property, is to lose the identity of labor as sacred and inviolable property. If labor were not property, the argument for equal value in an exchange of property when labor is sold would be gone. This would certainly serve those who seek to tax such a sale. Labor, the verb, is indeed behavior of a sort but, labor, the noun, is and always will be <u>property.</u> In this case, "protestor" was trying to deduct his living expenses as the "cost of doing labor".

3. On page 1121, quoting *Rice v. Comm.*, T.C. Memo 1982-129 we find that "wages" means income, just as the Supreme Court is said to have stated in *Lynch v. Hornby*, 247 U.S. 339, 344 (1918) when they stated:

"...Congress was at liberty under the [Sixteenth] Amendment to tax as income, without apportionment, everything that became income, in the ordinary sense of the word..." **Under this principle, the ordinary, and perhaps the most common, meaning of "income" has been wages.** (emphasis added) (bolded type is Tax Court continuing after quoting *Lynch*).

**Page 30 of 94**

Note that the statement by the Supreme Court is used to justify including compensation in gross income. How does anyone construe the quote above to include compensation for services? How does this principle implicate the FMV of intangible property transferred to obtain other property, while it excepts the FMV of tangible property as a "cost" to the transferor? This "principle" seems to want for equal protection fortification. Continuing to quote *Rice*;

> "Although the wages received by Mr. Rice may represent no more than the time-value of his work, they are nonetheless the fruits of his labor, and therefore represent gain derived from labor which may be taxed as income."

Compare this statement with the quotes below. What are services, or labor, or "work"? Is it gain, or is it cost? Can it be both?

> 'Income', as used in the statute should not be given the meaning so as to include everything that comes in. The true function of the words "gain" and "profit" is to limit the meaning of the word "income"... (See *So. Pacific v. Lowe*, 238 F. 847 (1917) (not a quote).

> "The basis of property you buy is usually its cost. The cost is the amount of cash you pay for it...or services you provide in the transaction." (See IRS Pub.17, pg.118, heading of "Cost basis" (1994)).

> "...every man has a natural right to the fruits of his own labor, as generally admitted; and that no other person can rightfully deprive him of those fruits, and appropriate them against his will." (*The Antelope*, 23 U.S. 66, 120).

There seems to be a conflict with respect to the category within which to place compensation for services. One Court (Tax Court) includes them in gross income, while the Supreme Court speaks of labor and its proceeds to be embraced by and under a natural right. Can Congress take that to which man has a natural right and turn it into a taxable activity/commodity? Can they, through amendment to the Constitution, assume to take portions of that to which a man has a natural property right? No, and that was never the intent of the Sixteenth Amendment, only gain is income.

*Abrams v. Comm.*, 82 USTC 403 (1984)
    Arguments: 61(a); g; merit; C; SHK; facts. "No justiciable facts", "weird and illogical theories", "long defunct arguments", "put to rest for years", said around a reference to Eisner which acknowledges the axiom there must be gain for there to be "income".

One particularly abrasive statement and line of reasoning leaps out of this decision on page 408 and reads in pertinent part:

"...the pleadings do not raise a genuine issue of material fact respecting Respondent's determinations...but rather involve only issues of law. (Cite omitted) Therefore, ...Respondent's motion for- judgment on the pleadings will be granted. ....The final matter we consider is (penalties]".

Now we are to assume that the Code is non-resident alien to Tax Court. Questions of the Law are not for this "court" to consider?!? One finds more than just slight conflict between the particular quote above and this entry in the Federal Register which proclaims the mission of the IRS:

"The mission of the Service is to encourage and achieve the highest possible degree of voluntary compliance with the tax laws and regulations and to maintain the highest degree of public confidence in the integrity and efficiency of the Service. This includes communicating the requirements of the law to the public, determining the extent of the compliance and causes of non-compliance, and doing all things needful to a proper enforcement of the law." (See Federal Register, Vol.39, #62, Friday, March 29, 1974, 1110 Organization and functions of the Service, Sec.1111.1 Mission)

Do they, or do they not, indulge issues under the law? See *Rowlee* above, "...we need issues of law...".

*Klein v. Comm.*, 45 USTC 308 (1965)
Arguments: merit; g; facts. The Court needed facts of Law in 1965.

*Weinstein v. Comm.*, 29 USTC 142 (1957)
    Arguments: "...allegations are so general and so cursory that...they give very little hint as to just what the Court is called upon to decide." (In 1957, the Court decided issues of Law)

*Wilkenson v. Comm.*, 71 USTC 633 (1979)
    Arguments: C; g; SHK; no proof of deductions; see page 638, 639, 642*; penalty $500 under IRC 6673.

*On page 642 of *Wilkenson*, quoting *Hatfield v. Comm.*, 68 USTC 895, at 899: ...cases of this sort needlessly disrupt our consideration of those genuine controversies."
    "...Any citizen may resort to the courts whenever he or she in good faith and with a colorable claim desires to challenge the Commissioner's determination."
(We can see that, in 1979, Tax Court was deciding issues at Law.)

*Coleman v. Comm.*, 791 F.2d 68 (CA7 1986)

Arguments: merit; g; C; SHK; 61(a); excise tax on privilege. "Raised and rejected so often", "preposterous things", "claims are so weak", "tired arguments, see 26 USC 61(a)" pg.70, "They knew or should have known".

*Hansen v. Comm.*, 820 F.2d 1464 (CA9 1987)
Arguments: g; SHK. "Reasonable, prudent person".

*McCoy v. Comm.*, 696 F.2d 1234 (CA9 1983)

Arguments: C. See page 1236.

*U.S. v. Buras*, 633 F.2d 1356 (CA9 1981)

Arguments: C; 61(a). Good faith misunderstanding of the Law, cites Stratton's-"gain".

*U.S. v. Barker*, 11 50,490, 90-2 U.S. Tax Cases, U.S. Dist.Ct., No.Dist. Calif.,C-90-1039 MHP, 8/28/90

Arguments: IRS forms must have OMB numbers to be valid; blanket 5th Amendment objection; no authority to issue summons.

*Lonsdale v. U.S.*, ¶ 50,581 90-2 U.S. Tax Cases, Ct.App.10th 90-2113, 11/20/90.

Arguments: Wages are gross receipts; jurisdiction; Anti Injunction Act; Delegations Orders and publication of them.

Above we find no cases based upon allegations of statutory deprivation or violation. We find no statutory challenges to the taxation of compensation for labor or challenges of regulatory construction for deviation from statute. Can a statutory challenge, based upon provisions of the Code, be placed in the same category as these cases cited above as a groundless or frivolous argument, decided upon repeatedly? No. Do these cases, therefore, serve to duly dismiss an argument that the Code protects the FMV of labor from inclusions in gross income? No.

At the beginning of this memorandum, you were told to expect statutory challenges that seem to make the Service and Tax Court react as if a gross insult had just been paid them. The request below actually earned a "petitioner" a $1000 penalty under IRC § 6673.

"If Petitioner is found to be in error in the instant case, Petitioner demands that Respondent identify provisions excluding Petitioner's compensation from the provisions of Code § 83.

"If Petitioner is found to be in error in the instant case, Petitioner demands that Respondent explain how to comply with § 83.

"If Petitioner is found to be in error in the instant case, Petitioner demands that Respondent explain how § 83 has operated upon the situation of the Petitioner as it relates to the assessment in controversy.

Page 33 of **94**

"If Petitioner is found to be in error in the instant case, Petitioner demands that Respondent explain how to comply with 26 CFR 602.101."

Now we are to understand that asking how to comply with one statute and one regulation can earn one a $1000 penalty ("damages"). We see that the Tax Court went from a "Court sitting to interpret the law" in *Rowlee*, *supra*, at 1120, to a Court with a determination to dismiss a case for bringing issues at law to question in *Abrams*, *supra*, at 408. Is this issue really up to Tax Court to decide? Is the function not constant in its purpose?

Moving on to the point made above through quoting an actual demand for relief for which Tax Court fined the Petitioner $1000. Why would just a single statute evoke such a response of hostility? Why is this information privileged?

Does IRC § 83 apply to all property received in exchange for services? "Section 83(a) explains how property received in exchange for services is taxed." *Montelepre Systemed, Inc. v. C.I.R.*, 956 F.2d 496, 498 (CA5 1992). And § 83 applies not only to the services of corporations, but to those of individuals as well. *MacNaughton v. C.I.R.*, 888 F.2d 418 (CA6 1989); *Robinson v. C.I.R.*, 82 USTC 444 (1984); *Cohn v. C.I.R.*, 73 USTC 443, 446 (1979); *Pledger v. C.I.R.*, 641 F.2d 287 (CA5 1981).

Section 83 applies to any property transferred in connection with the performance of services. (See 26 CFR 1.83-3(f); *MacNaughton v. C.I.R.*, at 421 [1], Id.; *Alves v. C.I.R.*, 734 F.2d 478, 481 (CA9 1984); *Cohn v. C.I.R.*, at 446, *Id.*; *Klingler Electric Co. v. C.I.R.*, 776 F.Supp. 1158, 1164 [1] (S.D.Miss.1991)).

With the applicability of § 83 in mind, why on earth would the IRS and Tax Court deny any and all information about § 83? Why would they penalize someone for asking? The text of statutes relied upon will not be recreated herein. You are urged to examine any and all references to any statute or regulation. Along a certain line of reasoning, § 83 seems to hold certain protections.

What follows is a condensed, but easy to understand, exercise or instruction that considers the provisions of chapter 1 of the Code that pertain to the compensation for services of an individual who does not itemize. (Form 1040EZ).

1. The first equation is the one prescribed by the IRS.
    (a) Starting with all compensation in gross income (§ 61(a)), then-
    (1) take a deduction under § 63(c), and
    (2) take a deduction under § 151, thus equaling-
    (b) § 63 Taxable Income defined as gross income minus deductions. We have just taken these deductions from amounts of gross income, arriving at amount of "taxable income".

2. Now, knowing the "taxable" amount, how much is owed? Go to § 1 for "Tax Imposed".

3. You, the employee earning under $22.1K in "taxable" income, must pay 15% of such amount if you are single.

4. Before you pay this amount, take a credit of Federal Withholding deducted from your pay under § 31(a).

5. If you paid too little Withholding, you owe, if you paid too much, you get a refund.

What role did § 83 play in all of this? Does it not explain how to tax property received in exchange for services? Section 83 provides that, if property is transferred in connection with the performance of services, the <u>excess</u> of the fair market value of such property, <u>over the amount paid,</u> shall be included in gross income, and does not provide for the fair market value (FMV) to be so included. Can services be regarded as an amount paid for the purposes of § 83? Are they property? Yes.

**Labor (services) is property,** (See 26 USC 7701(e); *Adair v. U.S.*, 208 US 161, 172 (1908); *Butchers' Union Co. v. Crescent City Co.*, 111 US 746, 757 (1883); *Coppage v. Kansas*, 236 U.S. 1 (1915)) **and so are wages.** (*Coppage v. Kansas, Id.*; 26 CFR 301.6331-1(a)1).

Labor, being <u>intangible property,</u> is difficult to defend as a "cost" for the purposes of ascertaining amounts of gross income received from labor.

> "In other words, if the debtor credited to the account of the creditor sums...or <u>the creditor received property</u> [from debtor], either <u>tangible or intangible, having a cash value equal to the deduction claimed by the debtor, the deduction would be allowable under the statute,</u> because the creditor would be required to include these sums in his gross income." (See *Musselman Hub-Brake Co. v. Comm.*, 139 F.2d 65, 68 [7,8] (1943)).

Here we have acknowledgment of <u>intangible property</u> allowable as a deduction. You will find no distinction or discount made against <u>intangible property</u> in Black's Law Dictionary under the definition of the term "property" either ("it extends to every species of valuable right or

interest"). Indeed, where is this distinction found under the law? Why is intangible property, specifically labor, not allowed as a deduction even though it is sacred and finite property?

The right to free labor is the most sacred and inviolable right of man. *Slaughter-House Cases*, 83 US 395, 419 (dissenting opinion); 16 Wall. 36-130 (1873). How can one exercise this Right without Governmental interference? Pick up the Code and regulations and follow along.

1. Code § 61(a) only applies to "gross income" as indicated by its title, "Gross Income Defined". Regulations 1.61-1 and -2 under § 61(a) state very clearly that said statute does not apply to compensation which may be "excluded by law." This requires us to consider all relevant provisions so as to not break the law by including in gross income that which is not allowed by the Code.

2. Since § 83 applies to everything paid for services, start there. If your services are not deductible as an amount paid, all that you received is an excess and must therefore, be included in gross income (See § 83(a)) BUT, if your services are your cost or an "amount paid" for the purposes of § 83, their FMV must be deducted.

3. To figure the basis (cost) of property obtained in connection with the performance of services, one must apply the provisions of, and the regulations promulgated under, Code § 1012 (See 1.83-4(b)(2)). Said regulation refers to property subject to regulation 1.83-1, this is the corresponding regulation to § 83(a), so it applies to all compensation for services as well.

4. Proceeding to § 1012 to determine the "basis" or cost of property received in connection with the performance of services we find;

5. 26 CFR 1.1012-1(a) general Rule. In general, the basis of property is the cost thereof. The cost is the amount paid for such property in cash or other property.

So, the regulation under which the basis of property subject to § 83 must be calculated does not exclude any property, tangible or intangible.

6. 26 CFR 1.1001-1(a) "...The general method of computing such gain...[is] that from the amount realized upon the sale or exchange there shall be withdrawn a sum sufficient to restore the adjusted basis..." (cost)

Why, in case law under § 83, was every payment of tangible property recognized as a cost but, payments of intangible property are discounted as cost by the IRS, and are taxed in the full amount realized from the exchange? From where does this practice, that such discrimination shall be the course of the day, originate?

## SUMMARY

Of the applications of Law previously outlined herein, none were raised as arguments in the protestor cases reviewed above. Before any case law contrary to the applications above can be drawn upon for authority, it must be shown that the applicable statutory provisions relied upon herein, namely § 83, 1001, 1011, and 1012, have been applied and complied with. It must also be shown that intangible personal property is excluded from that property which is to be treated as cost under the Law, that its FMV is gain or "gross income."

Why should these issues, if "frivolous", be so hard to dispose of when each is statutory? Why the penalty? Why not answer with the truth if it is other than the assertions and conclusions of the Complainant?

**It is easy to see that this argument bears no resemblance to the arguments raised in the "tax protestor" cases cited above** and often called upon by the Service and Tax Court to dispose of any argument that seems to question their authority, even if the argument is one at Law.

This argument is a statutory one and is based entirely upon the Code and regulations promulgated thereunder. If it is "groundless" or "frivolous", it can be disposed of with provisions within the Code. If it cannot be disposed of with superseding or preclusive statutory provisions, is the "tax" being imposed by clear and unequivocal language? No. In such an instance, doubt goes to the "taxpayer". (See *U.S. v. Batchelder*, 442 U.S. 114, 123 (1978); *Lucas v. Alexander*, 279 U.S. 573, 577 (1928); *Spreckles Sugar Refining v. McClain*, 192 U.S. 397, 416 (1903); *U.S. v. Community TV, Inc.*, 327 F.2d 797, 800 (1964); *Miller v. Gearin*, 258 F. 225, 226 (1919)).

FURTHER, reliance upon decisions below the level of the Supreme Court speaks of peril. The Supreme Court has never said straight away that "wages are gross income", leaving only the term "gain" to be interpreted by those with the power to destroy and with the ravenous appetite for personal liberties. Coupling with this the fact that, said Court has also alluded many times to the sanctity of the Right to Free Labor and that labor is property, never discounting its worth as a cost when dispensed, these things together are important and serve to illustrate a certain dichotomy between the opinions of lower Courts (compensation is gross income), and the Supreme Court (GAIN is gross income).

The "test" for gross income is simple as it pertains to compensation for services (property for property).

(a) What precludes the compensation of the Petitioner from the provisions of § 83?

(b) If not precluded, how does Petitioner comply with § 83?

(c) How has § 83 operated in the instant case?

(d) How has § 1012 operated in the instant case?

(e) Where, in the provisions of § 1012, is <u>intangible property</u>, such as labor, excluded from property that is a "cost" when it is disposed of to obtain other property?

(f) If no such exclusion exists, why is the FMV of <u>intangible property</u> taxable in an exchange or transfer not allowed as a deduction? (See *Musselman Brake Co. v. Comm.*, 139 F.2d 65, 68)).

Until these question are answered in a clear fashion, and cases dismissing these arguments in particular are identified, it would be premature at best to simply include these arguments in those said to be groundless, frivolous, or without merit, or as having been decided "repeatedly".

A case, of course, can only be decided upon the evidence submitted for review. With the complexities of the Code taken into consideration, it is entirely possible that others have preceded this claim with less founded or misguided arguments but, the Complainant should not be held to the same standards unless decisions have indeed disposed of the SPECIFIC and STATUTORY arguments raised by Complainant. Complainant contends that existing case law opposing these claims were decided without examination of § 83, 1001, 1011, and 1012. If these provisions were considered and applied, surely the Internal Revenue Service or Tax Court can shed some light on this apparent oversight on the part of the Service.

## IN GOOD FAITH

Examination of statutory provisions has revealed a dichotomy between those who seek to include the FMV of labor in gross income, and that which is <u>gain</u> to be included in gross income, as required by statute. When going along with the IRS, including the FMV of labor in income, an individual seems to violate certain applicable regulations.

The lines drawn are those along property Rights issues. A return to fundamental principles is all that is needed to understand and apply the provisions within the Code as they pertain to compensation for services. When a broad definition of the term "property" is accepted, such as the definition in Black's, statutory language offers labor recognition as a cost whose FMV is to be deducted from gross income.

**Page 38 of 94**

The elements of the argument, that labor is a cost and is therefore deductible from gross income, are very brief, basic, and undeniably applicable.

1. Code § 83 applies to all compensation for services. Regulation 26 CFR 1.83-1 implements § 83(a) which applies to the common paycheck or fee and therefore applies as well.

2. Regulation 26 CFR 1.83-4(b)(2) requires that the cost of property to which 1.83-1 (above) applies is to be figured by applying the provisions of § 1012.

3. Code § 1012 permits all property to be considered to be a cost when disposed of to obtain or purchase other property. This includes, because it does not exclude, all property, tangible or intangible, corporeal or incorporeal, every species of valuable right or interest, etc... (See Black's, "Property").

4. With labor (property) not excluded from that which is cost under the Law, failure to deduct its FMV from gross income would therefore violate 26 CFR 1.1001-1(a) which requires that, before recognition of gain or loss in a transfer of property, the taxpayer must be restored a sum sufficient to equal the adjusted basis (cost, see § 1011), that which remains is the taxable gain; subtract the FMV first, the worth of the property disposed of, the labor.

The elements of a rebuttal to this line of statutory application would have to include proof that:

1. Section 83(a) is inapplicable to compensation for services.

2. The cost of the compensation for services is not to be figured by applying the provisions of § 1012.

3. Intangible personal property, such as labor, is expressly excluded from that which is cost, thus the FMV of it would be includible in gross income. Labor is not "property" under the Law. Labor is something else, and why it is such.

4. One does not violate 26 CFR 1.1001-1(a) when failing to restore the adjusted basis before considering what to include in gross income.

If this application is in error, certainly it can be disposed of by the Service or the Courts in a manner so as to leave no doubt of fairness, full disclosure, and honesty, as Due Process requires.

If this application cannot be disposed of in such a manner, it can hardly be said that actions incorporating this argument are brought in bad faith. When the denial of a deduction for

the FMV of Labor cannot be substantiated with provisions of Law, and when a provision permitting such a deduction is readily identifiable, the only label to place upon this argument is one of Good Faith.

Government forms are expected to be signed under penalties of perjury (See § 6065). How can the seller of Labor sign such a form while being deprived of the knowledge of how the Law operates and effects the conclusions of liabilities on said form? The ambiguities are manifold, the questions are simple and few. A party demonstrates "good faith" when the review of any issue is not frivolous (See *Coppage v. U.S.*, 396 U.S. 438, 444 (1962); *Anders v. California*, 386 U.S. 738, 744 (1967)).

The issues at law are profoundly simple ones. Even the most rudimentary and precursory education in Constitutional fundamentals, as they pertain to property Rights, would suffice in the forming of conclusions about the issues examined above. Property is property. When it is disposed of, its FMV is not gain. The Law makes no allowance for the treating of intangible property in a manner inconsistent with the axioms applied to tangible property.

## TWO HALVES OF ONE EQUATION

**1. Does § 83 apply to the compensation I receive for my services?** Memorandums in support have many quotes of, and references to, cases where § 83(a) was said to be precisely that; APPLICABLE. Even Tax Court (*Cohn, Robinson*) has ruled so. If a statute applies, it is important to know how it has operated before you sign any forms under penalties of perjury.

**2. How do I comply with § 83?** After establishing applicability, the function of the statute must be examined and explained, as due process requires. The language of the section simply says, in form, "Look at the property purchased with the services (the paycheck) and its FMV. If that amount exceeds the amount paid for it (the paycheck), take that **excess** and include it in gross income."

**3. What did my compensation cost me?** Section 83(a) specifically applies to compensation received within the average contract for the purchase of services. Its implementing regulation is 26 CFR 1.83-1 ((a) becomes -1) and therefore also applies to all compensation. How does this assist in establishing the cost of compensation? Regulation 26 CFR 1.83-4(b)(2) requires that, if 1.83-1 applies, figure the cost by applying the provisions of § 1012 and the regulations thereunder. Now it is clear, it is required, the cost of compensation is arrived at by applying the provisions of § 1012 and its implementing regulations.

**4. How do I comply with § 1012?** When REQUIRED BY REGULATION to comply with § 1012, it is of course important to know how it operates before signing any form under penalties of perjury. Section 1012 says that PROPERTY IS COST. Intangible personal property (labor) IS

Page **40** of **94**

NOT EXCLUDED from that which is cost. Now that the cost has been established (not the value, but the item or property that was disposed of or lost, the cost), how do I treat it under the Law?

**5. Are there other terms that mean "cost"?** Good question. The answer is yes. Code **§ 1011** assigns another term that ultimately will serve to describe the property (labor) disposed of (the cost).

> **§ 1011** Adjusted Basis for Determining Gain or Loss.
> (a) General Rule.-The adjusted basis for determining the gain or loss from the sale or other disposition of property.

> **26 CFR 1.1011-1.** Adjusted Basis.-The adjusted basis for determining the gain or loss from the sale...of property **is the cost . . . prescribed in section 1012.**
> The term that now serves to indicate "cost" is "the adjusted basis". The same cost as was established under § 1012 in question #4 above. The cost established above (the labor or services) is now to be known as the **"adjusted basis".**

**6. O.K., O.K., so how do I treat it already?**
The "cost" and its FMV have been established. The cost is the intangible personal property (labor), and its FMV is the amount received in an arm's length transaction (contract). Remember the language of § 83(a) and its reference to taking the excess over the amount paid for the compensation, separating it from the FMV of the compensation, and including that excess in gross income (See #2 above)?
What is the FMV of my compensation? I got paid $400 as agreed under contract (FMV). An arm's length transaction establishes the FMV of the property in the hands of each party. $400 is worth 40 hrs. of labor, 40 hrs. of labor is worth $400. The labor is the cost and the compensation is equal to the FMV of the labor.

> 26 CFR 1.1001-1(a) General Rule. ...The general method for computing such gain or loss is... that from the amount realized upon the sale or exchange **there shall be withdrawn a sum sufficient to restore the adjusted basis. . . . The amount that remains after the adjusted basis has been restored to the taxpayer constitutes realized gain.**
> Very interesting. One must "withdraw" a sum equaling the adjusted basis (the new term for "cost"), and restore it to the taxpayer; the Law requires it! Hasn't it been established already that the "adjusted basis" equals the amount received (arm's length transaction)? Yes. Go ahead, restore the "adjusted basis" or cost by "withdrawing" a sum to restore your cost. Property is cost, even intangible personal property. Take the FMV of your cost (contract price) and deduct it from the amount earned before any other deductions under tax Law, and include the excess in gross income. PAY - CONTRACT PRICE = EXCESS, GAIN, PROFIT, INCREASE, GROSS INCOME.

**7. I withdrew the FMV of my cost and the answer was zero, what do I do?** Now one must go find the provisions outlining the requirements for the person who received no gross income. These provisions do not exist.

**8. I withdrew the FMV of my cost and the answer was $6150.00, what do I do?** Include such an excess over the FMV of the cost incurred (the services) in gross income under § 61(a)(1) and file a tax return.

Stop and think. Section 83(a) is undeniably applicable and it lead to this point under the Law, the point where the laborer or service provider is to include an amount in gross income, an amount received in exchange for services. Wait, isn't this the point where the IRS **starts?** Yes. What about all of the applicable statutes and provisions outlined above?

This obvious inadequacy, this gross omission of axiomatic influence, this is the focal point in an argument which seeks to deduct the FMV of labor as a cost. The simple truth is that, to tax labor as they do, the IRS must deprive the service provider of the provisions of § 83(a) to avoid § 1012's failure to exclude intangible property as a cost.

The equation below is one pertaining only to a wage earner filing a Form 1040EZ, minimum deductions, simplest provisions applied. It will be comprised of the SECOND HALF of the equation above as it all pertains to the single wage earner who cannot be claimed by another as a dependent.

**9. I have included my $6150.00 in gross income in § 61(a), now what?** Now is the time to claim the allowable deductions. On line #2, enter $6150.00 as gross income § **61(a).** Enter no interest income on line #3. Carry $6150.00 down to line #4 "adjusted gross income."

On line #5, a single person who cannot be claimed by another as a dependent is instructed to claim a deductions of $6050.00, claim it. These are deductions under §§ **151(d)** and § **63(c).**

Deductions are important because of the fact that this chapter 1 tax is imposed upon taxable income which is defined as the amount left after deductions from gross income. This is very simple.

On line #6, the filer of the form is asked to subtract line #5 from line #4 (the deduction amount of $6050.00 from $6150.00). This equals $100.00, right? Enter $100.00 on line #6, "This is your taxable income." (Taxable income is defined in § **63(a)).**

On line #7, the filer is asked to enter the total amount of "Federal income tax" (Federal Withholding).

On line #8, the filer is asked to locate a particular table in the Form's instruction booklet and relate the amount from line #6 (taxable income) to sums in the table to find the amount of tax owed. This sum is $17.00, as indicated in said booklet. Enter this amount on line #8. This is the § **1** tax.

On line #9, the filer is instructed to subtract line #8 $17.00 from line #7 $100.00 Fed. Withholding collected. Right here, the filer is receiving credit for the $100 of Fed. Withholding paid out during the year against a liability under § 1 of $17.00, that is all. This is a provision of § **31(a)** which states clearly that chapter 24 tax payments are allowed as a credit in this chapter. "This is your refund." (See line #9, Form 1040EZ 1993).

On line #10, the filer learns that, if line #8 tax owed was larger than line #7 tax paid, "this is the amount You owe." After this half of the equation has operated upon the filer's $6150.00 in gross income, the refund is $83.00 ($100 minus $17 = $83).

To capsulate the components of this half of the equation, it would serve to list the operable provisions as they operate in a statutory equation.

| | | |
|---|---|---|
| §61(a) Gross Income | | $ 6,150.00 |
| - § 151(d) | Deductions | |
| - § 63(c) | | $ 6,050.00 |
| = § 63 Taxable Income | | |
| § 1 Tax Imposed | | $    **(17.00) owed** |
| § 31(a) Credit for Withholding | | $  **(100.00) paid** |
| = (?) refund/pay more | | = $     **83.00 refund** |

The equation above is the extent of provisions applied to the average wage earner with no dependents. What role does § 83 play in the scenario above? Below is the equation which precedes one's arrival in § 61(a) Gross Income.

**§ 83(a)** Applies to all compensation for services. Requires that the compensation recipient is to separate the FMV of the service provider's cost from the amount received, take the excess and include it in gross income.

Regulation **26 CFR 1.83-1** implements § 83(a) and therefore also pertains to all compensation income.

Regulation **26 CFR 1.83-4(b)(2)** says that if 1.83-1 applies to the compensation, apply the provisions of § **1012** and the regulations thereunder to figure the cost incurred in obtaining the compensation.

**§ 1012** says that the cost of property purchased is the property disposed of to obtain it and no provisions is made to exclude intangible personal property, such as labor, from that which is to be deducted as such cost.

**§ 1011** assigns the term "adjusted basis" to indicate "cost". (See also 26 CFR 1.1011-1).

Page 43 of **94**

**§ 1001** determines the amount of gain or loss from a transfer of property. It defines the "gain" as the excess amount over the "adjusted basis" as defined in § 1011 (cost).

Regulation **26 CFR 1.1001-1(a)** is unequivocal when it requires that:

> 26 CFR 1.1001-1(a) General Rule. ...The general method for computing such gain or loss is... that from the amount realized upon the sale or exchange **there shall be withdrawn a sum sufficient to restore the adjusted basis. ...The amount that remains after the adjusted basis has been restored to the taxpayer constitutes realized gain**.

> **This regulation requires** that a sum sufficient to restore the adjusted basis (the cost) must be withdrawn and restored to the taxpayer, failure to do so would violate this regulation. This sum would, of course, be the FMV of the services rendered (contract/arm's length transaction). The amount remaining is the excess or "gross income" **§ 61(a)**. Only now does one visit the § 61(a) equation outlined above on the Form 1040EZ.

By starting in § 61(a) Gross Income with the entire wage or fee, the IRS has deprived the service provider of the provisions that embody the **axioms of income taxation.** Axioms such as FMV, arm's length transaction, deduct cost, all property is cost, are expressed in the provisions which precede § 61(a), axioms that escape application by not starting in § 83(a) when computing a tax liability for the laborer.

The mathematical portion of this entire exercise, the § 61(a) start on the Form 1040EZ, is the technical application of particular functions that only serve to complicate the process. The fundamental portion of this exercise is the provisions applied when one starts in § 83(a) with compensation for services received.

These two portions are divided by the finest of lines. Once an amount is in § 61(a), it is impossible to return to § 83(a); the equation flows AWAY FROM IT and the provisions that are to applied first are undetectable, lost in the Code and regulations. If the service provider does not start in § 83(a), he loses § 83(a).

> **§ 83(a)** Separate "amount paid" from excess, excess goes to gross income. Applies to all compensation.

> **1.83-1** Applies to all compensation also.

> **1.83-4(b)(2)** If 1.83-1 applies, go to § 1012 to figure cost.

> **§ 1012** Cost is property, all kinds of property.